**VIA ELECTRONIC CASE FILING AND EMAIL**

The Honorable Joseph C. Spero
Chief U.S. Magistrate Judge
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Netlist, Inc. v. Google LLC*, No. 4:09-CV-05718-SBA (N.D. Cal.)

Dear Judge Spero:

Plaintiff Netlist, Inc. ("Netlist") and Defendant Google LLC ("Google") hereby submit this joint statement regarding the parties' dispute over Google's Objections and Responses to Netlist's Interrogatories (Ex. 1) and Requests for Production (Ex. 2).

**Netlist's Statement**

Google refused five requests to meet and confer on this dispute. Exs. 3–5. Google's counsel agreed to a lead-to-lead meet and confer after Netlist served this Joint Letter (on May 30, 2021) and asked for Google's position. Ex. 6. This case reopened after the ten-year reexamination of U.S. Patent No. 7,619,912 ("'912 Patent") in which Google worked in coordination with Inphi and Smart Modular to challenge the validity of every claim. Two claims of the patent were affirmed valid without any change in claim language–claims 16 and 17. Some claim language was changed in other claims and then affirmed valid.

The complaint accused all Google memory modules that incorporate the '912 patented technology. Dkt. 1, ¶ 9. When the case was stayed, the memory modules Google employed that implemented the patent were ▮▮▮▮▮▮▮▮▮. Technology has advanced in the last 11 years, and these original products have changed. Consistent with this reality, Google agreed that Netlist is entitled to serve "Amended Infringement Contentions." The Court set a June 18, 2021 deadline for amendment. Dkt. 117. On May 19, 2021, Netlist served claim charts establishing that DDR4 memory modules that implement certain sections of the JEDEC standards for DDR4 infringe claim 16, which was unaltered during the reexamination. Ex. 7. On June 3, 2021, Netlist served claim charts establishing that DDR3 memory modules that implement certain JEDEC standards for DDR3 infringe 62 claims. Ex. 8.

Google is to file its opening brief on absolute and equitable intervening rights on July 16, 2021. Dkt. 117. Netlist is entitled to the discovery necessary to prepare to respond to a dispositive motion. FED. R. CIV. P. 26(b)(1). Google asserted during the meet and confer that Netlist should only be entitled to that discovery *after* Google files its motion, and then proposed delaying filing its intervening rights motion by a month. That turns due process on its head. An early request for summary judgment emphasizes the need for prompt and early discovery. And the Court has not limited discovery in any way in this case.

The Northern District has summarized a non-exhaustive list of factors relevant to equitable intervening rights: (1) whether the infringer made "substantial preparation" before the patent reissued; (2) whether the infringer continued manufacturing before reissue on advice of counsel; (3) whether there were existing orders or contracts; (4) whether non-

infringing goods can be manufactured from the inventory used to manufacture the infringing product and the cost of conversion; (5) whether there is a long period of sales and operations before the patent reissued from which no damages can be assessed; and (6) whether the infringer has made profits sufficient to recoup its investment. *Visto Corp. v. Sprogit Tech., Inc.*, 413 F. Supp. 2d 1073, 1090 (N.D. Cal. 2006). More generally, courts also hold that the issue of whether infringement is willful is directly relevant to equitable intervening rights. *Shockley v. Arcan*, 248 F.3d 1349, 1361 (Fed. Cir. 2001). Finally, the Federal Circuit is clear that simply because a claim is amended does not mean intervening rights applies. *Marine Polymer Techs. v. HemCon, Inc.*, 672 F.3d 1350, 1363–64 (Fed. Cir. 2012) (en banc).

Interrogatory No. 1 and RFP No. 1 seek design information, design history, and date of implementation information as to Memory Modules implemented from the issuance of the '912 patent (2009) to the issuance of the re-examination certificate, (2021) which are defined with reference to a specific set of features recited in the claims. Ex. 1 at 4–5; Ex. 2 at 4–5; Ex. 9 at 2. Google declined to produce a single document and refused to provide any information about the period before 2021 beyond the fact that it █████████████████████ ████████. This historical information is relevant for at least two reasons. First, the design relationship between products that were first used after the issuance of a re-examination certificate and the products that existed before this date go directly to the issue of, among other things, substantial preparations, and whether "a long period of sales and operations" before the patent reissued exists. Moreover, as to claim 16, for which intervening rights does not exist,[1] Google is claiming that the claim 16 infringement contention is untimely because before the stay Google was allegedly was using a product that was covered by claim 16, and on this basis Google intends to move to strike. Netlist is entitled to discovery on this allegation. Separately, given that there is clear Federal Circuit authority that intervening rights does not exist as to claim 16 there is no basis on which historical discovery as to the products accused of infringing this claim should not proceed. If a promised motion to strike and a facially unreasonable defense could stop discovery, cases would not progress in this district.

Interrogatory No. 2 and RFP No. 2 seek design information, design history, and date of implementation information as to Memory Modules implemented since the issuance of the re-examination certificate. This discovery is not just relevant to liability and damages. Google is claiming equitable intervening rights for modules sold after the reexamination certificate date; the design history of these memory modules is directly relevant to, among other things, determining if "substantial preparation" was made before the reexamination certificate issued. 35 U.S.C. § 252. The operation, not just the naming convention, of historical devices and current devices informs this inquiry.

Interrogatory No. 3 and RFPs 4 and 6 seek the factual basis for Google's intervening rights defense, and specifically includes claim 16. Google's response does nothing more than list the claims for which it asserts absolute intervening rights (without any explanation as to why it believes the amendments to those claims were substantive), allege that it is entitled to equitable intervening rights for all memory modules sold after this date, and state that "Google will address the specific accused memory modules and its specific substantial preparations in the upcoming briefing on intervening rights, after Netlist identifies the asserted claims and

---

[1] Claim 16 was converted from dependent to independent form without any changes. Any claim that Google has an intervening rights defense directed at this claim is contradicted by black letter Federal Circuit case law. *Marine Polymer Techs*, 672 F.3d at 1363-64.

accused products." Again, the idea that Netlist has to wait until Google's dispositive motion to first find out the factual basis for Google's defense is absurd. Intervening rights is a heavily factual inquiry. Likewise, Google's arbitrary declaration right before this letter was filed that it will decide what *Visto* factors are relevant to this case and will produce the information it thinks is relevant has it backwards. As the Federal Circuit makes clear, substantial preparation is only one factor that is weighed. *Shockley v. Arcan*, 248 F.3d 1349, 1361 (Fed. Cir. 2001) (unclean hands blocked intervening rights). The intervening rights statute gives the Court broad equitable discretion. If Google wants to raise the defense, it must accept the scope of discovery required. Interrogatory No. 3 is reasonable in scope.

Google claims that it needs more time to provide the required information. This is a new excuse raised for the first time. The PTAB affirmed the validity of the claims at issue in July 2018 and the Federal Circuit summarily affirmed on June 15, 2020. Three years is enough time to prepare a defense. Netlist thus requests that this Court order Google to fully supplement its responses to Netlist's Interrogatory No. 3, and RFPs Nos. 4 and 6, within seven days of the Court's order.

The discovery at issue is narrow.[2] At no point during the meet confer did Google identify any aspect which was unduly burdensome to collect. Google raises three primary arguments for why it is withholding relevant materials. First, it claims there was "agreement" between the parties to limit discovery. Before the CMC (on March 11) and shortly thereafter, previous counsel for Netlist and counsel for Google negotiated for Google to voluntarily produce certain information regarding its use of memory modules, with a look-back period, as part of "early discovery." There was no agreement that this early discovery meant Netlist would waive its rights for discovery under the Federal Rules. Netlist's previous counsel rejected any suggestion that there was an agreement not to seek formal discovery. Ex. 10. This is why Netlist requested and the court appointed a discovery magistrate—to protect its formal discovery rights. Moreover, over a month after the CMC, Google had still produced no information whatsoever. Netlist served formal discovery requests on April 19, 2021, so that Google could not simply continue to delay and run out the clock on Netlist's opportunity to seek discovery in advance of the dispositive motion practice. And lest there be an ambiguity about an "agreement," Google's interrogatory responses provided no information whatsoever on the designs it has been using before the issuance of the re-examination certificate despite this being expressly part of the informal early discovery the parties had discussed.

Second, Google claims it does not know the products at issue. Netlist has provided over 220 pages of detailed claim charts, making clear the specific memory module designs that are at issue in this case. Moreover, information on Google's product designs is not simply relevant to infringement, it is relevant to Google's intervening rights defense. For example, the benefits or savings Google obtained from the infringing products due to their design is relevant to whether Google recouped its investment.

Third, Google claims that claim 16 is not an asserted claim. The local rules specify that the time to identify asserted claims is in infringement contentions. P.L.R. 3-1. The Court

---

[2] Google engages in puffery when discussing Netlist's Rule 30(b)(6) notice. The cover email makes clear that it was only seeking depositions in the short term on the topics that go to infringement contentions and intervening rights. Ex. 3 at 1.

expressly authorized the filing of amended contentions.[3]  Moreover, claim 16 covers DDR4 memory modules.  Netlist could not have asserted against DDR4 memory modules before the case was stayed because the JEDEC standard for DDR4 was not released until after the stay.

**Google's Statement[4]**

The parties agree that the scope of relevant discovery at this stage should not extend beyond Google's defense of intervening rights.  *See supra* at 2.  Intervening rights arise from Netlist amending the '912 Patent's claims during a ten-year reexamination.  Google is absolved from liability for infringing those claims if the products at issue were made or used before the reexamination ("absolute intervening rights") or, under the Court's discretion, even if the products were made or used after reexamination, provided Google had made substantial preparations for the allegedly infringing activities ("equitable intervening rights").

Because intervening rights will dictate which, if any, claims and products are at issue in this litigation, the parties agreed to early briefing on the issue.  *See* D.I. 115 ("The parties agree that it would be an efficient first step to resolve the question of what intervening rights exist with respect to the claims of the '912 patent, if any.").  The Court recognized the reasonableness of the parties' staging, adopting a schedule with Netlist first serving amended infringement contentions and then addressing intervening rights.  *See* D.I. 117.  The parties agreed that "targeted" discovery sufficient to develop a factual record on intervening rights was relevant, but explained that they were working towards agreement on the exact scope of that discovery.  *See* Dkt. 115 at 3 ("Netlist submits that targeted discovery, beginning now, regarding the nature of the memory modules currently used by Google is necessary and would be beneficial."); *id*. at 4 ("Google is open to limited discovery in the form of a targeted interrogatory directed to the identification of memory module classes ... and generations ... Google currently uses.").  The agreement that discovery would be "targeted" to Google's current memory module usage, which is a predicate for the issue of intervening rights, is consistent with the Court's staged schedule because broader discovery related to infringement and damages for products that may not even be in the case would be wasteful and inefficient.

Google has not—and is not—withholding discovery on the issue of intervening rights.  When the parties submitted their joint case management statement—and in the eleven years prior—the only products Netlist had accused of infringement were Fully Buffered Dual Inline Memory Modules ("FBDIMMs").  Google committed to provide information about its use of FBDIMMs and did provide that information in Responses to Netlist's First Set of Interrogatories, which explained ███████████████████████████████.  Perhaps recognizing that FBDIMMs are subject to absolute intervening rights, Netlist served supplemental infringement contentions on May 19 and June 3 that, for the first time, accused

---

[3] This renders *Capella Photonics*, upon which Google relies below, inapposite.  There, the court had not granted leave to file amended infringement contentions.  In addition, unlike Google, the defendant in *Capella* prevailed before the PTO and on appeal, and thus had a reasonable expectation that "litigation would be near completion."  2019 WL 2359096, at *5.

[4] Google did not refuse to meet and confer and can provide details to the Court, if requested. Google will focus instead on the merits of Netlist's submission.

additional memory modules of infringing claims of the '912 Patent.[5]

As detailed below, Google is committed to providing information relevant to the issue of intervening rights for the newly-accused products as well. But Netlist cannot expect Google to investigate, collect, review, and produce that information within a matter of days.[6] Netlist also seeks information beyond what is necessary to resolve the issue of intervening rights—*e.g.*, information concerning alleged infringement and damages—and it would be inconsistent with the Court's scheduling order to require Google to provide that information at this stage.

Interrogatory No. 1 and RFP No. 1 seek information concerning each memory module Google used between November 17, 2008, and February 7, 2021. Google agrees that certain information called for in these requests is relevant to the issue of intervening rights, specifically an identification of the type and category of each memory module and the dates of commercial use for the memory modules Google currently uses. That information will allow the Court to determine which memory modules are subject to absolute intervening rights. *See* pre-AIA 35 U.S.C. §§ 316(b), 252. However, broader information on the "design and operation of all memory and/or storage devices and circuit and/or logic elements on the Memory Module," and related information, is irrelevant to intervening rights for the accused modules Google currently purchases, particularly given that ██████████████████ █████████████████████████. That information goes to infringement[7] and will not be relevant at least until the Court resolves intervening rights. Netlist fails to provide

---

[5] One of those charts, making up most of the 220 pages Netlist mentions, accuses a memory module type that, to the best of Google's current knowledge, Google does not use. It is unclear how Netlist has a Rule 11 basis to allege infringement based on this module.

[6] Google is not trying to "turn[] due process on its head" as Netlist argues above. Google has no objection if Netlist wishes to take intervening-rights discovery before receiving Google's opening brief on the issue. However, given that Netlist has now added products and expanded discovery, the Court's original briefing schedule, which was entered when only one product had been accused and when the anticipated scope of early targeted discovery was much narrower, will need to be adjusted. Google intends to file a motion to modify the procedural schedule to allow Google time to collect and produce discovery responsive to Netlist's requests, including on the products accused for the first time on May 19 and June 3.

[7] Netlist's argument regarding claim 16 does not somehow render infringement discovery relevant at this stage. The parties vigorously dispute whether claim 16—which was amended during reexamination and identified as such on the reexamination certificate—is subject to intervening rights. The Court will resolve that dispute after full briefing as contemplated in the procedural schedule, and Netlist never asserted at the CMC that claim 16 should be treated differently or be exempt from this briefing. It is not an issue to be resolved as part of the instant discovery dispute. Thus, like the other asserted claims, infringement discovery for claim 16 will only be relevant if the Court determines it is not subject to intervening rights. Additionally, Google has notified Netlist that it will move to strike any assertion of claim 16 because Netlist did not properly seek to add it, and its addition after reexamination prejudices Google and would render the court's stay effectively meaningless. *See Capella Photonics, Inc. v. Cisco Sys. Inc.*, 2019 WL 2359096, at *5 (N.D. Cal. 2019). This, too, is an issue the Court will resolve separately from the instant discovery. And Netlist's attempt to distinguish *Capella* fails because Google succeeded in its reexamination and every claim Netlist asserted against Google was either canceled or amended.

any explanation of why, for example, the internal design and operation of the products or physical samples of modules (RFP No. 4) are relevant to intervening rights.[8]

Interrogatory No. 2 and RFP No. 2 seek information concerning each memory module Google used between February 8, 2021, and the present.  Again, Google agrees that information concerning the type and category of memory modules and their dates of commercial use is relevant at this stage because it will allow the Court to determine which memory modules are subject to equitable intervening rights.  *See* pre-AIA 35 U.S.C. §§ 316(b), 252.  Broader information on the design and operation of those modules, and physical samples (*see* RFP No. 5), go to infringement, which is not relevant at this stage.

Interrogatory No. 3 seeks the "full factual and legal basis" for Google's intervening rights defense, "including separately claim 16."  Google objected to this interrogatory as overly broad and premature because Google will provide this information with its opening brief on intervening rights.  As a compromise, however, Google will supplement its response to Interrogatory No. 3 before its opening intervening rights brief to identify information about its "substantial preparation" for the accused products it purchased and used after issuance of the reexamination certificate, and will produce corresponding relevant documents (in response to RFP No. 6).  This will allow the Court to resolve the issue of equitable intervening rights. While Google's investigation and preparation are ongoing, Google anticipates providing the following categories of information, based on the *Visto* factors that apply here: Google's orders for the accused memory modules before the reexamination certificate issued; Google's investment in continuing to use the accused memory modules after the reexamination certificate issued; and Google's expected need to replace the accused memory modules.

Interrogatory No. 4 (and related RFP No. 3) seeks "all legal advice you have received regarding the infringement and patentability of the claims of the '912 patent (including previous versions of the claims, and proposed amendments of the claims) from the time of the initiation of any reexamination proceeding on the patent through the issuance of the reexamination certificate."  Netlist does not explain why this request—which indisputably seeks privileged information and, on its face, relates to the issues of "infringement" and "patentability"—is relevant to intervening rights. *See supra* at 2.  At most, whether an accused infringer continued manufacturing products on the advice of counsel is one factor a court may consider in evaluating evidence of substantial preparation for equitable intervening rights. *See Visto*, 413 F. Supp. 2d at 1090.  That is no basis for Netlist to request "all legal advice" Google has received about the '912 Patent.

Accordingly, Google respectfully requests that the Magistrate Judge order discovery limited to intervening rights consistent with that which Google has committed to provide.  To the extent Netlist is seeking discovery beyond the issue of intervening rights—including discovery related to infringement and damages—Google requests that the Magistrate Judge deem that information not relevant until Judge Armstrong has resolved the scope of

---

[8] After receiving Google's draft of this letter, Netlist revised its statement to argue that the "design relationship" between old and new products is relevant to equitable intervening rights.  But Netlist cites no authority showing the "design relationship" is relevant to any *Visto* factor. As discussed below, Google has committed to provide discovery consistent with the *Visto* factors applicable to this case.

intervening rights and the asserted claims.

Sincerely,

Jason G. Sheasby of               Doris Johnson Hines
Irell & Manella LLP               Finnegan, Henderson, Farabow, Garrett & Dunner, LLP

## <u>DECLARATION OF CONSENT</u>

Pursuant to General Order No. 45, Section X(B) regarding signatures, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Doris Johnson Hines.

Dated: June 10, 2021

**IRELL & MANELLA LLP**

BY: <u>/s/ *Jason G. Sheasby*</u>
JASON G. SHEASBY
*Attorneys for Plaintiff*
NETLIST, INC.
