QUINN EMANUEL URQUHART & SULLIVAN, LLP

David Perlson (CA Bar No. 209502)
davidperlson@quinnemanuel.com
Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jared Newton (admitted *pro hac vice*)
jarednewton@quinnemanuel.com
Sandy Shen (admitted *pro hac vice*)
sandyshen@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Catlin Williams (CA Bar No. 336464)
catwilliams@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| NETLIST, INC., | Case No. 4:09-CV-05718-SBA |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S NEW ASSERTION OF CLAIM 16 AND NEW DATES FOR PRIORITY AND CONCEPTION THAT WERE NOT IN ITS ORIGINAL PATENT LOCAL RULE 3-1 DISCLOSURES** |
| v. | |
| GOOGLE LLC, | |
| Defendant. | |

**JUDGE**: Hon. Saundra Brown Armstrong
**HEARING DATE**: September 8, 2021
**TIME**: 2:00 PM

**REDACTED FOR PUBLIC FILING**

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE that on September 8, 2021, before the Honorable Saundra Brown Armstrong, Defendant Google LLC ("Google") shall and hereby does move to strike Plaintiff Netlist, Inc. ("Netlist")'s new assertion of claim 16 and priority and conception dates that were not included in its original Patent Local Rule 3-1 disclosures.

Defendant's Motion is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities; the supporting declaration of Jonathan Tse; and accompanying exhibits; all matters of which the Court may take judicial notice; other pleadings on file in this action; and other written or oral argument that Defendant may present to the Court.

# RELIEF REQUESTED

Defendant respectfully seeks an order striking (1) newly asserted claim 16 from Netlist's Patent Local Rule 3-1 Disclosure of Asserted Claims and Infringement Contentions, and (2) Netlist's reliance on new priority and conception dates for the asserted claims of the '912 Patent.

# CERTIFICATION

Pursuant to Paragraph 4 of the Court's Standing Order, counsel for Google certifies that it met and conferred with counsel for Netlist in a good-faith effort to resolve the issues raised in this motion.  The parties were able to resolve certain issues that Google has not included in the motion. However, the parties were not able to reach agreement on Netlist's new assertion of claim 16 and new priority and conception dates.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND .......................................2

III.    LEGAL STANDARD ........................................................................................4

IV.     ARGUMENT......................................................................................................5

        A.      The Court Should Strike Netlist's New Assertion of Claim 16 ..............5

                1.      Google is Unduly Prejudiced by Netlist's Decision to Assert Claim 16 for the First Time After Issuance of the *Inter Partes* Re-examination Certificate ...............................................................5

                2.      Netlist Was Not Diligent In Asserting Claim 16.........................9

        B.      The Court Should Strike Netlist's New Priority and Conception Dates................11

                1.      Netlist's New Priority and Conception Dates Prejudice Google ...............11

                2.      Netlist Failed To Diligently Assert New Priority and Conception Dates..................................12

                3.      Netlist's New Conception Date Lacks the Requisite Specificity...............13

        C.      The Court Did Not Authorize Netlist to Assert A New Claim or New Priority and Conception Dates ...........................................................14

V.      CONCLUSION...................................................................................................15

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### Cases

4

*Acer, Inc. v. Technology Properties Ltd.*,
    No. 5:08–cv–00877 JF/HRL, 2010 WL 3618687 (N.D. Cal. 2010)...............................11

5

*Advanced Micro Devices, Inc. v. LG Elecs., Inc.*,
    No. 14-cv-01012, 2017 WL 732896 (N.D. Cal. Feb. 24, 2017).......................................5

6

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
    1 F.3d 1214 (Fed. Cir. 1993).........................................................................................6

7

8

*Capella Photonics, Inc. v. Cisco Systems, Inc.*,
    No. 14-cv-03348-EMC, 2019 WL 2359096 (N.D. Cal. June 4, 2019)....................6, 7, 9

9

*Catch a Wave Technologies, Inc. v. Sirius XM Radio, Inc.*,
    2014 WL 186405 (N.D. Cal. 2014) ............................................................................11

10

11

*Gamevice, Inc. v. Nintendo Co., Ltd.*,
    Case No. 18-cv-01942-RS, 2019 WL 3533078 (N.D. Cal. Aug. 2, 2019)......................13

12

*Harvatek Corp. v. Cree, Inc.*,
    No. 14-cv-05353-WHA, 2015 WL 4396379 (N.D. Cal. Jul. 17, 2015)....................13, 14

13

14

*IXI Mobile (R&D) Ltd. v. Samsung Elecs. Co Ltd.*,
    2019 WL 5102570, *2-4 (N.D. Cal. 2019).....................................................................8

15

*Koninklijke Philips N.V. v. Acer Inc.*,
    No. 18-cv-01885-HSG, 2019 WL 652868 (N.D. Cal. Feb. 15, 2019).........................4, 9

16

17

*Linksmart Wireless Technology, LLC v. Caesars Entertainment Corporation*,
    2021 WL 201775 (D. Nev. 2021) ...............................................................................11

18

*Marine Polymer Techs., Inc. v. HemCon, Inc.*,
    672 F.3d 1350 (Fed. Cir. 2012) ...................................................................................5

19

20

*MyGo LLC v. Mission Beach Indus., LLC*,
    2018 WL 3438650 (S.D. Cal Jul. 17, 2018) .............................................................14, 15

21

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ....................................................................4, 9, 11, 12

22

23

*OpenTV, Inc. v. Apple Inc.*,
    No. 15-cv-02008-EJD-NC, 2016 WL 3196643 (N.D. Cal. Jun. 9, 2016)......................4, 8

24

*Patlex Corp. v. Mossinghoff*,
    758 F.2d 594 (Fed. Cir. 1985).......................................................................................5

25

26

*Samsung Elecs. Amer. v. Prisua Engineering*,
    948 F.3d 1342 (Fed. Cir. 2020) ...................................................................................6

27

28

*Thought, Inc. v. Oracle Corp.*,
    No. 12-cv-5601-WHO, 2015 WL 5834064 (N.D. Cal. Oct. 7, 2015) ............................ 14

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*,
    278 F.R.D. 505 (N.D. Cal. 2011) ..................................................................... 9

*WesternGeco LLC v. ION Geophysical Corp.*,
    889 F.3d 1308 (Fed. Cir. 2018) ...................................................................... 9

**<u>Statutory Authorities</u>**

35 U.S.C. § 252 ...................................................................................................... 5, 6

35 U.S.C. § 307(b) ..................................................................................................... 5

35 U.S.C. § 315(c) ................................................................................................... 12

35 U.S.C. § 315(b) .................................................................................................... 7

**<u>Rules and Regulations</u>**

Local Rule 3-1 ......................................................................................... 1, 2, 3, 13, 14

Local Rule 3-6 ............................................................................................... 4, 15

<u>**MEMORANDUM OF POINTS & AUTHORITIES**</u>

**I.      INTRODUCTION**

Netlist filed this case more than a decade ago, on December 4, 2009.  Following discovery into Google's accused products, Netlist served its Patent Local Rule 3-1 Disclosure of Asserted Claims and Infringement Contentions on April 8, 2010, asserting thirty-four claims of U.S. Patent No. 7,619,912.  After receiving those contentions, Google filed a request for *inter partes* re-examination that challenged each and every claim Netlist had asserted.  The parties then filed a stipulation to stay the case pending the outcome of the re-examination proceedings because "the requested stay would further interests of judicial economy and conservation of the parties' and the Court's resources."  The Court agreed that good cause had been shown and ordered a stay pending exhaustion of all appeals.

During the next ten years, the case was indeed streamlined and the parties' and Court's resources conserved.  The re-examination proceedings forced Netlist to cancel or amend each of the originally asserted claims, giving rise to the defense of intervening rights that has drastically reduced the scope of Google's alleged infringement liability.

Now, however, Netlist seeks to restart the litigation from scratch by asserting a brand new claim of the '912 Patent—claim 16—that Netlist did not include in its original disclosure of asserted claims, and that Google, therefore, did not include among the claims it challenged in re-examination.  Allowing Netlist to assert claim 16 now would be highly prejudicial to Google because it would render the re-examination proceeding and the Court's stay meaningless.  Netlist has also failed to show diligence in its assertion of claim 16, which is directed to the same memory technology that Netlist accused in its original contentions.  Netlist could have asserted the claim more than a decade ago, but simply chose not to.

Having had its infringement case significantly reduced through re-examination, Netlist's attempt to assert a new claim at this stage of the litigation amounts to nothing more than an effort to start over and impose burdensome discovery and litigation on Google and the Court.  Indeed, it is a complete reversal of Netlist's prior position that re-examination would "further interests of judicial economy and conservation of the parties' and the Court's resources."  The Local Rules

1   and the Court's inherent authority are designed to prevent this type of gamesmanship.  Google

2   requests that the Court exercise that authority and strike Netlist's new assertion of claim 16.

3          Google further requests that the Court strike Netlist's assertion of a brand new priority date

4   and conception date for the asserted claims of the '912 Patent.  When Netlist served its Patent

5   Local Rule 3-1 disclosures on April 8, 2010, it was required to identify and corroborate any earlier

6   priority and conception dates to which the asserted claims are allegedly entitled.  The only date

7   Netlist identified was July 1, 2005, which corresponds to the parent application of the '912 Patent.

8   After the stay, however, Netlist decided to identify a new priority date of ███████████ and a new

9   conception date of "██████████."  The Court should strike those new dates because Netlist was not

10  diligent in asserting them.  As the patentee, Netlist should have known the priority and conception

11  date of the asserted claims at the outset of the case, and, at a minimum, by the time it served its

12  Patent Local Rule 3-1 disclosures.  Netlist has no excuse for waiting years to identify those dates

13  in its disclosures, and it would be prejudicial to Google if Netlist is permitted to rely on the dates

14  now to avoid prior art that came to light during re-examination of the '912 Patent.

15  **II.     FACTUAL AND PROCEDURAL BACKGROUND**

16         On December 4, 2009, Netlist filed a Complaint for Patent Infringement of U.S. Patent No.

17  7,619,912, titled "Memory Module Decoder."  *See* Dkt. 1.  Over the next four months, Netlist

18  conducted discovery into Google's use of memory module products, culminating in Netlist serving

19  its Patent Local Rule 3-1 and 3-2 Disclosure of Asserted Claims and Infringement Contentions on

20  April 8, 2010.  *See* Ex. 1.[1]  The disclosure identified claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29,

21  31-34, 36-39, 41-45, and 50 of the '912 Patent, and asserted these claims against certain memory

22  modules known as 4-Rank DDR2 FBDIMMs.  *Id.* at 1.[2]  Claim 16 of the '912 Patent was ***not***

23

24  [1]  Exhibit numbers refer to exhibits attached to the accompanying declaration of Jonathan Tse

25  ("Tse Decl.").  Unless noted otherwise, page cites refer to the native page numbers of the exhibits.

    [2]  The term "DDR2" refers to the second generation of Double Data Rate technology, which
26  describes the manner in which memory modules transmit data relative to a clock signal.  DDR
    technology is developed by the Joint Electron Device Engineering Council ("JEDEC"), which is
27  an industry standard-setting organization of which Google and Netlist are members.  The term
    "FBDIMM" refers to Fully Buffered Dual Inline Memory Modules, which is the class of memory
28  modules Netlist accused of infringement.

asserted.  *Id*.  With respect to Patent Local Rule 3-1(f), Netlist identified the priority date for the asserted claims as July 1, 2005.  *Id*. at 5.

On October 21, 2020, Google filed a request for *inter partes* re-examination of the '912 Patent, challenging each of the thirty-four claims that Netlist had asserted.  Dkt. 102 at 3.  In view of Google's challenge, the parties stipulated to a stay of this case on December 27, 2010, agreeing that "the requested stay would further interests of judicial economy and conservation of the parties' and the Court's resources."  Dkt. 66.  The Court adopted the stipulation and ordered the case stayed on January 26, 2011.  Dkt. 68.

The U.S. Patent and Trademark Office ("PTO") formally granted Google's request and ordered re-examination of the asserted claims on January 18, 2011.  Dkt. 102 at 3.  On February 25, 2011, the PTO *sua sponte* consolidated Google's re-examination proceeding with proceedings that had been initiated by Inphi Corporation ("Inphi") and Smart Modular ("Smart") on April 20 and October 20, 2011, respectively.  *Id*.; Ex. 6.

The re-examination proceedings and resulting appeal lasted more than ten years, during which time Netlist was forced to cancel or amend each of the thirty-four claims it had asserted against Google.  Dkt. 115 at 2-3.  The PTO issued a re-examination certificate on February 8, 2021, reflecting the claims that had been canceled and amended.  *Id*.  On February 16, the parties jointly notified this Court that the reexamination proceedings had concluded.  *See* Dkt. 110.  The Court then reopened the case and set a Case Management Conference ("CMC") for March 11th.  *See* Dkt. 111.

The parties' Joint CMC Statement recognized that the re-examination proceeding gave rise to the defense of intervening rights, which would potentially "narrow the issues" before the Court.  Dkt. 115 at 3.  Thus, the parties proposed—and the Court ordered—an early briefing schedule on the defense of intervening rights.  *Id*.; Dkt. 116.  Under the parties' proposal, Netlist would take discovery "regarding the nature of the memory modules currently used by Google" and then submit amended infringement contentions to address those modules.  Dkt. 115 at 3-5.  Importantly, however, the parties never agreed—or even discussed—that Netlist would expand its identification of asserted claims under Patent Local Rule 3-1(a) or priority date under Patent Local Rule 3-1(f).

1   *Id.* Indeed, from the time the parties submitted a joint statement regarding the status of the re-

2   examination proceeding, through the Court's lifting of the stay and the CMC, Netlist never

3   suggested that it intended to assert new claims or priority and conception dates. *See, e.g.*, Dkt.

4   Nos. 102, 110, 115, 116.

5          It was not until Netlist served its amended infringement contentions—which occurred

6   between May 19th and June 18th—that Netlist attempted to assert claim 16 for the first time in the

7   twelve-year history of this case. Ex. 2. Furthermore, Netlist has argued that claim 16 is not

8   subject to the defense of intervening rights, and thus that litigation of the claim should start from

9   scratch.[3] Dkt. 135 at 2. Netlist also asserted a new priority date for the asserted claims of ██████

10  ██████ and a new conception date of "████████," both of which are more than a year before the

11  priority date identified in Netlist's original disclosures. Ex. 2 at 6.

12  **III.    LEGAL STANDARD**

13         The Patent Local Rules "require parties to state early in the litigation and with specificity

14  their contentions with respect to infringement and invalidity." *O2 Micro Int'l, Ltd. v. Monolithic*

15  *Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006). The purpose of the Patent Local Rules "is

16  to ensure early crystallization of the parties' theories, and specifically, to place the burden on the

17  plaintiff to quickly decide on and disclose the contours of its case." *OpenTV, Inc. v. Apple Inc.*,

18  No. 15-cv-02008-EJD-NC, 2016 WL 3196643, at *3 (N.D. Cal. Jun. 9, 2016) (granting motion to

19  strike new conception date). Thus, amendments to a party's contentions require a showing of

20  good cause. *See* Patent L.R. 3-6. In determining whether good cause exists, the Court considers

21  whether the non-moving party would suffer prejudice if leave to amend were granted, and whether

22  the moving party was diligent in moving to amend. *See Koninklijke Philips N.V. v. Acer Inc.*, No.

23  18-cv-01885-HSG, 2019 WL 652868, at *1 (N.D. Cal. Feb. 15, 2019). Lack of prejudice and

24  diligence are independent requirements; if one or the other is missing, then leave to amend should

25

26

27  ─────────────
    [3] The parties dispute whether claim 16 is subject to intervening rights—an issue that is subject to
28  Google's forthcoming motion for summary judgment. The Court does not need to resolve that
    dispute for purposes of this motion.

CASE NO. 4:09-CV-05718-SBA
                                                 DEFENDANT'S MOTION TO STRIKE

1   be denied. *See Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, No. 14-cv-01012, 2017 WL

2   732896, at *2 (N.D. Cal. Feb. 24, 2017).

3   **IV.    ARGUMENT**

4        **A.    The Court Should Strike Netlist's New Assertion of Claim 16**

5             **1.    Google is Unduly Prejudiced by Netlist's Decision to Assert Claim 16**

6                   **for the First Time After Issuance of the *Inter Partes* Re-examination Certificate**

7        Allowing Netlist to assert claim 16 of the '912 Patent at this stage of the litigation would

8   be highly prejudicial to Google. Google relied on Netlist's original identification of asserted

9   claims in deciding which claims to challenge through *inter partes* re-examination. Ex. 4 at 1.

10   Netlist's original identification of claims did ***not*** include claim 16. Ex. 1 at 1. Thus, Google had

11   no reason to include that claim in its re-examination request. Instead, Google challenged each of

12   the thirty-four claims Netlist ***did*** assert. Ex. 4 at 1. Google then invested time and resources—

13   over the course of ten years—to invalidate those original claims and force Netlist to cancel or

14   narrow them. *See generally* Dkt. 102.

15        Google reasonably expected that its efforts would narrow the scope of this case while

16   avoiding burdensome discovery and litigation before the Court. Indeed, Netlist ***agreed*** with this

17   point and told the Court in the parties' joint stipulation that the litigation should be stayed pending

18   the outcome of the *inter partes* re-examination, because doing so "would further interests of

19   judicial economy and conservation of the parties' and the Court's resources." Dkt. 66. That is, of

20   course, the very purpose of *inter partes* re-examination—to serve as an efficient and less-

21   expensive alternative to district-court litigation. *See Patlex Corp. v. Mossinghoff*, 758 F.2d 594,

22   602 (Fed. Cir. 1985).

23        And here, the re-examination proceeding ***did*** result in significant narrowing of the

24   litigation. Netlist was forced to cancel or amend all of the claims it originally asserted, which

25   means those claims are subject to the defense of intervening rights. *See Marine Polymer Techs.,*

26   *Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1362 (Fed. Cir. 2012) (*en banc*) ("'[A]mended or new'

27   claims incorporated into a patent during reexamination 'will have the same effect as that specified

28   in section 252,' *i.e.*, will be susceptible to intervening rights.") (quoting 35 U.S.C. § 307(b)). And

1   critically, all of the products Netlist has accused of infringing the originally asserted—but now

2   amended—claims were purchased or used by Google prior to the date of the re-examination

3   certificate.  *See* Ex. 3.  Thus, those products are subject to "absolute" intervening rights and

4   insulated from infringement liability.  *See BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1

5   F.3d 1214, 1220 (Fed. Cir. 1993) (explaining that § 252 "provides an accused infringer with the

6   absolute right to use or sell a product that was made, used, or purchased before the grant of the

7   reissue patent…").  Simply put, if Netlist is limited to the originally asserted claims of the '912

8   Patent, then there is nothing left to litigate in this case and the *inter partes* re-examination will

9   have fulfilled the purpose of judicial economy and conservation of resources.

10         If Netlist is permitted to assert claim 16, however, the *inter partes* re-examination and

11  resulting stay of the litigation will be rendered meaningless.  Netlist has argued that claim 16 is

12  not subject to intervening rights, and Netlist has attempted to assert claim 16 against products that

13  Google continues to use today.  *See* Ex. 2.  Thus, under Netlist's view of the case, litigation will

14  start from scratch with full discovery, motion practice, and trial—all as if the *inter partes* re-

15  examination had never happened.  This is a complete reversal from Netlist's prior position that

16  staying the litigation for the pendency of *inter partes* re-examination "would further interests of

17  judicial economy and conservation of the parties' and the Court's resources."  Dkt. 66.

18         And the result would be significant prejudice to a defendant like Google—a point that

19  Judge Chen emphasized in *Capella Photonics*.  In that case, one of the defendants had filed

20  petitions for *inter partes* review[4] against each of the claims that the plaintiff had included in its

21  infringement contentions.  *See Capella Photonics, Inc. v. Cisco Systems, Inc.*, No. 14-cv-03348-

22  EMC, 2019 WL 2359096, at *1 (N.D. Cal. June 4, 2019).  The case was then stayed for several

23  years pending the outcome of the *inter partes* review proceeding and related appeal, which

24  resulted in cancellation of all the asserted claims.  *Id.*  After the stay was lifted, the plaintiff moved

25  to amend its infringement contentions and assert new claims that were not originally asserted and

26

27  _____

    [4]  *Inter partes* review is the successor of *inter partes* re-examination and likewise designed to
28  serve as a more-efficient alternative to litigation.  *See Samsung Elecs. Amer. v. Prisua Eng'g*, 948
    F.3d 1342, 1345 (Fed. Cir. 2020); *see also* H.R. Rep. No. 112-98, pt. 1 at 48 (2011).

1   therefore not subject to the defendant's petition for *inter partes* review. *Id.* at *2 ("These claims

2   were not previously asserted in this case and were not before the PTAB in the IPR proceedings.").

3   Judge Chen denied the plaintiff's motion to amend, finding a lack of diligence by the plaintiff and

4   significant prejudice to the defendants. *Id.* at *4-6.

5          With respect to prejudice, Judge Chen explained that "Defendants have litigated this case

6   for many years through the IPR proceedings and appeals, and they reasonably believed that upon

7   prevailing before the PTO and an appeal, this litigation would be near completion." *Id.* at *5.  He

8   then reasoned that, "If Plaintiff were allowed to amend in new claims, it would effectively start

9   this case anew on the amended infringement contentions." *Id.*  Thus, "Defendants have spent

10  considerable time and resources litigating this case and it would be highly prejudicial to force

11  Defendants to engage piecemeal in a whole new round of litigation." *Id.*

12         Each of those considerations applies to this case.  Google spent ten years challenging the

13  asserted claims of the '912 Patent through *inter partes* re-examination and appeal. *See* Dkt. 102.

14  Google reasonably believed that, following the re-examination, the litigation would be near

15  completion—a belief that was validated by the fact that the originally asserted claims were

16  canceled or amended and thus subject to absolute intervening rights.  If Netlist is allowed to add

17  claim 16 at this stage, it would effectively start the case anew, requiring substantial discovery,

18  briefing, claim construction proceedings, and trial.  It would be highly prejudicial to force Google

19  to engage piecemeal in a whole new round of litigation with respect to a new claim that Google

20  had no reason to challenge through *inter partes* re-examination because Netlist had not asserted it.

21  *See Capella Photonics*, 2019 WL 2359096, at *6 ("Defendants are entitled to the certainty and

22  finality which they sought and obtained from the IPR proceedings.").  And the prejudice to Google

23  would be compounded by the fact that Google cannot now challenge claim 16 through *inter partes*

24  re-examination, which no longer exists, or *inter partes* review, which requires challengers to file

25  their petitions within one year of being served with a complaint alleging infringement of the

26  patent. *See* 35 U.S.C. § 315(b).

27         Allowing Netlist to add claim 16 at this stage of the litigation would also set a troubling

28  precedent and encourage patent plaintiffs to engage in gamesmanship.  A plaintiff could assert one

set of claims at the outset of a case, wait to see if the claims are invalidated through *inter partes* review or another post-grant proceeding, and then assert one or more backup claims if so.  This would put plaintiffs at an unfair advantage relative to defendants and would be contrary to the purpose of the Patent Local Rules, which is to put the defendant on notice of the plaintiff's allegations early in the case and allow for orderly resolution of patent disputes.  *See OpenTV*, 2016 WL 3196643, at *3 ("[T]he spirit of the patent local rules is to … place the burden on the plaintiff to quickly decide on and disclose the contours of its case."); *see also IXI Mobile (R&D) Ltd. v. Samsung Elecs. Co Ltd*., 2019 WL 5102570, *2-4 (N.D. Cal. 2019) ("[P]ermitting Plaintiffs to expand their claims at this juncture … would allow Plaintiffs to take advantage of the 'shifting sands approach' that the Patent Local Rules were designed to deter.").

Finally, Google anticipates that Netlist will argue there is no prejudice because the PTO *sua sponte* merged Google's re-examination request with an independent request filed by non-party Inphi Corporation, which challenged all of the claims of the '912 Patent, including claim 16.  *See* Dkt. 102 at 3.  Netlist's argument appears to be that Google effectively stepped into Inphi's shoes when the cases were merged, and thus had the ability to challenge claim 16.  *Id*.  That argument is meritless.  First, as noted above, the merger was ordered *sua sponte* by the PTO for purposes of efficiency; Google did not request the merger in order to somehow influence or control Inphi's challenge.  *See* Ex. 4 at 1; Ex. 6 at 3.  Second, Google had no reason to influence Inphi's challenge of claim 16 because Netlist had not asserted that claim against Google.  *See* Ex. 1 at 1.  That is plainly apparent from the record of the re-examination history, which shows that Google did not present arguments against claim 16—or any other claim that Netlist had not asserted against Google.  *See, e.g.*, Ex. 7 at 2-3.  It is also apparent from the fact that, when Google filed its re-examination request six months ***after*** Inphi's request, it did not include claim 16 among the challenged claims.  Ex. 4 at 1.  It makes no sense that Google would somehow try to influence Inphi's challenge to claim 16, but then decide not to challenge that claim in its own request.  Finally, consistent with PTO practice, the *sua sponte* merger order limited Google to appealing

1  only the claims which it had challenged in its original request.  *See* Ex. 6 at 4.  Thus, Google could

2  not have influenced Inphi's challenge of claim 16 even if it wanted to.  *Id.*[5]

3                                      * * *

4        Accordingly, Netlist's assertion of claim 16 would result in significant prejudice to

5  Google.  That prejudice alone warrants striking claim 16 from the litigation.  *See Koninklijke*

6  *Philips*, 2019 WL 652868, at *1.

7               **2.      Netlist Was Not Diligent In Asserting Claim 16**

8        Even if there was no prejudice to Google, Netlist's failure to exercise diligence in asserting

9  claim 16 would be an independent basis to strike the claim.  *See O2 Micro*, 467 F.3d at 1368.

10  Courts have found a lack of diligence where a plaintiff asserts claims it could have prosecuted at

11  the outset of a case.  *See Capella Photonics*, 2019 WL 2359096, at *3 ("Nothing prevented

12  Plaintiff from prosecuting these claims at the outset."); *Trans Video Elecs., Ltd. v. Sony Elecs.,*

13  *Inc.*, 278 F.R.D. 505, 508 (N.D. Cal. 2011), *aff'd*, 475 F. App'x 334 (Fed. Cir. 2012).

14        Netlist's excuse for waiting to assert claim 16 appears to be that the claim purportedly

15  covers *only* DDR4 technology, a later generation of memory that was released in 2014.  *See* Dkt.

16  135 at 3-4.[6]  That argument is contradicted by the disclosure of the '912 Patent, testimony from

17  one of its inventors, and Netlist's own disclosures to JEDEC.

18        The '912 Patent was filed as a continuation of U.S. Application No. 11/173,175 (the "'175

19  Application"), which issued as U.S. Patent No. 7,289,386 (the "'386 Patent").  *See* '912 Patent.

20  The '175 Application was filed on July 1, 2005, during which time DDR2 was the prevalent

21  generation of memory technology.  Consequently, the specification of both the '386 Patent and

22  '912 Patent are directed to improvements to DDR2 technology.  *See, e.g.*, *id.* at 22:9-12 ("Certain

23

24  [5]  The fact that Google shared a common interest with Inphi—who had also been sued by
25  Netlist—does not show that Google somehow controlled Inphi's challenge of claim 16, especially
    where Google had not been accused of infringing that claim.  *See WesternGeco LLC v. ION*
26  *Geophys. Corp.*, 889 F.3d 1308, 1321 (Fed. Cir. 2018).

27  [6]  As discussed above, *see supra* n.2, the acronym DDR refers to Double Data Rate, which is a
    technology that governs how memory modules transmit data relative to a clock signal.  The
28  number listed after DDR—*e.g.*, DDR2, DDR3, DDR4, etc.—refers to a specific generation of the
    technology.

1    embodiments advantageously allow the use of lower-cost readily-available 512-Mb DDR-2

2    SDRAM devices to replace more expensive 1-Gb DDR-2 SDRAM devices."). The specification

3    says nothing about DDR4 technology released nine years after the patent was filed. *See generally*

4    *id*. Thus, it undercuts any argument from Netlist that the claims of the patent—and claim 16 in

5    particular—are somehow directed *only* to DDR4 and do not cover DDR2.

6         Testimony from named inventor Jeffrey Solomon ████████████████████████████

7    ████████████████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████████████████████

12   ██████████████████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████████████████

14   ████████████████

15        Netlist's conduct with respect to the JEDEC organization further demonstrates that the

16   claims of the '912 Patent are not directed to DDR4 technology. As a member of JEDEC, Netlist

17   was required to disclose any issued patents or pending patent applications that are, or may be,

18   relevant to pending or issued standards. *See* Ex. 8 at 4. If Netlist genuinely believed that the

19   claims of the '912 Patent covered DDR4 technology, then it would have declared the patent

20   essential to DDR4 in accordance with JEDEC's policies. Netlist never did that. Ex. 9. Rather,

21   Netlist disclosed the '912 Patent with respect to DDR2 and DDR3 technology, but as far as

22   Google is aware, Netlist never told JEDEC that the '912 Patent reads on DDR4. *Id*.

23        Accordingly, the Court should reject Netlist's litigation-driven argument that it could not

24   have asserted claim 16 of the '912 Patent prior to the release of DDR4. Netlist should have

25   exercised diligence and asserted that claim at the outset of the litigation when it accused the DDR2

26   technology Google was using at the time.

27        Even after conclusion of the re-examination proceeding, Netlist failed to exercise diligence

28   in notifying Google and the Court that it intended to expand the scope of the litigation by asserting

a new claim.  After the Federal Circuit affirmed the PTO's re-examination decision, the parties confirmed to notify the Court about the status of the case.  *See* Dkt. 102.  At no time during those discussions—nor in the parties' submission on January 25, 2021—did Netlist suggest that it would assert claim 16.  *Id.*  Netlist's silence continued in February and March 2021, as the stay was lifted and the parties conferred to prepare and submit their Joint CMC Statement.  Dkt. 115.  Again, Netlist did not tell Google that it planned to assert a new claim, thus depriving Google of the opportunity to address that issue in connection with the CMC.  *Id.*

It was not until May and June 2021—nearly a year after the Federal Circuit's affirmance and three months after the stay was lifted—that Netlist asserted claim 16 for the very first time. That lack of diligence alone merits striking the claim from the litigation.  *See O2 Micro*, 467 F.3d at 1367 (affirming a lack of diligence where the moving party waited three months to serve its proposed amended contentions); *Acer, Inc. v. Technology Properties Ltd.*, No. 5:08–cv–00877 JF/HRL, 2010 WL 3618687, at *4–*5 (N.D. Cal. 2010) (finding three month delay after the stay was dissolved too long to constitute diligence); *Linksmart Wireless Technology, LLC v. Caesars Entertainment Corporation*, 2021 WL 201775, at *3 (D. Nev. 2021) ("waiting over three months does not show diligence."); *Catch a Wave Technologies, Inc. v. Sirius XM Radio, Inc.*, 2014 WL 186405, *3 (N.D. Cal. 2014) ("This order finds that plaintiff was on notice months ago of [defendant's product], and had reasonable diligence been exercised, plaintiff could have made this motion much earlier.").

**B.      The Court Should Strike Netlist's New Priority and Conception Dates**

In addition to its new assertion of claim 16, Netlist has now identified brand new priority and conception dates for the asserted claims of the '912 Patent.  Ex. 2 at 6.  The Court should strike those dates because allowing Netlist to rely on them would be prejudicial to Google, and because Netlist was not diligent in asserting them.

**1.      Netlist's New Priority and Conception Dates Prejudice Google**

Allowing Netlist to assert a new priority date and conception date for the asserted claims of the '912 Patent would be unfairly prejudicial to Google.  Google relied on Netlist's originally asserted priority date of July 1, 2005 when it requested re-examination of the patent.  Ex. 4 at 2.

1   In particular, Google relied on U.S. Patent Publication No. 2006/01117152 ("Amidi") as prior art,

2   which was filed on January 5, 2004.  *Id.*  During the course of the re-examination proceeding,

3   Netlist never argued that Amidi was not prior art, or that the challenged claims of the '912 Patent

4   were entitled to a priority or conception date earlier than Amidi's filing date.  *See*, *e.g.*, Ex. 10 at

5   47-61.  Instead, Netlist canceled or amended the originally asserted claims to avoid Amidi, thus

6   conceding that the reference qualified as prior art.  *Id.*

7       Now, however, Netlist has advanced a conception date that, if allowed and established,

8   would disqualify Amidi as prior art and effectively undo the ten-year record of the re-examination

9   proceeding.  That outcome is particularly significant for claim 16 of the '912 Patent.  As discussed

10  above, Netlist did not originally assert claim 16 against Google, and therefore Google did not

11  challenge claim 16 in its re-examination request.  Thus, to the extent Netlist is permitted to assert

12  claim 16 in this action (which it should not be allowed to do for the reasons discussed above)

13  Netlist cannot argue that Google is estopped from challenging the claim under 35 U.S.C. § 315(c)

14  (pre-AIA).  Claim 16 includes only one minor difference from original claim 15 of the '912

15  Patent—a claim that Netlist ***did*** assert in its original contentions, and that Google ***did*** challenge

16  and ***did*** invalidate in the re-examination proceeding, forcing Netlist to amend claim 15 in order for

17  it to survive.  *See* Ex. 10 at 49.

18      Clearly, Netlist recognizes that Amidi is strong prior art against claim 16 and is therefore

19  attempting to avoid that reference entirely by alleging a new conception date.  Allowing Netlist to

20  do so would be prejudicial to Google, which spent years developing the Amidi reference as prior

21  art and relying on it to invalidate the originally asserted claims of the '912 Patent.[7]

22          **2.    Netlist Failed To Diligently Assert New Priority and Conception Dates**

23      Even if there was no prejudice to Google, Netlist's failure to exercise diligence in asserting

24  its new priority and conception dates would be an independent basis to strike those dates from the

25  case.  *See O2 Micro*, 467 F.3d at 1368.  It is well established that a patent owner like Netlist is in

26

27  _____

    [7]  The fact that Netlist never tried to swear behind Amidi during the re-examination proceeding

28  shows that its attempt to do so now is gamesmanship, not a legitimate attempt to establish a
    priority and conception date for the asserted claims.  *See* Ex. 10.

1   the best position to determine the priority and conception dates for its asserted claims.  *See*

2   *Harvatek Corp. v. Cree, Inc.*, No. 14-cv-05353-WHA, 2015 WL 4396379, at *2 (N.D. Cal. Jul.

3   17, 2015) (granting motion to strike where plaintiff "had the opportunity to conduct a diligent

4   search for evidence of an earlier conception date before filing its complaint").  That is because

5   Netlist has possession of documents underlying the alleged invention of the '912 Patent, and

6   access to the inventors who developed the claimed subject matter.  *Id*.  Thus, Netlist has no excuse

7   for failing to identify the priority and conception dates for the asserted claims at the outset of the

8   litigation, and it certainly should have been in a position to do so when it served its Patent Local

9   Rule 3-1 Disclosures on April 8, 2010.  *See Gamevice, Inc. v. Nintendo Co., Ltd.*, Case No. 18-cv-

10  01942-RS, 2019 WL 3533078, at *2 (N.D. Cal. Aug. 2, 2019) ("The Patent Local Rules require a

11  patentee to disclose both the priority date for its asserted claims, Patent L.R. 3-1(f), as well as

12  documents evidencing the conception and reduction to practice date for such claims, Patent L.R.

13  3-2(b).  The purpose of these rules is to get the parties to commit to positions early on in the

14  litigation and stick to them absent good cause.") (quotations omitted).

15      Netlist failed to exercise the requisite diligence here because it waited more than a decade

16  after its original Patent Local Rule 3-1(f) Disclosure to submit an amended disclosure that

17  identified new priority and conception dates.  Netlist has no excuse for failing to identify those

18  dates in its original disclosures.  Indeed, the only evidence Netlist cites to support the new dates is

19  deposition testimony from named inventor Jayesh Bhakta on September 17, 2010.  *See* Ex. 2 at 6.

20  Had Netlist exercised reasonable diligence, it would have worked with Mr. Bhakta to identify the

21  earlier priority and conception dates prior to submitting its April 8, 2010 disclosures.  *See*

22  *Harvatek*, 2015 WL 4396379, at *2.  Or, at a minimum, Netlist should have immediately moved to

23  amend those disclosures following Mr. Bhakta's deposition, which occurred more than three

24  months before the case was stayed.  Netlist did neither of those things and therefore cannot show

25  the diligence required to support its assertion of new dates at this stage of the litigation.

26          **3.      Netlist's New Conception Date Lacks the Requisite Specificity**

27          Finally, the Court should strike Netlist's new conception allegations because they lack the

28  degree of specificity required under the Patent Local Rules.  Courts in this District have explained

1    that "Patent L.R. 3-1(f) particularly requires a patent holder to assert a specific date of conception,

2    not a date range." *Harvatek*, 2015 WL 4396379, at *2-3. The purpose of that requirement is to

3    crystalize the parties' theories early in the case and avoid a shifting sands approach to litigation.

4    *See Thought, Inc. v. Oracle Corp.*, No. 12-cv-5601-WHO, 2015 WL 5834064, at *5 (N.D. Cal.

5    Oct. 7, 2015). Netlist's new allegations violate that requirement because they provide only a range

6    of "███████," not an exact date of conception. The non-specific range prejudices Google's

7    ability to prepare its invalidity defense because it allows Netlist to move the goalposts depending

8    on the specific prior art references Google asserts. And again, Netlist has no excuse for failing to

9    identify an exact date of conception because Netlist is presumably in possession of the information

10   and evidence needed to determine that date.

11
12                **C.    The Court Did Not Authorize Netlist to Assert A New Claim or New Priority
                           and Conception Dates**

13              Finally, Netlist has suggested that it had permission to assert a new claim and new priority

14   and conception dates because the Court's procedural schedule included a deadline for amended

15   *infringement contentions*. *See* Dkt. 116; Dkt. 135 at 1. That argument should be rejected

16   because the Court never authorized Netlist to identify new *claims* or new *priority and conception*

17   *dates*.

18              When the stay was lifted in this case and Netlist asked to submit amended infringement

19   contentions, its purported reason for doing so was to account for Google's current *products*. *See*

20   Dkt. 115 at 3 ("Netlist submits that targeted discovery, beginning now, regarding the nature of the

21   memory modules currently used by Google is necessary and would be beneficial."). Netlist never

22   told the Court or Google that it intended to assert a new claim or new priority and conception

23   dates, which are distinct requirements of Patent Local Rule 3-1. *Id*. The rule explicitly

24   distinguishes between "Asserted Claims" and "Infringement Contentions." *See* PLR 3-1. It also

25   includes separate subparts for the identification of asserted claims, the disclosure of a priority date,

26   and allegations of infringement against accused products. *Compare* PLR 3-1 (a) and (f) *with* PLR

27   3-1 (b) and (c). Likewise, courts have distinguished between these different requirements when

28   applying the Patent Local Rules. *See, e.g.*, *MyGo LLC v. Mission Beach Indus., LLC*, 2018 WL

1   3438650, at *4 (S.D. Cal Jul. 17, 2018) ("[T]he Court is persuaded by Defendant's argument that

2   Local Rule 3.6(a) provides a matter of right amendment only for amended **infringement**

3   **contentions**, not for amended **asserted claims**.") (footnote omitted) (emphasis added).

4          Netlist's request to amend its infringement contentions was limited to an identification of

5   new products and infringement charts under subparts (b) and (c).  If Netlist had stated that it

6   intended to assert a new claim and new priority and conception dates under subsections (a) and (f),

7   it should have notified Google and the Court of that fact and sought leave to amend as required

8   under the local rules.  *See* PLR 3-6.  Because Netlist never asked the Court for permission to assert

9   a new claim or new priority and conception dates, the Court should reject any argument that those

10  assertions are somehow authorized.

11  **V.     CONCLUSION**

12         For the foregoing reasons, Google respectfully requests that the Court strike (1) Netlist's

13  assertion of claim 16, and (2) the priority and conception dates identified in Netlist's June 18,

14  2021 disclosure.

15

16  DATED: July 30, 2021                    QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
17

18

19                                    By      /s/ *David Perlson*
                                              David Perlson
20

21                                         David Perlson (CA Bar No. 209502)
                                           davidperlson@quinnemanuel.com
22                                         Jonathan Tse (CA Bar No. 305468)
                                           jonathantse@quinnemanuel.com
23                                         50 California Street, 22nd Floor
                                           San Francisco, CA 94111
24                                         Telephone: (415) 875-6600
                                           Facsimile: (415) 875-6700
25

26                                         Jared Newton (admitted *pro hac vice*)
                                           jarednewton@quinnemanuel.com
27                                         Sandy Shen (admitted *pro hac vice*)
                                           sandyshen@quinnemanuel.com
28

1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Catlin Williams (CA Bar No. 336464)
catwilliams@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant Google LLC*