# EXHIBIT 4

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of Bhakta *et al*.

68354   U.S. PTO

95000579

| | |
|---|---|
| U.S. Patent No.: | 7,619,912 |
| Issue Date: | November 17, 2009 |
| Application No.: | 11/862,931 |
| Filing Date: | September 27, 2007 |
| Title: | Memory Module Decoder |

Mail Stop Inter Partes Reexam
Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## <u>REQUEST FOR INTER PARTES REEXAMINATION</u><br><u>UNDER 35 U.S.C. § 311 AND 37 C.F.R. § 1.913</u>

In accordance with 35 U.S.C. § 311 and 37 C.F.R. § 1.913, inter partes reexamination of claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50 of U.S. Patent No. 7,619,912 (the '912 patent) is requested.

The application for the '912 patent was filed on or after November 29, 1999; the '912 patent is therefore eligible for inter partes reexamination.

The '912 patent has not yet been adjudged invalid or unenforceable.

This request is submitted by the undersigned on behalf of the Requester. The undersigned is acting in a representative capacity in accordance with 37 C.F.R. § 1.34(a).

CERTIFICATE OF MAILING BY EXPRESS MAIL

Express Mail Label No. EV 744617762 US

October 21, 2010
Date of Deposit

# TABLE OF CONTENTS

I.   SUMMARY OF REQUEST ........................................................................ 1

    A.   Identification of Claims ................................................................... 1

    B.   Identification of Prior Art ................................................................ 1

        1.   Priority Date ............................................................................. 1

        2.   Publications and Substantial New Questions of Patentability ................... 1

            (a)   Micron – Publication titled "DDR SDRAM RDIMM" ................... 1

            (b)   Connolly – U.S. Patent No. 5,745,914 ................................... 2

            (c)   Amidi – U.S. Patent Publication No. 2006/0117152 ..................... 2

            (d)   Expert Declaration – Declaration of Professor Christoforos Kozyrakis .......... 2

    C.   Substantial New Questions of Patentability ........................................... 2

II.  DESCRIPTION OF THE '912 PATENT ..................................................... 3

    A.   The '912 Patent .............................................................................. 3

        1.   Overview of Patent ..................................................................... 3

        2.   Overview of Independent Claims ................................................... 4

        3.   Claim 1 ................................................................................... 5

        4.   Claim 15 .................................................................................. 6

        5.   Claim 28 .................................................................................. 6

        6.   Claim 39 .................................................................................. 7

III. THE SPECIFICATION, CLAIMS, AND PROSECUTION HISTORY OF THE '912
     PATENT AND PARENT APPLICATIONS ............................................... 8

    A.   Prosecution History of the '912 Patent ................................................ 8

        1.   Prosecution history .................................................................... 8

        2.   Stated Reasons for Allowance ...................................................... 8

        3.   Unrelated Third Party Reexamination (Control Number
            95/001,339+90/009370) .............................................................. 12

        4.   Prosecution History and Allowances in Parent Applications ................... 14

            (a)   The '386 Patent ............................................................... 14

IV.  INVALIDITY ANALYSIS ..................................................................... 15

    A.   Claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50  are
      Obvious in View of Micron and Connolly ............................................ 15

i

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

1.   Summary of Expert Analysis ................................................................. 15

2.   Summary of the Application of Micron and Connolly ............................ 16

3.   Substantial New Question of Patentability .............................................. 17

4.   Claim Chart Applying Micron and Connolly to Claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50 .................................... 18

B.   Claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50 are Obvious in View of Micron and Amidi .................................................... 18

1.   Summary of the Application of Micron and Amidi ................................ 18

2.   Substantial New Question of Patentability .............................................. 19

3.   Claim Chart Applying Micron and Amidi to Claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50 ........................................... 20

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

LIST OF APPENDICES

APPENDIX A  -  U.S. Patent 7,619,912 to Bhakta *et al*. including certificate of correction

APPENDIX B  -  Relevant portions of the prosecution history of the '912 patent

APPENDIX C  -  Micron, "DDR SDRAM RDIMM," MT36VDDF12872 & MT36VDDF25672 datasheet, © 2002 ("Micron")

APPENDIX D  -  U.S. Patent No. 5,745,914 ("Connolly")

APPENDIX E  -  U.S. Patent Publication No. 2006/0117152 ("Amidi")

APPENDIX F  -  Declaration of Expert Professor Kozyrakis ("Expert Declaration")

APPENDIX G  -  Claim chart applying principally Micron and Connolly to the claims.

APPENDIX H  -  Claim chart applying principally Micron and Amidi to the claims.

## I.   SUMMARY OF REQUEST

### A.   Identification of Claims

This reexamination request is directed to claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50 of the '912 patent.

A copy of the patent is attached as Appendix A of this request; and copies of the relevant portions of the '912 patent prosecution history are attached as Appendix B.

The Requester (Google Inc.) is not aware of any disclaimers for the '912 patent. The Requester is aware of the assertion of the '912 patent in a pending action in the Northern District of California, Civil Action No. CV09-05718 SBA, styled *Netlist, Inc. vs. Google Inc.*

The Requester is aware of a request for inter partes reexamination filed by an entity unrelated to Requester, Control No. 95/001,339+90/009370, in which an Action Closing Prosecution has been mailed.

### B.   Identification of Prior Art

#### 1.   Priority Date

The earliest priority date to which the claims of the '912 patent could be entitled is March 5, 2004, the filing date of U.S. patent application no. 60/550,668. This request relies on art that is earlier than this date, but by doing so the Requester does not concede that the '912 patent is entitled to any priority date earlier than the filing date of its immediate parent application, of which it is a continuation, namely, July 1, 2005.

#### 2.   Publications and Substantial New Questions of Patentability

The following documents, which are listed on the form PTO/SB/08 filed with this request, raise substantial new questions of patentability for claims of the '912 patent.

#### (a)   Micron – Publication titled "DDR SDRAM RDIMM"

Micron has a copyright date of 2002, and is prior art under 35 U.S.C. § 102(b). Micron was not cited in the record of the '912 patent.

1

(b)   Connolly – U.S. Patent No. 5,745,914

Connolly was filed on December 20, 1996, issued on April 28, 1998, and is prior art under 35 U.S.C. § 102(b).

Connolly was cited in the record of the '912 patent.

(c)   Amidi – U.S. Patent Publication No. 2006/0117152

Amidi was filed on January 5, 2004, published June 1, 2006, and is prior art under 35 U.S.C. § 102(e).

Amidi was cited in the record of the '912 patent and was addressed in remarks on allowance of the '912 patent.  This request presents substantial new questions of patentability relative to matters previously considered with respect to Amidi, as will be described.

(d)   Expert Declaration – Declaration of Professor Christoforos Kozyrakis

A declaration authored and signed by Professor Christoforos Kozyrakis for this request (the Expert Declaration) is provided to show the relevant level of skill in the art and what a person of ordinary skill in the art would have recognized and been motivated to do upon considering Micron, Connolly, and Amidi.

The Expert Declaration is not cumulative of the record of the '912 patent.  It provides information about the level of skill of a person of ordinary skill in the art at the relevant times, and what would have been understood by such a person.  This information is not cumulative of the information considered on the record in the prosecution of the '912 patent.

## C.   Substantial New Questions of Patentability

This request presents questions of patentability that have not been decided by the Office in a previous examination, nor in a final holding of invalidity by a court.

As described more specifically below in connection with the individual references, this request presents substantial new questions of patentability because the aspects of Micron, Connolly and Amidi, and the information about the level of ordinary skill in the art and what would have been obvious to a person of ordinary skill in the art at the pertinent times, have not

been considered in the examination of the '912 patent or its parent application, nor have they been considered in the unrelated third party reexamination (control no. 95/001,339+90/009370) mentioned above.

In short, the references being relied upon present teachings that were "not previously considered and discussed on the record during the prosecution of" the '912 patent or any parent application. (See, e.g., MPEP 2616)

Consequently, it is respectfully submitted that:

1. Micron in combination with Connolly considered from the point of view of a person of ordinary skill in the art at the time raises a substantial new question of patentability for claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50 of the '912 patent.

2. Micron in combination with Amidi considered from the point of view of a person of ordinary skill in the art at the time raises a substantial new question of patentability for claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50 of the '912 patent.

## II.   DESCRIPTION OF THE '912 PATENT

### A.   The '912 Patent

#### 1.   Overview of Patent

The '912 patent is directed to techniques that allow a memory module to be used in a system, where the memory module has a higher density or a larger number of rows of memory devices than the system supports: "Most computer and server systems support one-rank and two-rank memory modules. By only supporting one-rank and two-rank memory modules, the memory density that can be incorporated in each memory slot is limited." (2:38-41) The techniques described in the '912 patent purportedly can be used to increase the memory capacity or memory density per memory slot or socket of a system, allowing for a higher memory capacity in systems with limited memory slots. (32:27-32) They purportedly can also be used to reduce the cost of memory modules by substituting pairs of lower cost-per-bit lower-density

3

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

memory devices for individual higher-density memory devices. (*See* 32:33-51) The '912 patent includes four independent claims, and fifty-one total claims.

### 2. Overview of Independent Claims

All of the independent claims recite fundamentally the same features.

Each is directed to a memory module that can be connected to a computer system.

The memory devices on the module are DDR (a kind of DRAM) devices.

The number of devices actually on the module is the "first number of . . . devices". This number may be referred to in this request as the "actual number" of devices.

The devices are arranged in a "first number" of ranks which may be referred to as the "actual number" of ranks.

The module has a circuit that includes a logic element and a register, and it has a PLL (phase-locked loop).

The logic element receives signals of various kinds from the computer system. These signals are enumerated in the claims. They include addressing, command and control signals, though not all recited signals are so designated. Generically, they are all "input signals." The named signals include bank address signals and chip select signals, which are signals that are used by some memory devices but not others.

At least some of the input signals correspond to a "second number" of memory devices and a "second number" of ranks. No particular kind of correspondence is recited. These second numbers may be referred to as "system" numbers (because they come from the system) or "virtual" numbers (because they are the numbers of devices and ranks that are emulated by the module).

The circuit generates output signals that control the memory devices on the module. The output signals are of various kinds. They variously correspond to the actual numbers of devices or ranks on the module. In particular, the signals operate on the actual devices and ranks, and thus control and select from among the actual ("first") numbers of devices and ranks. This is true of signals denominated "control" signals and signals denominated "command signals." In particular, it is true of "address" signals.

4

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

The PLL is "coupled" to the logic element, the memory devices and the register. As is well known, a PLL exists to provide precise clock signals to other circuits. These common ideas are recited in different ways in the four independent claims.

The particular formulations used in the independent claims is set forth in the following paragraphs.

3.   Claim 1

Independent claim 1 recites a memory module that can be connected to a system and, furthermore, that has a printed circuit board. Mounted to the printed circuit board are multiple double-data-rate (DDR) memory devices arranged in an actual number of ranks, a circuit that includes a logic element and a register, and a phase-lock loop device. The logic element receives, from the system, a set of input control signals—including at least one row/column address signal, bank address signals, and at least one chip-select signal—that correspond to a system number of DDR memory devices arranged in a system number of ranks, where the system number of DDR memory devices is smaller than the actual number of DDR memory devices actually on the printed circuit board and the system number of ranks is less than the actual number of ranks. The claim further recites: (i) that the circuit generates a set of output control signals in response to the set of input control signals; (ii) that the set of input control signals corresponds to system number of ranks; (iii) that the set of output control signals corresponds to the actual number of DDR memory devices arranged in the actual number of ranks, and that the set of output control signals corresponds to the actual number of ranks; (iv) that the circuit responds to a first command signal (e.g., read or write from a rank) and the set of input control signals from the system by generating and transmitting a second command signal (e.g., read or write from a rank) and the set of output control signals to the actual DDR memory devices; (v) that the first command signal corresponds to the system number of ranks and the second command signal corresponds to the actual number of ranks; and (vi) that the phase-lock loop device is operatively coupled to the multiple actual DDR memory devices, the logic element and the register.

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

4. Claim 15

Independent claim 15 recites a memory module that can be connected to a system and, furthermore, that has a printed circuit board. Coupled to the printed circuit board are multiple double-data-rate (DDR) memory devices arranged in an actual number of ranks, a circuit that includes a logic element and a register, and a phase-lock loop device. The logic element receives, from the system, a set of input signals—including at least one row/column address signal, bank address signals, and at least one chip-select signal—that are configured to control a system number of DDR memory devices arranged in a system number of ranks, where the system number of DDR memory devices is smaller than the actual number of DDR memory devices actually on the printed circuit board and the system number of ranks is less than the actual number of ranks. The claim further recites: (i) that the circuit generates a set of output control signals in response to the set of input signals; (ii) that the set of output control signals is configured to control the actual number of DDR memory devices arranged in the actual number of ranks; (iii) that the circuit responds to a first command signal (e.g., read or write from a rank) and the set of input control signals from the system by selecting one or two ranks of the actual number of ranks and transmitting the command signal (e.g., read or write from a rank) to at least one of the actual DDR memory devices of the selected one or two ranks of the actual number of ranks; (iv) that the phase-lock loop device is operatively coupled to the multiple actual DDR memory devices, the logic element and the register.

5. Claim 28

Independent claim 28 recites a memory module that can be connected to a system and, furthermore, that has a printed circuit board. Coupled to the printed circuit board are multiple double-data-rate (DDR) dynamic random-access memory (DRAM) devices arranged in an actual number of ranks, a circuit that includes a logic element and a register, and a phase-lock loop device. The logic element receives, from the system, a set of input control signals—including a row/column address signal, bank address signals, a chip-select signal, and an input command signal—that are configured to control a system number of DDR DRAM devices arranged in a system number of ranks, where the system number of DDR DRAM devices is smaller than the

6

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

actual number of DDR DRAM devices actually on the printed circuit board and the system number of ranks is smaller than the actual number of ranks. The claim further recites: (i) that the circuit generates a set of output control signals, including an output command signal, in response to the set of input control signals; (ii) that the set of output control signals is configured to control the actual number of DDR DRAM devices arranged in the actual number of ranks; (iii) that the circuit responds to the set of input control signals from the system by selecting at least one rank of the actual number of ranks and transmitting the set of output control signals to at least one of the actual DDR DRAM devices of the selected at least one rank; (iv) that the phase-lock loop device is operatively coupled to the multiple actual DDR DRAM devices, the logic element and the register.

6. Claim 39

Independent claim 39 recites a memory module that can be connected to a system and, furthermore, that has a printed circuit board having a first side and a second side. Mounted to the printed circuit board are multiple double-data-rate (DDR) memory devices arranged in two or more actual ranks which are selectable by an actual number of chip-select signals. Each of the DDR memory devices includes one or more banks. Also mounted to the printed circuit board is at least one integrated circuit element that includes a logic element, a register, and a phase-lock loop device operationally coupled to the multiple actual DDR memory devices, the logic element, and the register. The at least one integrated circuit element receives, from the system, multiple input signals—including row address signals, column address signals, bank address signals, command signals, and a system number of chip-select signals, where the system number of chip-select signals is less than the actual number of chip-select signals—where the logic element receives the bank address signals and at least one command signal of the multiple input signals. The claim further recites: (i) that the at least one integrated circuit element generates multiple output signals—including row address signals, column address signals, bank address signals, command signals, and the actual number of chip-select signals—in response to the multiple input signals; and (ii) that the at least one integrated circuit element responds to the multiple input signals by selecting at least one rank of the two or more actual ranks and

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

transmitting the multiple output signals to at least one DDR memory device of the selected at least one rank.

## III.  THE SPECIFICATION, CLAIMS, AND PROSECUTION HISTORY OF THE '912 PATENT AND PARENT APPLICATIONS

### A.  Prosecution History of the '912 Patent

#### 1.  Prosecution history

The '912 patent issued November 17, 2009, from an application filed September 27, 2007.  The patent describes itself as "a continuation of U.S. patent application Ser. No. 11/173,175, filed Jul. 1, 2005, [which issued as U.S. Patent No. 7,289,386 on October 30, 2007], which claims the benefit of U.S. Provisional Application No. 60/588,244, filed Jul. 15, 2004 . . ., and which is a continuation-in-part of U.S. patent application Ser. No. 11/075,395, filed Mar. 7, 2005 [which issued as U.S. Patent No. 7,286,436 on October 23, 2007], which claims the benefit of U.S. Provisional Application No. 60/550,668, filed Mar. 5, 2004 and U.S. Provisional Application No. 60/575,595, filed May 28, 2004."  (1:6-16)

The application for the '912 patent was filed with 21 claims.  A first preliminary amendment, which amended claim 8 and added new claims 22-24, was filed on June 23, 2008. A second preliminary amendment, which amended the specification, canceled claims 1-24, and added new claims 25-48, was filed on February 3, 2009.

A personal interview between Examiner Sofocleous and Patent Owner's representative Bruce Itchkawitz was conducted on June 22, 2009, the same day that a third preliminary amendment, which canceled claims 1-48 and added new claims 49-101, was filed.  An interview summary, filed on July 29, 2009, and referring to the interview of June 22, 2009, stated that independent claims 49, 63, 76, and 87 were compared to the claims of U.S. Patent No. 7,289,386.

A notice of allowance and notice of allowability was mailed on September 30, 2009.

#### 2.  Stated Reasons for Allowance

The Examiner's statement of reasons for allowance read as follows:

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

**With respect to independent claims 49, 63, and 76**, there is no teaching, suggestion, or motivation for combination in the prior art to a logic element and a register, the logic element receiving a set of input control signals from the computer system that include at least one row/column address signal, bank address signals, and at least one chip-select signal, the set of input control signals correspond to a second number of DDR memory devices in a second number of ranks, the circuit generates a set of output signals corresponding to a first number of DDR memory devices in a first number of ranks, wherein the second number of DDR memory devices is smaller than the first number of DDR memory devices and the second number of ranks is less than the first number of ranks, and a phase-lock loop operatively coupled to the DDR memory devices, the logic element, and the register.  (Notice of Allowability, p. 5)

**With respect to independent claim 87**, there is no teaching, suggestion, or motivation for combination in the prior art to at least one circuit element including a logic element, a register, and a phase-lock loop device operationally coupled to the DDR memory devices, the logic element, and the register, the at least one integrated circuit element receiving a plurality of input signals from the computer system that include row address signals, column address signals, bank address signals, command signals, and a second number of chip-select signals less than the first number of chip-select signals, wherein the logic element receives the bank address signals, wherein the at least one integrated circuit element generates a plurality of output signals in response to the plurality of input signals, the plurality of output signals comprising row address signals, column address signals, bank address signals, command signals, and the first number of chip-select signals.  (Notice of Allowability, p. 5)

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

The applicant replied with a purported disagreement with the Examiner's reasons for allowance with the following boilerplate remark, which does not actually challenge the Examiner's stated reason:

> Applicants respectfully disagree with the Examiner's Statement of Reasons for Allowance to the extent that the limitations recited by the Examiner are not present in all of the claims.
>
> To the extent that there is any implication that the patentability of the claims ·rests on the recitation of a single feature, Applicants respectfully disagree with the Examiner's Statement because it is the combination of features that makes the claims patentable.  Accordingly, Applicants submit that the claims of the present application are allowable because each of the claims recites a combination of features that are not taught or suggested by the prior art.  (COMMENTS ON EXAMINER'S STATEMENT OF REASONS FOR ALLOWANCE, dated Oct. 1, 2009)

The Examiner also commented on the art, as follows:

> The prior art made of record and not relied upon is considered pertinent to applicant's disclosure: Amidi et al. (U.S. Patent Application Publication 2006/0117152 cited on IDS filed January 18, 2008), Ellsberry et al. (U.S. Patent Application 2006/0277355), Sugahara (U.S. Patent 5,495,435), Dell (U.S. Patent 6,209,074 cited on IDS filed June 19, 2009), Li et al. (U.S. Patent 6,705,77), Bungo et al. (U.S. Patent 7,167,967), Wong (U.S. Patent 7,437,591), and Hofstra (U.S. Patent 7,471,538).
>
> Amidi et al. shows a four rank memory module with a CPLD, register, and PLL. However, Amidi et al. do not show a logic element and a register, the logic element receiving a set of input control signals from the computer system that include at least one row/column address signal, bank address signals, and at least one chip-select signal, the set of input control signals correspond to a second number of DDR memory devices in second number

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

of ranks, the circuit generates a set of output signals corresponding to a first number of DDR memory devices in a first number of ranks, wherein the second number of DDR memory devices is smaller than the first number of DDR memory devices and the second number of ranks is less than the first number of ranks, and a phase-lock loop operatively coupled to the DDR memory devices, the logic element, and the register as recited in claims 49, 63 and 67 or a logic element, a register, and a phase-lock loop device operationally coupled to the DDR memory devices, the logic element, and the register, the at least one integrated circuit element receiving a plurality of input signals from the computer system that include row address signals, column address signals, bank address signals, command signals, and a second number of chip-select signals less than the first number of chip-select signals, wherein the logic element receives the bank address signals, wherein the at least one integrated circuit element generates a plurality of output signals in response to the plurality of input signals, the plurality of output signals comprising row address signals, column address signals, bank address signals, command signals, and the first number of chip-select signals as recited in claim 87.

[Comments separately considering, respectively, Ellsberry et al., Sugahara, Dell, Li et al., Bungo et al., Wong, and Hofstra are omitted]

The Examiner did not consider a combination of Micron and Amidi during prosecution of the '912 patent, and also did not consider a combination of Micron and Connolly during prosecution of the '912 patent. The Examiner further did not consider the kind of information provided by the Expert Declaration during prosecution of the '912 patent. The interview summary that referred to the interview that preceded the notice allowance indicated that the independent claims were compared to the (issued) claims of the parent application (which issued as U.S. Patent No. 7,289,386). Because none of Micron, Connolly, or Amidi were cited in the record of the parent application, to the extent that the claims of the '912 patent were allowed based on the comparison to the issued claims of the parent application, the presently submitted

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

combination of Micron and Connolly and the presently submitted combination of Micron and Amidi each present substantial new questions of patentability with respect to this part of the prosecution history.

3.   Unrelated Third Party Reexamination (Control Number 95/001,339+90/009370)

The Action Closing Prosecution in the above-mentioned reexamination of '912 patent included the following statements about Amidi, which is one of the references on which the present request relies (Action Closing Prosecution mailed September 1, 2010; pages labeled Page 9 and Page 10):

> **Ground 3**
>
> 16.       Requester asserts that claims 1-7, 9-11, 14, 15, 18-21, 23-25, 28-34, 36, 37, 39-43, 46, and 51 are anticipated by Amidi. The proposed rejection is not adopted.
>
> 17.       All claims require a circuit that "responds to a first command signal and the set of input control signals from the computer system by generating and transmitting a second command signal and the set of output control signal to the plurality of memory devices." Requester asserts that Amidi discloses this limitation in Figure 7 and that the command signal includes CS 0, CS 1, CKE, CAS, RAS, and WE (see Request p. 104). The examiner disagrees. Amidi discloses receiving a command at step 702, but does not disclose generating another command in response to the received command. Also, CS 0, CS 1, CKE, CAS, RAS, and WE signals are not command signals. Memory commands include activate, precharge, refresh, read, and write commands, but not control signals such as chip-select, address strobe, and write enable signals (see Table 2 at column of the '912 patent, which clearly distinguishes commands from other control signals such as CAS, RAS, and CS).

## Ground 4

18.        Requester asserts that claims 1-7, 9-11, 14, 15, 18-21, 23-25, 28-34, 36, 37, 39-43, 46, and 51 are obvious over Amidi. The proposed rejection is not adopted.

19.        See paragraph 17 above.

## Ground 5

20.        Requester asserts that claims 1-51 are obvious over Amidi. The proposed rejection is not adopted.

21.        See paragraph 17 above.

The present request presents a substantial new question of patentability over the Unrelated Third Party Reexamination.  For example, the present request submits a combination of Micron and Amidi, and a combination of Micron and Connolly, which combinations were not submitted or considered in the Unrelated Third Party Reexamination request.  Also, paragraph 17 of the Action Closing Prosecution makes clear that signals contended by Unrelated Third Party to be command signals are not command signals, and indicates that "precharge" and "refresh" are included in memory commands.  As described in the claim chart at Appendix H, which applies Micron and Amidi to the claims, the present request shows how the combination of Micron and Amidi discloses a circuit that "responds to a first command signal and the set of input control signals from the computer system by generating and transmitting a second command signal and the set of output control signal to the plurality of memory devices," where the second command signal is a refresh or precharge command signal.  Thus, the question of patentability raised by this request is substantial and new relative to the question considered in the Unrelated Third Party Reexamination, because the present request identifies and relies on signals that are acknowledged to be command signals by the Action Closing Prosecution for the Unrelated Third Party Reexamination.

4.  <u>Prosecution History and Allowances in Parent Applications</u>

  (a)  <u>The '386 Patent</u>

The '912 patent is a continuation of U.S. Patent No. 7,289,386 (the '386 patent).
In the '386 patent, the Examiner's statement of reasons for allowance read as follows:

> **With respect to independent claim 12**, there is no teaching, suggestion,
> or motivation for combination in the prior art to the logic element
> generating a second command signal, corresponding to a first number of
> ranks, based on the first command signal, corresponding to a second
> number of ranks, wherein the second number of ranks is less than the first
> number of ranks (<u>i.e., the logic element generates more rank select signals</u>
> <u>from a number of rank select signals</u>).  (Notice of Allowability, p. 2)
> (underlining added)

The applicant replied with a purported disagreement with the Examiner's reasons for
allowance with the following boilerplate remark, which does not actually challenge the
Examiner's stated reason:

> Applicants respectfully disagree with the Examiner's Statement of Reasons
> for Allowance to the extent that the limitations recited by the Examiner are
> not present in all of the claims.  (COMMENTS ON EXAMINER'S
> STATEMENT OF REASONS FOR ALLOWANCE, dated Sept. 19, 2007)

The Examiner also commented on the art, as follows:

> The prior art made of record and not relied upon is considered pertinent
> to applicant's disclosure: Sakurai (U.S. Patent 5,959,930), Kinsley et al.
> (U.S. Patent 7,046,538), Raghuram (U.S. Patent 7,200,021), and Raghuram
> (U.S. Patent Application Publication 200610129755).
>
> Sakurai teach a bank address decoder that takes two bank signals and
> generates 4 bank select signals to select each of the memory arrays (banks
> are different than ranks).

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

Kinsley et al., filed after instant application's provisional applications, teach a three rank memory module.

Raghuram '021, filed after instant application's provisional applications, teach 2 rank select signals input to a decoder that outputs 4 rank select signals.

Raghuram '755, filed after instant application's provisional applications, teach 3 rank select signals input to a decoder that outputs 8 rank select signals.

The foregoing remarks do not consider the questions presented in the present request.

## IV.  INVALIDITY ANALYSIS

### A.  Claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50  are Obvious in View of Micron and Connolly

Claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50 are unpatentable because they are obvious in view of Micron and Connolly.

1.  Summary of Expert Analysis

The Expert Declaration submitted with this request includes a detailed analysis of what a person of ordinary skill in the art at the relevant times would have known and done in view of the teachings of the Micron, Connolly and Amidi references.  As is shown by the claim charts – Appendices G and H – the obvious changes a person of ordinary skill in the art would have made in combining the techniques of the references result in memory modules that meet all the limitations of the claims.

To oversimplify, the declaration explains that a person of ordinary skill in the art would have been motivated to implement memory remapping to realize a memory module design that allows the use of relatively less expensive smaller memory devices in place of large more expensive devices (in particular, DDR DRAM devices) to achieve cost savings.  The declaration further explains that the person of ordinary skill in the art would have understood how to identify and process signals that can be used to implement such memory remapping, in particular, how to

15

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

select and process signals for devices that are new to the art. Finally, the declaration explains how selecting circuit arrangements and signal routings to achieve the desired memory remapping would have been obvious.

### 2.   Summary of the Application of Micron and Connolly

Micron discloses double-data-rate (DDR) synchronous dynamic random access memory (SDRAM) registered dual in-line memory modules (RDIMMs). The modules include DDR SDRAM memory devices, registers, and a phase-lock loop device.

Connolly discloses techniques and devices for converting system signals and addresses from one configuration to a different configuration, so that "less costly technology [can be used] interchangeably with certain system configurations [that] use higher technology," (Connolly, 1:26-29), such as using a larger number of lower-capacity memory devices with systems designed for (a fewer number of) high-capacity memory devices. Connolly discloses logic elements that receive input signals corresponding to a system number of memory devices arranged in a system number of ranks, and generate output signals corresponding to an actual number of memory devices arranged in an actual number of ranks to permit the module (having the larger number of lower-capacity memory devices) to interface transparently with a memory controller designed to interface with a module having a smaller number of higher-capacity memory devices.

Professor Christoforos Kozyrakis, an expert in electrical engineering and having particular expertise in the architecture and design of memory systems, including DRAM memory systems, memory interfaces, and memory system organizations for high-performance and low-power operation, reviewed the '912 patent, Micron, and Connolly, and provided the Expert Declaration submitted with this request. The declaration identifies the level of training, knowledge, and experience of a person of ordinary skill in the art as of the priority date of the '912 patent. The declaration also discusses Micron, Connolly, and what a person of ordinary skill in the art would have recognized upon considering Micron and Connolly. The declaration states that a person of ordinary skill in the art prior to the priority date of the '912 patent would have recognized that the stated goals of Connolly could be realized in a DDR memory module of

16

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

the kind described by Micron, and would have been able to design a module having two or four times as many lower-capacity devices that provide the same total capacity as a module with the latest, higher-capacity DDR devices.  The declaration concludes that "[any] differences between the combination of Micron and Connolly and the '912 patent are such that the claims of the '912 patent would have been obvious, in light of [Micron and Connolly], to a person of ordinary skill in the art, as of the date of the Connolly and Micron references."  (Expert Declaration, paragraph 19)

This expert conclusion is support by detailed consideration of the knowledge and skill of a person of ordinary skill in the art at the relevant time that could be applied without making an inventive contribution to art to achieve the designs claimed in the '912 patent.  (See, in particular, paragraphs 14-19 of the Expert Declaration)

As noted by the Supreme Court in *KSR*, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill."  *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1740 (2007).  The person of ordinary skill would have recognized that the architecture disclosed in Micron could, in an obvious and predictable way, be enhanced using the techniques disclosed in Connolly to produce the circuits claimed in the '912 patent.  The straightforward and legally obvious use of the technique in the context of the '912 patent is shown in the claim chart of Appendix G, which applies Micron and Connolly to the claims.

### 3.  Substantial New Question of Patentability

Because these teachings of Micron and Connolly, as well as the level and knowledge of a person of ordinary skill in the art, were not provided by the art considered by the Examiner during the prosecution or prior reexamination of the '912 patent, these teachings of Micron and Connolly raise a substantial new question of patentability.

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

4.   Claim Chart Applying Micron and Connolly to Claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50

Claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50 of the '912 patent are unpatentable under 35 U.S.C. § 103(a) because they are obvious in view of Micron and Connolly, as shown by the claim chart attached as Appendix G.

**B.   Claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50 are Obvious in View of Micron and Amidi**

Claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50 are unpatentable because they are obvious in view of Micron and Amidi.

1.   Summary of the Application of Micron and Amidi

Micron discloses double-data-rate (DDR) synchronous dynamic random access memory (SDRAM) registered dual in-line memory modules (RDIMMs). The modules include DDR SDRAM memory devices, registers, and a phase-lock loop device.

Amidi discloses techniques and devices for converting system signals and addresses from one configuration to a different configuration, so that "memory devices with lower densities [that] are cheaper and more readily available . . . may be [advantageously used] to build the . . . same density memory module using lower density devices," (Amidi, paragraph 8). In this manner, a larger number of lower-capacity (and lower-cost) memory devices can be used with systems designed for (a fewer number of) high-capacity memory devices. Amidi discloses a logic element that receives input signals corresponding to a system number of memory devices arranged in a system number of ranks, and generates output signals corresponding to an actual number of memory devices arranged in an actual number of ranks to permit the module (having the larger number of lower-capacity memory devices) to interface transparently with a memory controller designed to interface with a module having a smaller number of higher-capacity memory devices.

Professor Christoforos Kozyrakis' declaration discusses Micron, Amidi, and what a person of ordinary skill in the art would have recognized upon considering Micron and Amidi. The declaration states that a person of ordinary skill in the art prior to the priority date of the

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

'912 patent would have recognized that the method and implementation described by Amidi leads to a lower cost DDR module built with lower capacity devices that has twice as many ranks but the same capacity as a DDR module built with higher cost, higher capacity devices. The declaration concludes that "the claims of the '912 patent would have been obvious, in light of the Amidi and Micron references, to a person of ordinary skill in the art, as of the date of the Amidi reference." (Expert Declaration, paragraph 27)

This expert conclusion is support by detailed consideration of the knowledge and skill of a person of ordinary skill in the art at the relevant time that could be applied without making an inventive contribution to art to achieve the designs claimed in the '912 patent. (See, in particular, paragraphs 21-26 of the Expert Declaration.)

As noted by the Supreme Court in *KSR*, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1740 (2007). The person of skill would have recognized that the architecture disclosed in Micron could, in an obvious and predictable way, be enhanced using the techniques disclosed in Amidi to produce the circuits claimed in the '912 patent. The straightforward and legally obvious use of the technique in the context of the '912 patent is shown in the claim chart of Appendix H, which applies Micron and Amidi to the claims.

2. Substantial New Question of Patentability

Because the combined teachings of Micron and Amidi, as well as the level and knowledge of a person of ordinary skill in the art, were not provided by the art considered by the Examiner during the prosecution or prior reexamination of the '912 patent, these teachings of Micron and Amidi raise a substantial new question of patentability.

19

REQUEST FOR EX PARTE REEXAMINATION
U.S. Patent No. 7,619,912
Attorney Docket No. 19473-0099RX1

3. <u>Claim Chart Applying Micron and Amidi to Claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50</u>

Claims 1, 3, 4, 6- 11, 15, 18 22, 24, 25, 27 29, 31 34, 36 39, 41 45 and 50 of the '912 patent are unpatentable under 35 U.S.C. § 103(a) because they are obvious in view of Micron and Amidi, as shown by the claim chart attached as Appendix H.

## CONCLUSION

For the foregoing reasons, substantial and new questions of patentability exist with respect to claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50 of the '912 patent. The references cited above render claims 1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45 and 50 of the '912 patent unpatentable as set forth above. Reexamination of these claims is therefore requested.

Please apply any required charges not otherwise paid or any credits to our Deposit Account No. 06-1050.

Respectfully submitted,

Dated:  21 Oct 10

Hans R. Troesch
Reg. No. 36,950

Fish & Richardson P.C.
Telephone:    (650) 839-5070
Facsimile:    (650) 839-5071

60667962