# EXHIBIT 7

Attorney Docket No.: 19473-0099RX1
Reexam Control No.: 95/000,579, 95/000,578 and 95/001,339

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Patent of Jayesh R. Bhakta et al. | |
| U.S. Patent No.: 7,619,912 | |
| Date: November 17, 2009 | Examiner: Peikari, Behzad |
| Patentee.: Netlist, Inc. | Art Unit: 3992 |
| Application No.: 11/862,931 | Confirmation No.: 3547 |
| Filing Date: September 27, 2007 | |
| Ctrl. Nos. 95/000,579; 95/000,578 and 95/001,339 | |
| Title: MEMORY MODULE DECODER | |

**Mail Stop *Inter Partes* Reexam**
**Central Reexamination Unit**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## APPEAL BRIEF OF THIRD PARTY REQUESTER GOOGLE INC. PURSUANT TO PRE-AIA 35 U.S.C 134(c) AND 37 C.F.R. § 41.67

Pursuant to pre-AIA 35 U.S.C. § 134(c), 37 C.F.R. § 41.67, and MPEP § 2674, Third Party Requester and Appellant Google Inc. ("Requester") hereby files an appeal brief in accordance with the Notice of Appeal filed July 18, 2014.

These are merged proceedings. Requester is the requester of the '579 proceeding and is referred to in the Right of Appeal Notice as "Requester 3." Inphi, Inc. ("Requester 1") is the requester in the '339 proceeding. SMART Modular Technologies (WWH), Inc. ("Requester 2") is the requester in the '578 proceeding.

This paper is being filed within a period of two months from the July 30, 2014, date of service of the Owner's Notice of Cross Appeal on this Requester, and is thus timely under 37 C.F.R. § 41.66.

Attorney Docket No. 19473-0099RX1
Reexam Control No.: 95/000,579, 95/000,578 and 95/001,339

## **TABLE OF CONTENTS**

I.   REAL PARTY IN INTEREST ...................................................................................1

II.  RELATED APPEALS, INTERFERENCES, AND TRIALS................................1

III. STATUS OF CLAIMS ..............................................................................................1

IV.  STATUS OF AMENDMENTS .................................................................................1

V.   SUMMARY OF THE CLAIMED SUBJECT MATTER .....................................2

VI.  ISSUES TO BE REVIEWED ON APPEAL ...........................................................2

VII. ARGUMENT ..............................................................................................................3

    A. Overview of the technology ...............................................................................4

    B. (Ground 13) The Examiner erred by not adopting Requester's rejections of claims 1, 3-4, 6, 8, 10, 11, 15, 18-20, 22, 24-25, 27-29, 31, 32, 36-39, 41-43, 45, 50, 52-54, 58, 61-63, 67-71, 75, 77-93, 109-111, and 120-136 as obvious over Micron in view of Amidi. ..................................................................................................................5

        1. Obviousness does not require an explicit teaching. ..................................5

        2. Micron in view of Amidi renders obvious using an input bank address signal to generate chip select signals for a rank-multiplying memory module. ......................6

            a. Case 1: Row addresses have one more row address bit than the actual memory devices use. ..........................................................................................7

            b. Case 2: Input bank addresses have one more bank address bit than the actual memory devices use. ....................................................................10

        3. A person of ordinary skill would be capable of designing, implementing, and validating a rank-multiplying module. ..........................................................11

        4. Micron in view of Amidi renders obvious each of the features that the Examiner relied on for patentability. ...............................................................................12

            a. Independent claims 1, 15, 28, and 39 and their dependent claims are obvious. .12

            b. Independent claim 52 and its dependent claims are obvious. .............................12

            c. Independent claims 67, 77, 82, and 87 and their dependent claims are obvious.13

    C. (Ground 19) The Examiner erred by not adopting Requester's rejections of claims 1, 15, 28, 39, 52-54, 56-58, 60-63, 67-71, 75, 77-93, 109-111, and 120-136 as obvious over Micron in view of Amidi, Dell 2, and JEDEC 79C. ...........................................13

        1. The rejections based on Micron in view of Amidi, Dell 2, and JEDEC 79C were clearly raised and should have been considered. ....................................................14

        2. It would have been obvious to combine Dell 2 with Micron and Amidi...................15

        3. Using input bank address signals to generate chip-select signals would have been obvious in view of Micron, Amidi, and Dell 2. ................................................15

    D. (Ground 21) The Examiner erred by not adopting Requester's rejections of claims 52-54, 67-71, 77-79, 82-84, and 87-89 as obvious over Micron in view of Amidi and Olarig. ..............................................................................................................17

    E. (Ground 22) The Examiner erred by not adopting Requester's rejections of claim 56 as obvious over Micron in view of Amidi, Olarig, and Memory Explained. .................19

    F. (Ground 13) The Examiner erred by not adopting Requester's rejections of claims 56, 60, 61-63, 80-81, 85-86, 90-91, 109-111, 127, and 131 as obvious over Micron in view of Amidi. ..................................................................................................................19

VIII. CONCLUSION AND REQUEST FOR RELIEF...............................................22

Attorney Docket No. 19473-0099RX1
Reexam Control No.: 95/000,579, 95/000,578 and 95/001,339

## I.  REAL PARTY IN INTEREST

The real party in interest for the Requester is Google Inc.

## II.  RELATED APPEALS, INTERFERENCES, AND TRIALS

There are no related interferences.  Patent Owner filed a Notice of Appeal in the present reexamination proceeding on August 30, 2014.  Requester 1 and Requester 2 each also filed a Notice of Appeal in this merged proceeding.

U.S. Patent No. 7,619,912 ("the '912 patent") is presently the subject of the concurrent litigation styled *Netlist, Inc. v. Google Inc.*, Case No. 4:09-cv-5718, (N.D. Cal), which has been stayed pending the outcome of the re-examination proceeding.  The '912 patent is also the subject of the concurrent litigation styled *Netlist, Inc. v. Inphi Corp.*, Case No. 2:09-cv-6900 (C.D. Cal.), which has been stayed pending the outcome of this re-examination proceeding.

## III.  STATUS OF CLAIMS

The '912 patent issued with claims 1-51.  During reexamination, the Patent Owner added new claims 52-118 in its July 5, 2011, Reply to the April 4, 2011, Non-final Office Action ("NFOA_1").  The Patent Owner added new claims 119-136 and cancelled claims 64-66, 94-108 and 112-118 in its January 13, 2012, Reply to the October 14, 2011, Non-final Office Action ("NFOA_2").  The Patent Owner cancelled claims 44, 51, 55, 59, 72-74 and 76 in its January 14, 2013, Reply to the November 13, 2012, Non-final Office Action ("NFOA_3").

The June 18, 2014, Right of Appeal Notice ("RAN") rejected claims 2, 3, 7, 9, 21, 23, 26, 30, 33, 57, and 119 on various grounds.  The RAN indicated claims 1, 3, 4, 6, 8, 10-20, 22, 24, 25, 27-29, 31, 32, 34-43, 45-50, 52-54, 56, 58, 60-63, 67-71, 75, 77-93, 109-111 and 120-136 to be patentable, each of which was amended or presented new during reexamination.

## IV.  STATUS OF AMENDMENTS

The Patent Owner's Amendments prior to the March 21, 2014, Action Closing Prosecution ("ACP") have been entered, and no amendments were submitted after the ACP.

## V.    SUMMARY OF THE CLAIMED SUBJECT MATTER

Independent claims 1, 15, 28, 39, 52, 67, 77, 82, and 87 of the '912 patent are involved in this appeal.  Requester does not concede that the claims are adequately supported under 35 U.S.C. § 112.

Each of claims 1, 15, 28, 39, 52, 67, 77, 82, and 87 is directed to a memory module (Fig. 1A #10) that that can be connected to a computer system.  The module includes a printed circuit board (Fig. 1A #20) with a plurality of double- data-rate (DDR) memory devices (5:9-12; Fig. 1A #30) arranged in two or more ranks which are selectable by a first number of chip-select signals.  (6:34-36; Fig. 1B; 7:23-29.)  The memory module also includes logic circuitry (Fig. 1A #40), a register (Fig. 1A #60) and a phase-lock loop device (Fig. 1A #50) coupled to the printed circuit board and operatively coupled to the memory devices and the logic circuitry.  (5:22-25.)

The logic circuitry receives input signals comprising row address signals, column address signals, bank address signals, and command signals.  (6:55-63.)  The logic circuitry generates output signals in response to the input signals, with the output signals comprising row address signals, column address signals, bank address signals, command signals, and the first number of chip-select signals.  (6:55-7:53; Table 1.)  The logic circuitry responds to at least the bank address signals and the chip-select signal of the input signals by generating a number of chip-select signals, also referred to as rank-selecting signals, that is at least double the input number of chip-select signals.  (23:6-24.)

## VI.    ISSUES TO BE REVIEWED ON APPEAL

To avoid unnecessary distractions, this Appeal Brief addresses only the following items from the issues listed in the Requester's Notice of Appeal of July 18, 2014.

A. Whether the Examiner erred by not adopting Requester's rejections of claims 1, 3-4, 6, 8, 10, 11, 15, 18-20, 22, 24-25, 27-29, 31, 32, 36-39, 41-43, 45, 50, 52-54, 56-58, 60-63, 67-71, 75, 77-93, 109-111, and 120-136 as obvious over Micron Technologies DDR SDRAM RDIMM Specification ("Micron") in view of U.S. Pat. App. Pub. No. 2006/0117152 ("Amidi").  This relates to what the RAN identifies as Ground 13.

B. Whether the Examiner erred by not adopting Requester's rejections of claims 1, 15, 28, 39, 52-54, 56-58, 60-63, 67-71, 75, 77-93, 109-111, and 120-136 as obvious over Micron in view of Amidi, U.S. Patent No. 6,209,074 ("Dell 2"), and the Double Data Rate (DDR)

Attorney Docket No. 19473-0099RX1
Reexam Control Nos.: 95/000,579, 95/000,578 and 95/001,339

SDRAM Specification, JEDEC Standard No. 79C, March 2003 ("JEDEC 79C").  This
relates to what the RAN identifies as Ground 19.

C.  Whether the Examiner erred by not adopting Requester's rejections of claims 52-54, 67-
71, 77-79, 82-84, and 87-89 as obvious over Micron in view of Amidi and U.S. Patent
No. 6,260,127 ("Olarig"). This relates to what the RAN identifies as Ground 21.

D.  Whether the Examiner erred by not adopting Requester's rejection of claim 56 as obvious
over Micron in view of Amidi, Olarig, and the article titled "HP Printer Memory
Explained" ("Memory Explained").  This relates to what the RAN identifies as Ground
22.

E.  Whether the Examiner erred by not adopting Requester's rejection of claims 56, 60, 61-
63, 80-81, 85-86, 90-91, 109-111, 127, and 131 as obvious over Micron in view of
Amidi.  This relates to what the RAN identifies as Ground 13.

## VII.  ARGUMENT

The technology at issue is a non-standard memory module that can nonetheless be used
by standard host systems.  The memory devices on a memory module are conventionally divided
into groups called ranks.  At the time the subject matter of the '912 patent was developed,
standard host systems accepted modules having a number of ranks specified by pertinent
industry standards.  *See* Amidi, at ¶¶ 8-11.  For example, Micron describes a standards-compliant
memory module that has two ranks.  *See* Micron, at p. 1 (described as "Dual rank").

There were advantages to building non-standard modules having four ranks, however,
because a four rank module could provide the same storage capacity as a standard, two rank
module while using lower-cost memory devices.  *See* Amidi, at ¶¶ 8-11. Amidi teaches the
desirability of using less-expensive, lower-capacity memory devices in place of more-expensive,
higher-capacity memory devices.  *See id.*  Amidi describes techniques for remapping control
signals to allow a non-standard memory module (having a larger number of lower-capacity
memory devices) to interface transparently with a memory controller designed to interface with a
standard memory module.  *See, e.g.,* Amidi, at ¶¶ 41, 52, 62-70.  Dell 2 describes control signal
remapping techniques for the same purpose.  *See* 2:40-52, 8:5-43.  In view of these teachings, a
person of ordinary skill in the art would have been motivated to apply the control signal
remapping techniques of Amidi and Dell 2 to the memory module of Micron to increase the

Attorney Docket No. 19473-0099RX1
Reexam Control Nos.: 95/000,579, 95/000,578 and 95/001,339

number of ranks in the module to realize the cost savings that Amidi describes. *See* Declaration of Christophoros Kozyrakis dated October 21, 2010 ("Kozyrakis Decl. I"), at ¶¶ 20, 25.

The RAN asserts that it would not have been obvious to use an input bank address signal to generate chip-select signals for a non-standard memory module. *See* RAN, at pp. 22-32. However, as discussed below, a person of ordinary skill applying the techniques of Amidi to Micron's memory module would have found it obvious, and even <u>necessary</u>, to use input bank address signals to generate chip-select signals for a rank-multiplying module. Further, Dell 2 explicitly uses an input bank address signal to generate control signals, further demonstrating that the use of the bank signal was obvious. Therefore, the Examiner erred by not adopting the rejections discussed below involving combinations of Micron, Amidi, and Dell 2, because it would have been obvious to use an input bank address signal to generate chip-select signals.

A. OVERVIEW OF THE TECHNOLOGY

The chip-select, row address, column address, and bank address signals that are presented to a standard-compliant memory module are strictly defined by the standard, as are the row address, column address, and bank address signals that are presented to a standard-compliant memory device, such as the DDR DRAM devices at issue in the '912 patent. *See, e.g.,* '912 patent, at 6:12-19; 6:55-63; 12:39-55; Amidi at ¶¶ 6-11.

A multiple-rank memory module will receive, for example, two chip-select signals, if it complies with a two-rank standard. *See* '912 patent, at 7:20-34; Amidi, at ¶ 36. In a standard module, each of the incoming chip-select signals is routed to a subset of the memory devices on the module that make up a rank. *See* Amidi, at ¶¶ 3-4. All of the memory devices that receive a particular chip-select signal constitute a rank, and each memory device receives only one chip-select signal. *See id.* The other address signals, in contrast, are received by all the memory devices. The chip-select signals determine which of the memory devices respond to the row, column, and bank addresses. *See id.*

Each of the claims recites, against this backdrop, a memory module that internally has more ranks than the number of incoming chip-select signals that the module receives, which is defined by a standard, with the same memory capacity. *See* '912 patent, at 4:43-5:5; 6:55-7:53. In the case of a two-rank standard and a four-rank module, for example, the amount of memory in each rank of the module is half the amount contemplated by the standard, because the module has twice as many ranks. *See id.* Thus, the incoming addresses have one more address bit than

4

is needed to address the actual memory on the module, and that extra address bit is used by the circuitry on the module, along with other data, to generate the additional chip-select signals needed for the additional ranks on the module. *See id.* at 12:13-25.

Standards-compliant modules and memory devices have one more feature that should be mentioned. The addresses are presented to the memory devices in two pieces, a row address is presented and then a column address is presented. Amidi, at ¶ 61. The two pieces are tied together by a bank and chip-select signal, which are presented with both the row and the column addresses, and allow the memory devices to determine, when a column address is received, which row address it goes with. Amidi, at ¶ 60-62. This allows a memory device to receive other addresses that separate a matching pair of row and column address, which allows certain throughput efficiencies to be realized.

B. **(GROUND 13) THE EXAMINER ERRED BY NOT ADOPTING REQUESTER'S REJECTIONS OF CLAIMS 1, 3-4, 6, 8, 10, 11, 15, 18-20, 22, 24-25, 27-29, 31, 32, 36-39, 41-43, 45, 50, 52-54, 58, 61-63, 67-71, 75, 77-93, 109-111, AND 120-136 AS OBVIOUS OVER MICRON IN VIEW OF AMIDI.**

The RAN (at pp. 49-52, 27-32) does not adopt the proposed rejections of the claims listed above on the basis that Amidi "does not teach generating CAS signals or chip select signal[s] in response to a bank address signal." RAN, at p. 29. However, obviousness does not require an explicit disclosure, and the feature relied on by the Examiner for patentability is in fact obvious over Micron in view of Amidi, for the reasons discussed below.

1. **Obviousness does not require an explicit teaching.**

The Supreme Court cautions against "overemphasis on the importance of published articles and the explicit content of issued patents" in an obviousness analysis. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 419 (2007). The Court notes that "[i]n many fields it may be that there is little discussion of obvious techniques or combinations, and it often may be the case that market demand, rather than scientific literature, will drive design trends." *Id.* "A person of ordinary skill is also a person of ordinary creativity, not an automaton." *Id.* at 420.

An obviousness analysis "need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR*, 550 U.S. at 418. Therefore, a feature, such as generating a chip-select signal using an input bank address signal, may be

Attorney Docket No. 19473-0099RX1
Reexam Control Nos.: 95/000,579, 95/000,578 and 95/001,339

obvious in view of Micron and Amidi, even if the feature is not specifically taught by Micron or Amidi.

> 2. **Micron in view of Amidi renders obvious using an input bank address signal to generate chip select signals for a rank-multiplying memory module.**

Amidi describes rank-multiplication techniques for creating a memory module that includes twice as many ranks as a standard module. *See* Amidi, at ¶¶ 12, 46-49. As explained in the Kozyrakis Declaration dated February 23, 2012, ("Kozyrakis Decl. III"), when a rank-multiplying memory module is designed using DDR memory devices, which have multiple banks, to be used with a system memory controller that is expecting a module with fewer ranks than are actually present on the module, it would have been obvious—and in fact <u>necessary</u>—for the designer to use one or more input bank address signals in the logic that generates the chip-select signals for the actual memory devices on the module. *See* Kozyrakis Decl. III, at ¶¶ 15-19 and 22-25. The necessity of using input bank address signals in generating chip-select signals would have been apparent to a person of ordinary skill attempting to implement the rank-multiplication techniques of Amidi. *See* Kozyrakis Decl. II, at ¶ 33; Declaration of Christophoros Kozyrakis dated February 13, 2013 ("Kozyrakis Decl. IV"), at ¶¶ 22-23. Thus, generating chip-select signals in response to input bank address signals would have been obvious, since it would have been required to produce a functional, standards-compliant memory module.

More specifically, it is necessary to generate chip-select signals using input bank address signals at column address time when the incoming row addresses have one more row address bit than the actual memory devices use (Case 1). *See* Declaration of Christophoros Kozyrakis dated August 28, 2011 ("Kozyrakis Decl. II"), at ¶ 33; Kozyrakis Decl. III, at ¶¶ 15-19. Generating chip-select signals using an input bank address signal is also necessary at column address time when the input bank addresses have one more bank address bit than the actual memory devices use (Case 2). *See* Kozyrakis Decl. III, at ¶¶ 22-25. Each of these cases is discussed in a different subheading below.

Attorney Docket No. 19473-0099RX1
Reexam Control No.: 95/000,579, 95/000,578 and 95/001,339

    a.   <u>Case 1: Row addresses have one more row address bit than the actual memory devices use.</u>

In a rank-multiplying module, when the incoming row addresses have one more row address bit than the actual memory devices use, the extra row address bit is used to generate chip-select signals instead of being used as an address bit. *See* Kozyrakis Decl. III, at ¶¶ 15-19; Amidi, at ¶¶ 43-44, 52. At the time the row address is provided, the generated chip-select signals specify a rank of memory devices to activate in preparation for a read command. *See id.*; Amidi, at ¶¶ 43-44, 52. At column address time, the incoming read command does not include the row address, and thus lacks the row address bit necessary to generate chip-select signals that identify the rank of memory devices activated earlier. *See id.*; Amidi, at ¶ 61. Consequently, to generate chip-select signals at column address time, the rank-multiplying module must store information from row address time and must later match the stored information to the read command. *See* Kozyrakis Decl. III, at ¶¶ 15-19; Kozyrakis Decl. II, at ¶ 33. Input bank address signals are necessary to determine which stored row address bit should be used to generate chip-select signals at column address time. *See* Kozyrakis Decl. III, at ¶ 19. It would have been obvious to generate chip-select signals in response to input bank address signals, because the input bank address signals <u>must</u> be used to identify the stored row address bit required to generate the chip-select signals. This process is described in detail below.

Amidi explains that a DDR read or write operation is a two stage process: "in a standard DDR memory module [first] the Row address needs to be provided with the proper control and command signals then <u>on a separate cycle</u>, the Column address needs to be provided <u>with its proper control and command signals</u> in order to read or write to that particular cell." Amidi, at ¶ 61. The control signals include chip-select signals that select an appropriate rank of memory devices. *See, e.g.,* Amidi, at Fig. 2 (control bus 204, chip select signals 220).

Because Amidi's rank-multiplied module has more ranks than the standard memory controller is expecting, some control signals from the memory controller must be remapped in order to select the appropriate rank. *See* Amidi, at ¶¶ 43-44, 52. At row address time, Amidi's CPLD 604 generates chip-select signals using a portion of a row address, in particular, the "highest address number Add(n)," which is not used by the physical memory devices. *See id.* The CPLD 604 of Amidi's rank-multiplying module generates the chip-select signals needed at row address time using the row address bit Add(n) and the input chip-select signals CS0 and

CS1.  *See id.* at 43-44; Fig. 5; *see also* 50-57; Fig. 6A (showing CPLD-generated chip select signals rcs0a, rcs1a, rcs2a, and rcs3a).

The row address bit that Amidi uses to generate chip-select signals is not available at column address time, however.  Paragraph 61 of Amidi reads as follows, emphasis added:

> It should be noted that the internal circuitry in the CPLD 410 for Row Address Decoding and Column Address Decoding are different. In particular, in the Column Address Decoding scheme, a unique decoding circuitry is required because **in a standard DDR memory module there is only one set of address lines** and memory organized as a matrix in such that **in order to access an x 4, x8 or x16 cell, two . . . addresses need[] to be provided. First, the Row address needs to be provided with the proper control and command signals then on a separate cycle, the Column address needs to be provided with its proper control and command signals in order to read or write to that particular cell**.

This teaches that if a row address bit is used to perform rank multiplication, as Amidi does, the memory controller will only present that address bit once to the CPLD of the module, namely, as part of the row address.  However, actual chip select signals for the actual devices on the rank-multiplying module will have to be presented twice, both with the row address and with the column address.  This is obvious, and it is necessary for any rank-multiplying module to function.

Thus, to provide the correct CPLD-generated chip select signals at column time, some information must be carried forward from row address time, when a RAS command occurs, to column address time, when a CAS command occurs.

This is explained in even greater detail in the Kozyrakis Declaration III.  Prof. Kozyrakis takes as an example a design in which the module is implemented using 256Mbit DDR2 devices and receives addresses for 512Mbit DDR2 devices.  The standard design has 8 banks, e.g., two ranks with four banks per device, and the rank-multiplying module has 16 banks, e.g., four ranks with four banks per device.   Prof. Kozyrakis points out:

> **CAS commands (e.g., read commands) to different banks with open rows can be interleaved arbitrarily.** Hence, every time the controller sends an activate, read or write command to the memory module, it must identify which bank should receive the command using the bank address and chip select signals.  By examining the bank address and chip select signals, the memory devices can differentiate and execute correctly the . . . sequences of commands issued by the memory controller. . . . **The chip select and bank address signals identify the proper bank to receive each CAS access so that data are read from the proper open row**. . . .  [Kozyrakis Decl. III, at ¶ 17 (emphasis added)]

Attorney Docket No. 19473-0099RX1
Reexam Control No.: 95/000,579, 95/000,578 and 95/001,339

He further points out, in reference to the example case:

> The designer of a rank-multiplying memory module that uses lower density devices than originally specified must ensure that the module can properly differentiate and correctly execute any sequence of commands issued by a memory controller. Specifically, the module must correctly identify the actual (physical) bank and open row that should execute any CAS command. . . . Every time the memory controller issues an activate, read or write command for the originally specified module, it identifies one of the 8 banks in the original module using the bank address and chip select signals. . . . . **The incoming bank address and chip select signals from the memory controller are not sufficient for the rank-multiplying module to identify one of its 16 banks for the CAS command**. [Kozyrakis Decl. III, at ¶ 18 (emphasis added)]

The designer will therefore use highest-order row address bit, e.g., $A_{13}$, to provide the necessary information, because the actual 256Mbit devices do not use that address bit:

> when the module receives a RAS command to a bank in a 512Mb device, the module will use the chip select and bank address signals provided by the memory controller to select one of the eight pairs of banks in the rank-multiplying module and address bit $A_{13}$ to select which of the two banks in the pair will receive the command and activate a row in that bank. When the module later receives a CAS command for the same bank in the 512Mb device, the module needs to send the CAS access to the same [physical bank]. However, the memory controller does not provide the $A_{13}$ bit during the CAS command in order to identify which of the two banks in the pair will execute the command. The obvious way to know which of the two banks has the proper row open is to **store the $A_{13}$ address bit of the last incoming RAS command for each one of the 8 banks in the original module and reuse it during subsequent CAS commands to identify the proper bank in the 256Mb devices for the commands**. [Kozyrakis Decl. III, at ¶ 19 (emphasis added)]

Even after storing a highest-order row address bit for each bank a standard module would have, logic of the rank-multiplying module would still need to determine which of the multiple stored row address bits to use for a given CAS command. *See* Kozyrakis Decl. III, at ¶¶ 18-19. The bank for a CAS command is conventionally matched with the bank for a corresponding RAS command using input bank address signals and chip-select signals:

> DDR devices, including DDR2 and DDR3 devices, have multiple banks. The memory controller may interleave commands to different banks in order to optimize performance. . . . **The CAS commands are matched with the correct RAS command by the memory device because both commands use the same bank address.**
>
> . . . . CAS commands (e.g., read commands) to different banks with open rows can be interleaved arbitrarily. Hence, every time the controller sends an activate,

9

Attorney Docket No. 19473-0099RX1
Reexam Control Nos.: 95/000,579, 95/000,578 and 95/001,339

read or write command to the memory module, **it must identify which bank
should receive the command using the bank address and chip select signals**.
. . . [Kozyrakis Decl. III, at ¶¶ 16-17 (emphasis added)]

Thus it would have been obvious to use the input bank address signals and chip-select
signals to identify the correct stored row address bit, i.e., the stored row address bit for the
particular bank indicated by the input bank address and chip select signals for the CAS
command. This selection of one of the stored row address bits simply uses input bank address
signals and chip-select signals in their standard function of matching the bank for a CAS
command with the same bank for the corresponding RAS command.

Having selected the correct stored row address bit, it would be obvious for Amidi's
CPLD 604 to generate chip-select signals at CAS time using the stored row address bit, in the
same manner that the row address bit was used to generate chip-select signals at RAS time. *See*
Amidi, at ¶¶ 41, 43, 44, 62; Fig. 5. These chip-select signals are generated <u>in response to input
bank address signals</u>, because the input bank address signals are used to select the previously-
stored "highest [row] address number Add(n)" needed to generate the chip-select signals
matching those generated at RAS time. In other words, the CPLD 604 would generate chip-
select signals based on the stored row address bit, which is selected based on the input bank
address signals from the memory controller. The capability to design and implement these
techniques would have been within the capacity of a person of ordinary skill. *See* Kozyrakis
Decl. IV, at ¶¶ 15-25.

Therefore, it would have been obvious in view of Micron and Amidi to generate chip-
select signals <u>in response to input bank address signals</u> from a memory controller.

       b.   <u>Case 2: Input bank addresses have one more bank address bit than the
actual memory devices use.</u>

The number of bank address bits used to address a memory module is set by industry
standards, such as the DDR-1 standard, the DDR-2 standard, and so on. *See* Kozyrakis Decl. I,
at ¶ 26. A standards-compliant memory module must operate within the constraints of the
applicable standard, using the number of input bank address bits set forth in the standard.

Amidi describes building a rank-multiplying module using DDR SDRAM memory
devices according to the DDR-1 standard. *See id*. DDR-1 memory devices and some DDR-2
memory devices use two-bit bank address fields. *See id.*; Micron, at p. 5 (showing two bank
address bits, B0 and B1). However, some newer DDR-2 memory devices had three-bit bank

Attorney Docket No. 19473-0099RX1
Reexam Control Nos.: 95/000,579, 95/000,578 and 95/001,339

address fields.  *See* Kozyrakis Decl. I, at ¶ 26; '912 patent at 13:1-11, Table 3B (describing memory devices with 8 internal banks, which would require three-bit bank address fields).  It would have been obvious to apply Amidi's rank-multiplication techniques to the DDR-2 devices of Micron (which have two-bit bank address fields) to emulate modules with newer DDR-2 memory devices having three-bit bank address bits, to achieve the cost savings that Amidi teaches at ¶¶ 8-11 of emulating newer devices with older devices.

If a rank-multiplying module uses memory devices having a 2-bit bank address field to emulate a module having a 3-bit bank address field, the rank-multiplying module has devices with half as many banks as a standard module but twice as many ranks.  *See* Kozyrakis Decl. III, at ¶ 22.  The emulator logic of the rank-multiplying module, e.g., Amidi's CPLD 604, needs to generate additional chip-select signals, since the rank-multiplying module requires more chip-select signals than the memory controller provides.  *See id.* at ¶¶ 22-25.  It would have been obvious to use the third bank address bit to generate the additional chip-select signals needed, as a direct input to the control signal remapping logic.  *See id.* at ¶ 25.  In this manner, the chip-select signals would be generated <u>in response to bank address signals</u>, because the additional, third bank address signal is used in the calculation of chip-select signal values by the emulation logic.

Accordingly, it would be obvious for a logic element implementing signal remapping, such as Amidi's CPLD 604, to generate chip-select signals in response to input bank address signals when incoming bank addresses have one more bank address bit than the actual memory devices use.

### 3.   <u>A person of ordinary skill would be capable of designing, implementing, and validating a rank-multiplying module.</u>

A person of ordinary skill in the art would be familiar with the standards, devices, and control techniques for memory modules, and would have two years of experience in the design of memory systems.  *See* Kozyrakis Decl. IV, at ¶¶ 12-14.  A person of ordinary skill would be capable of implementing a lower-cost, rank-multiplying module in a predictable manner.  *See id.* at 15-25; *see also* Kozyrakis Declaration II, at ¶¶ 18-19.  The steps of implementing such a module would have included developing a functional model for a design, testing the model, and verifying that the design performed according to a specification or standard.  *See* Kozyrakis Decl. IV, at ¶ 15-25.  The person of ordinary skill would have been able to detect and correct

errors in a design, including identifying the need to store row address data for later use at column address time as discussed in Section VII(B)(2)(a) above. *See id.* at ¶¶ 23-24. Thus the application of Amidi's techniques to the memory module of Micron, as discussed above, would have been obvious to a person of ordinary skill.

4. **Micron in view of Amidi renders obvious each of the features that the Examiner relied on for patentability.**

a. Independent claims 1, 15, 28, and 39 and their dependent claims are obvious.

The rejection of claims 1, 3-4, 6, 8, 10-11, 14-15, 18-20, 22, 24-25, 27-29, 31-32, 34, 36-39, 41-43, 45, 50, 61-63, 90-93, 109-111, and 120-136 should have been adopted because, as described above, Micron in view of Amidi renders obvious a "logic element [that] generates . . . chip-select signals of the output control signals in response at least in part to a bank address signal of the set of input control signals."

b. Independent claim 52 and its dependent claims are obvious.

With respect to claims 52-54 and 58, Amidi indicates that chip-select signals are determined based on the highest row address bit, Add(n), and input chip select signals CS0 and CS1. *See* Amidi, at ¶¶ 34-36, 40-44; Fig. 5. As discussed above, it would have been obvious for the chip-select signals generated at CAS time to be generated based on an input bank address to generate chip-select signals at CAS time that are consistent with the corresponding chip-select signals at RAS time. Amidi and Micron describe devices having 2-bit bank addresses (*see* Micron at p. 5; Amidi at Fig. 2), and so using multiple bank address signals—each bank address bit being a signal—would have been obvious.

Therefore, the rejection of claims 52-54 and 58 should have been adopted because Micron in view of Amidi render obvious a "logic element [that] responds to at least a row address bit of the at least one row/column address signal, the bank address signals, and the at least one chip-select signal by generating a first number of chip-select signals of the set of output control signals, the first number of chip-select signals generated by the logic element equal to the first number of ranks, and the at least one chip-select signal of the set of input control signals comprises a second number of chip-select signals equal to the second number of ranks."

Attorney Docket No. 19473-0099RX1
Reexam Control No.: 95/000,579, 95/000,578 and 95/001,339

      c.      <u>Independent claims 67, 77, 82, and 87 and their dependent claims are obvious.</u>

With respect to claims 67-71, 75, 77-79, 82-84, and 87-89, Requester notes that a chip-select signal is a signal used to select among different ranks of memory devices. *See* Kozyrakis Decl. III, at ¶¶ 17.  Each of the four chip-select signals that Amidi's CPLD 410 generates, e.g., cs0, cs1, cs2, and cs3, is therefore a "rank-selecting signal." *See* Amidi, at ¶¶ 34-36, 41-44; Figs. 3, 5.  Amidi's CPLD 410 receives two input chip-select signals, e.g., CS0 and CS1, and generates four output chip select signals to interface with a four rank module, thereby generating double the number of chip-select signals received.

Therefore, the rejection of 67-71, 75, 77-79, and 82-84 should have been adopted because Micron in view of Amidi render obvious a "logic element [that] responds to at least the bank address signals and the at least one chip-select signal of the set of input control signals by generating a number of rank-selecting signals of the set of output control signals that is greater than double or equal to double the number of chip-select signals of the set of input control signals." Similarly, the rejection of claims 87-89 should have been adopted because Micron in view of Amidi renders obvious a "logic element [that] responds to at least the bank address signals and the second number of chip-select signals of the plurality of input signals by generating the first number of chip-select signals of the plurality of output signals that is greater than double or equal to double the second number of chip-select signals of the set of input signals."

    **C.**  **(GROUND 19) THE EXAMINER ERRED BY NOT ADOPTING REQUESTER'S REJECTIONS OF CLAIMS 1, 15, 28, 39, 52-54, 56-58, 60-63, 67-71, 75, 77-93, 109-111, AND 120-136 AS OBVIOUS OVER MICRON IN VIEW OF AMIDI, DELL 2, AND JEDEC 79C.**

The RAN (at pp. 14-15, 80-82) declines to consider the proposed rejections of claims 1, 15, 28, 39, 52-54, 56-58, 60-63, 67-71, 75, 77-93, 109-111 on the grounds that the initial rejections of claim 52-118 were allegedly not clearly raised.  These rejections were raised in a clear and timely manner in Requester's Comments dated August 29, 2011 (at pp. 18-19 and Appendix L) and should have been considered by the Examiner.

The RAN (at p. 55, 49-52) states that the proposed rejections of claims 120-136 were not adopted for the same reasons as Ground 13, which in turn refers to Grounds 3-6.  The RAN (at p. 31) alleges that a reason for combining Amidi and Dell 2 was not provided, and also asserts that "citations to Dell 2 do not teach or suggest 'wherein the logic element generates gated column

Attorney Docket No. 19473-0099RX1
Reexam Control Nos.: 95/000,579, 95/000,578 and 95/001,339

access strobe (CAS) signals or chip-select signals of the output control signals in response at least in part to a bank address signal of the set of input control signals'." Nevertheless, the Requester <u>has</u> presented reasons for combining Micron and Amidi with Dell 2, and generating chip-select signals in response to bank address signals would have been obvious over this combination.

1.   **<u>The rejections based on Micron in view of Amidi, Dell 2, and JEDEC 79C were clearly raised and should have been considered.</u>**

The Patent Owner added claims 52-118 in a Reply dated July 5, 2011. Requester's Comments dated August 29, 2011 (at pp. 18-19 and Appendix L) proposed that claims 52-118 be rejected as obvious over Micron, Amidi, Dell 2, and JEDEC 79C. The Patent Owner amended claims 1, 15, 28, and 39 to incorporate the subject matter of claim 66, in a Response dated January 13, 2012. Requester's Comments dated February 23, 2012 (at pp. 4) proposed rejecting claims 1, 15, 28, and 39 for the same reasons as claim 66.

The RAN (at pp. 80-81) alleges that the rejections of claims 52-118 were not properly proposed:

> Requester 3 has not proposed a rejection of claim 66 as being obvious in view of a combination of Amidi, Micron, and Dell 2. . . . Any proposed rejection must be clearly presented in requests or comments. Requester 3's comments of August 29, 2011 [are] devoid of any discussion of a rejection of claim 66 based on the combination of Amidi, Micron, and Dell 2, as alleged by Requester 3.

The Requester respectfully disagrees with the Examiner's characterization of this requester's Comments of August 29, 2011, page 19 of which is reproduced below, in relevant part:

> D.  <u>Claims 52-118 Principally over Micron and Amidi</u>
>
> The new claims 52-118 are unpatentable under 35 U.S.C. § 103(a) because they are obvious in view of Micron and Connolly, as applied to the respective original independent claims, and further in view of Dell '074 and JEDEC 79C, as shown by the claim chart attached as Appendix L.

Although subheading D does not include an explicit recitation of a combination of references that includes Dell 2, the paragraph that follows immediately after the subheading and the claim chart attached as Appendix L do propose rejections of claim 66 using a combination of references that includes Dell 2. Thus the rejections of claims 52-54, 56-58, 60-63, 67-71, 75, 77-

Attorney Docket No. 19473-0099RX1
Reexam Control No.: 95/000,579, 95/000,578 and 95/001,339

93, and 109-111 should have been considered by the Examiner, as well as the rejection of claims 1, 15, 28, and 39 which depend on the allowability of claim 66.

### 2. **It would have been obvious to combine Dell 2 with Micron and Amidi.**

Amidi discusses remapping memory address signals for memory modules. *See* ¶¶ 41-44. As stated in Requester's Comments of August 29, 2011, at page 19, "[t]he person of ordinary skill would have been motivated to consider the teachings of Dell '074 because, like Amidi, Dell '074 describes techniques for address signal remapping."

As noted by the Supreme Court in *KSR*, "When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable  solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." 550 U.S. at 421.  The cost savings and market pressures explicitly described by Amidi at ¶¶ 8, 11 would have given a person of ordinary skill in the art good reason to consider and incorporate the teachings of Dell 2, which addresses the same issues of address signal remapping to allow a non-standard memory module to interface with a standard memory controller.

### 3. **Using input bank address signals to generate chip-select signals would have been obvious in view of Micron, Amidi, and Dell 2.**

Dell 2 provides further evidence that the techniques discussed in Section VII(B) above would have been obvious to a person of ordinary skill.  Specifically, Dell 2 explicitly teaches the need to store row address information for later use at column address time, and Dell 2 shows the need to use input bank address signals to select the correct stored row address information. *See* Dell 2, at ¶¶ 20-43.

In the system of Dell 2, the memory controller expects a memory module with two banks but the physical memory actually has four banks. *See id.*  This parallels the scenario of Amidi and the '912 patent: the system is expecting memory with two ranks, for example, but the physical memory has four ranks, for example.  An ASIC 24 of Dell 2 corresponds to the CPLD 604 of Amidi and performs control signal remapping .

Like Amidi, Dell 2 discloses using a row address bit to generate a required control signal that is not provided by the memory controller.  In Dell 2, the control signal needed is an additional bank address, e.g., BA1, because the input signals include fewer bank address signals than the memory requires. *See* Dell 2, at 8:20-28.  (The system of Dell 2, expecting two bank

memory, provides only one bank address signal, and the actual memory requires two bank address signals.) The BA1 signal generated by the ASIC 24 is needed at RAS time as well as at CAS time to allow the same bank to be used for both commands. *See* Dell 2, at 8:29:32.

The ASIC 24 of Dell 2 sets the BA1 signal equal to the highest-order bit of the row received at RAS time. *See id.* at 8:20:32. As discussed above, row addresses are provided with RAS commands, but are <u>not</u> provided again with later-issued CAS commands. *See* Kozyrakis Decl. III, at ¶ 19. Consequently, if a bit from a row address is needed to generate control signals at CAS time, the bit must be stored at RAS time and later used at CAS time. *See id.* Dell 2 explicitly teaches the need to store a row address bit from RAS time for later use at CAS time, and also teaches the need to store the row address bit for each bank that the memory controller may attempt to address:

> At RAS time, twelve addresses and one bank address (A0-A11 and [input bank address] BA0) are provided to the SDRAM 22 [the physical memory] in conjunction with the BA1 signal (available from the A12 system 12 address input). **The ASIC 24 needs to store the BA1 address applicable to each of the BA0 options. This allows the ASIC 24 to re-send the BA1 signal at CAS time to ensure that the correct bank is addressed.** [Dell 2, 8:33-40 (emphasis added)]

Since BA1 is made equal to the highest-order bit of the row address, storing the BA1 signal is equivalent to storing the highest-order row address bit. *See* Dell 2 at 8:29:32. This teaching of Dell 2—storing a row address bit from RAS time for later use at CAS time, for each addressable bank—is the same technique that would have been obvious to a person of ordinary skill in view of Micron in view of Amidi, as discussed in Section VII(B)(2)(a) above.

Also, because Dell 2 stores a BA1 bit for each of the multiple "BA0 options," the ASIC 24 of Dell 2 must select one of these stored BA1 bits to use at CAS time. *See* Dell 2, at 8:33-40. The input bank address signal BA0 would naturally be used to make this selection, because the ASIC 24 must select the stored BA1 bit for the BA0 option that matches the input bank address signal BA0 received with the CAS command. The bank address signal BA1 selected in this manner is thus determined <u>in response to the input bank address signal BA0</u>. This teaching of Dell 2—using an input bank address signal to select the proper stored row address bit needed at CAS time—is the same technique that would have been obvious to a person of ordinary skill in view of Micron in view of Amidi, as discussed in Section VII(B)(2)(a) above.

Attorney Docket No. 19473-0099RX1
Reexam Control Nos.: 95/000,579, 95/000,578 and 95/001,339

As shown above, Dell 2 teaches the techniques of storing a row address bits, and then using an input bank address signal to obtain the correct row address bit at CAS time. *See* Dell 2, 8:20-43. The Supreme Court notes in *KSR*, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *KSR*, 550 U.S. 398 at 417. Application of the techniques of Dell 2 to a rank-multiplying module, such as Amidi's, would have been within the capabilities of a person of ordinary skill. Kozyrakis Decl. IV, at ¶¶ 15-25.

Therefore, it would have been obvious, if the row address bit, instead of being used to generate a bank address signal as in Dell 2, were used to generate a chip-select signal as in Amidi, the input bank address signal BA0 would have been used by the logic (CPLD 604 of Amidi or ASIC 24 of Dell 2) in the same way, so that the correct signal would be sent at CAS time. Therefore, the Examiner should have adopted the rejections of claims 1, 15, 28, 39, 52-54, 56-58, 60-63, 67-71, 75, 77-93, and 109-111 over Micron in view of Amidi, Dell 2, and JEDEC 79C.

### D.   (GROUND 21) THE EXAMINER ERRED BY NOT ADOPTING REQUESTER'S REJECTIONS OF CLAIMS 52-54, 67-71, 77-79, 82-84, AND 87-89 AS OBVIOUS OVER MICRON IN VIEW OF AMIDI AND OLARIG.

The RAN (at pp. 57-58) declined to adopt the proposed rejections of claims 52-54, 67-71, 77-79, 82-84, and 87-89 over Micron in view of Amidi and Olarig on the basis that "the citations to Olarig do not teach or suggest the signal response in each of these amended claims," referring to generating chip-select signals in response to an input bank address signal. The rejection should have been adopted, however, because the combination of Micron, Amidi, and Olarig does render obvious generating chip-select signals in response to an input bank address signal.

In particular, Olarig teaches storing information received with a row address command for later use with information from a column address command. *See* Olarig, 22:49-54. In addition, Olarig explicitly teaches the use of an input bank address signal in remapping control signals. *See* Olarig at Fig. 6.

Like Amidi, Olarig teaches techniques for remapping input control signals so a memory module can be used with a memory controller so that is expecting a configuration of memory devices different from what is actually present. *See* Olarig 10:63-11:7, 11:30-40. Olarig

Attorney Docket No. 19473-0099RX1
Reexam Control Nos.: 95/000,579, 95/000,578 and 95/001,339

describes a circuit, referred to an RPM, that translates input control signals intended for SDRAM memory devices into output control signals that can be used by older EDO DRAM memory devices. *See id.* at 22:3-58. The input control signals used in the translation include bank address signals. *See id.* at 22:17-23; Fig. 6 (bank-select bits "BA0" and "BA1"). For example, the schematic diagram of FIG. 6 shows a bit mapping of an address translation during assertion of a RAS strobe and during assertion of a CAS strobe. *See* Olarig, at 3:39-42.



## FIG. 6

As shown in FIG. 6, an input bank address bit BA0 from the SDRAM Bank Activate Command Phase is mapped to row address bit A12 for the EDO during row address time of the EDO memory devices. *See* Olarig, 22:45-48. Input bank address bit BA1 <u>is latched internally</u> in the RPM <u>and later combined</u> with SDRAM-compliant column address bits (A9 to A0) to generate an EDO-compliant address during the column address time of the EDO. *See* Olarig, 22:49-54. During column address mapping, the previously-latched input bank address bit BA1 is mapped to EDO-compliant column address bit A10. *See* Olarig, 22:54-58. Thus, Olarig discloses generating EDO row address A12 and column address A10 in response to input bank address signals BA0 and BA1, respectively.

A person implementing a rank-multiplying module as taught by Amidi would have recognized the need to use information from row address time at column address time. *See* Kozyrakis Decl. II, at ¶ 33; Kozyrakis Decl. IV, at ¶¶ 22-23. Faced with this need, it would have been obvious for a person of ordinary skill to store the needed information between row address time and column address time, as Olarig describes. Further, Olarig's use of input bank address

Attorney Docket No. 19473-0099RX1
Reexam Control Nos.: 95/000,579, 95/000,578 and 95/001,339

signals in generating control signals demonstrates that using these signals in signal remapping was well known. Thus, Micron in view of Amidi, as applied above, and further in view of Olarig, would have rendered obvious generating chip-select signals in response to input bank address signals, and the proposed rejections of claims 52-54, 67-71, 77-79, 82-84, and 87-89 should have been adopted.

E.  **(GROUND 22) THE EXAMINER ERRED BY NOT ADOPTING REQUESTER'S REJECTIONS OF CLAIM 56 AS OBVIOUS OVER MICRON IN VIEW OF AMIDI, OLARIG, AND MEMORY EXPLAINED.**

The RAN declined to adopt the proposed rejections of claim 56 over Micron in view of Amidi, Olarig, and Memory Explained on the basis that "the citations to Memory [E]xplained do not teach or suggest the signal response required of amended claim 56," referring to generating chip-select signals in response to a bank address signal (*see* RAN at pp. 58-59).

Requester submits that generating chip-select signals in response to an input bank address signal would have been obvious for at least the same reasons set forth above for Micron in view of Amidi (Section VII(B) above) and Micron in view of Amidi and Olarig (See Section VII(C) above). Therefore, the proposed rejection of claim 56 should have been adopted.

F.  **(GROUND 13) THE EXAMINER ERRED BY NOT ADOPTING REQUESTER'S REJECTIONS OF CLAIMS 56, 60, 61-63, 80-81, 85-86, 90-91, 109-111, 127, AND 131 AS OBVIOUS OVER MICRON IN VIEW OF AMIDI.**

The RAN (at page 34) declined to adopt the rejections of claims 56 and 60 over Micron in view of Amidi on the grounds that Amidi did not disclose generating chip-select signals in response to input bank address signals. However, as discussed in Section VII(B) above, Micron in view of Amidi renders this feature obvious.

The RAN (at page 34) also declines to adopt the proposed rejection of claims 56 and 60 on the basis that "Amidi does not disclose that the SPD 414 device stores data that characterizes the plurality of DDR memory devices as having one or more attributes that are different from the one or more attributes of the plurality of DDR memory devices." Claims 61-63, 80-81, 85-86, 90-91, 109-111, 127, and 131 recite features similar to claims 56 and 60, although the RAN does not specifically discuss their features with respect to the rejection over Micron in view of Amidi. The proposed rejections of all of these claims should have been adopted, because the feature in

Attorney Docket No. 19473-0099RX1
Reexam Control Nos.: 95/000,579, 95/000,578 and 95/001,339

question—characterizing memory devices different from their actual attributes—is compelled by the motivation leading to the design of the lower-cost, rank-multiplying module in the first place.

Data is stored in the SPD of a memory module so that a system using the memory module can use the data to determine the characteristics of the memory devices and the module. For example, Amidi explains that "the SPD 414 is a simple I2C interface EEPROM to hold information regarding memory module for BIOS during the power-up sequence." Amidi, at ¶ 40. This background is also explained in the '912 patent. *See* 9:24-37.

Amidi addresses the problem of the incompatibility of four rank memory modules with systems designed to accept two rank memory modules. *See* Amidi, at ¶¶ 8-11. Amidi expressly states that a need "exists for a <u>transparent</u> four rank memory module fitting into a memory socket having two chip select signals routed." *See* Amidi, ¶ 11 (emphasis added). The IEEE 100 Dictionary provides a relevant definition of "transparent" in the following terms:

> **transparent (1)** . . . **(B)** To perform in a manner that is invisible to, and of no concern to a user.  [IEEE 100 Dictionary, p. 1210]

In this case, the "user" of the memory module is the memory controller or other system component that is using the memory module to read and write data.

Amidi makes its rank-multiplying module transparent to the memory controller by "<u>emulating</u> a two rank memory module with a four rank memory module." Amidi, at ¶ 62 (emphasis added).  Amidi also refers to the technique as "<u>simulating</u> a two rank memory module using a four rank memory module on one memory socket." *Id.* at claim 20 (emphasis added). The plain meaning of "emulating" and "simulating" is that the four rank module acts <u>as if it were a two rank memory module</u>.  One of ordinary skill would have understood Amidi's module— which has a configuration of devices and ranks that emulates a standard module having a different configuration of devices and ranks—to appear to have the attributes of the standard module, and that doing so necessarily includes carrying the deception through to the data reported to the host system by the module's SPD.  To act as a two rank module, Amidi's SPD 414 would be required to store data indicating that the memory module had two ranks, even though the memory module actually had had four ranks.  *See* Kozyrakis Decl. IV, ¶ 32. Otherwise, Amidi's module could not be used interchangeably with standard two rank modules. *See id.*; Kozyrakis Decl. II, at ¶¶ 34, 18(f).  Thus, by disclosing a "transparent four rank memory module," Amidi explicitly teaches that its memory module should have the feature in question,

Attorney Docket No. 19473-0099RX1
Reexam Control No.: 95/000,579, 95/000,578 and 95/001,339

storing data that characterizes the module as having the features the system expects rather than the features the module actually has, which is required to ensure that the module performs signal remapping and emulation in a manner "that is invisible to" the system that uses the module.

Further, one of ordinary skill would readily appreciate that Amidi's SPD 414 characterizes Amidi's module 400 as having only two ranks, even though the module 400 actually has four ranks, because, in order to function, the module 400 must receive the same control signals provided to two rank modules. *See* Amidi, at ¶¶ 10-12, 37, 43. For example, Amidi's four rank module 400 is designed to operate using only two input chip-select signals, the same number provided to two rank memory modules. *See id.* Thus, one of ordinary skill would have understood Amidi's four rank module 400 to include data in the SPD 414 causing the module 400 to appear as a two rank module in order to elicit the control signals provided to a two rank memory module.

Moreover, even absent the teaching of Amidi, it would have been obvious to a person of ordinary skill that a module emulating a configuration that is different from the actual configuration, should have a SPD device that reports the configuration being emulated, not the actual configuration. As explained in paragraph 34 of the Kozyrakis Decl. II (emphasis added):

> It is important to note that the information stored in the EEPROM element of the SPD device in the lower cost module is strictly defined by the goal of the lower cost module design. **Since the new, lower cost module that uses twice as many lower density devices must operate interchangeably with the originally desired module, the SPD device in the lower cost module must contain exactly the same configuration as the originally desired module.** If any bit of configuration information in the SPD device of the lower cost module differs from the configuration information in the SPD device of the originally desired module, there may be a memory controller that is considered compatible with originally desired module but not with the lower cost module. Hence, to meet the goal of the lower cost module design, the configuration information in the SPD device of the lower cost module must describe the number of banks and ranks of the originally desired module and not the actual number of ranks and banks the lower cost module actually has. A POSITA would understand SPD devices from the JEDEC configurations and would recognize that **the lower cost devices can be used interchangeably with the originally desired module if and only if the SPD of the lower cost module characterizes the lower cost module by the attributes of the originally desired module**. The lower cost module would still operate correctly because the logic element translates the control signals provided by the memory controller to the control signals needed by the lower cost device.

Attorney Docket No. 19473-0099RX1
Reexam Control No.: 95/000,579, 95/000,578 and 95/001,339

Having designed a new module with a configuration of devices and ranks that emulates a standard module with a different configuration of devices and ranks, a person of ordinary skill in the art would have been strongly motivated to program the SPD 414 of Amidi with information that informs the memory controller of the configuration of the desired module rather than that of the actual module. *See* Kozyrakis Decl. II, at ¶ 18(f).

Therefore, the proposed rejections of claims 56, 60, 61-63, 80-81, 85-86, 90-91, 109-111, 127, and 131 in view of Micron and Amidi should have been adopted.

## VIII.   CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, the Examiner erred in not adopting Requester's proposed rejections of claims 1, 3-4, 6, 8, 10, 11, 15, 18-20, 22, 24-25, 27-29, 31, 32, 36-39, 41-43, 45, 50, 52-54, 56-58, 60-63, 67-71, 75, 77-93, 109-111, and 120-136 discussed above.  Requester respectfully requests that the Board reverse the non-adoption of these rejections based on the grounds set forth previously.

The fee in the amount of $2000 for filing a brief in support of an appeal in an *inter partes* reexamination under 37 C.F.R. 41.20(b)(2)(ii) is being paid concurrently herewith on the Electronic Filing System (EFS) by way of Deposit Account authorization.  Please apply any charges or credits to Deposit Account No. 06-1050.

Respectfully submitted,

Date:  September 30, 2014                      /Nicholas Jepsen/
                                               Nicholas Jepsen
                                               Reg. No. 59,567

**Customer No.: 26171**
Fish & Richardson P.C.
Tel:  (202) 783-5070 | Fax:  (202) 783-2331