1   QUINN EMANUEL URQUHART & SULLIVAN, LLP

2   David Perlson (CA Bar No. 209502)            Catlin Williams (CA Bar No. 336464)
    davidperlson@quinnemanuel.com               catwilliams@quinnemanuel.com
3   Jonathan Tse (CA Bar No. 305468)            555 Twin Dolphin Drive, 5th Floor
    jonathantse@quinnemanuel.com                Redwood Shores, CA 94065
4   50 California Street, 22nd Floor            Telephone: (650) 801-5000
    San Francisco, CA 94111                     Facsimile: (650) 801-510
5   Telephone: (415) 875-6600
    Facsimile: (415) 875-6700
6
7   Jared Newton (admitted *pro hac vice*)
    jarednewton@quinnemanuel.com
8   Deepa Acharya (CA Bar No. 267654)
    deepaacharya@quinnemanuel.com
9   Sandy Shen (admitted *pro hac vice*)
    sandyshen@quinnemanuel.com
10  1300 I Street NW, Suite 900
    Washington, D.C. 20005
11  Telephone: (202) 538-8000
    Facsimile: (202) 538-8100
12

13  *Attorneys for Defendant Google LLC*

14
                    UNITED STATES DISTRICT COURT
15
                   NORTHERN DISTRICT OF CALIFORNIA
16
                           OAKLAND DIVISION
17

18
19  NETLIST, INC.,                              Case No. 4:09-CV-05718-SBA

20      Plaintiff,                              **DEFENDANT'S REPLY IN SUPPORT
                                                OF ITS MOTION TO STRIKE
21      v.                                      PLAINTIFF'S NEW ASSERTION OF
                                                CLAIM 16 AND NEW DATES FOR
22  GOOGLE LLC,                                 PRIORITY AND CONCEPTION THAT
                                                WERE NOT IN ITS ORIGINAL PATENT
        Defendant.                              LOCAL RULE 3-1 DISCLOSURES**
23

24                                              **JUDGE**: Hon. Saundra Brown Armstrong
                                                **HEARING DATE**:  September 8, 2021
25                                              **TIME**:  2:00 PM

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION............................................................................................1

II.  ARGUMENT................................................................................................1

    A.  The Circumstances of this Case Give Rise to Significant Prejudice.......................1

    B.  Netlist Did Not Act Diligently Before or After the Stay..........................................5

    C.  The Court Did Not Authorize Netlist to Assert a *New Claim*................................7

    D.  The Court Should Strike Netlist's New Priority and Conception Dates.................10

III.  CONCLUSION...........................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Acer, Inc. v. Tech. Props. Ltd.*,
  No. 5:08-cv-00877, 2011 WL 1838768 (N. D. Cal. May 13, 2011).....................6, 7, 8, 10

*Advanced Micro Devices, Inc. v. LG Electronics, Inc.*,
  No. 14-cv-01012-SI, 2017 WL 732896 (N.D. Cal. Feb. 24, 2017)........................2, 7, 8, 9

*Capella Photonics, Inc. v. Cisco Systems, Inc.*,
  No. 14-cv-03348-EMC, 2019 WL 2359096 (N.D. Cal. June 4, 2019)............1, 2, 4, 5, 6, 8

*Facebook, Inc. v. Blackberry Ltd.*,
  No. 18-cv-5434, 2020 WL 864934 (N.D. Cal. Feb. 13, 2020) ........................................1

*GoPro, Inc. v. C&A Marketing, Inc.*,
  No. 16-cv-03590, 2017 WL 2591268 (N.D. Cal. Jun. 15, 2017) ...................................3

*Karl Stroz Endoscopy-AM., Inc. v. Stryker Corp.*,
  No. 14-cv-876, 2016 WL 2855260 (N.D. Cal. May 13, 2016) ......................................1

*MyGo LLC v. Mission Beach Indus., LLC*,
  2018 WL 3438650 (S.D. Cal Jul. 17, 2018) ...................................................................9

*Nuance Comms., Inc. v. ABBYY Software House*,
  No. 08-cv-2912, 2012 WL 2427160 (N.D. Cal. Jun. 26, 2012) ......................................7

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) .................................................................................5, 7

*OpenTV, Inc. v. Apple Inc.*,
  No. 15-cv-02008-EJD-NC, 2016 WL 3196643 (N.D. Cal. Jun. 9, 2016).........................3

*Straight Path IP Grp., Inc. v. Apple Inc.*,
  No. 16-cv-3582, 2017 WL 3967864 (N.D. Cal. Sept. 9, 2017) ......................................8

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*,
  278 F.R.D. 505 (N.D. Cal. 2011) ...............................................................................5

*Twilio, Inc. v. TeleSign Corp.*,
  No. 16-cv-6925, 2017 WL 3581186 (N. D. Cal. Aug. 18, 2017).....................................1

*WesternGeco LLC v. ION Geophys. Corp.*,
  889 F.3d 1308 (Fed. Cir. 2018) ..................................................................................3

## **Rules and Regulations**

Local Rule 3-1...................................................................................................................8

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE

## <u>Other Authorities</u>

P.L.R. 3..............................................................................................................................passim

## I.     INTRODUCTION

Netlist's opposition is predicated on arguments that find no support in the factual record, the Patent Local Rules, or applicable legal precedent.  Netlist's arguments should be rejected and the Court should grant Google's Motion to Strike.

## II.    ARGUMENT

### A.     The Circumstances of this Case Give Rise to Significant Prejudice

Netlist first argues that there is no prejudice because this case is in an "early stage."  *See* Opp. at 12.  That argument ignores the reality of the case and the fact that Google invested time and resources over the course of *ten years* challenging the '912 Patent through re-examination. Dkt. 115 at 2-3.  As Judge Chen recognized in *Capella*, these circumstances give rise to a unique prejudice that would result if the plaintiff is permitted to assert new claims after the conclusion of a post-grant review proceeding.  *See Capella Photonics, Inc. v. Cisco Systems, Inc.*, No. 14-cv-03348-EMC, 2019 WL 2359096, at *5 (N.D. Cal. June 4, 2019) ("Defendants have spent considerable time and resources litigating this case and it would be highly prejudicial to force Defendants to engage piecemeal in a whole new round of litigation.").  Indeed, one could characterize *Capella* as "in an early stage" because the stay had not been lifted and discovery had not yet started.  *See id.* at *1.  But that did not change the fact that allowing the plaintiff to assert new claims that were not in its original contentions would have been "highly prejudicial" to the defendant.  *See id.* at *5.

Accordingly, *Capella* directly contradicts Netlist's argument that "Google cannot point to a single case where the court denied [a] motion for leave to amend infringement contentions where there the case was still at such an early stage."  Opp. at 12.  *Capella* involved the same procedural posture as this case and Judge Chen denied leave to assert new claims based on prejudice.  *See* 2019 WL 2359096, at *1.[1]  Netlist does not attempt to challenge the rationale underlying Judge

---

[1]  Conversely, none of the cases Netlist relies on for its "early stages" argument involved a stay during which the defendant invested significant time and resources in re-examination or another post-grant review proceeding.  *See Twilio, Inc. v. TeleSign Corp.*, No. 16-cv-6925, 2017 WL 3581186, at *5 (N.D. Cal. Aug. 18, 2017) (no stay); *Facebook, Inc. v. Blackberry Ltd.*, No. 18-cv-5434, 2020 WL 864934 (N.D. Cal. Feb. 13, 2020) (no stay); *Karl Stroz Endoscopy-AM., Inc. v.*

1   Chen's decision—that the defendants had litigated the case for many years through *inter partes*

2   review and that allowing the plaintiff to assert new claims "would effectively start this case anew."

3   *See id.* at *5; Opp. at 14.  Instead, Netlist argues that the rationale is not applicable to this case

4   because claim 16 was subject to re-examination and because Netlist could not have asserted claim

5   16 in its original contentions.  Both arguments should be rejected.

6        ***First***, Netlist's argument that Google was part of a "Joint Defense Group" that collectively

7   challenged claim 16 through re-examination is litigation-created fiction.  *See* Opp. at 12-13; Mot.

8   at 8-9.  The record shows that *Inphi* is the only party that sought re-examination of claim 16—

9   Google and SMT did not.  *See* Dkt. 102 at 3.  The ostensible reason that Inphi challenged claim

10  16, along with every other claim of the '912 Patent, is because Netlist had not yet identified

11  specific asserted claims in the related district court action.  Google, by contrast, had received

12  Netlist's identification of asserted claims and relied on that identification when deciding which

13  claims to challenge.  *See* Dkt. 152-6 at 1; Dkt. 153-6 at 1.  Because Netlist had not asserted claim

14  16, Google had no reason to challenge it.  *See id.*

15       The re-examination record also shows that Google filed its request *six months after Inphi*.

16  *See id.*  As Google explained in its opening motion, it makes no sense that Google would try to

17  influence Inphi's challenge to claim 16, but then decide not to challenge that claim in its own

18  request filed months later.  *See* Mot. at 8.  Netlist has no response to that point.  *See* Opp. at 12-13.

19  Nor does Netlist address the fact that Google could not have challenged claim 16 even if it wanted

20  to because the PTO merger order limited Google's appeal rights to the specific arguments it had

21  raised in its own request.  *See* Mot. at 8-9; Dkt. 153-8 at 4.  The merger order makes clear that

22  Inphi, SMT, and Google were not part of some coordinated effort to challenge claim 16.  *See id.*  It

23  shows that the PTO *sua sponte* merged the proceeding for purposes of efficiency while limiting

24  each party to the arguments raised in its respective request.  *See id.*

25       Finally, the fact that Google shared a common interest with Inphi and SMT—who had also

26  been sued by Netlist—does not show that Google influenced Inphi's challenge of claim 16.  *See*

27  _____

28  *Stryker Corp.*, No. 14-cv-876, 2016 WL 2855260, at *1-2 (N.D. Cal. May 13, 2016) (PTO denied or terminated IPR petitions); *AMD*, 2017 WL 732896, at *2 (stay unrelated to post-grant review).

1  *WesternGeco LLC v. ION Geophys. Corp.*, 889 F.3d 1308, 1321 (Fed. Cir. 2018).  Netlist argues

2  that Google has "refused to produce" evidence regarding any relationship with Inphi and Smart.

3  Opp. at 13, n. 9.  That argument ignores the fact that Google produced ███████████████████

4  ████████████████████████████████████████████████████████████████████████████████████

5  ████████████████████████.  Dkt.169-7.[2]  Netlist also ignores the fact that it issued subpoenas

6  to Inphi, Smart, and their law firms regarding any alleged communications with Google related to

7  the re-examination proceedings.  Those requests have apparently come up empty, which further

8  confirms that there was no coordination among Google, Inphi, and SMT.[3]

9        With no support for its coordination theory, Netlist asks the Court to penalize Google for

10  the "strategic decision" to rely on Netlist's identification of asserted claims when filing its request

11  for re-examination.  *See* Opp. at 12, 13.  According to Netlist, Google should have anticipated that

12  Netlist would seek to assert claim 16 later in the case, and thus should have challenged the claim

13  in its request.  *Id*.  That argument contravenes the purpose of the Patent Local Rules, which is to

14  "ensure early crystallization of the parties' theories, and specifically, to place the burden on the

15  plaintiff to quickly decide on and disclose the contours of its case."  *OpenTV, Inc. v. Apple Inc.*,

16  No. 15-cv-02008-EJD-NC, 2016 WL 3196643, at *3 (N.D. Cal. Jun. 9, 2016).  Under that

17  principle, a defendant that receives the plaintiff's identification of asserted claims is justified in

18  understanding that they will govern the scope of the litigation.  *Id*.  Indeed, courts in the Northern

19  District have explained that it is ***prudent*** for a defendant to wait to seek post-grant review until

20  after receiving the plaintiff's identification of asserted claims.  *See GoPro, Inc. v. C&A Marketing,*

21  *Inc.*, No. 16-cv-03590, 2017 WL 2591268, at *5 (N.D. Cal. Jun. 15, 2017) (discussing cases).

22  Accordingly, there was no reason for Google to challenge a claim that had not been asserted

23

24

_____

25  [2]  Google has not identified any communications with SMT.

26  [3]  Netlist points to a ███████████████████████████████████████████████████.  *See* Opp. at 2; Dkt. 169-16. ███████████████████

27  ██████████████████████████████████████████████████████████████, is unrelated to the

    alleged invention of the '912 Patent, and occurred in connection with ██████████████████████

28  ██████████████████████████.  *See id*.

1   against it.  *See Capella*, 2019 WL 2359096 at *5.[4]

2   **Second**, like the plaintiff in *Capella*, Netlist does not offer a legitimate basis for why it

3   could not have asserted claim 16 prior to the stay.  *See id*. at *2.  Instead, Netlist has manufactured

4   an argument that claim 16 reads on one discrete—and optional—mode of the DDR4 specification

5   called per DRAM addressability ("PDA").  *See* Opp. at 9-10.[5]  A cursory review of claim 16 and

6   the operation of PDA shows that Netlist's argument is meritless.  Claim 16 requires that a

7   "command signal is transmitted to **only one** DDR memory device **at a time**."  *See* Dkt. 155-5 at

8   claim 16.  PDA mode, however, transmits command signals to **all** of the DDR memory devices in

9   a given rank **at the same time**.  *See* Ex. A at 12.  The operation is shown in the figure below,

10  where the blue arrow represents a command signal transmitted to all of the device in Rank-0 at the

11  same time:



19  *Id*.

20  PDA mode dictates which of the devices (*e.g.*, those in green) will get programmed by the

21  command signal, but the signal is still transmitted to—and held in memory at—**all** of the devices

22  at the same time.  *See id*. at 11-12.  Thus, Netlist's argument that claim 16 is somehow unique to

23  PDA mode is meritless, and Netlist is left with no explanation of why it could not have asserted

24  _____

25  [4]  Netlist's argument that "Google does not identify any arguments it would have made" against
    claim 16 is irrelevant.  *See* Opp. at 13 (emphasis omitted).  The point is that Google had no reason
26  to challenge claim 16 in the first place.  And without a reason to challenge the claim, Google
    should not be penalized by Inphi's failure to invalidate it.

27  [5]  Netlist primarily addresses PDA mode in the context of alleged diligence, but also cites it as a
    basis for distinguishing *Capella*.  *See* Opp. at 14.  Accordingly, Google addresses PDA mode here
28  and incorporates its analysis into Section II.A.2 *infra*.

1  claim 16 prior to the stay.  *See Capella*, 2019 WL 2359096 at *5.[6]

2  [redacted]

3  [redacted]

4  [redacted]

5  [redacted]

6  [redacted]

7  [redacted]

8  [redacted]

9  [redacted]

10 [redacted] That

11 undercuts any argument that Netlist somehow invented PDA in the '912 Patent.  *Id.*

12      Accordingly, Netlist has failed to demonstrate a lack of prejudice that would result from its

13 new assertion of claim 16.  The facts and posture of *Capella* are directly analogous to those here,

14 and the result should be the same.  2019 WL 2359096 at *5.

15      **B.**    **Netlist Did Not Act Diligently Before or After the Stay**

16      Even if there was no prejudice to Google, Netlist's failure to exercise diligence in asserting

17 claim 16 would be an independent basis to strike the claim.  *See O2 Micro Int'l Ltd. v. Monolithic*

18 *Power Sys., Inc.*, 467 F.3d 1355, 1368 (Fed. Cir. 2006).  With respect to the time period before the

19 stay, Netlist's arguments are predicated on the assumption that claim 16 is directed to PDA mode.

20 *See* Opp. at 8-9.  That assumption is unfounded for the reasons discussed above, *see supra* at 5,

21 and therefore Netlist has failed to meet its burden to show why it could not have asserted claim 16

22 at the outset of the case.  *Capella*, 2019 WL 2359096, at *2-3; *Trans Video Elecs., Ltd. v. Sony*

23 *Elecs., Inc.*, 278 F.R.D. 505, 508 (N.D. Cal. 2011), *aff'd*, 475 F. App'x 334 (Fed. Cir. 2012).

24      Netlist also attempts to flip the burden and require Google to explain why the products it

25 used prior to the stay infringe claim 16.  Opp. at 10.  That is not how the local rules work; it is the

---

[6] To the extent Netlist contends that PDA mode meets claim 16 because the command signal propagates to each device sequentially, [redacted] [redacted].  *See* Ex. C at 3-7.

1   party seeking to assert new claims that bears the burden to establish good cause, including a lack

2   of prejudice and diligence.  P.L.R. 3-6; *Capella*, 2019 WL 2359096, at *3 ("The burden of

3   establishing diligence resides with the party seeking to amend.").  Furthermore, Google ***has***

4   identified products it used at the time of the stay that operate in the same way as current products

5   with respect to the limitation of claim 16.  *Supra* at 5, n. 6.  ███████████████████

6   █████████████████████████████████████████████████████████████████████████

7   █████████████.  *Compare* Ex. A at 9-12 *with* Ex. C at 4-7.  Netlist has failed to demonstrate

8   how the old and new products operate any differently in that regard.  Opp. at 10.

9         With respect to the time period after the stay, Netlist offers no justification for why it

10  waited more than three months after the stay was lifted, and nearly a year after the Federal Circuit

11  affirmed the re-examination decision—to assert claim 16 of the '912 Patent.  *See* Opp. at 8-9.  It is

12  clear that Netlist did not need discovery from Google to accuse DDR4 products because—as

13  Netlist admits—it prepared and served infringement allegations against those products prior to

14  receiving any such discovery.  *See* Opp. at 9; Dkt. 169-9.  Indeed, Netlist's DDR4 allegations are

15  based exclusively on public JEDEC specifications that were available before the stay was lifted.

16  *See id.*  Thus, Netlist could have notified Google and the Court that it intended to assert claim 16

17  before the stay was lifted or immediately thereafter.  *See* Mot. at 10-11.  Netlist did not do that.

18  *See id.*  Instead, it remained silent for three months, without any indication that it intended to

19  broaden the scope of the litigation by asserting a new claim.  *See id.*

20        The case law Netlist relies on is thus distinguishable.  In *Acer*, the declaratory-judgment

21  defendant "promptly notified" the plaintiffs of its intent to amend and "was prepared to serve its

22  amended contentions on the same day that the Reexamination Certificate issued."  *See Acer, Inc.*

23  *v. Tech. Props. Ltd.*, No. 5:08-cv-00877, 2011 WL 1838768, at *3 (N. D. Cal. May 13, 2011).  In

24  *AMD*, the plaintiff undertook "a labor-intensive analysis, whereby it worked with public sources

25  and cross-checked those sources against information from [the defendant] to most accurately

26  supplement the infringement contentions."  *See Advanced Micro Devices, Inc. v. LG Electronics,*

27  *Inc.*, No. 14-cv-01012-SI, 2017 WL 732896, at *3 (N.D. Cal. Feb. 24, 2017).  The plaintiff also

28  "contacted [the defendant] once the stay was lifted and sought to establish a plan for amending its

1   infringement contentions." *See id*.  Netlist did not do any of those things.  *See* Opp. at 8-9.  Netlist

2   never notified Google or the Court that it intended to assert claim 16.  *See* Mot. at 11.  Netlist

3   clearly was not prepared to assert claim 16 after the stay was lifted.  *See id*.  And Netlist has not

4   identified any detailed investigation it undertook that would justify waiting months to assert the

5   claim.  *See* Opp. at 8-9.[7]

6       The cases Google relied upon are much more on point because they involved plaintiffs

7   who, like Netlist, failed to justify a months-long delay.  *See, e.g., O2 Micro Int'l Ltd. v. Monolithic*

8   *Power Sys., Inc.*, 467 F.3d 1355, 1367-68 (Fed. Cir. 2006) ("Given O2 Micro's delay in moving to

9   amend its infringement contentions and its lack of adequate explanation for this delay, we

10  conclude that the district court did not abuse its discretion in finding a lack of diligence and

11  therefore a lack of 'good cause.'").

12  **C.    The Court Did Not Authorize Netlist to Assert a *New Claim***

13      Netlist does not identify a single instance in which it requested, or the Court granted, leave

14  to assert claim 16 of the '912 Patent.  *See* Opp. at 4-6; Mot. at 10-11.  Netlist is therefore left to

15  generalize the Court's authorization as somehow granting leave for something Netlist never asked

16  to do.  *See* Opp. at 4-6.  That argument cannot be reconciled with Netlist's statements to the Court

17  or the letter and spirit of the Patent Local Rules.  *See* Mot. at 14-15.

18      ***First***, Netlist's purported reason for amending its infringement contentions was to account

19  for new ***products*** that Google began using during pendency of the stay.  *See* Dkt. 115 at 3.  Netlist

20  never told the Court that it also intended to assert a new ***claim***.  *Id*.  Indeed, Netlist effectively

21  concedes that point by citing to statements in the Joint CMC Statement where it asked for

22  discovery into Google's use of ***memory modules***, not Google's purported use of any new claim or

23  technology.  *See* Opp. at 4.  Netlist also argues that "Google did not oppose the request to amend

24  infringement contentions based on this rationale"—and that is exactly right.  *Id*.  Consistent with

25

26  ─────────────────
    [7]  Netlist also cites *Nuance Comms., Inc. v. ABBYY Software House*, No. 08-cv-2912, 2012 WL

27  2427160 (N.D. Cal. Jun. 26, 2012), but the diligence finding in that case was predicated on the
    fact that the defendant had only recently acquired the company manufacturing the products at

28  issue.  *Id*. at *2.  The court denied leave to amend for existing products.  *Id*. at *1-2.

1   Netlist's statements in the Joint CMC Statement, Google understood that Netlist would assert the

2   original claims—to the extent they survived re-examination—against new products.  *Id.*  Google

3   had no reason to think that Netlist would seek to add claim 16 because Netlist never told the Court

4   or Google that it intended to do so.  *See* Mot. at 10-11.  Had Netlist done so, Google would have

5   objected given the prejudice that would result from restarting the litigation and rendering the stay

6   meaningless.  *See Capella*, 2019 WL 2359096, at *5.

7        In view of these facts, Netlist's case law is distinguishable.  In every case where a party

8   sought leave to amend its Patent Local Rule 3-1 disclosures, it specifically identified the

9   amendments it intended to make—including an identification of new products or an identification

10  of new claims.  *See, e.g.*, *AMD*, 2017 WL 732896, at *2; *Acer*, 2011 WL 1838768, at *1.  Netlist's

11  request for leave was limited to new products—not new claims—and therefore the scope of the

12  Court's authorization should be limited in the same respect.  *See* Dkt. 115 at 3.[8]

13       **Second**, Netlist fails to reconcile its argument with the language of the Patent Local Rules.

14  *See* Opp. at 5-6.  The title of Rule 3-1 distinguishes between "Asserted Claims" and "Infringement

15  Contentions," and the rule includes separate subparts for each aspect of the disclosures.  *See*

16  P.L.R. 3-1(a)-(c).  The Court authorized Netlist to submit "amended infringement contentions"

17  only; not to identify new asserted claims.  *See* Dkt. 116.  Netlist does not genuinely dispute that

18  point, but argues that "under Google's view, a plaintiff could never assert additional claims

19  because the local rules do not provide for such."  Opp. at 6.  That argument is meritless: the rules

20  allow a plaintiff to amend its contentions, identify new claims, or identify a new priority date—

21  **provided** the plaintiff seeks specific leave and makes a showing of good cause.  *See AMD*, 2017

22  WL 732896, at *2.

23       Netlist also fails to distinguish the *MyGo* case, where the Southern District highlighted the

24  distinction between the identification of asserted claims and infringement contentions.  *See* Opp. at

25

26  ───────────────
    [8]   The *Straight Path* case is not to the contrary.  *See Straight Path IP Grp., Inc. v. Apple Inc.*, No.
27  16-cv-3582, 2017 WL 3967864 (N.D. Cal. Sept. 9, 2017).  There, the plaintiff filed an amended
    complaint to assert specific claims and then requested leave to amend its infringement contentions
28  to be consistent with the complaint—and the defendant did not oppose.  *See id*. at *1, 5.

5.  In *MyGo*, the local rule authorized the plaintiff to amend its "Infringement Contentions" as a matter of right.  *See MyGo LLC v. Mission Beach Indus., LLC*, 2018 WL 3438650, at *4 (S.D. Cal Jul. 17, 2018).  When the plaintiff submitted its amended infringement contentions, it also sought to assert two new claims—both of which the plaintiff had not asserted prior to re-examination of the patent at issue.  *Id*. at *1, 3.  The question before the court, therefore, was whether the plaintiff should have sought leave to add those claims.  *Id*. at *3.  The Court determined that the plaintiff ***should*** have sought leave because the local rules distinguished between infringement contentions and asserted claims.  *Id*. at *4.  The facts here are analogous.  Netlist was authorized to amend its infringement contentions.  When Netlist submitted its amended contentions, it also sought to assert claim 16.  The parties dispute whether Netlist should have sought leave to add claim 16.  And the Patent Local Rules answer that question in the affirmative because they distinguish between infringement contentions and asserted claims.  *See* P.L.R. 3-1.

       ***Third***, Netlist's remaining arguments are unavailing.  Netlist argues that, under Google's rationale, "claims could never be asserted post-reexamination."  Opp. at 6.  That argument is incorrect as shown by the fact that Netlist is continuing to assert the originally identified claims that were amended during re-examination, as well as several claims that Netlist added to the '912 Patent during re-examination.  Dkt. 152-8 at 2.  Google is not objecting to those claims because they did not exist before the stay and because Google had an opportunity to address them during re-examination.  Mot. at 2-3.  Claim 16 is different because Netlist never asserted it therefore Google had no reason or meaningful opportunity to challenge it.  *Id*. at 5-7.  Furthermore, Google does not dispute that a patentee may assert new claims if it moves for leave and shows diligence and a lack of prejudice.  *See* P.L.R. 3-6.  Netlist has failed to do so here.  Netlist next argues that striking claim 16 might force it to file a separate lawsuit.  Opp. at 6.  That argument is beside the point.  The relevant considerations for leave to amend are diligence and lack of prejudice—both of which are missing here.  Mot. at 5-10.[9]  Finally, Netlist points to the fact that Google will seek leave to amend its answer to assert additional defenses.  Opp. at 7.  Those defenses are grounded

---

[9]  Google would have other arguments and defenses if Netlist attempted to file a new case, but those are also not relevant to whether Netlist should be permitted to assert a new claim here.

in licenses Netlist recently produced and legal positions Netlist recently took in its interrogatory responses.  Thus, when Google seeks leave to amend its answer—which Netlist did not do for claim 16—it will demonstrate good cause for the amendment.[10]  Accordingly, Netlist has failed to demonstrate that the Court authorized it to assert claim 16 of the '912 Patent.[11]

### D.    The Court Should Strike Netlist's New Priority and Conception Dates

Netlist ignores the burden it bears as a patent plaintiff seeking to assert new priority and conception dates.  Opp. at 14-15.  With respect to priority, the fact that Google assumed a specific date for purposes of its re-examination request has nothing to do with whether Netlist diligently identified that date in its P.L.R. 3-1(f) disclosures.  *Id*.  With respect to conception, Netlist points to the deposition of Jayesh Bhakta as sole basis for asserting a new date.  Opp. at 15.  That deposition occurred on September 17, 2010, however—months before the case was stayed.  *Id*.  Netlist provides no justification for why it did not promptly seek leave to amend its P.L.R. 3-1(f) disclosures after the deposition.  *Id*.  It is Netlist's burden to show diligence when seeking leave to amend and it has failed to do so here.  *See* Mot. at 12-14.  Netlist also downplays the resulting prejudice to Google and the fact that Google did not have a fair opportunity to seek discovery into the subject matter of Mr. Bhakta's testimony *at the time he gave it*.

## III.    CONCLUSION

For the foregoing reasons and those set forth in its motion, Google respectfully requests that the Court strike Netlist's assertion of claim 16 and new dates of priority and conception.

---

[10]  Courts have explained that the standard for amended pleadings is "liberal" compared to the "decidedly conservative" standard for identifying new claims, which "designed to prevent the "shifting sands" approach.  *See Acer*, 2011 WL 1838768 at *3.

[11]   Netlist is incorrect that Google delayed in filing its motion.  Opp. at 1.  Google waited until it received Netlist's full contentions on June 18, 2021 and then engaged with Netlist over the course of weeks in an effort to resolve the issues—which, as Netlist agrees, narrowed the dispute.

1    DATED: August 27, 2021                QUINN EMANUEL URQUHART &
2                                           SULLIVAN, LLP

3

4                                    By      /s/ *David Perlson*
                                                  David Perlson
5
                                             David Perlson (CA Bar No. 209502)
6                                            davidperlson@quinnemanuel.com
                                             Jonathan Tse (CA Bar No. 305468)
7                                            jonathantse@quinnemanuel.com
                                             50 California Street, 22nd Floor
8                                            San Francisco, CA 94111
                                             Telephone: (415) 875-6600
9                                            Facsimile: (415) 875-6700
10
                                             Jared Newton (admitted *pro hac vice*)
11                                           jarednewton@quinnemanuel.com
                                             Deepa Acharya (CA Bar No. 267654)
12                                           deepaacharya@quinnemanuel.com
                                             Sandy Shen (admitted *pro hac vice*)
13                                           sandyshen@quinnemanuel.com
                                             1300 I Street NW, Suite 900
14                                           Washington, D.C. 20005
                                             Telephone: (202) 538-8000
15                                           Facsimile: (202) 538-8100
16
                                             Catlin Williams (CA Bar No. 336464)
17                                           catwilliams@quinnemanuel.com
                                             555 Twin Dolphin Drive, 5th Floor
18                                           Redwood Shores, CA 94065
                                             Telephone: (650) 801-5000
19                                           Facsimile: (650) 801-5100
20
21                                           *Attorneys for Defendant Google LLC*

22

23

24

25

26

27

28