1   IRELL & MANELLA LLP
    Jason G. Sheasby (CA SBN 205455)
2   jsheasby@irell.com
    Andrew J. Strabone (CA SBN 301659)
3   astrabone@irell.com
    1800 Avenue of the Stars, Suite 900
4   Los Angeles, California 90067
    Telephone: (310) 277-1010
5   Facsimile: (310) 203-7199
6
7   *Attorneys for Plaintiff Netlist, Inc.*

8
9                          **UNITED STATES DISTRICT COURT**
                          **NORTHERN DISTRICT OF CALIFORNIA**
10                                  **OAKLAND DIVISION**

11
12   NETLIST, INC.,                          )   Case No. 4:09-cv-05718-SBA
                                             )
13                    Plaintiff,             )
                                             )   **PLAINTIFF NETLIST'S REPLY IN**
14         v.                                )   **SUPPORT OF NETLIST'S MOTION FOR**
                                             )   **PARTIAL SUMMARY JUDGMENT ON**
15   GOOGLE LLC,                             )   **GOOGLE'S INTERVENING RIGHTS**
                                             )   **DEFENSE FOR CLAIM 16**
16                    Defendant.             )
                                             )   Date: November 10, 2021
17
18                                               Time: 2:00 PM

19                                               Location: Oakland Courthouse
20
21
22
23
24
25
26
27
28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

                                    NETLIST'S REPLY IN SUPPORT OF ITS
                                    MOTION FOR PARTIAL SUMMARY JUDGMENT
                                    CASE NO. 4:09-CV-05718-SBA

1

## **TABLE OF CONTENTS**

2

**Page**

3  I.  INTRODUCTION ..................................................................................................... 1

4  II.  ARGUMENT ........................................................................................................... 3

5  A.  Google's Arguments at the Threshold Step Misinterpret Both
6  *Marine Polymer* And The Reexamination Record ...................................... 3

7  B.  Even If Pre-AIA Section 316(b) Applies, Netlist Did Not
Substantively Change the Scope of Claim 16 .......................................... 5

8  1.  Google Fails to Distinguish On-Point Federal Circuit and
9  District Court Authority Finding No Substantive Change on
Similar Facts.................................................................................. 5

10
11  2.  Prosecution Disclaimer Cannot Trigger Intervening Rights
under *Marine Polymer* ............................................................ 10

12  3.  There Is No Prosecution Disclaimer on this Record ................. 12

13  III.  CONCLUSION ..................................................................................................... 15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

<u>Cases</u>

3

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*,
    129 F.3d 1247 (Fed. Cir. 1997) ........................................................................ *passim*

*Choudhuri v. Wells Fargo Bank, N.A.*,
    No. 15-cv-3608, 2017 WL 5598685 (N.D. Cal. Nov. 21, 2017) ..............................13

*CIAS, Inc. v. Alliance Gaming Corp.*,
    504 F.3d 1356 (Fed. Cir. 2007) ..............................................................................14

*Convolve Inc. v. Compaq Comput. Corp.*,
    812 F.3d 1313 (Fed. Cir. 2016) ........................................................................6, 7, 8

*Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*,
    347 F.3d 1314 (Fed. Cir. 2003) ................................................................................9

*Dexcowin Glob., Inc. v. Aribex, Inc.*,
    No. 16-cv-143, 2017 WL 3477748 (C.D. Cal. June 7, 2017) ..................................6

*Dey v. Sepracor, Inc.*,
    847 F. Supp. 2d 541 (S.D.N.Y. Mar. 1, 2012), *reversed on other grounds*,
    715 F.3d 1351 (Fed. Cir. 2013) ........................................................................11, 12

*Droplets, Inc. v. Yahoo! Inc.*,
    No. 12-cv-03733, Dkt. 792 (N.D. Cal. July 2, 2021) ............................................13

*Galderma Labs., L.P. v. Amneal Pharms. LLC*,
    806 F. App'x 1007 (Fed. Cir. 2020) ....................................................2, 12, 13, 14

*Honeywell Int'l v. Hamilton Sundstrand Corp.*,
    370 F.3d 1131 (Fed. Cir. 2004) (en banc) ........................................................ *passim*

*Hutchins v. Zoll Med. Corp.*,
    492 F.3d 1377 (Fed. Cir. 2007) ................................................................................4

*Marine Polymer Techs., Inc. v. HemCon, Inc.*,
    672 F.3d 1350 (Fed. Cir. 2012) (en banc) ........................................................ *passim*

*Mass. Inst. of Tech. v. Shire Pharms.*,
    839 F.3d 1111 (Fed. Cir. 2016) ..............................................................................12

*NexMed Holdings, Inc. v. Beta Techs., Inc.*,
    718 F. Supp. 2d 1314 (D. Utah 2010) ......................................................................6

*Ortho-Mcneil Pharm., Inc. v. Kali Labs., Inc.*,
    482 F. Supp. 2d 478 (D.N.J. 2007) ..........................................................................6

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- ii -

NETLIST'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
   396 F. Supp. 3d 851 (N.D. Cal. 2019) ................................................................13

*Ranbaxy Pharms., Inc. v. Apotex, Inc.*,
   350 F.3d 1235 (Fed. Cir. 2003) .........................................................................9

*Safoco, Inc. v. Cameron Int'l*,
   No. 05-cv-739, 2009 WL 10742813 (S.D. Tex. Apr. 9, 2009) ...............................2, 6

*SignalQuest, Inc. v. Tien-Ming Chou*,
   No. 11-cv-392, 2016 WL 738209 (D.N.H. Feb. 23, 2016) .......................................6

*Slimfold Mfg. Co. v. Kinkead Indus.*,
   810 F.2d 1113 (Fed. Cir. 1987) ...........................................................................5

*Sonos Inc. v. D&M Holdings*,
   No. 14-cv-1330, 2017 WL 4969330 (D. Del. Nov. 1, 2017) ...................................6

*Southwall Techs., Inc. v. Cardinal IG Co.*,
   54 F.3d 1570 (Fed. Cir. 1995) .........................................................................2, 6, 7

*Tech. Props. Ltd. LLC v. Huawei Techs Co., Ltd.*,
   849 F.3d 1349 (Fed. Cir. 2017) ......................................................................11, 14

*Thermalloy, Inc. v. Aavid Eng'g, Inc.*,
   121 F.3d 691 (Fed. Cir. 1997) .........................................................................7, 8

*U. of Va. Patent Found. v. Gen. Elec. Co.*,
   755 F. Supp. 2d 738 (W.D. Va. 2011) ...............................................................12

*Vasudevan Software, Inc. v. MicroStrategy, Inc.*,
   782 F.3d 671 (Fed. Cir. 2015) ...........................................................................14

*Verizon Communications, Inc. v. FCC*,
   535 U.S. 467 (2002) ..........................................................................................3

**Statutes**

35 U.S.C. § 112(d) .................................................................................................5, 8

35 U.S.C. § 252 ................................................................................................. *passim*

35 U.S.C. § 305 ........................................................................................................8

35 U.S.C. § 316(a) ...................................................................................................3

35 U.S.C. § 316(b) ............................................................................................ *passim*

**Rules**

Rule 37(b)(2)(ii) ...............................................................................................13, 14

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- iii -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**Other Authorities**

2

MPEP § 2660.03 ......................................................................................................1, 4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- iv -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

I.    **INTRODUCTION**

Google asks this Court to do what no other court has done before: find intervening rights in a claim rewritten from dependent to independent form during reexamination with no other changes to the claim language.  The Court should decline to ignore controlling Federal Circuit law, and should grant summary judgment in Netlist's favor.

Under *Marine Polymer*, the first step of the absolute intervening rights analysis is to determine whether the claims are "amended" or "new" under pre-AIA § 316(b).  *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1363 (Fed. Cir. 2012) (en banc).  "Only if the claim at issue is new or has been amended may the court proceed to the second step in the analysis . . . ." *Id.* At the second step, the Court must determine whether the original and reexamined claims are "substantially identical," that is, without substantive change.  *Id.*  At both of these steps, Google's Opposition (Dkt. 195, "Opp.") rests on a faulty application of Federal Circuit precedent.

For the first step, Google ignores the Federal Circuit's holding in *Marine Polymer* that there can be no intervening rights under pre-AIA § 316(b) for "claims that existed in the original patent and have been confirmed as patentable."  672 F.3d at 1364.  Google does not address this language at all.  Google also fails to grapple with the fact that claim 16 was affirmed *as an original claim*, and thus it falls within the category of claims for which intervening rights are unavailable under pre-AIA § 316(b).  *Id.* (explaining that "[i]n providing for intervening § 307(b) is limited to the third category of claims," that is, "amended or new claims that did not exist in the original patent but have been found to be patentable and will be incorporated into the patent by the PTO").  That claim 16 was rewritten in independent form after that confirmation does not change the outcome, and proves only that Netlist complied with the rules governing reexamination.  MPEP § 2660.03.  Thus, the Court should end the analysis at the first step.

For the second step, Google fails to meaningfully engage with settled Federal Circuit law that rewriting a claim from dependent to independent form does not result in a substantive change under § 252. *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997).  Instead, Google seeks to distinguish *Bloom* and the myriad of district court cases consistent with it based on

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

- 1 -

*Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139-43 (Fed. Cir. 2004) (en banc), which concerns infringement under the doctrine of equivalents, not intervening rights.  Remarkably, Google argues that *Bloom* is inapposite in part because "the defendant in *Bloom* did not raise *Honeywell I*," a puzzling observation considering: (1) *Bloom* was decided seven years before *Honeywell*; and (2) prosecution history estoppel leading to a loss of doctrine of equivalents existed at the time *Bloom* was decided.  *Cf. Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1578 (Fed. Cir. 1995) ("[P]rosecution history estoppel applies as a limitation on the range of equivalents if, after the claims have been properly interpreted, no literal infringement has been found.").  Indeed, the fact that none of these cases mention *Honeywell*—except to reject its extension into the intervening rights analysis, *see e.g.*, *Safoco, Inc. v. Cameron Int'l*, No. 05-cv-739, 2009 WL 10742813 at *10-11 (S.D. Tex. Apr. 9, 2009), *report and recommendation adopted*, 2009 WL 10695587 (S.D. Tex. May 8, 2009)—only demonstrates that claim scope under the doctrine of equivalents is irrelevant in the context of intervening rights.  Moreover, in *Marine Polymer* the Federal Circuit *en banc* catalogued the instances in which intervening rights could apply as a matter of statute.  672 F.3d at 1363-65.  The Court specifically rejected the notion that the cancellation of a different claim could serve as a basis for triggering intervening rights.  *Id.* at 1363 ("Whether or not Marine Polymer's arguments to the examiner and cancellation of claims during reexamination may have affected the remaining claims' effective scope, they did not 'amend' those claims for intervening rights purposes or make them 'new,' which is what the statutory language requires.").

Google makes a last-ditch effort to argue that Netlist substantively changed the scope of claim 16 during reexamination through argument regarding the meaning of the term "operatively coupled."  This too fails.  As discussed below and in the opening Motion, *Marine Polymer* forecloses the possibility that prosecution disclaimer alone can affect a substantive change.  672 F.3d at 1363-64.  And, even if it did not, there is no prosecution disclaimer on this record.  Google fails to point out that the examiner *rejected* Netlist's arguments regarding the "operatively coupled" term.  Under these circumstances, courts have declined to find prosecution disclaimer.  *See, e.g.*, *Galderma Labs., L.P. v. Amneal Pharms. LLC*, 806 F. App'x 1007, 1010-11 (Fed. Cir. 2020).  And, in any event, as discussed below and in Netlist's Opposition to Google's Motion for Summary Judgment, the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 2 -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

meaning of "operatively coupled" that Netlist advanced during reexamination is entirely consistent with the meaning of that term under the *Phillips* standard for claim construction.  Dkt. 197 at 11.

## II.  <u>ARGUMENT</u>

### A.  Google's Arguments at the Threshold Step Misinterpret Both *Marine Polymer* and the Reexamination Record

Google contends that claim 16 is "amended" under the meaning of pre-AIA § 316(b) because its language was formally modified during reexamination when it was rewritten in independent form.  Opp. at 6-7.  This argument disregards both Federal Circuit authority regarding the application of pre-AIA § 316(b) and claim 16's reexamination history.

In *Marine Polymer*, the *en banc* majority provided an unqualified interpretation of the categories of claims to which intervening rights can apply.  *Marine Polymer*, 672 F.3d at 1364-65; Opp. at 4-6.  Specifically, the majority expressly excluded from the ambit of § 307(b) "claims that existed in the original patent and have been confirmed as patentable." *Id.* at 1365.  Google wholly ignores this holding. *See generally* Opp. at 4-8.

Instead, Google advances its own interpretation of pre-AIA § 316(b), arguing that "nothing in the statute excludes amendments that are made to rewrite a claim from dependent to independent form." Opp. at 8.  Google's interpretation should be rejected because it impermissibly divorces the meaning of the word "amended" from the broader context of the statute. *Verizon Communications, Inc. v. FCC*, 535 U.S. 467, 499-500 (2002) (rejecting a "plain-meaning argument [that] ignores the statutory setting in which [the provision at issue] occurs").  Specifically, the broader context of pre-AIA § 316 indicates that an "amended" claim is one that is "incorporated" into the patent following reexamination.  Pre-AIA § 316(a) provides that following an *inter partes* reexamination: "the Director shall issue and publish a certificate . . . incorporating in the patent any proposed amended or new claim determined to be patentable."  Pre-AIA 35 U.S.C. § 316(a).  Section 316(b) similarly provides that:

> Any proposed amended or new claim determined to be patentable and ***incorporated into a patent following an inter partes reexamination proceeding*** shall have the same effect as that specified in section 252 of this title for reissued patents . . . .

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 3 -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

Pre-AIA 35 U.S.C. § 316(b) (emphasis added).  As the Court recognized in *Marine Polymer*, this language informs the meaning of "amended" under  § 307(b).  *Marine Polymer*, 672 F.3d at 1364 ("Any interpretation of 'amended' that includes disavowal or disclaimer by argument alone . . . would conflict with the rest of § 307, for it is difficult to envision how arguments about claim meaning could be 'incorporated into a patent' by the Director of the PTO.").  An interpretation of "amended" that included rewriting claims in independent form would similarly conflict with the language requiring an "amended" claim to be "incorporated" in the patent following reexamination. This is because a dependent claim incorporates by reference each limitation of the base claim from which it depends, and thus it makes no sense to say that such a claim is "incorporated into a patent" when rewritten in independent form during reexamination.  *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1382 (Fed. Cir. 2007) (citing § 112 ¶ 4 for the proposition that since a "term is recited in each independent claim [it] accordingly is incorporated into every dependent claim").

Google also overlooks the fact that claim 16 was confirmed as patentable on April 4, 2011, prior to being rewritten in independent form.[1]  Dkt. 156-5 at 9-10, 12 (rejecting proposed grounds for rejection of claim 16 in April 4, 2011 Non-Final Office Action).  To be sure, the reexamination certificate identifies claim 16 as formally "amended."  But Google completely ignores the fact that claim 16 was confirmed as patentable prior to being rewritten in independent form.  Opp. at 7-8. Netlist did so in compliance with the rules applicable to *inter partes* reexamination:

> If an amended base patent claim or a new base claim is rejected, a claim dependent thereon should be objected to if it is otherwise patentable, ***and a requirement should be made for rewriting the dependent claim in independent form***.

MPEP § 2660.03 (emphasis added).  Thus, claim 16 falls within the category of claims for which intervening rights are not available under pre-AIA § 316(b): "claims that existed in the original patent and have been confirmed as patentable."  *Marine Polymer*, 672 F.3d at 1364.

Google also argues that *Marine Polymer* is distinct from the present case because "the claims at issue [in *Marine Polymer*] were not amended at all."  Opp. at 8.  This misses the point.  Intervening

---

[1] The April 4, 2011 Office Action erroneously noted that "Claims 1-20 and 22-51 are rejected." Dkt. 156-5 at 4.  The Examiner corrected the error in the following Office Action on October 14, 2011.  Dkt. 156-7 at 5 ("Claims confirmed.[Unamended patent claims]are . . . 16 . . . .").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 4 -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1   rights "are based on fundamental principles of equity and fairness and should be so applied to the

2   facts in any given case that justice will be done **both to the patentee and to the public**." *Slimfold*

3   *Mfg. Co. v. Kinkead Indus.*, 810 F.2d 1113, 1116 (Fed. Cir. 1987) (quoting *In re Willingham*, 282

4   F.2d 353, 354-55 (C.C.P.A. 1960) (emphasis added).   As Google notes, "[t]he doctrine of

5   intervening rights first developed as courts recognized that permitting substantive changes to the

6   scope of patent claims through post-issuance procedures left 'the door . . . open for gross injustice'

7   where a third party, having already begun to make, use, or sell a given article, finds its previously

8   lawful activities rendered **newly infringing** under a modified patent." *Marine Polymer*, 672 F.3d at

9   1361 (quoting *Sontag Chain Stores Co. v. Nat'l Nut Co.*, 310 U.S. 281, 293-95 (1940)) (emphasis

10  added); Opp. at 2-3.   In other words, the original language of the patent serves a public notice

11  function to would-be infringers, while the doctrine of intervening rights protects against "newly

12  infringing" activities.   Tellingly, Google does not attempt to argue (because it cannot) that any

13  "newly infringing" activities are even possible in this case.   The fact is that the public notice function

14  of original claim 16 is fully preserved because a dependent claim, by definition, incorporates by

15  reference the limitations of its independent base claim. 35 U.S.C. § 112(d) (a dependent claim "shall

16  be construed to incorporate by reference all the limitations of the claim to which it refers.").   In

17  effect, the language of such a claim remains the same before and after reexamination, just as the

18  unaltered claims at issue in *Marine Polymer*.   Thus, as in *Marine Polymer*, the Court should end the

19  intervening rights analysis at the threshold step.

20      **B.     Even If Pre-AIA Section 316(b) Applies, Netlist Did Not Substantively Change
                 the Scope of Claim 16**

21
22          At the second step, Google argues that Netlist narrowed the scope of claim 16 through

        presumptive surrender of equivalents and argument-based disclaimer regarding the term
23
        "operatively coupled."  Opp. at 9.  Both arguments contradict Federal Circuit case law.

24
            **1.     Google Fails to Distinguish On-Point Federal Circuit and District
25                    Court Authority Finding No Substantive Change on Similar Facts**

26          Courts are uniformly in agreement that intervening rights do not apply to dependent claims

27  rewritten in independent form.   In *Bloom*, the Federal Circuit held that amendments importing

28  elements from original dependent claims to their associated independent claims did not result in a

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 5 -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1    substantive change in scope because these amendments "did no more than restate original

2    [dependent] claims 7 and 18 in independent form." *Bloom*, 129 F.3d at 1250 (citing 35 U.S.C. §

3    112 ¶ 4).  Consistent with that holding, multiple district courts have found that rewriting a claim

4    from dependent to independent form does not affect a substantive change for purposes of intervening

5    rights.  *Sonos Inc. v. D&M Holdings*, No. 14-cv-1330, 2017 WL 4969330, at *5 (D. Del. Nov. 1,

6    2017); *Dexcowin Glob., Inc. v. Aribex, Inc.*, No. 16-cv-143, 2017 WL 3477748, at *14 (C.D. Cal.

7    June 7, 2017*); SignalQuest, Inc. v. Tien-Ming Chou*, No. 11-cv-392, 2016 WL 738209, at *4

8    (D.N.H. Feb. 23, 2016); *NexMed Holdings, Inc. v. Beta Techs., Inc.*, 718 F. Supp. 2d 1299, 1314

9    (D. Utah 2010); *Safoco*, 2009 WL 10742813, at *9; *Ortho-Mcneil Pharm., Inc. v. Kali Labs., Inc.*,

10   482 F. Supp. 2d 478, 488 (D.N.J. 2007).

11       Google does not attempt to substantively distinguish these cases.  Instead, Google argues

12   that these cases are inapplicable because "[n]one . . . involved the same situation as *Honeywell I*."

13   Opp. at 16.  This statement is inaccurate.  In *Sonos*, the original independent claim was cancelled

14   just as in *Honeywell*.  *Sonos*, 2017 WL 4969330 at *5 ("When the '959 patent emerged from

15   reexamination, claim 1 was cancelled and the claims that depended from claim 1—including

16   asserted claims 5, 9, and 10—were rewritten as independent claims.").  As a result, the *Sonos* Court

17   found that the claims were not substantively changed.  *Id.*

18       Moreover, the fact that none of these cases reference *Honeywell* only confirms that

19   *Honeywell* is not controlling in the context of intervening rights.  In fact, *Honeywell* is not relevant

20   at all.  In *Honeywell*, the Federal Circuit held that "the rewriting of dependent claims into

21   independent form coupled with the cancellation of the original independent claims creates a

22   presumption of prosecution history estoppel."  370 F.3d at 1134.  Prosecution history estoppel is

23   only relevant to evaluating *infringement* under the doctrine of equivalents, and bears no relation to

24   evaluating the literal scope of the claims, which is the focus of the intervening rights inquiry.  *See*

25   *Convolve Inc. v. Compaq Comput. Corp.*, 812 F.3d 1313, 1325 (Fed. Cir. 2016) ("In the intervening

26   rights analysis, our task is to interpret the scope of the claims per the *Phillips* standard."); *Southwall*,

27   54 F.3d at 1578 ("[P]rosecution history estoppel applies as a limitation on the range of equivalents

28   if, after the claims have been properly interpreted, no literal infringement has been found.  The limit

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 6 -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

on the range of equivalents that may be accorded a claim due to prosecution history estoppel is *simply irrelevant to the interpretation of those claims*.") (emphasis added) (internal citation omitted).  Only prosecution history estoppel was at issue in *Honeywell*.  370 F.3d at 1136 ("Only infringement under the doctrine of equivalents is at issue in this appeal.").

Prosecution history estoppel limiting the scope of equivalents existed as a doctrine at the time of the *Bloom* decision.  *Cf. Southwall*, 54 F.3d at 1578 ("[P]rosecution history estoppel applies as a limitation on the range of equivalents if, after the claims have been properly interpreted, no literal infringement has been found.").  The *Bloom* decision did not recognize any modification to the independent claim as factor that could trigger intervening rights.  *See Bloom*, 129 F.3d at 1250-51.  The *Marine Polymer* decision *en banc* was issued after *Honeywell*.  It catalogued the types of acts that trigger intervening rights under the statute.  672 F.3d at 1363-65.  It did not identify cancellation of an independent claim after affirmance of the validity of a dependent claim as a trigger for intervening rights.  *See id.*

Google attempts to bridge the gap between the unrelated doctrines of prosecution history estoppel and intervening rights by arguing that the surrender of equivalents can give rise to a substantive change because the surrender of equivalents results in claim scope that "is no longer identical to its prior version."  Opp. at 17 (citing *Honeywell*, 370 F.3d at 1141-42, 1147).  This argument conflates two distinct concepts: the scope of the claims as construed under *Phillips*, and an infringement analysis under the doctrine of equivalents.  *Thermalloy, Inc. v. Aavid Eng'g, Inc.*, 121 F.3d. 691, 694 (Fed. Cir. 1997) ("[A] distinction remains between the language of a claim and an infringement analysis under the doctrine of equivalents.").  The intervening rights inquiry is not focused on an infringement analysis.  It is focused solely on the scope of the claims as interpreted under the *Phillips* standard.  *Convolve*, 812 F.3d at 1325 ("In the intervening rights analysis, our task is to interpret the scope of the claims per the *Phillips* standard.").  Because the question under an intervening rights analysis focuses on comparing the scope of the original and reexamined claims—and not an infringement analysis under an equivalence theory—*Bloom* and the multitude of intervening rights decisions consistent with it control.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 7 -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1     Google does not point to a single court anywhere that considered the surrender of equivalents

2 as a basis for triggering intervening rights.  Moreover, Google does not persuasively rebut the

3 argument that *Thermalloy* is controlling in this context.  In *Thermalloy*, the Federal Circuit ***rejected***

4 the argument that "the court in construing the original claims must take into consideration protected

5 equivalents" to determine whether the claim scope had been impermissibly broadened during

6 reexamination in violation of § 305.  *Thermalloy*, 121 F.3d at 694.  Google argues that *Thermalloy*

7 merely "addressed the narrow question of whether an amendment during re-examination broadened

8 the scope of the claims . . . under 35 U.S.C. § 305."  Opp. at 17.  But, as Google points out in its

9 Opposition, *Thermalloy* reached this conclusion because "[t]he determination under section 305 of

10 whether the scope of the claim has been enlarged involves no accused product, and therefore the

11 doctrine of equivalents is irrelevant."  *Id.* (citing *Thermalloy*, 121 F.3d at 694).  The determination

12 of whether the original scope of a claim has been changed under pre-AIA § 316(b) likewise involves

13 no accused products.  *See Convolve*, 812 F.3d at 1325 ("The [intervening rights] inquiry must focus

14 on a case-by-case analysis of the scope of the claims before and after claim amendment.").

15 Therefore, the doctrine of equivalents is also irrelevant in this context, and the Court should decline

16 to extend *Honeywell* to the intervening rights analysis.

17     Notably, the Federal Circuit also recognized this distinction between claim scope and

18 infringement under the doctrine of equivalents in *Honeywell*, noting that the "fact that the scope of

19 the rewritten claim has remained unchanged will ***not*** preclude the application of prosecution history

20 estoppel."  370 F.3d at 1142 (emphasis added).  This statement alone highlights why *Honeywell* is

21 inapplicable to intervening rights.  If the scope of a dependent claim rewritten in independent form

22 remains unchanged,[2] the original and rewritten claims are "substantially identical," and intervening

23 rights do not apply under § 252.  *Bloom*, 129 F.3d at 1250.  Yet, prosecution history estoppel may

24

25

_____

26 [2] Here, the Examiner concluded that rewriting claim 16 in independent form no effect on the scope of claim 16.  Dkt. 156-9 at 13 ("Claims . . . 16 . . . have been rewritten in independent form

27 maintaining their original scope.").  Google dismisses this statement, arguing "Netlist first narrowed the 'operatively coupled' limitation and then amended claim 16 to incorporate that limitation

28 directly."  Opp. at 13 n.8.  This makes no sense.  Claim 16 incorporated by reference every limitation of its original base claim (15), including the term "operatively coupled."  35 U.S.C. 112(d).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 8 -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

still apply in such circumstances under *Honeywell*, which would be relevant to an infringement analysis, not an intervening rights analysis.

Even if *Honeywell* was relevant to intervening rights (it is not), the case has no applicability here. *Honeywell* made clear that it was only weighing the question of whether cancellation of an independent claim at the same time as allowance of the dependent claim created a presumption of a loss of equivalents: "We must next address whether rewriting a dependent claim into independent form, coupled with the cancellation of the original independent claim, constitutes a narrowing amendment[.]" 370 F.3d at 1141. Thus, *Honeywell* has no applicability to the patent at bar. Claim 16 was rewritten in independent form after being confirmed by the examiner, and claim 15 was *never* cancelled. Dkt. 156-5 at 9-10, 12.

Google's speculation that the rationale of *Honeywell* "was based on the **substitution** of a narrower dependent claim, rewritten in independent form, for a broader original independent claim" is demonstrably incorrect. Opp. at 17-18 (emphasis added) (citing *Honeywell*, 370 F.3d at 1143). The pre-existing Federal Circuit precedent the *Honeywell* decision relied upon all involved cancellation of the independent claim. *See Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1325 (Fed. Cir. 2003) ("Deering's addition of independent claim 11, coupled with the clear surrender of the broader subject matter of the ***deleted original independent claim*** presumptively bars Deering from arguing infringement under the doctrine of equivalents.") (emphasis added); *Ranbaxy Pharms., Inc. v. Apotex, Inc.*, 350 F.3d 1235, 1238, 1240-41 (Fed. Cir. 2003) (finding presumptive surrender attached to claim 11 where "[i]n response to this office action, Apotex ***canceled*** claims 1–10 and submitted new claims 11–16") (emphasis added). *Honeywell* likewise emphasizes that the surrender of equivalents from rewriting a single dependent claim in independent form occurs only where the original base claim is cancelled. *Honeywell*, 370 F.3d at 1134 ("[T]he rewriting of dependent claims into independent form ***coupled with*** the cancellation of the original independent claims creates a presumption of prosecution history estoppel.") (emphasis added). The court similarly emphasized the requirement that the base claim be cancelled in defining the scope of equivalents surrendered by such an amendment. *Id.* at 1144 ("[T]he surrendered subject matter is defined by the cancellation of independent claims that do not include a particular limitation

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 9 -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

and the rewriting into independent form of dependent claims that do include that limitation."). Thus, the rationale of *Honeywell* is not applicable here, and there was no presumptive surrender of equivalents in claim 16 during reexamination.

### 2. Prosecution Disclaimer Cannot Trigger Intervening Rights under *Marine Polymer*

Google argues that "[d]uring re-examination, Netlist argued for a narrow construction of the term 'operatively coupled' to distinguish the claims of the '912 Patent from the prior art," thereby affecting a substantive change in the scope of the claims for purposes of intervening rights. Opp. at 10-14. The Federal Circuit has squarely rejected the contention that arguments made during reexamination alone can trigger intervening rights under § 307(b). *Marine Polymer*, 672 F.3d at 1363 ("While it is true that claims are properly interpreted to account for arguments and concessions made during prosecution, HemCon's conclusion that the claims asserted here were 'amended' for purposes of § 307(b) goes too far."). A rule to the contrary could potentially encourage gamesmanship with the reexamination process, as the Federal Circuit acknowledged:

> Various amici have in fact pointed out that such gamesmanship concerns run both ways, suggesting that HemCon's interpretation of § 307(b), if adopted, would invite putative infringers to initiate reexamination proceedings with marginal or non-invalidating prior art. Under HemCon's rule, such a requestor could expect that, even if the reexamination ultimately confirms all claims as patentable without amendment, ***the patent owner will necessarily make substantive arguments in defending the claims***, thereby allowing the requestor to allege intervening rights based on those arguments.

*Id.* at 1364-65 (emphasis added). Google provides no reason why the majority's analysis at the first step cannot inform the analysis at the second step of the intervening rights inquiry. Indeed, these concerns with encouraging gamesmanship would only be exacerbated if arguments during reexamination could substantively change the scope of the claims. That the *en banc* majority noted in dicta that "patent applicants' actions and arguments during prosecution, including prosecution in a reexamination proceeding, can affect the proper interpretation and effective scope of their claims," 672 F.3d at 1365, does not change the result. To the contrary, the fact that the Federal Circuit acknowledged that claim construction can affect the scope of claims, that arguments during

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 10 -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1   reexamination can impact claim construction, and yet it still refused to extend intervening rights to

2   narrowing of claim scope via argument shows the definitive nature of the ruling.

3          Google relies on *Tech. Props. Ltd. LLC v. Huawei Techs Co., Ltd.*, 849 F.3d 1349, 1358-59

4   (Fed. Cir. 2017) for the proposition that prosecution disclaimer can trigger intervening rights.  Opp.

5   at 13.  *Huawei* is inapplicable to the intervening rights inquiry.  In *Huawei*, the district court limited

6   construction of the term "entire oscillator" based on statements the patentee made during

7   reexamination to overcome the Magar reference.  *Huawei*, 849 F.3d at 1358-59.  The Federal Circuit

8   affirmed, concluding that the patentee's "statements made to overcome Magar were clear and

9   unmistakable," thus triggering prosecution disclaimer.  *Id.*  *Huawei* did not involve intervening

10  rights at all, and it says nothing about whether prosecution disclaimer can result in a substantive

11  change in claim scope for purposes of intervening rights.  *See id.* at 1357-59.

12         The sole intervening rights case that Google cites to in support of its prosecution disclaimer

13  argument is inapposite and incompatible with *Marine Polymer*.  Google relies on dicta from *Dey v.*

14  *Sepracor, Inc.*, 847 F. Supp. 2d 541, 559 (S.D.N.Y. Mar. 1, 2012), *reversed on other grounds*, 715

15  F.3d 1351 (Fed. Cir. 2013), to argue that "[a] prosecution disclaimer can operate as a 'substantive

16  change' that limits damages under § 252 and § 307."  *Id.* at 559 (citing *U. of Va. Patent Found. v.*

17  *Gen. Elec. Co.*, 755 F. Supp. 2d 738, 748-49 (W.D. Va. 2011).  *Dey* is plainly distinguishable, and

18  is not controlling in any event.  *Dey* did not involve the rewriting of a dependent claim in

19  independent form.  847 F. Supp. 2d at 555.  The applicant in *Dey* made *five* amendments during

20  reexamination—including the addition of new claim limitations to the independent claims—that the

21  accused infringer argued substantively changed the scope of the independent claims at issue.  *Id.* at

22  555 (noting that the applicant added, *inter alia*, the term "without propellant" to independent claim

23  1 of the '344 patent and "by nebulization" to claim 74 of the '953 patent).  The court first concluded

24  that the addition of "without propellant" and "by nebulization" substantively changed the scope of

25  the claims.  *Id.* at 555-57.  The court expressly noted that "if the Court finds even one substantive

26  change, then § 252 [applies]."  *Id.* at 555.  Having already found the claims at issue substantively

27  changed by amendments that introduced new claim language, the court additionally considered

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 11 -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

whether disclaimer also affected a substantive change. *Id.* at 559-60. *Dey* is thus inapplicable where, as here, no new words of limitation were added to the claim at issue.

Moreover, to the extent *Dey* suggests that prosecution disclaimer alone can affect a substantive change for purposes of intervening rights, *Dey* and the authority it relies on are patently inconsistent with the Federal Circuit's holding in *Marine Polymer*. Indeed, *Patent Foundation*, the sole intervening rights case cited to by *Dey*, held that "disclaimer by statements [] made in reexamination, together with [] cancellation of Claim 4, operated to 'amend' Claim 1 within the meaning of [§ 307(b)]." 755 F. Supp. 2d at 748. *Marine Polymer* expressly rejected this interpretation of § 307(b). 672 F.3d at 1364 ("We thus cannot agree that a claim can be 'amended' for purposes of § 307(b) without changing the claim language itself."). In light of *Marine Polymer*, *Dey* and *Patent Foundation* are both no longer good law.

### 3.    There Is No Prosecution Disclaimer on this Record

In any event, Google fails to meet its threshold burden of "proving the existence of a 'clear and unmistakable' disclaimer that would have been evident to one skilled in the art." *Mass. Inst. of Tech. v. Shire Pharms.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016).

***First***, courts have found no disclaimer where a patentee's arguments regarding claim scope "were clearly and expressly rejected by the Patent Office." *Galderma*, 806 F. App'x at 1010-11. Here, the Patent Office necessarily rejected Netlist's claim construction argument for the term "operatively coupled." Each original independent claim of the '912 patent recited a PLL device "operatively coupled"/"operationally coupled" to the logic element. Dkt. 156-3 ('912 patent) (claims 1, 15, 28, and 39). During reexamination, Netlist explained that the broadest reasonable interpretation of the term "operatively coupled" would be understood by a person of ordinary skill in the art ("POSITA") to mean that the operations of the logic element were "clocked either directly or indirectly" by the PLL device. Dkt. 197-5 at 3. Under this construction, Netlist argued that "Amidi does not disclose that the PLL device is operatively coupled to the logic element." *Id.* at 4. Google ignores that the examiner expressly rejected this argument. Dkt. 197-4 at 6-8 ("Amidi discloses . . . a phase-lock loop device (412) mounted to the printed circuit board, the phase-lock loop device operatively coupled to the plurality of memory devices, the logic element, and the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 12 -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

register.").  Because the examiner necessarily rejected Netlist's arguments regarding the broadest reasonable interpretation of "operatively coupled," these arguments cannot give rise to prosecution disclaimer.  *Galderma*, 806 F. App'x at 1010-11; *Power Integrations, Inc. v. ON Semiconductor Corp.*, 396 F. Supp. 3d 851, 866 (N.D. Cal. 2019) ("Because PI's argued claim scope was expressly rejected by the PTAB, this Court holds that prosecution disclaimer does not apply here."); *Droplets, Inc. v. Yahoo! Inc.*, No. 12-cv-03733, Dkt. 792 at *13 (N.D. Cal. July 2, 2021) (finding no disclaimer arose from arguments rejected by the PTO, and declining to further consider potential disclaimer because "[i]f there was any doubt against applying prosecution disclaimer, the parties here also dispute the characterization of the prosecution history").

**Second**, Google's Opposition prematurely concludes that "Netlist does not dispute that its claim construction argument substantively narrowed the scope of claim 16."  Opp. at 13.  This is incorrect.  Netlist's Motion expressly stated that Google had not met its burden of showing a "clear and unmistakable" disclaimer given Google's threadbare disclaimer arguments in its intervening rights interrogatory response.  Dkt. 156 at 13 n.5.  This is because Google's interrogatory response makes no mention of Google's new theory that Netlist's claim construction arguments during reexamination were narrower than the "functionally cooperating with" construction Netlist advanced pre-reexamination.  *See* Dkt. 156-2 (Google's Interrogatory Responses) at 16-28.  Google raised this argument in its Opposition, for the first time, despite Magistrate Judge Spero's order that this interrogatory must be answered "in full."  Dkt. 145 ("Court ruled that ROG #3 must be answered in full.").  By failing to disclose this argument as required by Judge Spero, Google has waived it. *See Choudhuri v. Wells Fargo Bank, N.A.*, No. 15-cv-3608, 2017 WL 5598685, at *8 (N.D. Cal. Nov. 21, 2017) ("The Court finds that evidentiary sanctions are appropriate under Rule 37(b)(2)(ii), based on Plaintiff's failure to comply with the Court's discovery order.").

In any event, the meaning of the term "operatively coupled" that Netlist advanced during reexamination is entirely consistent with the position Netlist took prior to reexamination that "operatively coupled" should be construed to mean "functionally cooperating with."  Dkt. 45-2 at 16-17.  Each of the original independent claims recited a PLL device "operatively coupled" to the logic element.  As Dr. Annavaram explains in his declaration, "a PLL when used in the context of

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 13 -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1    memory devices and other computing elements, by definition, performs the specific function of

2    generating a clock signal." Dkt 197-9 ¶ 23 (Annavaram Decl.). Furthermore, in the context of the

3    '912 patent a POSITA would understand that the logic element *required* a clock signal from the

4    PLL device to operate. *Id.* ("The registers and logic elements in a design such as the claimed circuit

5    in the '912 patent need clocks to operate."). Stated differently, the only way the PLL device could

6    "functionally cooperate with" the logic element would be by providing a clock signal in order for

7    the logic element to operate. This is entirely consistent with Netlist's explanation that the broadest

8    reasonable interpretation of "operatively coupled" required the PLL device to "control the

9    operation" of the logic element by "directly or indirectly" clocking it. Thus, Google has failed to

10   carry its burden of proving a "clear and unmistakable" disclaimer. Google cites to three cases for

11   the general proposition that arguments or definitional statements during examination can result in

12   changes to claim scope. Opp. at 10-12. None of these cases involves intervening rights. *See id.*

13   Furthermore, in all three cases, the patentee's arguments distinguishing the prior art were

14   successful. *See Huawei*, 849 F.3d at 1357-59 (finding disclaimer based on arguments to distinguish

15   Magar reference where patentee's "statements made to overcome Magar were clear and

16   unmistakable"); *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 679 (Fed. Cir. 2015)

17   (finding disclaimer based on arguments to distinguish Jones reference where "[t]he Examiner

18   originally rejected the pending claims over [Jones]"); *CIAS, Inc. v. Alliance Gaming Corp.*, 504

19   F.3d 1356, 1362-63 (Fed. Cir. 2007) (finding disclaimer based on patentee's characterization of two

20   prior art references during reexamination). Here, as discussed above, the examiner necessarily

21   rejected Netlist's argument that the broadest reasonable interpretation of "operatively coupled"

22   meant that Amidi failed to disclose a PLL Device "operatively coupled" to the logic element. Under

23   these circumstances, prosecution disclaimer does not apply. *Galderma*, 806 F. App'x at 1010-11.

24   And, as discussed above, under *Marine Polymer* prosecution disclaimer is irrelevant to the question

25   of whether the scope of the claims substantively changed under § 252. 672 F.3d at 1363 (rejecting

26   the assertion that "arguments made during prosecution can affect the ultimate meaning of a claim

27   term—and thus the 'scope' of a claim," for purposes of intervening rights).

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 14 -

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1

**III.**     **CONCLUSION**

2

Netlist respectfully requests that the Court enter summary judgment that Google is not

3

entitled to intervening rights under 35 U.S.C. §§ 252, pre-AIA 316(b) with respect to claim 16.

4

5

Dated: September 21, 2021          IRELL & MANELLA LLP

6

7

By: */s/    Jason G. Sheasby*
      Jason G. Sheasby

8

      jsheasby@irell.com
      Andrew J. Strabone

9

      astrabone@irell.com
      IRELL & MANELLA LLP

10

      1800 Avenue of the Stars, Suite 900
      Los Angeles, California 90067

11

      Telephone: (310) 277-1010
      Facsimile: (310) 203-7199

12

13

*Attorneys for Plaintiff Netlist, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

- 15 -

1

## **CERTIFICATE OF SERVICE**

2

     I hereby certify that on September 21, 2021, I caused the electronic filing of the foregoing

3

with the Clerk of the Court using the CM/ECF system, which will automatically email notification

4

of such filing to all counsel of record who have made a formal appearance.

5

6

            By: */s/   Michael Tezyan*

7

               Michael Tezyan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S REPLY IN SUPPORT OF NETLIST'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA