QUINN EMANUEL URQUHART & SULLIVAN, LLP

David Perlson (CA Bar No. 209502)
davidperlson@quinnemanuel.com
Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Catlin Williams (CA Bar No. 336464)
catwilliams@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Deepa Acharya (CA Bar No. 267654)
deepaacharya@quinnemanuel.com
Jared Newton (admitted *pro hac vice*)
jarednewton@quinnemanuel.com
Sandy Shen (admitted *pro hac vice*)
sandyshen@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>  Plaintiff,<br><br> v.<br><br>GOOGLE LLC,<br><br>  Defendant. | Case No. 4:09-CV-05718-SBA<br><br>**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO AMEND ANSWER AND COUNTERCLAIMS (DKT. 206)**<br><br>**JUDGE**: Hon. Saundra Brown Armstrong<br>**HEARING DATE**: November 10, 2021<br>**TIME**: 2:00 PM PT |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Netlist Fails to Substantively Rebut Google's Good Cause to Add its UCL Counterclaim ........................................................................................................ 2

        1. Google's Request to Add its UCL Counterclaim is Timely ...................... 2

        2. Google Has Sufficiently Pleaded its UCL Claim at this Stage .................. 6

    B. Google's Request to Add Inequitable Conduct is Not Futile ............................... 7

    C. Google Has Good Cause to Add an Intervening Rights Defense ....................... 10

III. CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

Page

**Cases**

*ASARCO, LLC v. Union Pac. R.R. Co.*,
   765 F.3d 999 (9th Cir. 2014) .......................................................................................... 3

*Barrington v. A. H. Robins Co.*,
   39 Cal. 3d 146 (1985) ................................................................................................ 1, 2

*ChriMar Sys. Inc. v. Cisco Sys., Inc.*,
   No. 13-CV-01300-JSW, 2019 WL 8333452 (N.D. Cal. Dec. 17, 2019) ..................... 3, 4

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ........................................................................................ 5

*Coolsystems, Inc. v. Nice Recovery Sys. LLC*,
   No. 16-CV-02958-PJH, 2016 WL 6091577 (N.D. Cal. Oct. 19, 2016) ......................... 9

*Corns v. Laborers Int'l Union of N. Am.*,
   No. 09-CV-4403 YGR, 2014 WL 1319363 (N.D. Cal. Mar. 31, 2014) ......................... 3

*De La Paz v. Bayer Healthcare LLC*,
   159 F. Supp. 3d 1085 (N.D. Cal. 2016) .......................................................................... 5

*Ehret v. Uber Techs., Inc.*,
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) ............................................................................ 6

*Finjan, Inc. v. Juniper Network, Inc.*,
   No. C 17-05659 WHA, 2018 WL 5454318 (N.D. Cal. Oct. 29, 2018) .......................... 8

*Fox v. Ethicon Endo–Surgery, Inc.*,
   35 Cal. 4th 797 (2005) .................................................................................................... 5

*Guerrero v. RJM Acquisitions LLC*,
   499 F.3d 926 (9th Cir. 2007) .......................................................................................... 3

*Janti v. Encore Capital Group, Inc.*,
   No. 09CV1969, 2010 WL 3058260 (S.D. Cal. Aug. 3, 2010) ........................................ 6

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................................................ 6

*Kelora Systems, LLC v. Target Corp.*,
   No. C 11–01548 CW (LB), 2011 WL 5444419 (N.D. Cal. Nov. 9, 2011) ................... 10

*Koller v. West Bay Acquisitions, LLC*,
   No. C 12–00117, 2012 WL 2862440 (N.D. Cal. July 11, 2012) .................................... 6

*Martell v. Trilogy Ltd.*,
   872 F.2d 322 (9th Cir. 1989) .......................................................................................... 3

*Mediatek, Inc. v. Freescale Semiconductor, Inc.*,
   No. 11-5341 YGR JSC, 2013 WL 588760 (N.D. Cal. Feb. 13, 2013) .............................. 10

*Mui Ho v. Toyota Motor Corp.*,
   931 F. Supp. 2d 987 (N.D. Cal. 2013) ............................................................................... 7

*ParkerVision, Inc. v. Qualcomm Inc.*,
   924 F. Supp. 2d 1314 (M.D. Fla. 2013) ............................................................................. 8

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .......................................................................................... 9

*Rambus Inc. v. Infineon Tech. AG*,
   318 F.3d 1081 (Fed. Cir. 2003) .......................................................................................... 4

*Ring Plus, Inc. v. Cingular Wireless Corp.*,
   614 F.3d 1354 (Fed. Cir. 2010) ....................................................................................... 1, 8

*Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co.*,
   204 F.3d 1368 (Fed. Cir. 2000) .......................................................................................... 8

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   864 F. Supp. 2d 856 (N.D. Cal. 2012) ................................................................................ 8

*Williams v. Boeing Co.*,
   517 F.3d 1120 (9th Cir. 2008) ............................................................................................ 3

**Statutory Authorities**

Cal. Civ. Code § 338(d) ................................................................................................................. 4

## I. INTRODUCTION

Despite telling Google that Netlist opposed each of Google's proposed amendments to its Answer and Counterclaims, Netlist does not present any arguments opposing Google's amendments to licensing, negligent misrepresentation, breach of contract, unclean hands, fraud, deceit, or concealment in its Opposition. Thus, it apparently no longer opposes them. Google respectfully requests the Court grant its request as to these defenses and counterclaims.

The only amendments then remaining in dispute are Google's UCL counterclaim and the defenses of inequitable conduct and intervening rights. Netlist's arguments as to each of these amendments are without merit. For example, Google's UCL claim based on Netlist's conduct related to DDR4 did not arise until *after* Netlist amended its infringement contentions on June 18, 2021 to identify DDR4. While Netlist argues that Google should have raised this UCL claim when DDR4 was ratified, at that time, Google had no way of knowing that Netlist would contend that practicing DDR4 infringes claim 16. While the facts on which Google relies may have existed before, they did not become *relevant* to Google's defense until Netlist amended its contentions in June 2021. Requiring Google to raise this counterclaim during the reexam stay, without knowing the relevance of DDR4 or that Netlist would accuse Google of infringing claim 16 by practicing DDR4, is not just unreasonable but impossible. Further, Google relies on the *same* fraudulent activity that Google relied on to support its original fraud counterclaim to support its UCL claim as to Netlist's conduct related to DDR2 and DDR3. Therefore, the relation-back rule *does* apply to allow Google to add this additional allegation now. *See Barrington v. A. H. Robins Co.*, 39 Cal.3d 146, 151(1985).

As to Netlist's inequitable conduct, Netlist claims that the contradictory statements it made during reexamination can never be a basis for such a defense, because they were made by an attorney. Such a limited view of inequitable conduct is baseless. Indeed, it would render the defense nearly meaningless and would allow attorneys during prosecution to say anything to convince the examiner to allow the claims. *See Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1360–61 (Fed. Cir. 2010) ("Although an attorney is free to argue vigorously in favor of patentability without being subject to allegations of inequitable conduct, 'the law prohibits genuine misrepresentations of material fact.'"). Here, inequitable conduct is supported by the unequivocal

contradicting statements Netlist made during reexamination to argue for allowance (i.e., where it told the Patent Office, and later the Federal Circuit, that it made narrowing amendments to avoid the prior art) and now here in the litigation to argue around intervening rights (i.e., where it argues the claims were not in fact narrowed).

Finally, this Court has already granted the parties request to brief interviewing rights. Google merely wishes to add this defense to its Answer as it is already a defense this Court agreed to resolve. Rather than address the substance of the defense, Netlist raises a dispute as to unaccused products and the scope of appropriate discovery as to them. These arguments are without merit and have nothing to do with whether Google can amend to include intervening rights in its pleadings.

Thus, Netlist's opposition to Google's request to add unfair competition, inequitable conduct, and intervening rights should be rejected and the Court should grant Google's Motion.

## II. ARGUMENT

### A. Netlist Fails to Substantively Rebut Google's Good Cause to Add its UCL Counterclaim

#### 1. Google's Request to Add its UCL Counterclaim is Timely

Google's UCL counterclaim is based on two separate categories of allegations that Netlist committed fraud when it (1) failed to timely disclose the application that led to the asserted patent and the asserted patent to JEDEC before members voted to include the accused technology into DDR2 and DDR3 (AC ¶¶25-30), and (2) it failed to disclose, at all, to JEDEC the relevance of the asserted patent to DDR4 (AC ¶¶35-37). While Netlist tries to conflate these two categories of allegations, these are two separate bases of fraud that equally support Google's UCL counterclaim.

With respect to the first instance of fraud, Google pleaded the facts supporting this allegation in its original Answer and Counterclaim. Netlist never once in the 11+ years since Google filed its Answer and Counterclaim argued that this fraud allegation was insufficient, nor does it do so now. As these same facts support Google's UCL counterclaim, Federal and California's relation-back rule applies to permit Google to amend to include UCL based on this first instance of fraud. *See Barrington v. A. H. Robins Co.*, 39 Cal.3d 146, 151 (1985) (holding that California law allows relation-back if the amendment "(1) rests on the same general set of facts as the original complaint;

and (2) refers to the same accident and same injuries as the original complaint"); *see also Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 933 (9th Cir. 2007) (allowing relation back even when with new facts were added to an amendment because the claims asserted arose out of the "same conduct, transaction, or occurrence").[1]

Because Google's UCL claim is based on the same facts as its fraud defense set out in its original Answer, it is not time-barred under the relation-back rule. Google refers to the same facts as in its original complaint to support fraud for UCL: Netlist's failure to disclose the asserted patent to JEDEC in advance of setting DDR2 and DDR3. Google's alleged injuries are also the same: it relied on Netlist's nondisclosure in finalizing industry standards without knowledge of Netlist's intellectual property. Further, because Google raised this fraud in its original Answer, Netlist has had notice that its actions with respect to JEDEC would be central to this litigation. *See Corns v. Laborers Int'l Union of N. Am.*, No. 09-CV-4403 YGR, 2014 WL 1319363, at *6 (N.D. Cal. Mar. 31, 2014) (finding that plaintiff's proposed UCL claim amendment was not time-barred because it arose out of the same facts plaintiff alleged in support of his original claim); *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (holding the key question is whether "the adverse party has fair notice of the transaction, occurrence, or conduct called into question") (quoting *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989)). There is no prejudice to Netlist in adding a counterclaim based on facts that Google already identified, nor has Netlist identified any prejudice.

With respect to the second instance of fraud—Netlist's fraud in failing to disclose to JEDEC, at all, the relevance of the asserted patent to DDR4—Netlist's arguments all rely on the faulty premise that Google could have raised its UCL claim prior to the stay. But Google's UCL claim based on this instance of fraud is predicated on activity that did not come to light until earlier this year when Netlist alleged for the first time that Google infringes claim 16 based on DDR4. AC ¶¶ 61, 18-34. Until then, Google had no knowledge that DDR4 was relevant to the asserted patent. *See ChriMar Sys. Inc. v. Cisco Sys., Inc.*, No. 13-CV-01300-JSW, 2019 WL 8333452, at *17 (N.D. Cal.

---

[1] Netlist's reliance on *Williams v. Boeing Co.* is mistakenly based on Netlist's conflation of Google's two UCL allegations. *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008). Google's UCL allegation of Netlist's failure to disclose the asserted patent's relevance *to DDR2 and DDR3* is based on the same set of facts raised in Google's Original Answer and Counterclaim.

Dec. 17, 2019) (holding that fraudulent acts are not "deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake)" (quoting Cal. Civ. Code § 338(d)). While some of the facts Google relies on to show Netlist's continued failure to timely disclose the asserted patent to JEDEC took place between 2007 and 2011, those facts did not become relevant until Netlist accused Google of infringing claim 16 based on DDR4.[2] As Google was not made aware that these earlier facts were probative of Netlist's fraudulent conduct until earlier this year, Google did not have a sufficient basis to bring forward a UCL claim until now.[3]

      Netlist's argument that Google is time-barred based on the statute of limitations also fails, because it is again based on its faulty premise that the UCL claim would begin to toll when DDR4 was ratified. Opp. at 4. Again, Google's UCL claim with respect to this second basis for fraud could only began to toll when Google first learned (earlier this year) that Netlist contends that claim 16 reads on DDR4. Netlist's reliance on *ChriMar Sys. Inc. v. Cisco Sys., Inc.* actually supports *Google's* position on when the statute of limitations begins to toll. In *ChriMar*, the accused infringer had undergone licensing negotiations with the plaintiff, where they had received notice of the existence of a patent that the plaintiff had not disclosed to the SSO, and importantly, *of the plaintiff's position that said patent read on standards ratified by the SSO*. *ChriMar*, 2019 WL 8333452, at *17. Thus, the statute of limitations began to toll when the plaintiff told the accused infringer of the relevance of the standard to the asserted patent, not when the standard was ratified. *Id*. Similarly, Google's UCL counterclaim began to toll when it had knowledge of the asserted patent's relevance to DDR4. This makes sense, as Google would have no way of knowing that it even had a claim for UCL before knowing that Netlist would contend the asserted patent reads on DDR4. *See Rambus Inc. v. Infineon Tech. AG*, 318 F.3d 1081, 1102 (Fed. Cir. 2003) (where Infineon's fraud claims, despite being raised over 7 years after a SSO had adopted and ratified a standard, were not dismissed for untimeliness even though the statute of limitations on fraud claims in Virginia is only two years).

---

[2] Netlist contends that Google should have known that claim 16 reads on DDR4 based on the patent's disclosure. Opp at 5. But nothing in this patent discloses *DDR4*, and there was no way of Google knowing Netlist would attempt to apply to DDR4 until it saw Netlist's contentions.

[3] Notably, Netlist does not oppose Google's request to amend its counterclaims to include this new fraud allegation, thereby, implicitly agreeing that the fraud allegation is timely and properly raised.

Netlist is incorrect that the "delayed discovery rule" does not apply. As Netlist admits, this rule applies when the UCL claim is based on fraudulent activity. Opp. at 5. And as outlined in detail above, Google *did* bring a UCL claim premised on fraudulent activity, and Google could not have discovered the UCL cause of action earlier. Thus, the "delayed discovery rule" applies and Google's statute of limitations should begin on the day it discovered facts surrounding Netlist's fraud after Netlist amended its infringement contentions on June 18, 2021. *See De La Paz v. Bayer Healthcare LLC*, 159 F. Supp. 3d 1085, 1099 (N.D. Cal. 2016), citing *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (finding the delayed discovery rule applied and that the two-year statute of limitations on plaintiff's action did not accrue until 2014, when she first received information about others who had experienced similar injuries). Netlist relies on *Clemens v. DaimlerChrysler Corp.* to argue that the delayed discovery rule does not apply, claiming that Google was not diligent in discovering the asserted patent's relevance to DDR4. Opp. at 5. But in *Clemens*, unlike here, the plaintiff testified in a deposition that three years prior to filing his action he learned about the cause of action through Internet research he conducted. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008). There was no reasonable Internet or public research Google could have conducted to determine it had a UCL claim before Netlist made its allegations—there are hundreds of standards and sub-standards and it is unreasonable to say Google had a duty to study, research, and compare each of those standards to the patent and to know on which of those standards Netlist would then base its infringement contentions against Google.[4] Because of Netlist's failure to disclose the asserted patent to JEDEC when DDR4 was being ratified, Google could not have known about the patent's relevance to DDR4 until it received Netlist's amended contentions. Therefore, Google has good cause to add its UCL counterclaim based on this second basis of fraud.[5]

---

[4] As Google explained in its Motion to Strike, Netlist's infringement theory as to how claim 16 reads on DDR4 is not plausible. Dkts. 153, 180. Thus, making it even more difficult, if not impossible, for Google to have determined on its own that DDR4 was relevant here.

[5] Google argues in its Motion to Strike that Netlist should not be allowed to add claim 16 due to the late stage of litigation. That argument is not inconsistent with the arguments it makes in its Motion. Here, there is no prejudice to Netlist to allow Google to amend its Answer. However, when Netlist added claim 16, Google did not have a chance to file a reexamination on that claim and the parties already spent a decade litigating invalidity issues on that patent.

### 2. Google Has Sufficiently Pleaded its UCL Claim at this Stage

Netlist contends that Google has not sufficiently pleaded standing to sue under UCL and that Google has not sufficiently pleaded facts to state a claim under any UCL prong. These arguments do not hold water under the proper standing for *pleading* at this stage.

***First***, Netlist's contention that Google has not sufficiently pleaded standing to support that it has (1) "suffered injury in fact" and (2) "has lost money or property as a result of" the asserted unfair competition is incorrect. This Court has held that economic injury from unfair competition may be shown in a number of ways, including:

> [a] plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

*Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1133 (N.D. Cal. 2014).

Google has standing to plead its UCL claims under these requirements. For example, Google explained in its amended pleadings that because of Netlist's failure to timely disclose the asserted patent to JEDEC members, the DDR4 standards were discussed and ratified before members had knowledge of intellectual property that read on the standard. Now, if Netlist is successful in its allegation, many JEDEC members will have no choice but to enter a license agreement with Netlist in order to adhere to industry standards. These members will be "required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id.* Further, contrary to Netlist's assertion, courts have determined that litigation costs are sufficient to support economic injury. AC ¶¶56-60. *See Koller v. West Bay Acquisitions, LLC*, No. C 12–00117, 2012 WL 2862440 (N.D. Cal. July 11, 2012); *Janti v. Encore Capital Group, Inc.*, No. 09CV1969, 2010 WL 3058260 (S.D. Cal. Aug. 3, 2010). These are tangible injuries that Google sufficiently pleaded.

***Second***, Google has sufficiently pleaded facts to state a UCL claim based on the fraud allegations detailed above. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("a party may allege fraudulent conduct and rely on that as the basis of a UCL claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . ."). Google's UCL claim arises out of the same facts as its standalone fraud claims. AC ¶¶61-65. Notably, Netlist does not

1  contend that Google's fraud claims are futile or insufficiently pleaded. In fact Netlist does not raise
2  any objection to Google's fraud claims or its amendments thereto—Netlist did not file a motion to
3  dismiss when Google filed its Answer alleging fraud over 11+ years ago, and it does not allege that
4  Google's fraud claims are deficient now. Yet, Netlist takes the position that Google's sufficiently
5  pleaded fraud claim is somehow not sufficient to support UCL, even though UCL does not require
6  any further showing of fraud than the standalone fraud claim. As Netlist acknowledges by failing to
7  object to or point out any deficiencies, Google's Amended Answer and Counterclaims sets forth all
8  the necessary elements for a cause of action for fraud in California.

9        To leave no doubt that Google has sufficiently pleaded its defense of fraud, Google disclosed
10 each element of fraud in its amended pleadings. The elements for fraud based on omission in
11 California are: "(1) the concealment or suppression of material fact, (2) a duty to disclose the fact
12 to the plaintiff, (3) intentional concealment with intent to defraud, (4) justifiable reliance, and (5)
13 resulting damages." *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013),
14 quoting *SCC Acquisitions*, 207 Cal.App.4th at 863, 143 Cal.Rptr.3d 711. For example, as Google
15 details above, Netlist concealed and suppressed knowledge of the application that led to the asserted
16 patent and the asserted patent from JEDEC members prior to ratification. AC ¶¶21-29. Netlist was
17 under a duty to disclose its patent application that led to the asserted patent and the asserted patent
18 under the JEDEC Patent Policy by which it agreed to abide. AC ¶¶21-23. It knew the JEDEC Patent
19 Policy required disclosure of its patent application and patent, but it intentionally decided not to do
20 so. AC ¶25-30, 35. Had the JEDEC members known of Netlist's patent application and patent, it
21 would not have adopted the accused technology into the standard. AC ¶¶41-42. And as a result of
22 Netlist's concealment of its patent application and patent, Google suffered and sustained damages.
23 AC ¶43. Accordingly, Google has sufficiently pleaded facts to state a UCL claim based on fraud.

24     **B.**    **Google's Request to Add Inequitable Conduct is Not Futile**

25       In arguing that Google's inequitable conduct defense is not sufficiently pleaded, Netlist
26 mistakenly applies the requirements for proving inequitable conduct at the *summary judgment* stage,
27 not the *pleading* stage. Opp. at 10-11 (citing cases resolving the issue of inequitable conduct at the
28 summary judgment stage). At the pleading stage, however, elements, such as "deceptive intent,"

"need only be reasonable and drawn from a pleading's allegations of underlying fact to satisfy Rule 9(b)." *Finjan, Inc. v. Juniper Network, Inc.*, No. C 17-05659 WHA, 2018 WL 5454318, at n.2 (N.D. Cal. Oct. 29, 2018). Google's pleadings need to be reviewed under the standard for *pleading* inequitable conduct, not whether it can survive a motion for summary judgement at this stage.

*First*, Netlist's argument that attorney argument cannot be a "material misrepresentation" to support inequitable conduct is incorrect. Opp. at 11. Statements an attorney makes to the PTO can still "exceed the bounds of acceptable argument" if they are "based on distorted facts" or are "contrary to what a person of skill in the art would understand a reference to disclose." *ParkerVision, Inc. v. Qualcomm Inc.*, 924 F. Supp. 2d 1314, 1320 (M.D. Fla. 2013). For example, in *ParkerVision*, the court determined that a patent applicant's arguments to the PTO during prosecution about the content of prior art was sufficient to support a defense of inequitable conduct at the pleading stage. The court in *ParkerVision* held that the question as to whether the alleged misrepresentations were permissible attorney argument or deliberate fraud was to be decided later in the case. *Id.*; *see also Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1360–61 (Fed. Cir. 2010) (upholding a district court's finding that a mistaken statement to the PTO was a misrepresentation "outside the bounds of permissible attorney argument" even though the examiner could have easily obtained the references and examined them himself); *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1376 (Fed. Cir. 2000) (upholding inequitable conduct charges where a patent applicant willfully misrepresented a prior art reference the PTO).

Further, the Federal Circuit determined that an applicants' statements that directly contradict the position taken before the PTO are but-for material. *Therasense, Inc. v. Becton, Dickinson & Co.*, 864 F. Supp. 2d 856, 864 (N.D. Cal. 2012). In *Therasense*, the patentee had previously made statements before the European Patent Office that were in direct opposition to statements it made before the PTO, and it withheld those contradictory EPO statements during prosecution. Similarly, Netlist has made statements in its interrogatory responses that directly contradict statements it made before the Federal Circuit and PTO. This is not attorney argument during a reexamination, as Netlist contends, but this is an affirmative misrepresentation that Netlist made to the Federal Circuit and PTO. These statements are indicative of a material misrepresentation made before the PTO.

8                             CASE NO. 4:09-CV-05718-SBA
                                                                                         GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO AMEND ANSWER AND COUNTERCLAIMS

*Second*, Netlist argues that Google has not identified any false statement, because the claim construction standards applied during reexamination (broadest reasonable interpretation, "BRI") are different from the standards used to assess whether intervening rights exist (*Phillips*). Netlist mischaracterizes basic principles of claim construction, even stating that "a claim narrowed during prosecution under BRI can still have [the] same scope as the original claim under *Phillips*." Opp. at 12. The prosecution history of a patent, including the attorney statements therein, are highly relevant sources of intrinsic evidence for determining the scope of a claim term under *Phillips*. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc). Courts routinely look to an applicant's narrowing statements and disclaimers during prosecution to construe the claims under *Phillips*. Thus, Netlist's reliance on differences in the standards has no bearing on whether Netlist made a false statement to the PTO and the Federal Circuit. Regardless, this issue is a *factual* dispute as to the scope of the statement and not a dispute that should preclude amending at the pleading stage.

*Third*, Netlist claims that Google has failed to allege deceptive intent, claiming that Google has not identified an "individual" who made a false statement and has not alleged separate facts showing specific intent to deceive. But Google met this requirement by identifying that Netlist, through its attorneys, made false statements to the Board and the Federal Circuit to argue for allowance of the claims in view of the prior art rejections during examination.[6] This Court has found that misleading statements made by attorneys give rise to an inference of deceptive intent at the pleading stage. *See Coolsystems, Inc. v. Nice Recovery Sys. LLC*, No. 16-CV-02958-PJH, 2016 WL 6091577, at *5 (N.D. Cal. Oct. 19, 2016) (holding that the "alleged falsity of the [misleading] statement" by the patent prosecutor was enough to support an inference of intent).

Google has met the heightened particularity standard under Rule 9(b), by alleging the who, what, when, where, and how of the material misrepresentation to the Federal Circuit and PTO. AA ¶¶1-34. Google has alleged enough facts to support a reasonable inference of deceptive intent. Thus, Google should be allowed to amend its answer to add the defense of inequitable conduct.

---

[6] To the extent Netlist complains that Google has not "named" an individual, Google could amend to include the name of the patent prosecutor in its pleadings. However, this level of detail is not required and not a basis on which to deny Google's Motion.

### C. Google Has Good Cause to Add an Intervening Rights Defense

Netlist's argument for opposing Google's amendment to add intervening rights is premised entirely on a last minute attempt to create a dispute where none exists. Netlist's arguments are a *discovery* dispute as to whether Google needs to produce discovery on products Netlist has never identified in its contentions—a dispute that Netlist only recently manufactured in light of Google's motion for summary judgement. To date, Netlist has only accused 4-Rank devices. Dkt. 154-8. For example, Netlist's infringement contentions rely on the Encoded QuadCS mode in JESD 82-31A, which only relate to 4-Rank devices. Dkt. 134-12 at 16, 17, 20. In opposing this amendment, Netlist appears to be relying on some unknown product or products that it has not identified in its contentions or in its Opposition. This has no merit or relevance here.

Google has not withheld any discovery on these *accused* products, nor does Netlist argue it has. Based on Netlist's infringement contentions, Google responded to Netlist's interrogatories (including promptly supplementing as it further investigated the issues during discovery). While Netlist relies on the June 25, 2021 hearing in front of Judge Spero, Netlist does not identify where it made any request at that hearing for discovery beyond the accused 4-rank products. This is unsurprising as that did not happen. Discovery on products is necessarily tied to the accused products in a case, and Netlist cannot use its opposition to seek discovery beyond what it has accused. *Mediatek, Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341 YGR JSC, 2013 WL 588760, at *2 (N.D. Cal. Feb. 13, 2013), citing *Kelora Systems, LLC v. Target Corp.*, No. C 11–01548 CW (LB), 2011 WL 5444419, at *2 (N.D. Cal. Nov. 9, 2011). Nevertheless, it is clear that this argument is at best a *discovery* dispute, not something to be addressed on a motion to amend *pleadings*, especially in light of the Court's agreement that this issue needs to be resolved. Dkt. 172.

### III. CONCLUSION

For the foregoing reasons and those set forth in its opening motion, Google requests that the Court grant its Motion to Amend its Answer and Counterclaims.

| | | |
|---|---|---|
| DATED: October 8, 2021 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By | /s/ *Deepa Acharya* |
| | | Deepa Acharya |

David Perlson (CA Bar No. 209502)
davidperlson@quinnemanuel.com
Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jared Newton (admitted *pro hac vice*)
jarednewton@quinnemanuel.com
Deepa Acharya (CA Bar No. 267654)
deepaacharya@quinnemanuel.com
Sandy Shen (admitted *pro hac vice*)
sandyshen@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Catlin Williams (CA Bar No. 336464)
catwilliams@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant Google LLC*