# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

IRELL & MANELLA LLP
Jason G. Sheasby (CA SBN 205455)
jsheasby@irell.com
Andrew J. Strabone (CA SBN 301659)
astrabone@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

*Attorneys for Plaintiff Netlist, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 4:09-cv-05718-SBA <br><br> **PLAINTIFF NETLIST, INC.'S MOTION TO TRANSFER VENUE** <br><br> Hearing Date: March 9, 2022 <br> Time: 2:00 PM <br> Location: Oakland Courthouse |

**NOTICE OF MOTION**

To all parties and their attorneys of record:

Please take notice that on March 9, 2022, or as soon thereafter as the matter may be heard, at the Oakland Courthouse, 1301 Clay Street, Oakland, California 94612, or remotely should the Court so order, before the Honorable Saundra Brown Armstrong, Plaintiff Netlist, Inc. ("Plaintiff" or "Netlist") will and hereby does move for an order transferring this action to the United States District Court for the Central District of California (the "Central District") in the interests of justice pursuant to 28 U.S.C. § 1404. This Motion is based on: this Notice of Motion, the accompanying Memorandum of Points and Authorities below, the Declaration of Jason G. Sheasby and exhibits attached thereto, all documents in this Court's file, and such other written or oral argument as may be presented at or before the time this Motion is heard by the Court.

**STATEMENT OF RELIEF REQUESTED**

Netlist seeks an order holding that this action is transferred to the Central District of California pursuant to 28 U.S.C. § 1404.

**STATEMENT OF ISSUES TO BE DECIDED**

(1) Whether this action may have been properly brought in the Central District of California;

(2) Whether this action may be transferred to the Central District of California pursuant to 28 U.S.C. § 1404.

**CERTIFICATION**

Pursuant to Paragraph 4 of the Court's Standing Order, counsel for Netlist certifies that it met and conferred with counsel for Google on January 18, 2022, in a good-faith effort to resolve the issues raised in this motion. However, the parties cannot reach an agreement on issue of venue transfer.

Dated: January 18, 2022            Respectfully submitted,

                                         IRELL & MANELLA LLP

                                         By: */s/  Jason G. Sheasby*

Jason G. Sheasby
jsheasby@irell.com
Andrew J. Strabone
astrabone@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

*Attorneys for Plaintiff Netlist, Inc.*

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 1
I.    INTRODUCTION ................................................................................................................. 1
II.   LEGAL STANDARD ........................................................................................................... 3
III.  CASE STATUS ..................................................................................................................... 3
IV.  ARGUMENT ........................................................................................................................ 4
      A.    This Action Could Have Been Brought in the Central District of California ................................................................................................................. 4
      B.    Google's Presence in the Central District Has Expanded Since 2009, As Have Its Acts of Infringement ............................................................................ 6
      C.    The Changes in Circumstances Justify Transfer to the Central District ............................................................................................................................ 6
      D.    The Interest of Justice Factors Strongly Favor Transfer ......................................... 8
      E.    Other Factors Do Not Justify Keeping this Case in the Northern District ............................................................................................................................ 9
V.   CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agilent Techs., Inc. v. Elan Microelectronics Corp.*,
 No. 04-cv-5385, 2005 WL 3260162 (N.D. Cal. Nov. 29, 2005) ..................................................5

*In re Al Sadeq*,
 No. 20-MC-80224, 2021 WL 2828810 (N.D. Cal. Mar. 30, 2021) .............................................4

*Cisco Sys., Inc. v. TiVo, Inc.*,
 No. 12-cv-2766, 2012 WL 3279532 (N.D. Cal. Aug. 10, 2012) ................................................8

*In re Cray, Inc.*,
 871 F.3d 1355 (Fed. Cir. 2017) ..................................................................................................5

*Cutsforth, Inc. v. LEMM Liquidating Co., LLC*,
 No. CV 12-1200, 2018 WL 847763 (D. Minn. Feb. 13, 2018) ..................................................5

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) ....................................................................................................................4

*Fitbit, Inc. v. Koninklijke Philips N.V.*,
 336 F.R.D. 574 (N.D. Cal. 2020) ................................................................................................3

*Gates v. Learjet Corp. v. Jensen*,
 743 F.2d 1325 (9th Cir. 1984) ....................................................................................................8

*Google Inc. v. Netlist, Inc.*,
 08-cv-4144 (N.D. Cal. 2008) ...........................................................................................3, 4, 7

*Green Aire for Air Conditioning W.L.L. v. Salem*,
 No. 18-cv-873, 2020 WL 4734909 (E.D. Cal. Aug. 14, 2020) ..................................................6

*Hoffman v. Blaski*,
 363 U.S. 335 (1960) ....................................................................................................................4

*Howard v. CVS Caremark Corp.*,
 No. 13-cv-4748, 2013 WL 12164627 (C.D. Cal. Aug. 22, 2013) ..............................................6

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
 No. 19-cv-7223, 2020 WL 1922635 (N.D. Cal. Apr. 21, 2020) ................................................3

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
 626 F.3d 1222 (Fed. Cir. 2010) ..................................................................................................5

| | **Page** |
|---|---|
| *Plexxikon Inc. v. Novartis Pharms. Corp.*, No. 17-cv-04405, 2017 WL 6389674 (N.D. Cal. Dec. 7, 2017) | 5 |
| *Proctor & Gamble Co. v. Ranir, LLC*, No. 17-cv-185, 2017 WL 3537197 (S.D. Ohio Aug. 17, 2017) | 5 |
| *Samsung Elec. Co., Ltd. v. Netlist, Inc.*, No. 21-cv-1453, Dkt. 10 (D. Del. Dec. 20, 2021) | 7 |
| *Sherar v. Harless*, 561 F.2d 791 (9th Cir. 1977) | 8 |
| *In re SK hynix Inc.*, 847 F. App'x 847 (Fed. Cir. 2021) | 4 |
| *Storage Tech. Corp. v. Cisco Sys. Inc.*, 329 F.3d 823 (Fed. Cir. 2003) | 2 |
| *TC Heartland LLC v. Kraft Food Grp. Brancs LLC*, 137 S. Ct. 1514 (2017) | 5 |
| *Townsend v. Brooks Sports, Inc.*, No. 17-cv-62, 2017 WL 6417328 (M.D. Fla. Aug. 31, 2017) | 5 |
| *Trintec Indus. v Pedre Promotional Prods.*, 395 F.3d 1275 (Fed. Cir. 2005) | 4 |
| *Ventress v. Japan Airlines*, 486 F.3d 1111 (9th Cir. 2007) | 3 |
| *Vitria Tech, Inc. v. Cincinnati Ins. Co.*, No. 05-cv-1951, 2005 WL 2431192 (N.D. Cal. Sept. 30, 2005) | 6 |
| *Williams v. Bowman*, 157 F. Supp. 2d 1103 (N.D. Cal. 2001) | 3 |
| *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052 (9th Cir. 2005) | 8 |
| *Wood v. Best Buy Co., Inc.*, No. 11-cv-1877, 2011 WL 3740812 (N.D. Cal. Aug. 25, 2011) | 8 |

**Statutes**

| | |
|---|---|
| 28 U.S.C. § 1338 | 4 |
| 28 U.S.C. § 1400(b) | 5 |

|   | Page |
|---|---|
| 28 U.S.C. § 1404(a) | 1, 2, 5 |
| 28 U.S.C. § 1406(b) | 5 |

**Rules**

| | |
|---|---|
| Fed. R. Civ. P. 1 | 8 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiff Netlist, Inc. ("Netlist") respectfully requests the Court transfer this case to the Central District of California ("Central District") pursuant to 28 U.S.C. § 1404(a) to enable a speedy resolution of the parties' disputes and serve the interests of justice.

Netlist does not make this request lightly. Netlist strongly believed, when this case started up again after Netlist prevailed in the United States Patent and Trademark Office (the "PTO") and the Federal Circuit after a decade, that Judge Armstrong should hear the case. But because of the significant importance of this case to Netlist, as a public company, and ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, a transfer to the Central District best serves the interests of justice.

Netlist's principal place of business is in the Central District. Google has a significant presence in the Central District. This by itself does not justify transfer. But on the very unique circumstances of this case, transfer is appropriate.

Netlist's primary business is the design and sale of memory modules. Before Google implemented designs that infringed the '912 patent, it was a customer of Netlist. Google then decided to create its own infringing products rather than use products supplied by Netlist. After Netlist filed this lawsuit, Google and its partners initiated an *inter partes* reexamination of the '912 patent that lasted a decade. During this entire time period, the case was stayed. The end result of the reexamination, after two opinions by the Patent Trial and Appeal Board, a motion for reconsideration by Google and its partners, and an appeal to the Federal Circuit by Google and its partners, was the affirmance of 78 claims in the patent as valid. PTAB Appeal No. 2015-006849; PTAB Appeal No. 2018-003618; *Google LLC v. Netlist, Inc.*, 810 F. App'x 902 (Fed. Cir. 2020). This suit is incredibly important to Netlist. Google's behavior strikes at the heart of Netlist's business. Netlist is entitled to as prompt a resolution of this dispute as possible.

Transfer is justified for the following reasons: **First,** Google is no stranger to the Central District. It has located major operations in the Los Angeles area. **Second,** the Central District is dramatically less congested than the Northern District, with patent cases pending for an average of

352.6 days versus 603.9 days in the Northern District.[1]  With the elevation of Judge Koh to the Ninth Circuit, ███████████████████████████, Netlist is concerned that this gap is likely to only increase.  ***Third***, there have been no substantive rulings in the instant case and there is no currently pending schedule.  Although the Federal Circuit affirmed the patent as valid on June 15, 2020, Google has been able to delay substantive progress of this case.  It did so by claiming that it would bring a dispositive motion on intervening rights.  This was a promise Google could not keep.  Google openly concedes that the threshold motion it has filed is not dispositive.  Dkt. 149 at 2 ("Defendant will no longer be seeking early summary judgment on equitable intervening rights . . . .").  The net result is that there will be no inefficiency by transitioning the case now to another Court.

Netlist sent a draft of this motion to Google in advance of filing and asked Google to be prepared to discuss it at the live meet and confer that Google insisted on—even though Google stated in advance that Google would oppose transfer.  At the meet and confer, Google had no principled explanation for why the Central District should not receive this case and did not respond to any of the arguments made in the draft of the motion shared with it.  When Netlist counsel asked Google if there were any questions that Netlist could answer, Google's counsel remained silent.  Instead, they simply announced that Netlist was "forum shopping."  Sheasby Decl. ¶1.

Google also refused to agree to have a magistrate judge decide this motion to transfer.  Google's only explanation for this opposition was that it objected to Netlist "want[ing] to have it [how this case can proceed] judge[d] quickly."  *Id.*

Google is holding this entire case hostage not because of a principled objection to a hearing before a magistrate on this motion or a transfer to the Central District, but because it simply wants to delay the consequences of the behavior at issue in this case for as long as possible.

Google is taking advantage of the ███████████████████████ to obtain a de facto indeterminate stay of this case.

---

[1] Ex. 1 at 1 (comparing the timeline of patent cases in the Northern District and the Central District).

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Ninth Circuit law applies in determining whether to transfer venue under § 1404(a). *Storage Tech. Corp. v. Cisco Sys. Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003). Courts in the Northern District of California weigh multiple factors in determining whether transfer is appropriate. *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). Those factors include: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time to trial in each forum. *Id.*; *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, No. 19-cv-7223, 2020 WL 1922635, at *4 (N.D. Cal. Apr. 21, 2020) (same). The weighing of the factors for transfer is left within the sound discretion of the trial judge. *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 580 (N.D. Cal. 2020) (citing *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007)).

## III. CASE STATUS

In December 2009, Netlist brought this action against Google for infringement of U.S. Patent No. 7,619,912 ("the '912 patent"). Dkt. 1 ("*Google II*"). Netlist filed in the Northern District after Google first brought a declaratory judgment action relating to a patent in the same family (U.S. Patent No. 7,289,386, "the '386 patent") in 2008 in the Northern District. *Google Inc. v. Netlist, Inc.*, 08-cv-4144-SBA (N.D. Cal. 2008) ("*Google I*"). At that time, Netlist moved to consolidate the two cases to resolve both together. *Id.* Dkt. 83. The Court denied Netlist's motion for consolidation. *Id.* Dkt. 95. In 2016, *Google I* was dismissed with prejudice. *Id.* Dkt. 211.

Meanwhile, *Google II* was stayed for a decade while the '912 patent went through and emerged from reexamination with 78 claims affirmed valid. Dkt. 115 at 2-3; Dkt. 98 at 10. No substantive progress was made on the case before the stay. However, because Judge Armstrong had issued a claim construction order relating to the '386 patent in *Google I*, Netlist believed the interests of justice and judicial economy favored *Google II* remaining with Judge Armstrong despite the

dismissal of *Google I*. Given the very unique procedural circumstances that have arisen, Netlist now believes it is appropriate to transfer to the Central District.

## IV. ARGUMENT

### A. This Action Could Have Been Brought in the Central District of California

Netlist can show that this case "might have been brought" in the Central District by showing that: (1) the proposed transferee court possessed subject matter jurisdiction over this action; (2) venue would have been proper in the transferee court; and (3) the defendant would have been subject to personal jurisdiction in the transferee court. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *see also In re SK hynix Inc.*, 847 F. App'x 847, 852 (Fed. Cir. 2021) (quoting *Hoffman* and noting that where a suit "might have been brought" under 1404(a) requires a judge to consider "***the situation which existed when [the] suit was instituted***") (emphasis added).

First, the Central District has subject matter jurisdiction over patent cases. 28 U.S.C. § 1338. Second, under applicable Federal Circuit law at the time this case was filed, personal jurisdiction and venue would be subject to the same analysis. *Trintec Indus. v Pedre Promotional Prods.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) (venue for patent cases is proper wherever the court has personal jurisdiction over the corporate defendant). The Central District could properly exercise personal jurisdiction over Google. Google has its principal place of business located in Mountain View, California, and therefore Google is subject to general jurisdiction of federal courts in California. *In re Al Sadeq*, No. 20-MC-80224, 2021 WL 2828810, at *2 (N.D. Cal. Mar. 30, 2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Within the Central District specifically, Google[2] had facilities located at 604 Arizona Ave, Santa Monica, CA 90401-1610. Ex. 2 at 1. And at the time this suit was filed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 3 at 4 (March 11, 2010 Deposition of Andrew Dorsey, *Google v. Netlist*, Case No. 08-cv-4144, 21:10-12) ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."); Ex. 4 at 4 (March 23, 2010 Deposition of Norman Haus, *Google v. Netlist*, Case No. 08-cv-4144, 57:6-10) ("▮▮▮

---

[2] The Santa Monica premises were controlled and occupied by Google Inc., which changed its name to Google LLC on September 30, 2017. Dkt. 89.

- 4 -

Plaintiff Netlist, Inc.'s Motion to Transfer Venue
Case No. 4:09-cv-05718-SBA

1   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). Further, Google was a customer of Netlist beginning in 2003 and the parties had extensive communications regarding Netlist's memory modules practicing the relevant patent in suit since 2006. *See* Dkt. 212-6, at 10 ("Since at least as early as 2006, Netlist and Google engaged in a series of meetings in which Netlist shared with Google the technology covered by [the patent in suit]."). Thus, the Central District would have had personal jurisdiction over Google because the current lawsuit arises from Google's purposeful conduct directing its infringing activities to California and more specifically, the Central District. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1233 (Fed. Cir. 2010) (finding the accused infringer purposefully directed its infringing activities at the residents of California and therefore satisfied personal jurisdiction requirements); *Agilent Techs., Inc. v. Elan Microelectronics Corp.*, No. 04-cv-5385, 2005 WL 3260162, at *3 (N.D. Cal. Nov. 29, 2005) (finding personal jurisdiction based on, among others, the accused infringer's contract relationship with a local company to develop the accused infringing products).

Even if this Court were to find that *TC Heartland LLC v. Kraft Food Grp. Brancs LLC*, 137 S. Ct. 1514 (2017) applies retroactively—which no court in the Ninth Circuit has held at least in the context of 28 U.S.C. § 1404(a)[3]—venue would still have been proper in the Central District. Under *TC Heartland*, "[a] civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *In re Cray, Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) (listing the requirements for physical presence). Both prongs are satisfied here.

In 2009, Google had an office in the Central District from which Google employees had been conducting regular business at least since 2005. Ex. 2 at 1; Ex. 5 at 5; *see Plexxikon Inc. v.*

---

[3] District courts in the Ninth Circuit have not addressed this issue. Some courts from other circuits have held that *TC Heartland* applies retroactively in determining whether venue is proper under 28 U.S.C. § 1406(b). *See, e.g.*, *Townsend v. Brooks Sports, Inc.*, No. 17-cv-62, 2017 WL 6417328, at n.3 (M.D. Fla. Aug. 31, 2017); *Cutsforth, Inc. v. LEMM Liquidating Co., LLC*, No. CV 12-1200, 2018 WL 847763, at *1 (D. Minn. Feb. 13, 2018); *Proctor & Gamble Co. v. Ranir, LLC*, No. 17-cv-185, 2017 WL 3537197, at *3 (S.D. Ohio Aug. 17, 2017).

*Novartis Pharms. Corp.*, No. 17-cv-04405, 2017 WL 6389674, at *2 (N.D. Cal. Dec. 7, 2017) (finding venue proper in this district based on plaintiff's allegation that defendant committed acts of infringement therein, and that defendant "leases and operates two adjacent facilities in [this district]" where "common sense establishes that they are locations where 'steady, uniform, orderly, and methodical' business activities take place"). Moreover, Google committed acts of infringement within the Central District by ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Supra* at 4–5. Thus, this instant lawsuit could have been brought in the Central District.

### B. Google's Presence in the Central District Has Expanded Since 2009, As Have Its Acts of Infringement

Google has dramatically expanded its presence in the Central District since this case was filed. Ex. 6 at 3 (explaining Google's L.A. expansion between 2011 and 2022). For example, Google opened several offices in Los Angeles and Irvine, with 289 and 69 job openings currently listed respectively. Ex. 7 at 1 & 5. Further, Google recently opened facilities within the Central District that involve the use of infringing memory modules. Specifically, in 2018, Google opened its Los Angeles Cloud Platform for business. Ex. 8 at 1. According to Google, the Los Angeles facilities provide cloud and data services to its customers, including but not limited to computing, data storage and databases, as well as big data and machine learning. *Id.* at 2–3. These facilities use the infringing products. As such, the Central District has a strong local interest in adjudicating the parties' disputes regarding the '912 Patent. Ex. 9. Google would not suffer inconvenience in the Central District either. *See Vitria Tech, Inc. v. Cincinnati Ins. Co.*, No. 05-cv-1951, 2005 WL 2431192, at *3 (N.D. Cal. Sept. 30, 2005) (noting that nonmoving party would not be inconvenienced when it also had offices in the transferee forum).

### C. The Changes in Circumstances Justify Transfer to the Central District

Although the Ninth Circuit "has not explicitly addressed this issue or adopted a standard stating that a plaintiff must show changed circumstances," district courts within this circuit routinely ask whether changes in circumstances exist that justify a plaintiff's motion to transfer venue. *Green Aire for Air Conditioning W.L.L. v. Salem*, No. 18-cv-873 , 2020 WL 4734909, at *3 (E.D. Cal.

Aug. 14, 2020); *see also Howard v. CVS Caremark Corp.*, No. 13-cv-4748, 2013 WL 12164627, at *2 & n.4 (C.D. Cal. Aug. 22, 2013) (collecting cases). Here, the changed circumstances that occurred after Netlist filed its initial complaint warrant transfer of this case to the Central District.

*First*, the current case was stayed for over ten years between January 27, 2011 and February 17, 2021. Dkt. 115 at 2-3. During this time period all other proceedings between Google and Netlist in the Northern District were dismissed with prejudice. *Google I*, Dkt. 211.

*Second*, Google has made clear that it has no interest in the instant case proceeding in the Northern District. To the contrary, after Samsung brought an improper declaratory judgment claim on the '912 patent in the District of Delaware,[4] Google proposed staying the Northern District case. Dkt. 218, at 2 fn.1 (Google's Response to Netlist's Statement of Recent Decision) ("[J]udicial efficiency favors staying this case and allowing Samsung's action to proceed . . . ."). Nor is this the first time Google has sought to stay this case pending the resolution of a lawsuit between Netlist and Samsung. *See* Ex. 10 at 2 (███████████████████████████████████████████).

*Third*, ███████████████, and Judge Koh has been elevated to the Ninth Circuit. Before these events, patent cases in the Central District had an average pendency of 352.6 days. Ex. 1 at 1. This timeframe is significantly shorter than the average pendency of 603.9 days in the Northern District. *Id*. The difference is likely to only increase in the near future.

*Fourth*, as discussed in the previous section, Google's presence in the Central District has expanded significantly. *Supra* at 5-6.

*Fifth*, this case was initiated almost 13 years ago. The patent was affirmed valid by the Federal Circuit on June 15, 2020. It is apparent that Google has no interest in progressing this case forward, as evidenced by an empty promise of a dispositive threshold motion to justify the case not progressing on a standard schedule—a promise on which it never delivered. *Compare* Dkt. 115 at

---

[4] Netlist has moved to dismiss Samsung's declaratory judgment action in the District of Delaware. *Samsung Elec. Co., Ltd. v. Netlist, Inc.*, No. 21-cv-1453, Dkt. 10 (D. Del. Dec. 20, 2021). The District of Delaware has no connection to any dispute between the parties. None of Samsung, Google, or Netlist has any facilities or employees in Delaware.

2 (asserting that intervening rights is a "case-defining issue" and asking the court to set the briefing schedule for this issue before technical discovery), *with* Dkt. 149 at 2 ("Defendant will no longer be seeking early summary judgment on equitable intervening rights . . . ."). But Netlist has a significant commercial interest in vindicating its rights promptly. Netlist is an operating company that sells memory modules. With one of the largest consumers of memory modules in the world refusing to respect Netlist's patent rights, the harm to Netlist's business cannot be fully quantified. In the Ninth Circuit this is a factor that is properly considered when setting schedules or transferring venue. *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005) (courts "routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases"); *Cisco Sys., Inc. v. TiVo, Inc.*, No. 12-cv-2766, 2012 WL 3279532, at *6 (N.D. Cal. Aug. 10, 2012) ("[I]nterest of justice requires inquiry into 'whether efficient and expeditious administration of justice would be furthered' by transfer.") (quoting *Sherar v. Harless*, 561 F.2d 791, 794 (9th Cir. 1977)); *see also* Fed. R. Civ. P. 1 (courts administer the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding").

### D. The Interest of Justice Factors Strongly Favor Transfer

"The interest of justice alone can be decisive" even if other facts weigh against transfer. *Wood v. Best Buy Co., Inc.*, No. 11-cv-1877, 2011 WL 3740812, at *1 (N.D. Cal. Aug. 25, 2011) (citation omitted). In the Ninth Circuit, "[t]he real issue is . . . whether a trial may be speedier in another court because of its less crowded docket." *Gates v. Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984). The Central District is less congested than the Northern District. For the twelve-month period ending June 30, 2021, the average number of civil filings per judgeship in the Central District was 565, substantially less than the number of average civil filings in this district, which was 718 for the same period. Ex. 11 at 1. For the twelve-month period ending June 30, 2021, the median time-to-trial in the Central District was 20.8 months, but was 26.9 months in the Northern District. *Id.* With respect to patent cases in particular, the average case termination time, for the period between 2011 and 2022, is 352.6 days in the Central District and 603.9 days for the Northern District. Ex. 1.

### E.     Other Factors Do Not Justify Keeping this Case in the Northern District

Netlist voluntarily brought suit in the Northern District. Netlist's principal place of business is in the Central District. Google has a major presence in the Central District. Further, there are witnesses spread throughout the country relevant to the case. This includes Google and Netlist employees and ex-employees, as well as third parties who have relevant knowledge regarding Google's use of the accused infringing products. Google's Rule 26 disclosures, discovery responses, and deposition testimony disclosed, for example, the following relevant third-party entities with facilities outside the Northern District.

- ██████████████████████████████████████████████████████████. Ex. 12 at 1.
- ██████████████████████████████████████████████████████████
██████████████████████████. Ex. 13 at 1–5.
- ██████████████████████████████████████████████████████████. Ex. 14 at 3; Ex. 15 at 1.
- ██████████████████████████████████████████████████████████
██████████████████████████████. Ex. 16 at 1.
- ██████████████████████████████████████████████████████. Ex. 17 at 2–3.
- ██████████████████████████████████████████████████████████. Ex. 18 at 2; Ex. 19 at 68.
- ████████████████████████████████████████████████. Ex. 19 at 72.

Google has identified two former employees that have relevant knowledge who reside in the Northern District. Ex. 21 at 1–2; Ex. 22 at 1–2. Also according to Google's amended initial disclosures, witnesses at Knobbe Martens Olson & Bear LLP ("Knobbe Martens") have knowledge of the prosecution of the '912 patent. Knobbe Martens is located at 2040 Main Street 14th Floor, Irvine, CA 92614, within the Central District. Ex. 23 at 1. Netlist identified a former employee in its initial disclosures, Jonathan Siann, and based on publicly available information, he is currently located in San Diego. Ex. 24 at 1.

|   |   |
|---|---|
| 1 | In light of the above facts, none of the factors the Northern District considers beyond the interests of justice justify this case remaining in the Northern District. And the interests of justice strongly favors transfer to the Central District on these unique facts. To be clear, Netlist is not filing this motion because it "likes" one district over another. Netlist is filing this motion because it has been waiting 13 years to address actions by Google that profoundly harmed its business, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and the Central District is a less impacted forum in which an Article III judge can feasibly take up the case. |

## V. CONCLUSION

For the foregoing reasons, this case should be transferred to the Central District.

Dated: January 18, 2022

Respectfully submitted,

IRELL & MANELLA LLP

By: /s/ Jason G. Sheasby

Jason G. Sheasby
jsheasby@irell.com
Andrew J. Strabone
astrabone@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

*Attorneys for Plaintiff Netlist, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2022, I caused the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically email notification of such filing to all counsel of record who have made a formal appearance. I further certify that on January 18, 2022, the unredacted version of the foregoing was served on counsel of record who have made a formal appearance.

By: */s/        Yanan Zhao*
             Yanan Zhao