# REDACTED VERSION OF NETLIST'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE

IRELL & MANELLA LLP
Jason G. Sheasby (CA SBN 205455)
jsheasby@irell.com
Andrew J. Strabone (CA SBN 301659)
astrabone@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile:  (310) 203-7199

*Attorneys for Plaintiff Netlist, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 3:09-cv-05718-RS <br><br> **PLAINTIFF NETLIST INC.'S REPLY IN SUPPORT OF NETLIST'S MOTION TO TRANSFER VENUE (DKT. 224)** <br><br> Hearing Date: March 3, 2022 <br> Time: 1:30 PM <br> Location: San Francisco Courthouse |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE (DKT  224)
CASE NO  3:09-CV-05718-RS

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT ................................................................................................................... 3

     A.   The C.D. Cal. Is Less Congested ........................................................................ 3

     B.   Google's Claim that Convenience of Witnesses Favors the N.D. Cal. is Incorrect ........................................................................................................... 4

     C.   Google's Remaining Arguments Are Inapposite to Netlist's Motion to Transfer ............................................................................................................ 5

          1.   C.D. Cal. Has a Strong Local Interest in This Controversy ..................... 5

          2.   Google's Forum Shopping Allegations Are Baseless ............................... 7

          3.   Google's Attempts to Shift the Blame for Delays in This Case Fall Flat ................................................................................................. 8

III.  CONCLUSION ................................................................................................................ 9

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Subaru of Am., Inc.*,
 No. 20-cv-290, 2020 WL 10142250 (D. Haw. Oct. 8, 2020) ........................................................7

*Gelber v. Leonard Wood Mem'l for Eradication of Leprosy*,
 No. 07-cv-1785, 2007 WL 1795746 (N.D. Cal. June 21, 2007) ..................................................5

*Getz v. Boeing Co.*,
 547 F. Supp. 2d 1080 (N.D. Cal. 2008) ...................................................................................5, 7

*Google LLC v. Netlist, Inc.*,
 810 F. App'x 902 (Fed. Cir. 2020) ..............................................................................................9

*Google, Inc. v. Netlist, Inc.*,
 No. 08-cv-4144 (N.D. Cal. Nov. 16, 2009) .............................................................................1, 4

*Kannar v. Alticor, Inc.*,
 No. 08-cv-5505, 2009 WL 975426 (N.D. Cal. Apr. 9, 2009) ..............................................2, 4, 5

*Microsoft Corp. v. DataTern, Inc.*,
 755 F.3d 899 (Fed. Cir. 2014) .....................................................................................................9

*Qurio Holdings, Inc. v. DISH Network Corp.*,
 No. 15-cv-930, 2015 WL 4148962 (N.D. Cal. July 9, 2015) ..................................................6, 7

*Samsung Elecs. Co. Ltd. v. Netlist, Inc.*,
 No. 21-cv-1453, Dkt. 1 (D. Del. Oct. 15, 2021) .........................................................................9

*Williams v. Bowman*,
 157 F. Supp. 2d 1103 (N.D. Cal. 2001) ...................................................................................7, 8

**Rules**

Fed. R. Civ. P. 26 ..............................................................................................................................5

**Regulations**

C.D. Cal. General Order No. 21-11 ..................................................................................................3

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- ii -

NETLIST'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE (DKT 224)
CASE NO 3:09-CV-05718-RS

## I. INTRODUCTION

Google's Opposition (Dkt. 233) is empty rhetoric. The sole purpose of this Motion is to give the Court the tools to ensure as prompt an adjudication of a claim that has been pending against Google for 13 years as is possible. Netlist is entitled to no more. And Netlist is entitled to no less. To put the importance of this case in context to Netlist as a company, when the pending motions were taken off calendar indefinitely on January 11 because of [redacted], Netlist lost several hundred million dollars in market capitalization. Ex. 1; Dkt. 222. Netlist's commercial relationship with Google is long. This lawsuit started because Google decided to cease purchasing Netlist's products and instead decided to make infringing knock-off products using third-party manufacturers, in particular, [redacted] which is located in the Central District. To this day, every time Google purchases knock-off products from [redacted] Netlist loses a potential sale.

Netlist asked Judge Armstrong to re-open the case and did not seek to transfer it because Judge Armstrong was familiar with the technology and had issued a claim construction order for a patent in the same family. *Google, Inc. v. Netlist, Inc.*, No. 08-cv-4144, Dkt. 79 (N.D. Cal. Nov. 16, 2009). [redacted], and given the impacted docket in the Northern District, Netlist's sole goal is to move toward as prompt an adjudication as possible. Indeed, Google's resistance to transfer to the Central District is bizarre given that it now suggests to the Court that it stay this case yet again because of a lawsuit pending in the Central District [redacted] *See* Dkt. 235-3 at 7–8 (noting that outcome of Netlist-Samsung litigation in the Central District "will determine [redacted] and threatening to file a motion to stay pending the outcome of the Samsung case in the Central District).

Google's representations to the Court in its Opposition do not reflect reality. Google claims it brought "dispositive" motions (*e.g.*, Dkt. 233 at 5–6) while doing nothing of the sort. Instead, Google concedes it is not moving for equitable intervening rights. *Id.* at 8 n.4. Netlist asked Google if it would agree to a magistrate judge for all purposes; Google never bothered to respond. And

1  Netlist sought to move up the hearing date before Judge Armstrong to September 29, but Google
2  refused. Dkt. 172 at 3. In addition to these contrary points cutting against Google's characterization
3  of this case, there are significant reasons supporting transfer to the Central District.

4        ***First***, the Central District is far less impacted than the Northern District: the average
5  pendency of patent cases from 2011 to 2022 was 352.6 days in the Central District versus 603.9
6  days in the Northern District. Dkt. 224-3. This discrepancy is even more dramatic when compared
7  over the same period to patent cases assigned to judges in the Central District's Patent Program,
8  which on average are pending for only 288.7 days before disposition. Ex. 2. Recent statistics also
9  show that the average time to trial in patent cases from 2015 to 2022 was far shorter in the Central
10  District (1152 days) than in the Northern District (1335 days). Ex. 3.

11        ***Second***, contrary to Google's assertion, the convenience of witnesses factor favors the
12  Central District: key third-party witnesses relevant to Netlist's claims and Google's proposed
13  inequitable conduct defense are located in the Central District. Specifically, [REDACTED]
14  [REDACTED]
15  [REDACTED] is located in the Central District. Dkt. 223-8 at 1. So too are Netlist's reexamination and
16  prosecution counsel for the '912 patent, both witnesses listed on the parties' amended initial
17  disclosures that Google claims are relevant to Google's proposed inequitable conduct defense. Dkt.
18  233-5 at 3; Dkt. 233-4 at 2. Google relies heavily on the inconvenience to ***party*** witnesses that
19  would result from transfer to the Central District. Dkt. 233 at 13. However, "[i]n balancing the
20  convenience of the witnesses, primary consideration is given to third party, as opposed to employee
21  witnesses." *Kannar v. Alticor, Inc.*, No. 08-cv-5505, 2009 WL 975426, at *2 (N.D. Cal. Apr. 9,
22  2009) (citation omitted).

23        Google does not dispute that this case could have been brought in the Central District, Dkt.
24  233 at 10, but contends that the operative facts in Netlist's complaint did not take place in the Central
25  District. *Id.* at 14–15. Google's Opposition ignores the fact that this suit stems from Google's
26  longstanding relationship with Netlist, a company headquartered in the Central District, and
27  Google's decision to adopt knock-offs to Netlist's products using a third-party manufacturer in the
28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 2 -

NETLIST'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE (DKT 224)
CASE NO 3:09-CV-05718-RS

1  Central District ███████ Dkt 232-1 at 10 ████████████████████

2  Nor does Google deny that its offices in the Central District use the accused products.

## II.     ARGUMENT

### A.     The C.D. Cal. Is Less Congested

The discrepancy in average case pendency in patent cases from 2011 to 2022 between the two districts is considerable, with patent cases in the Central District pending on average for 352.6 days versus 603.9 days for the Northern District. Dkt. 224-3. Moreover, the Central District recently established a permanent Patent Program on June 24, 2021 with six District Judges assigned to the program. C.D. Cal. General Order No. 21-11. For the six participating judges in the Patent Program, the average case pendency for the same time period is 288.7 days—***less than half*** the average case pendency for the Northern District. Ex. 2 (comparing average case pendency of each district court judge participating in the Central District's Patent Program to case pendency statistics from the Northern District).

This case's reassignment does not change the fact that the Central District is less congested than the Northern District. Dkt. 224 at 9–10. Even the time spent transferring and re-docketing this case in the Central District would likely not make up the 250-day difference in average case pendency between the two districts. Dkt. 224-3. Google touts the fact that the average time to trial over the same period was 1,204 days in the Central District as compared to 1,174 days in the Northern District—a difference of 30 days—but Google's reasoning is undercut by the fact that Google's proposed schedule in the February 3, 2022 Joint Case Management Statement does not even contemplate setting a trial date. Dkt. 235-3 at 20–21 (arguing that "Netlist's proposed case schedule up to trial is premature"). Google obviously has no interest in progressing this case to trial, and its crocodile tears that the Central District will give it a slower time to trial should be viewed through that lens. Moreover, between 2015 and 2022, the average time to trial for patent cases in the Central District was 1152 days versus 1335 days in the Northern District. Ex. 3.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 3 -

NETLIST'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE (DKT 224)
CASE NO 3:09-CV-05718-RS

**B.   Google's Claim that Convenience of Witnesses Favors the N.D. Cal. is Incorrect**

"In balancing the convenience of the witnesses, primary consideration is given to third party, as opposed to employee witnesses." *Kannar*, 2009 WL 975426, at *2 (citation omitted).

Here, key third-party witnesses are located in the Central District. For example, ▮▮▮▮ identified in Netlist's amended initial disclosures, is one of Google's key contract-manufacturing partners for the accused products ▮▮▮▮ in the Central District. *See* Dkt. 233-5 at 5, Dkt. 223-8 at 1. At the initiation of this suit, Google ▮▮▮▮ Dkt. 223-5 (March 11, 2010 Deposition of Andrew Dorsey, *Google v. Netlist*, Case No. 08-cv-4144, 21:10-12) (▮▮▮▮). Google has admitted that this partnership continues to this day. Google's interrogatory responses—produced after failing to comply with Judge Spero's June 25, 2021 Order, Dkt. 145—further confirm that ▮▮▮▮ Ex. 4 at 13 (Google's August 30, 2021 Supp. R&Os) ▮▮▮▮ ; Ex. 5 at 82 n.25 (Google's October 12, 2021 Supp. R&Os) ▮▮▮▮ ). The reference to ▮▮▮▮ is in almost all likelihood a euphemism for testing for operability that is performed by ▮▮▮▮ a critical step in the qualification of memory modules. *See* Ex. 6 ▮▮▮▮ ("▮▮▮▮").

Moreover, Google's proposed amended answer would add inequitable conduct claims, thus ensnaring other third-party witnesses located in the Central District. Dkt. 206 at 19; Dkt. 206-2,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 4 -

NETLIST'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE (DKT 224)
CASE NO 3:09-CV-05718-RS

¶ 34 (Google's Amended Answer) (alleging that through arguments made during reexamination "Netlist breached its duty of candor and good faith and showed specific intent to deceive the Board and the Federal Circuit"). This defense implicates Netlist's reexamination counsel (Morrison & Foerster LLP) and original prosecution counsel (Knobbe Martens Olson & Bear LLP), both of which are listed on the parties' amended initial disclosures and located in the Central District. *E.g.*, Dkt. 233-5 at 3 (Netlist) ("Morrison & Foerster LLP may have knowledge of the *inter partes* reexamination of the '912 Patent."); Dkt. 233-4 at 2 (Google) ("Knobbe Martens Olson & Bear LLP" is likely to have discoverable information related to "U.S. Patent No. 7,619,912; prosecution of same").

Google argues the inconvenience to witnesses factor weighs against transfer because "[a]ll of the Google employees who Google identified in its Rule 26 disclosures . . . are located in the Northern District," as are the other current Google employees identified in the Opposition. Dkt. 233 at 13. But courts in this District routinely "discount[] any inconvenience to the parties' employees, whom the parties can compel to testify." *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1084 (N.D. Cal. 2008) (citing *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988)); *see also, e.g.*, *Kannar*, 2009 WL 975426, at *2; *Gelber v. Leonard Wood Mem'l for Eradication of Leprosy*, No. 07-cv-1785, 2007 WL 1795746, at *3 (N.D. Cal. June 21, 2007) ("The convenience of Defendants' party witnesses are entitled to little weight because the witnesses are employees of the party seeking transfer, and Defendants will be able to compel their testimony at trial."). Thus, all the Google employees identified in its Opposition are party witnesses who can be compelled to testify. The fact that they reside in the Northern District should be discounted, if not ignored entirely. Google also identifies former Google employees in the Northern District. Dkt. 233 at 13. Netlist has also identified former employees in the Central and Southern District of California. Dkt. 224 at 17; Dkt. 233-5. The key distinction is the presence of ████ in the Central District.

### C. Google's Remaining Arguments Are Inapposite to Netlist's Motion to Transfer

#### 1. C.D. Cal. Has a Strong Local Interest in This Controversy

Google's myopic view of the facts giving rise to this suit has no connection to reality.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 5 -

NETLIST'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE (DKT 224)
CASE NO 3:09-CV-05718-RS

*First*, Google is no stranger to Netlist and the Central District. Netlist's headquarters is in the Central District. This suit stems from the breakdown of Google's and Netlist's unique relationship.[1] The parties engaged for a number of years in business for purchasing and supplying a unique, Netlist-designed memory module that both reduced cost and improved performance. Dkt. 224 at 13. Instead of partnering with Netlist to rightfully gain the benefits of its intellectual property, Google and its contract manufacturers, such as ███████ chose to create a knock-off approximation. ███████'s located in the Central District. *See supra* at 4–5.

*Second*, Google downplays its extensive physical and operational presence in the Central District, but does not deny that it uses the accused products in the Central District. Dkt. 224 at 14. Contrary to Google's assertion that Netlist has articulated "zero connection" between the Central District and Google's infringing activities (Dkt. 233 at 11), Netlist's Motion stated that Google's "[Los Angeles] facilities use the infringing products." Dkt. 224 at 14. Google does not deny this. Nor does Google deny its services in the Central District—including facilities that provide cloud server and data management services—specifically use the accused DDR4 DIMMs, which are designed for use in servers.

Google's citation to *Qurio Holdings* to establish that that the center of the accused activity is in this District is unavailing. Dkt. 233 at 14. In that case, a Delaware-incorporated plaintiff sought transfer from the Northern District of California to the Eastern District of North Carolina, even though "Plaintiff's New Hampshire office is 'the place where Qurio's high level officers direct, control, and coordinate the corporation's activities.'" *Qurio Holdings, Inc. v. DISH Network Corp.*, No. 15-cv-930, 2015 WL 4148962, at *1 (N.D. Cal. July 9, 2015). In denying the motion to transfer, the court found the local interest factor "neutral" because it appeared that the accused activity occurred in both the District of Colorado and the Northern District of California. *Id.* at *6. Unlike

---

[1] Google's Opposition implies that the bulk of Netlist's business is derived from patent licensing. Dkt. 233 at 14 n.7 (citing Netlist's quarterly report from Q3 2021). That same report indicates that the licensing revenue was from an "upfront non-refundable license fee of $40 million as consideration to enter into a license agreement with SK hynix, Inc.," that settled multiple litigations between the parties, and involved a supply commitment from SK hynix. Dkt. 223-6 at 11, 24. In fact, as indicated in Netlist's annual report for the financial year ended January 2, 2021, Netlist's sole source of revenue was from design and sale of memory modules. Ex. 7 at 62.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 6 -

NETLIST'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE (DKT 224)
CASE NO 3:09-CV-05718-RS

in *Qurio Holdings*, Netlist's sole place of business is in the Central District, and the entire basis for this suit was the dissolution of the business relationship between Netlist and Google. As discussed above, Google does not deny that its offices in the Central District conduct infringing activities. Further, Google's third-party contract-manufacturing partner ███ is located there. The Central District has a strong local interest in adjudicating this case.

### 2. Google's Forum Shopping Allegations Are Baseless

The fact that Netlist asked Judge Armstrong to re-open this case and only sought transfer ████████████████████████ unravels Google's baseless accusation of forum shipping. Netlist filed its Motion due only to the ██████████████████████████, which made the Central District an appropriate venue to hold this case due to the improved speed of resolution and convenience to third-party witnesses.

Google also appears to argue that because Netlist "chose the Northern District as its forum," it should not be allowed to move to transfer and that Netlist's second forum choice should not be afforded deference because there is no connection between this case and the Central District. Dkt. 233 at 11 (citing *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) and *Getz*, 547 F. Supp. 2d at 1083). Google's arguments are misplaced.

First, a plaintiff's choice of forum, even in a motion to transfer, is entitled to some deference. *E.g.*, *Anderson v. Subaru of Am., Inc.*, No. 20-cv-290, 2020 WL 10142250, at *4 (D. Haw. Oct. 8, 2020) (noting, in the context of the plaintiff's motion to transfer, that "Plaintiff's forum is typically afforded deference," and so the plaintiff's choice of forum factor favored transfer). Second, unlike the plaintiffs in *Williams* and *Getz*, Netlist's choice of forum is connected to the operative facts: the Central District is where Netlist is headquartered; where Google maintains a significant presence relevant to the patent-in-suit, *supra* at 5–7; where the inventions claimed in the '912 patent were developed; where the development, manufacture, and sale of Netlist's products practicing the patent-in-suit occurred, and where Google's third-party manufacturer ███ is located. *Cf. Getz*, 547 F. Supp. 2d at 1083 (affording "minimal deference" to plaintiffs' choice of forum in the Northern District where none of the fourteen plaintiffs resided in the Northern District); *Williams*,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 7 -

NETLIST'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE (DKT 224)
CASE NO 3:09-CV-05718-RS

157 F. Supp. 2d at 1106–07 (affording "some deference" to plaintiff's choice of forum in the Northern District where plaintiff was presently incarcerated in the Central District but intended to reside in the Northern District).

### 3. Google's Attempts to Shift the Blame for Delays in This Case Fall Flat

Google argues that "[i]t was *Netlist* that sought to delay having [Google's] motions heard when it filed a motion to postpone the hearing dates on Google's motions." Dkt. 233 at 16 (emphasis in original). This argument is a mischaracterization of events. On the day Google filed its motion for summary judgment and its motion to strike, Netlist informed Google that Google had noticed hearing dates conflicting with Netlist lead counsel's trial calendar. Dkt. 172 at 3. Google did not respond. *Id*. That same day, Netlist noticed its own motion for partial summary judgment for November 10. Dkt. 156. On August 17 in a good faith effort to compromise and demonstrate that Netlist was not seeking to delay the outcome of Google's motions, Netlist proposed moving all three hearing dates to **September 29**. Dkt. 172 at 3. Google omits this fact, and that Google then attempted to strategically utilize this routine scheduling conflict to obtain a stay of discovery. *See id.* (noting that on August 19, Google responded with a counterproposal to "hold the MTS hearing on September 29th assuming the Court agrees; (2) hold the MSJ hearings on November 10th; and (3) file a stipulated stay of discovery and other case deadlines until a jury verdict is reached in the *Netlist v. Samsung* case," where "agreement of (2) [was] conditional on agreement of (3)").

Google then speculates that "had these motions been heard on the original dates it was noticed, these motions may have been resolved before ███████████." Dkt. 232-1 at 4. Google again mischaracterizes the record. The hearing date for Netlist's motion for summary judgment was always set for November 10, 2021. Dkt. 156. Judge Armstrong's September 3, 2021 Order merely consolidated the hearings for all pending motions on a single date. Dkt. 192.

Google also suggests that Netlist prolonged the length of the '912 reexamination by making amendments and adding new claims to the '912 patent—which Google acknowledges was "Netlist's right" to pursue (Dkt. 234 at 13). This is not a serious argument. Netlist could just as easily rejoin that the primary sources of delay are Google's frivolous request for re-hearing before the PTAB

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE (DKT 224)
- 8 -
CASE NO 3:09-CV-05718-RS

(which was denied out of hand) and its appeal to the Federal Circuit (which was disposed of by memorandum), which in total needlessly added more than **two years** to the proceedings. *See* Dkt. 98 at 10; *Google LLC v. Netlist, Inc.*, 810 F. App'x 902 (Fed. Cir. 2020).

Having tried to rewrite history, Google again raises the specter of it moving to stay this case pending the outcome of Netlist's unrelated litigation against Samsung in the District of Delaware. *Id.* The Samsung litigation will not "entirely address the issue of whether Google infringes the accused products," as Google contends, ███████████████████████████████████. *See* Dkt. 235-3 at 5 (noting that ████████████████████████████████); Dkt. 233 at 17.

Moreover, the Samsung case based on the '912 patent is wholly improper and a violation of Federal Circuit precedent. Samsung's sole basis for alleging jurisdiction over the '912 patent is the indemnification demands it allegedly received from Google and Lenovo. *Samsung Elecs. Co. Ltd. v. Netlist, Inc.*, No. 21-cv-1453, Dkt. 1 ¶ 11 (D. Del. Oct. 15, 2021) ("As a direct and proximate result of Netlist's patent enforcement activities with respect to the '912 patent, Samsung has received demands for indemnification, including from Google and Lenovo."); *id.* ¶ 28 (noting that Lenovo provided Google with "Octopod servers"). The Federal Circuit has made clear that the only course of action is for Samsung to intervene in this proceeding if it actually has an indemnification obligation. *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) (Microsoft cannot seek a declaratory judgment "solely because [its] customers have been sued for direct infringement," and if Microsoft had an indemnification obligation," "Microsoft could defend its customers and efficiently and effectively participate in the Texas action" where a case has been filed against Microsoft's customer).

### III. CONCLUSION

For the foregoing reasons, this case should be transferred to the Central District.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 9 -

NETLIST'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE (DKT 224)
CASE NO 3:09-CV-05718-RS

| | |
|---|---|
| Dated: February 9, 2022 | IRELL & MANELLA LLP |
| | By: */s/   Jason G. Sheasby* |
| | Jason G. Sheasby |
| | jsheasby@irell.com |
| | Andrew J. Strabone |
| | astrabone@irell.com |
| | IRELL & MANELLA LLP |
| | 1800 Avenue of the Stars, Suite 900 |
| | Los Angeles, California 90067 |
| | Telephone: (310) 277-1010 |
| | Facsimile: (310) 203-7199 |
| | *Attorneys for Plaintiff Netlist, Inc.* |

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 10 -

NETLIST'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE (DKT 224)
CASE NO 3:09-CV-05718-RS

Case 3:09-cv-05718-RS   Document 249-2   Filed 02/16/22   Page 15 of 15

# **CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2022, I caused the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically email notification of such filing to all counsel of record who have made a formal appearance. I further certify that on February 9, 2022, the unredacted version of the foregoing was served on counsel of record who have made a formal appearance.

By: */s/    Michael Tezyan*
     Michael Tezyan

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 11 -

NETLIST'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE (DKT 224)
CASE NO 3:09-CV-05718-RS