# GOOGLE'S AMENDED ANSWER AND COUNTERCLAIMS
## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  QUINN EMANUEL URQUHART & SULLIVAN LLP

2  David Perlson (CA Bar No. 209502)          Jared Newton (admitted pro hac vice)
   davidperlson@quinnemanuel.com              jarednewton@quinnemanuel.com
3  Jonathan Tse (CA Bar No. 305468)           Deepa Acharya (CA Bar No. 267654)
   jonathantse@quinnemanuel.com               deepaacharya@quinnemanuel.com
4  50 California Street, 22nd Floor           Sandy Shen (admitted pro hac vice)
   San Francisco, CA 94111                    sandyshen@quinnemanuel.com
5  Telephone: (415) 875-6600                  1300 I Street NW, Suite 900
   Facsimile: (415) 875-6700                  Washington, D.C. 20005
6                                             Telephone: (202) 538-8000
   Catlin Williams (CA Bar No. 336464)        Facsimile: (202) 538-8100
7  catwilliams@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
8  Redwood Shores, CA 94065
   Telephone: (650) 801-5000
9  Facsimile: (650) 801-5100

10 *Attorneys for Google LLC*

11                        UNITED STATES DISTRICT COURT

12      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

13 NETLIST, INC.,                             CASE NO. 3:09-cv-05718-RS

14              Plaintiff,

15       vs.                                  **GOOGLE LLC'S AMENDED ANSWER
                                              TO PLAINTIFF'S COMPLAINT FOR
16 GOOGLE LLC,                                PATENT INFRINGEMENT; AND
                                              ASSERTION OF COUNTERCLAIMS**
17              Defendant.
                                              **JURY TRIAL DEMANDED**
18

19

20

21

22

23

24

25

1    Defendant Google LLC ("Google") answers the Complaint of Netlist, Inc. ("Netlist") as

2    follows.

3                                    **Jurisdiction and Venue**

4        1.      Google admits that the Complaint purports to be an action arising under the United

5    States patent laws. Google denies any remaining allegations of paragraph 1 of the Complaint.

6        2.      Google admits that this Court has subject matter jurisdiction over actions arising

7    under 28 U.S.C. §§ 1331 and 1338(a). Google denies any remaining allegations of paragraph 2 of

8    the Complaint.

9        3.      Google admits that venue is proper in the Northern District of California. Google

10   denies any remaining allegations of paragraph 3.

11                                    **The Parties**

12       4.      Google admits that Netlist, Inc. has asserted that it is a corporation organized and

13   existing under the laws of the State of Delaware, with its principal place of business at 51

14   Discovery in Irvine, California 92618.

15       5.      Google admits that Google LLC is a Delaware corporation with a principal place of

16   business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google admits that

17   Google LLC is authorized to do business in California.

18                                    **Intradistrict Assignment**

19       6.      Google admits that under Civil Local Rules 3-2(c) and 3-5, Intellectual Property

20   Actions may be assigned on a district-wide basis. Google denies any remaining allegations of

21   paragraph 6 of the Complaint.

22                                    **Facts Relevant to the Claim**

23       7.      Google is without knowledge or information sufficient to form a belief as to the

24   truth of the allegations of paragraph 7, and therefore denies them.

25       8.      Google admits that U.S. Patent No. 7,619,912 ("the '912 patent") is titled "Memory

26   Module Decoder" and bears an issuance date of November 17, 2009. Google further admits that

27   what purports to be a copy of the '912 patent was attached to Netlist's Complaint as Exhibit 1.

28

Google is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations of paragraph 8, and therefore denies them.

9.      Google denies the allegations of paragraph 9.

### Claim for Patent Infringement

10.     Paragraph 10 of the Complaint does not contain any allegations, and therefore no response is required. Google incorporates its responses to paragraphs 1 through 9 of this Answer as if fully set forth herein.

11.     Google denies the allegations of paragraph 11.

12.     Google denies the allegations of paragraph 12.

13.     Google denies the allegations of paragraph 13.

14.     The Prayer for Relief does not contain any allegations. To the extent any response is required to any paragraph of Plaintiff's Prayer for Relief, including without limitation paragraphs 1 through 9, Google denies paragraphs 1 through 9 of Plaintiff's Prayer for Relief.

### Affirmative Defenses

### First Defense

1.      Google does not infringe and has not infringed (directly, contributorily, or by inducement) any claim of the '912 patent.

### Second Defense

2.      The claims of the '912 patent are invalid for failure to satisfy one or more of the requirements of Sections 100 et seq., 101, 102, 103, and 112 of Title 35 of the United States Code.

### Third Defense

3.      The claims of the '912 patent are unenforceable, in whole or in part, by the doctrines of laches, waiver, and/or estoppel, including prosecution history estoppel.

### Fourth Defense

4.      The claims of the '912 patent are unenforceable due to unclean hands.

5.      Google incorporates paragraphs 17-34 below and paragraphs 18-44 of its Counterclaims below.

████████████████████████████████████

6.      As set forth below, Netlist deliberately misled Google and other JEDEC members about its plan to obtain patents on elements it saw JEDEC was incorporating into its standards. This fraudulent conduct is set forth below in Google's Counterclaims at paragraphs 18-44 which Google incorporates by reference herein.  This fraudulent conduct includes Netlist's failure to disclose patents in good faith pursuant to the JEDEC Patent Policy.  As evident from Netlist's disclosure of other patents and patent applications to JEDEC, Netlist interpreted the JEDEC Patent Policy as requiring a disclosure of intellectual property (prior to formalization of the standard) that might affect JEDEC's choice of features for a standard.  However, Netlist failed to do so with respect to the '912 patent or the application that led to the '912 patent as explained below.  Netlist, therefore, comes into this Court with unclean hands and is barred from enforcement of the '912 patent against products that read onto the JEDEC standards.

7.      Separately, Netlist's misrepresentations to the Federal Circuit during the reexamination of the '912 patent, as set forth below at paragraphs 17-34 and incorporated herein by reference, also constitute unclean hands.  Specifically, Netlist argued to the Federal Circuit that it had narrowed the scope of its claims, which the Federal Circuit relied on in its affirmance to allow the amended claims over prior art.  Netlist now claims that the newly added functions in the amended claims were inherent in the original claims and thus not narrowed, which demonstrates that Netlist made misrepresentations and misled the Federal Circuit and thus acted in bad faith when presenting its position to the Federal Circuit.  This conduct constitutes unclean hands and, thus, bars Netlist from enforcement of the '912 patent on a separate basis.

**Fifth Defense**

8.      Google has an implied or express license to the '912 patent.

9.      ████████████████████████████████

████████████████████████████████████████

██████████████████████████

10.      ████████████████████████████████████

████████████████████████████████████████

██████████████████████████

GOOGLE INC.'S AMENDED ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT
INFRINGEMENT; AND ASSERTION OF COUNTERCLAIMS

11.     Accordingly, one or more manufacturers or suppliers of the accused products that Netlist contends embody the claimed inventions of the '912 patent are licensed or otherwise authorized to practice the claimed inventions, and therefore, Google is also licensed. Alternatively, Netlist's claims are barred under the doctrine of patent exhaustion.

### Sixth Defense

12.     Netlist has failed to state a claim upon which relief can be granted.

### Seventh Defense

13.     Any and all products or actions accused of infringement have substantial uses that do not infringe and do not induce or contribute to the alleged infringement of the asserted claims of the '912 patent.

### Eighth Defense

14.     The owner of the '912 patent has dedicated to the public all methods, apparatus, and products disclosed in the '912 patent, but not literally claimed therein, and is estopped from claiming infringement by any such public domain methods, apparatus, or products.

### Ninth Defense

15.     Netlist's claim for damages, if any, against Google for alleged infringement of the '912 patent are limited by 35 U.S.C. §§ 286, 287, and 288.

### Tenth Defense

16.     This case is exceptional against Netlist under 35 U.S.C. § 285.

### Eleventh Defense

17.     The '912 patent is unenforceable due to inequitable conduct, because, upon information and belief, Netlist withheld information that they knew to be material to the patentability of the '912 patent, with the specific intent to deceive the United States Patent & Trademark Office ("USPTO").

18.     The '912 patent was originally filed in the United States on September 27, 2007 by inventors Jayesh R. Bhakta and Jeffrey C. Solomon.  The '912 patent, titled "Memory Module Decoder," issued on November 17, 2009.  The '912 patent is assigned to Netlist.

19.     On April 20, 2010, a first request for *inter partes* reexamination of claims 1-51 of the '912 patent was filed by third party requester Inphi Corp. ("Inphi").  The PTO assigned this request control No. 95/001,339 ("339 proceeding") and ultimately ordered the reexamination of claims 1-51 of the '912 patent on September 1, 2010.

20.     On October 20, 2010, a second request for *inter partes* reexamination of claims 1, 3-4, 6-11, 15, 18-22, 24-25, 27-29, 31-34, 36-39, 41-45, and 50 of the '912 patent was filed by third party requester SMART Modular Technologies (WWH), Inc. ("SMART").  The PTO assigned this request control No. 95/000,578 ("'578 proceeding") and ordered reexamination of claims 1, 3-4, 6-11, 15, 18-22, 24-25, 27-29, 31-34, 36-39, 41-45, and 50 of the '912 patent on January 14, 2011.

21.     On October 21, 2010, a third request for *inter partes* reexamination of claims 1, 3-4, 6-11, 15, 18-22, 24-25, 27-29, 31-34, 36-39, 41-45, and 50 of the 912 patent was filed by Google.  The PTO assigned this request control No. 95/000,579 ("'579 proceeding") and ordered reexamination of claims 1, 3-4, 6-11, 15, 18-22, 24-25, 27-29, 31-34, 36-39, 41-45, and 50 of the '912 patent on January 18, 2011.  The Examiner in the '578, '579, and '339 proceedings agreed with Inphi, SMART, and Google that the proposed combination of Micron, DDR SDRAM RDIMM, MT36VDDF12872 & MT36VDDF28672 Data Sheet, 2002 ("Micron") in view of U.S. Patent Application Publication No. 2006.0117152 ("Amidi") presented a substantial new question of patentability and that "a reasonable examiner would consider the teaching of Micron and Amidi important in deciding the patentability of" the challenged claims.  (January 14, 2011 Reexamination Ordered.)

22.     On February 25, 2011, the PTO *sua sponte* merged the '578, '579, and '339 proceedings into a single matter, as all three proceedings were pending, had yet to be terminated, and involved overlapping claims of the same patent.

23.     After the merger, Netlist argued against the pending rejections of the existing claims and added new claims 52-118.  (Netlist's July 5, 2011 Response to Office Action in *Inter Partes* Reexamination Communication Mailed April 4, 2011.)  Google responded by explaining how Micron and Amidi rendered obvious both the original and new claims.  (August 29, 2011

1  Google's Response.)  Google also explained how Micron, Amidi, U.S. Patent No. 5,926,827

2  ("Dell 2"), and Double Data Rate (DDR) SDRAM Specification, JEDEC Standard No. 79C,

3  March 2003 ("JEDEC 79C") rendered obvious the new claims.  (*Id*.)  The Examiner adopted some

4  aspects of the grounds raised by Google, rejected other aspects, and declined to adopt other

5  grounds.  (October 14, 2011 Non-Final Office Action.)  Netlist responded by canceling some of its

6  claims, amending most of the remaining claims, and adding new claims 119-136.  (January 14,

7  2012 Netlist's Response After Non-Final Action.)  Google again responded by continuing to

8  argue, among other things, that Micron, Amidi, Dell 2, and/or JEDEC 79C rendered obvious a set

9  of the pending claims.  (February 23, 2012 Google's Response.)

10      24.     The Examiner then adopted additional grounds for rejection and maintained certain

11  earlier rejections.  (November 13, 2012 Non-Final Action.)  Netlist responded by canceling certain

12  claims, further amending other claims, and arguing against the rejections.  (January 14, 2013

13  Netlist's Response After Non-Final Action).  Google again explained why various combinations

14  of Micron, Amidi, Dell 2, and JEDEC 79C (among other references) rendered the claims obvious.

15  (February 13, 2013 Google's Response.)

16      25.     The Examiner issued an Action Closing Prosecution, which maintained several

17  rejections, withdrew others, and found certain rejections moot due to Netlist canceling certain

18  claims.  (March 21, 2014 Action Closing Prosecution.)  The Examiner issued a Right of Appeal

19  Notice, and Google appealed the Examiner's unadopted portions of certain grounds.  (July 18,

20  2014 Google's Notice of Appeal.)  Netlist cross-appealed on the grounds of rejection the

21  Examiner maintained.  (July 30, 2014 Netlist's Notice of Cross Appeal.)

22      26.     The Board, in its first appeal decision, affirmed the Examiner's adoption of certain

23  aspects of the ground involving Micron in view of Amidi, reversed the Examiner's refusal to

24  adopt other aspects of this ground, reversed the Examiner's refusal to adopt the ground involving

25  Micron in view of Amidi and Olarig, and declined to reach the merits on the ground involving

26  Micron in view of Amidi, Dell 2, and JEDEC 79C.  (June 6, 2016 Decision on Appeal.)

27      27.     Netlist then requested that the Office reopen prosecution, canceling certain claims

28  and amending most of the remaining claims.  (July 31, 2016 Netlist's Response Requesting to

Reopen Prosecution.)  It was in this set of amendments in which Netlist amended claim 1 and

several other claims to include the following language:

- "wherein, in response to signals received from the computer system, the phase-lock loop (PLL) device transmits a PLL clock signal to the plurality of DDR memory devices, the logic element, and the register" ("PLL device limitation");

- "wherein, the register (i) receives, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the bank address signals, and (iii) transmits the buffered plurality of row/column address signals and the buffered bank address signals to the plurality of DDR memory devices" ("register limitation"); and

- "wherein the logic element generates gated column access strobe (CAS) signals or chip-select signals of the output control signals in response to at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at least one chip-select signal of the set of input control signals and (iv) the PLL clock signal." ("logic element limitation").

Netlist asserted that these three amendments were "principle amendments to overcome the new

grounds of rejection" and further stated that "[t]o address the Board's rejection, Patent Owner

*narrowed* the claim to include" the above identified three amendments.  (*Id.* (emphasis added).)

Netlist then referenced the above identified "claim amendments [to] highlight at least two

differences between the '912 invention and the prior art."  (*Id.*)  Below are the two differences that

Netlist highlighted to the Board:

> First, the claim amendments now require:  In response to signals received from the computer system, the phase-lock loop (PLL) device transmit a PLL clock to the plurality of DDR memory devices, the logic element, and the register.  Amidi transmits a PLL clock signal to the register and memory, but not the CPLD.  Thus, Amidi does not disclose the PLL device transmitting the PLL clock to the logic element; the output of PLL 606 is neither directly nor indirectly transmitted to the CPLD 604.  Additionally, a POSITA would not be motivated or inclined to transmit the PLL clock to CPLD 604.

> Second, the amended claims now also require that the logic element generates certain output signals (e.g., gated column access strobe (CAS) signals or chip-select signals recited in claim 1) in response to at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at least one chip-select signal of the set of input control signals and (iv) the PLL clock signal.  Amidi's CPLD 604 never receives bank address signals and hence Amidi's control

GOOGLE INC.'S AMENDED ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT
INFRINGEMENT; AND ASSERTION OF COUNTERCLAIMS

1   signals cannot be generated based on bank address signals.  Instead,
the control signals (rcs0a, rcs0b, rcs1a, rcs1b, rcs2a, rcs2b, rcs3a, and
2   rcs3b) are based on the row address signals and chip-select signals.
Thus, Amidi does not disclose the CPLD generating the gated CAS
3   signals or chip-select signals in response to *the bank address signals*.
Moreover, since the output of PLL 606 is neither directly nor
4   indirectly transmitted to the CPLD 604, a POSITA would understand
that the PLL clock does not control the operation of CPLD 604.
5   Thus, Amidi is further deficient by failing to disclose the CPLD
generating the gated CAS signals or chip-selected signals in response
6   to the *PLL clock signal*.

7

8   (*Id*. (emphasis in original) (internal citations omitted).)  Netlist went on to further explain how the

9   specific amendments above were the distinguishing factors from Amidi:

10   As amended, the claims require that the *logic element receives* at least
one row address signal and *bank address signals*, and require that the
11   *register* (i) *receives*, from the computer system, and (ii) buffers, in
response to the PLL clock signal, a plurality of row/column address
12   signals and *the bank address signals*, and (iii) transmit the buffered
plurality of DDR memory devices.  The claims also require the
13   plurality of row/column address signals received by the register are
separate from the at least one row address signal received by the logic
14   element.  In other words, in the confirmation recited by the claims, the
bank address signals are received by the logic element, the register and
15   the plurality of memory devices.  Under such circumstances, Amidi
does not use bank address signals to generate control signals (and
16   certainly not the bank address signals and the at least one row address
signal.)  The claims, however, require generating CAS signals or chip-
17   select signals based on a row address signal and bank address signals.
18

19   Based on the above, it would not be obvious to a POSITA to combine
Amidi and Dell 2 to reach the claimed invention, as amended.  For
20   the sake of argument, however, even the proposed combination of
Amidi and Dell 2 fails to disclose the claimed invention.  Therefore,
21   even in combination, Amidi in view of Dell 2 fails to disclose all of
the claim recitations of the claims.
22

23   (*Id*. (emphasis in original) (internal citations omitted).)

24       28.   Following Google's response to Netlist's amendments and response, the Board

25   remanded the case to the Examiner and the Examiner maintained the Board's new grounds of

26   rejection as well as one additional ground.  (October 3, 2017 Examiner's Determination Under 37

27   C.F.R. § 41.77(d).)

28

29.     The Board then issued its second appeal decision, affirming several prior rejections but withdrawing many of the rejections the Board and the Examiner had previously maintained. (July 27, 2018 Decision on Appeal.)  The withdrawn rejections corresponded to the combination of Micron in view of Amidi and Micron in view of Amidi and Olarig.  (*Id.*)  Google sought rehearing, which the Board denied.  (January 31, 2019 Decision on Rehearing.)  Google then appealed the Board's decision to the Federal Circuit.

30.     In its responsive appeal brief to the Federal Circuit, Netlist repeatedly stated that "it *narrowed* its claims to define its precise inventive contributions over the prior art."  (December 12, 2019 Netlist Response Brief (emphasis added).)  Therefore, in statements to the Board and the Federal Circuit, Netlist reiterated that the amendments identified above are *narrowing*, and that it was these narrowing amendments that were Netlist's basis for arguing that the prior art at issue does not disclose the asserted claims.  It was in response to these statements that the Board withdrew its rejections of the asserted claims and the Federal Circuit affirmed the Board's decision on June 15, 2020.

31.     On July 8, 2021, Google served Interrogatory Nos. 18-20 to Netlist, which were directed to Netlist's position on intervening rights.  In response to these interrogatories, Netlist argued, in direct contradiction to what it argued to the Board and the Federal Circuit during reexamination proceedings, that the above identified claim amendments were not narrowing. Instead, Netlist now argues that these amendments "merely made express the inherent functions of the [original limitation], and thus did not substantively change the scope of the claims."

32.     On September 3, 2021, Netlist reiterated its contention that the above identified claim amendments did not change the scope of the claims (i.e., were not narrowing) in its Opposition to Google's Motion for Summary Judgement on the Issue of Absolute Intervening Rights.  (Dkt. 196 at 16-24 ("the language added during reexamination clarified what was inherent in the original claims").)

33.     If the above identified amendments were in fact inherent, as Netlist now contends to overcome intervening rights, then Netlist knowingly misled the Board and the Federal Circuit when it was distinguishing the amended claims from the prior art during reexamination.  Had the

1   Board and the Federal Circuit known that the amendments were in fact not "narrowing" but

2   instead just "made express the inherent functions of the [original limitation]," the Board and the

3   Federal Circuit would have found these claims obvious and not allowed them to issue.  For

4   example, if the newly added functions were inherent in the original claim limitation, as Netlist

5   now contends, then these functions also would have been inherent in the prior art, thus rendering

6   the claims obvious and invalid.

7           34.     As evident from Netlist's Interrogatory responses, Netlist knowingly

8   misrepresented the amendments in its arguments to the Board and the Federal Circuit.  Netlist had

9   a duty of candor and good faith in dealing with the Board and the Federal Circuit during

10  reexamination of the '912 patent.  That duty of candor and good faith included a duty to disclose

11  to the Board and the Federal Circuit its intention not to narrow the claims at all in order to

12  distinguish the prior art.  Instead, Netlist chose to tell both the Board and the Federal Circuit the

13  opposite in order to convince the Board and the Federal Circuit to allow the claims.  This

14  information is material to the patentability of the claims.  By misrepresenting the effect of the

15  above identified amendments to the claims to the Board and the Federal Circuit, Netlist breached

16  its duty of candor and good faith and showed specific intent to deceive the Board and the Federal

17  Circuit during reexamination.  These actions amount to inequitable conduct and render the '912

18  patent unenforceable.

19                              **Twelfth Defense**

20          35.     Google incorporates paragraphs 1-34 above.

21          36.     Netlist's infringement claims are limited, in whole or in part, by absolute and/or

22  equitable intervening rights per 35 U.S.C. §§ 252 and 307(b).

23          37.     The claims of the '912 patent were subject to reexamination. During the course of

24  the reexamination, Netlist canceled original claims 2, 5, 7, 9, 21, 23, 25, 26, 30, 33, 42, 44, and 51;

25  amended claims 1, 15, 16, 28, 39, and 43; and added new claims 52-91.  Claims 3, 4, 6, 8, 10-14,

26  17-20, 22, 24, 27, 29, 31, 32, 34-38, 40, 41, and 45-50 were deemed patentable because of their

27  dependence on amended claims.  These amendments and additions substantively changed the

28

scope of the original claims in the '912 patent.  Following an appeal to the Federal Circuit and summary affirmance, the PTO issued a reexamination certification on February 8, 2021.

38.     As a consequence of those amendments and additions, Netlist's allegations are limited by absolute and/or equitable intervening rights.  Netlist's allegations based on the accused products that were made, used, offered for sale, sold, and/or imported prior to the issuance of the reexamination certificate are subject to the defense of absolute intervening rights.  *See, e.g.*, Dkt. 155.  Netlist's allegations based on the accused products that were made, used, offered for sale, sold, and/or imported after the issuance of the reexamination certificate are subject to the defense of equitable intervening rights, because Google and/or third parties made substantial preparation of those products prior to issuance of the certificate.

## COUNTERCLAIMS

### The Parties

1.     Google LLC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.

2.     On information and belief, Netlist, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 51 Discovery in Irvine, California 92618.

### Jurisdiction and Venue

3.     Subject to Google's affirmative defenses and denials, Google alleges that this Court has jurisdiction over the subject matter of these Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1367, 1338(a), 2201, and 2202, and venue for these Counterclaims is proper in this district.

4.     This Court has personal jurisdiction over Netlist.

### Factual Background

5.     In its Complaint, Netlist asserts that Google has infringed U.S. Patent 7,619,912 ("the '912 patent").

6.     Google does not infringe any valid and enforceable claim of the '912 patent.

7.     Consequently, there is an actual case or controversy between the parties over the '912 patent.

## COUNT ONE

### Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,619,912

8.     Google restates and incorporates by reference its allegations in paragraphs 1-7 of its Counterclaims.

9.     An actual case or controversy exists between Google and Netlist as to whether the '912 patent is infringed by Google.

10.    A judicial declaration is necessary and appropriate so that Google may ascertain its rights regarding the '912 patent.

11.    Google has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '912 patent.

12.    This is an exceptional case under 35 U.S.C. § 285 because Netlist filed its Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT TWO

### Declaratory Judgment of Invalidity of U.S. Patent No. 7,619,912

13.    Google restates and incorporates by reference its allegations in paragraphs 1–12 of its Counterclaims.

14.    An actual case or controversy exists between Google and Netlist as to whether the '912 patent is invalid.

15.    A judicial declaration is necessary and appropriate so that Google may ascertain its rights as to whether the '912 patent is invalid.

16.    The claims of the '912 patent are invalid under one or more of 35 U.S.C. §§ 100 et seq., 101, 102, 103, and 112.

17.    This is an exceptional case under 35 U.S.C. § 285 because Netlist filed its Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT THREE

### Fraud/Deceit/Concealment

18.     Netlist has engaged in fraudulent and unfair conduct directed at Google and the public at large, including manufacturers and end-users of DDR2, DDR3 and DDR4 memory modules.  Netlist's fraudulent and unfair conduct stems from its deceit, concealment and misrepresentations it made to the Joint Electron Devices Engineering Council ("JEDEC"), which is the leading developer of standards for the solid-state industry.

19.     Upon information and belief, Netlist has been a member of JEDEC since 2000.

20.     Google has been a member of JEDEC since 2006.

21.     JEDEC Patent Policy requires its members to disclose to the other members any issued patents or pending patent applications that are, or may be, relevant to pending or issued standards. Therefore, Netlist, as a member of JEDEC, has a duty to disclose to its fellow JEDEC members those patents and patent applications, including applications for patents, that are relevant to pending or issued JEDEC standards.

22.     JEDEC Patent Policy further requires that a JEDEC committee cannot consider a standard that calls for the use of patented item or process unless, the JEDEC member who is the patent holder offers: (1) a license without compensation to all applicants desiring to utilize the patent for the purpose of implementing the standard(s); or (2) a license made available to all applicants under reasonable terms and conditions that are demonstrably free of any unfair discrimination.

23.     Upon information and belief, at each JEDEC meeting, each person in attendance must sign in and check a box agreeing to abide by the JEDEC Patent Policy and Netlist attendees conformed to this requirement.

24.     Netlist filed the '912 patent on September 27, 2007, which patent is a continuation of and claims priority to U.S. Patent No. 7,289,386 ("the '386 patent"), and which Netlist filed on July 1, 2005 and for which patent, Netlist claims a priority date of March 5, 2004.

25.     In the May, June, August, and December 2007 JEDEC JC-45 committee meetings, Intel Corporation proposed an addition to JEDEC Standards, including at least JESD82-20, for the purpose of standardizing an implementation of a quad-rank FBDIMM design.

26.     According to minutes from the June 2007 JEDEC JC-45 committee meeting, the meeting opened with a review of the JEDEC patent policy. The meeting minutes also demonstrate that Intel made an extensive presentation of its quad-rank FBDIMM design, after which Intel indicated that it would likely file related IP, which it would offer to license on JEDEC RAND terms. The meeting minutes also show that the June 2007 JEDEC JC-45 committee meeting was attended by three Netlist representatives: Mario Martinez, Hyun Lee, and Jeff Solomon (a named inventor on both the '386 and '912 patents). Upon information and belief, Netlist and its representatives withheld the existence of any of Netlist's relevant patents and/or patent applications, including at least the '386 patent, at this meeting from the JEDEC members.

27.     According to minutes from the August 2007 JEDEC JC-45 committee meeting, the meeting opened with a review of the JEDEC patent policy. The meeting minutes also indicate that Intel made a second presentation of its quad-rank FBDIMM design, after which there was a motion by Intel and seconded by Netlist to authorize the task group to issue a committee ballot on the material. The meeting minutes also showed that the August 2007 JEDEC JC-45 committee meeting was attended by one Netlist representative: Mario Martinez. Upon information and belief, Netlist and its representative withheld the existence of any of Netlist's patents and/or patent applications, including at least the '386 patent, from the JEDEC members at this meeting.

28.     According to minutes from the December 2007 JEDEC JC-45 committee meeting, the meeting opened with a review of the JEDEC patent policy. Upon information and belief, before the December 2007 JEDEC JC-45 committee meeting, JC-45 held and closed the vote on the Intel proposed changes, which meant that a member could not change their vote after the close. The meeting minutes also indicate that there was a ballot review of Intel's proposed addition to the standard of its quad-rank FBDIMM design, after which Netlist indicated for the first time they may have some IP that may apply to the quad rank logic and DIMM designs. The meeting minutes further show that Netlist promised to abide by the JEDEC patent policy and provide a RAND

GOOGLE INC.'S AMENDED ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT
INFRINGEMENT; AND ASSERTION OF COUNTERCLAIMS

1  letter. The meeting minutes also showed that the December 2007 JEDEC JC-45 committee

2  meeting was attended by one Netlist representative: Mario Martinez.

3       29.     On January 8, 2008, Jayesh Bhakta (a named inventor on both the '386 and '912

4  patents) sent a letter on behalf of Netlist to Mian Quddus, the chairman of the JEDEC JC-45

5  committee identifying only the '386 patent as relevant to a JEDEC standard and offering a license

6  on RAND terms. This letter did not identify patent application 11/862,931, which issued as the

7  '912 patent, filed as a continuation of the '386 patent on September 27, 2007 and not published

8  until March 20, 2008. As a result, there was no public information available to JEDEC members to

9  let them know that a continuation of the identified '386 patent had also been filed. To the extent

10  that Netlist asserts that the '386 patent is relevant to JESD82-20A, which incorporates Intel's

11  quad-rank FBDIMM design introduced in JC-45 in June 2007, then the '912 patent, a mere

12  continuation of the '386 patent, should also have been disclosed.

13       30.     Intel's proposed changes to JESD82-20 were incorporated in JESD82-20A. The

14  JEDEC members voted to issue the JESD82-20A standard, having all such JEDEC members,

15  except for Netlist representatives, vote unaware of the patent application that led to the '912

16  patent.

17       31.     Months after this case was filed and after Google responded to Netlist's Complaint

18  alleging that Netlist had not yet met the disclosure requirements per the  JEDEC Patent Policy for

19  the '912 patent, Netlist submitted a letter to Mr. John Kelly, the President of JEDEC, and

20  informed him of the '912 patent on April 1, 2010.  Netlist's April 1, 2010 letter disclosed that the

21  '912 patent "may cover certain implementations of the Advanced Memory Buffer Quad Rank

22  Support Standard."  Netlist, however, made this disclosure *after* JEDEC members voted to issue

23  the JESD82-20A standard.  Therefore, JEDEC members (except Netlist's representatives) voted

24  on Intel's proposed changes to JESD82-20 unaware of the patent application that led to the '912

25  patent.

26       32.     Even after Netlist's untimely disclosure of the '912 patent in its April 1, 2010 letter

27  to Mr. Kelly, Netlist continued to misrepresent to JEDEC the applicability of the '912 patent to

28  later standards.  The April 1, 2010 letter was narrowly tailored to apply only to the "Advanced

Memory Buffer Quad Rank Support," which was specific to JESD82-20 and applied only to DDR2 (Advanced Memory Buffer or "AMB"). Nothing in Netlist's April 1, 2010 letter implies or discloses its contention that the '912 patent applies to technologies other than DDR2 AMB.

33.     On November 22, 2010, Netlist submitted a License Assurance and Disclosure Form for the '912 patent and identified the relevant JEDEC Standards as JC42.3-3DS (JEDEC Item #1655.19, #1644.96, #1655.1)[1] and JC45-LRDIMM (JEDEC Item #2192.62, #2192.43, #2192.58, and #2192.57). This disclosure to specific subject matter in JC42.3 (JEDEC Item #1655.19) and JC45 (JEDEC Item #2192.62, #2192.43, #2192.58, and #2192.57) is directed to 3DS (Three Dimension Stack or "3DS") and LRDIMM specifications within DDR3. Netlist did not disclose any other relevant subject matter.

34.     On December 6, 2010, Netlist submitted a Notice of Refusal to Offer Licenses on RAND Terms Form, identifying a number of patents including the '912 patent. In this Notice, Netlist identified the relevant JEDEC standards for the '912 patent as JC-40 (JEDEC Item #142.55A, #142.43, and 142.50a). Netlist stated that it "hereby provides notice that the Committee Member is not willing to offer a license on RAND terms to the ['912 patent]." This Notice identified specific subject matter in JC-40 that is specific to the LRDIMM DDR3 memory buffer specification. Netlist did not disclose any other relevant subject matter. Upon information and belief, after submitting the December 6, 2010 Notice of Refusal to Offer Licenses on RAND Terms, Netlist was removed from the membership for the JEDEC JC-40 and JC-45 committees.

35.     Upon information and belief, on May 2, 2011, JEDEC's Board of Directors had a meeting whereby Netlist representative, Jayesh Bhakta, and its outside counsel, Sean Cunningham from DLA Pipe, made a presentation to the Board. (May 2, 2011 Board of Directors Meeting Minutes.) This presentation set forth Netlist's understanding of the JEDEC Patent Policy and asked the Board to allow it to participate in DDR4 standardization and DDR3 standardization. Id. Following this presentation, the Board discussed whether to suspend Netlist's membership in both

---

[1]   JEDEC Item #1644.96 and #1655.1 does not exist within JEDEC, so the scope of the subject matter Netlist intended to disclose in this November 22, 2010 disclosure is unclear.

GOOGLE INC.'S AMENDED ANSWER TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT; AND ASSERTION OF COUNTERCLAIMS

JC-40 and JC-45.  Id.  The Board unanimously reaffirmed its interpretation of the JEDEC patent

policy previously stated at its January 31, 2011 meeting and gave Netlist 30 days (until June 3,

2011) to agree to RAND licensing in both the JC-40 and JC-45 Committees or withdraw from

both committees.  If Netlist decided to do otherwise, the Board stated that Netlist may request the

Board to reinstate its membership in JC-40 and JC-45 at any time by making a commitment to

RAND licensing in both committees.  *Id*.

36.     On September 7, 2011, Netlist submitted a letter to Mr. Kelly, attaching Netlist's

RAND commitment paperwork for the JC-40 committee.  In this letter to Mr. Kelly, Netlist's

outside counsel represented that "Netlist had already committed to RAND licensing for the JC-42

and JC-45 committees on (November 22, 2010).  Pursuant to the JEDEC Board minutes dated

May 22, 2011, a RAND commitment for the JC-40 committee was the requirement for Netlist's

reinstatement to JC-40 and JC-45 committee participation."  Netlist's September 7, 2011 RAND

commitments included a commitment to license the '912 patent on RAND terms and conditions

and identified JC-40 as the relevant JEDEC Standard.  As the letter to Mr. Kelly indicates, this

disclosure of JC-40 is related to its DDR3 disclosures it made to JEDEC in its November 22, 2010

License Assurance and Disclosure Form for the '912 patent.  Netlist did not disclose any other

relevant subject matter for the '912 patent.

37.     Upon information and belief, Netlist has not offered to JEDEC members who

practice the specifications relevant for DDR4 either: (1) a license without compensation to all

applicants desiring to utilize the patent for the purpose of implementing the standard(s); or (2) a

license made available to all applicants under reasonable terms and conditions that are

demonstrably free of any unfair discrimination.  In fact, upon information and belief, Netlist has

not disclosed to JEDEC its belief that the '912 patent is relevant to any DDR4 specification.

DDR4 was finalized in 2014, and therefore, the JEDEC members (except for Netlist's

representative) voted to finalize the DDR4 specifications unaware of the '912 patent's

applicability to that standard.

38.     On June 18, 2021, Netlist served amended infringement contentions in this case.  In

its amended infringement contentions, Netlist contends that Google infringes claim 16 of the '912

patent by using and incorporating DDR4 based memory modules and relies exclusively on JEDEC specifications.  Accordingly, Netlist now contends that the '912 patent is relevant to DDR4, yet it failed and has continued to fail to inform JEDEC members of this contention.

39.     Netlist's concealment of the application that led to the '912 patent from JEDEC members and its continued concealment of the '912 patent's applicability to later JEDEC standards from JEDEC members was and is a misrepresentation of facts that it knew and knows to be relevant. Netlist has affirmatively attempted to disclose the '386 patent and other patents and patent applications it owns as relevant to certain JEDEC standards, but failed to disclose (at all) the application that led to the '912 patent and timely disclose the '912 patent to the JEDEC standards to JEDEC members.

40.     Under JEDEC Patent Policy, of which Netlist was aware, Netlist had a duty to disclose the patent application that led to the '912 patent and the '912 patent to JEDEC in a timely manner and as to each applicable JEDEC standard (see Netlist's admission to the Board of Directors at the May 2, 2011 meeting, admitting that "[d]isclosure & licensing obligations are standard-specific and committee-specific") and yet failed to make that timely disclosure to the JEDEC members.

41.     Netlist's silence as to the patent application that led to the '912 patent and silence as to the '912 patent's applicability to later JEDEC standards, such as the DDR4 standards, induced the other JEDEC members to rely upon that standard being free of intellectual property encumbrances. The JEDEC members, including Google, were without information regarding the pending patent application that was to issue as the '912 patent when JEDEC issued the JESD82-20A standard and the application of the '912 patent to later JEDEC standards, such as the DDR4 standards.

42.     JEDEC, including Google, justifiably relied on that silence and issued these standards without knowledge of the '912 patent. If Google and the other JEDEC members had been made aware of the patent application that led to the '912 patent and the application of the '912 patent to later JEDEC standards, at a minimum, Netlist would have been required to offer a license per the JEDEC Patent Policy, and the JESD82-20A standard and DDR4 specifications may

not have issued. Netlist did not offer to license the patent application that was to issue as the '912 patent to JEDEC members and did not and has not offered to license the '912 patent as applicable to DDR4 specification to JEDEC members, as would be required under the JEDEC patent provisions.

43.     Because of Netlist's concealment, Google is now potentially incurring damages. Netlist has alleged infringement by Google of the '912 patent in bringing this action. As a result, Google is now expending resources defending a litigation with regard to a patent, the disclosure of which was withheld from Google, and other JEDEC members, at the time they voted to ratify the JESD82-20A standard and the DDR4 specifications.

44.     As a result, Netlist has committed the torts of fraud and deceit by concealment against Google.

## COUNT FOUR

## Negligent Misrepresentation

45.     Google incorporates paragraphs 18-43 above.

46.     As discussed above, Netlist's concealment of the application that led to the '912 patent and the '912 patent's relevance to later JEDEC standards, such as DDR4 standards, prior to finalization of those standards from JEDEC members was a misrepresentation of facts that it knew to be relevant. Netlist has affirmatively attempted to disclose the '386 patent as relevant to certain JEDEC standards, with knowledge that they had filed a continuation of that patent, which was to issue as the '912 patent.  Netlist also (albeit untimely) disclosed the '912 patent as relevant to certain JEDEC standards, but failed to make any disclosures as to its contention that the '912 patent relates to later JEDEC standards, such as the DDR4 standards.

47.     As discussed above, under JEDEC Patent Policy, of which Netlist was aware, Netlist had a duty to disclose the patent application that led to the '912 patent and to timely disclose the '912 patent as to later JEDEC standards, such as the DDR4 standards, that it contends relate to the '912 patent to JEDEC and yet failed to make those disclosures to the JEDEC members.

48.     As discussed above, Netlist's silence as to the patent application that led to the '912 patent and silence as to which standards relate to the '912 patent induced the other JEDEC members to rely upon those standards being free of intellectual property encumbrances. The JEDEC members, including Google, were without information regarding the pending patent application that was to issue as the '912 patent when JEDEC issued the JESD82-20A standard and the '912 patent's relevance as to other JEDEC standards, such as the DDR4 standards.

49.     As discussed above, JEDEC, including Google, justifiably relied on that silence and issued those standards without knowledge of the application that was to issue as the '912 patent or the '912 patent. If Google and the other JEDEC members had been made aware of the patent application that led to the '912 patent or the '912 patent, at a minimum, Netlist would have been required to offer a license, and those standards may not have issued.

50.     Because of Netlist's concealment, Google is now potentially incurring damages. Netlist has alleged infringement by Google of the '912 patent in bringing this action. As a result, Google is now expending resources defending a litigation with regard to a patent, the disclosure of which was withheld from Google, and other JEDEC members, at the time they voted to ratify the JESD82-20A standard and the other JEDEC standards, such as the DDR4 standards.

51.     Netlist has engaged in the tort of negligent misrepresentation for Netlist's omission in its duty to disclose under the JEDEC Patent Policy.

### COUNT FIVE

### Breach of Contract

52.     Google incorporates paragraphs 18-51 above.

53.     Google is a third party beneficiary of the JEDEC membership agreements and JEDEC Patent Policy. Upon information and belief, every JEDEC member or guest who attends a JEDEC meeting must sign in and check a box agreeing that they will abide by the JEDEC Patent Policy. Had Netlist abided by the JEDEC Patent Policy, they would have disclosed the patent application that led to the '912 patent and the '912 patent in a timely manner and offered a license to JEDEC members, including Google, under the terms of the JEDEC Patent Policy.

54.     Further, the disclosures that Netlist did make to JEDEC regarding the '912 patent, albeit untimely and incomplete, set forth Netlist's commitment to license the '912 patent as to certain JEDEC standards to applicants for purposes of implementing the standard with compensation on RAND terms.  (*See, e.g.*, Netlist's April 1, 2010 letter to Mr. Kelley.)  In fact, Netlist's commitment to license its patents on RAND terms was a prerequisite for Netlist's reinstatement to JEDEC.  (*See, e.g.*, Netlist's September 7, 2011 letter to Mr. Kelley.)  Netlist must comply with its licensing declarations and disclosures.

55.     As members of the public that would potentially implement the standards and specifications set forth by JEDEC, Google, its vendors, and its customers are intended third party beneficiaries of Netlist's contractual commitments to JEDEC.

56.     Accordingly, to the extent that any of the claims of the asserted patent in the Complaint are deemed essential to implementation of any standard or specification set forth by JEDEC, Netlist is obligated to provide Google with a license to such claims on RAND terms. Contrary to the obligations expressed in the RAND commitments by which it is bound, Netlist did not make an offer to license the asserted patent on RAND terms and conditions to Google or otherwise negotiate a RAND license in good faith before filing its Complaint and, to date, it has not done so.

57.     Notwithstanding these commitments to JEDEC by Netlist that they would license the asserted patent in the Complaint on RAND terms, and to the extent that any of the claims of the asserted patent in the Complaint are deemed essential to implementation of any standard or specification set forth by JEDEC, Netlist has refused to offer a license on RAND terms, and has instead alleged that it will pursue treble damages among other damages set forth in the Complaint. As explained above, these commitments to JEDEC are based on Netlist's membership to JEDEC and its agreement to abide by the JEDEC Patent Policy and the specific commitments it made as to the '912 patent.

58.     If the claims of the asserted patent in the Complaint are valid and infringed and are in fact essential to practice the JEDEC standards, Netlist is breaching the irrevocable agreements it made to grant irrevocable licenses to the asserted patents in the Complaint on RAND terms to the

extent that it seeks anything more than a RAND royalty from Google. To the extent Netlist seeks more from Google than a RAND royalty, it is breaching the agreement to license the asserted patent in the Complaint to Google on RAND terms and thus engaging in wrongful conduct that should render the asserted patent in the Complaint unenforceable and/or should estop Netlist from seeking anything other than a RAND royalty.

59.     If the claims of the asserted patent in the Complaint are valid and infringed and are in fact essential to practice the JEDEC standards, Netlist has engaged in standard-setting misconduct including, without limitation, Netlist's breach of its commitments to license the patents asserted in the Complaint on RAND terms and conditions and breach of its disclosure requirements or based on other circumstances.

60.     Netlist has failed to abide by the JEDEC Patent Policy and commitment to license its patents on RAND terms, thereby breaching its implied or express contract as a JEDEC member.

## COUNT SIX

### Unfair Competition (CAL. Bus. & Prof. Code § 17200 et seq.)

61.     Google incorporates paragraphs 18-60 above.

62.     The above-described conduct of Netlist constitutes unfair competition in violation of California Business and Professions Code § 17299 et seq.

63.     Netlist's misconduct at JEDEC meetings and its failure to timely disclose the application that issued as the '912 patent and the '912 patent as required by the JEDEC Patent Policy allowed Netlist to exploit the information it learned at those meetings. For example, by staying silent as to its patented technology, upon information and belief, Netlist was able to help influence other members to vote on the adoption of the JEDEC standards that Netlist understood were covered by its patented technology.  This has caused JEDEC members to vote to finalize and incorporate JEDEC standards without the knowledge of the application that issued as the '912 patent and the '912 patent, even though Netlist believed that this application and patent was applicable to the JEDEC standards.  If Netlist succeeds in asserting the '912 patent against

products designed to be compatible with the JEDEC standards, Netlist will also unfairly control the relevant markets for the accused memory modules based on its misconduct.

64.     Netlist's unfair competitive acts constitute a course of conduct designed to harm Google and the public at large, including manufacturers and end-users of DDR2, DDR3, and DDR4 memory modules, which will continue to sustain injury and damages from this unfair competition by Netlist if it is permitted to continue its unlawful conduct.  This injury includes the threat of being forced to pay exorbitant royalties, the uncertainty created by Netlist's refusal to offer a RAND license to Google, the expense of litigating this case, and potential injury to Google's business and property, specifically the imminent loss of profits, loss of current and potential customers and loss of goodwill and product image.  Netlist's conduct, if successful, will result in higher prices for manufacturers of DDR3 and DDR4 memory modules and for end users of the many products that include DDR3 and DDR4 memory modules.

65.     Google is entitled to recover reasonable attorneys' fees and costs in connection with this Court, as well as all appropriate restitution and other equitable relief.

### Prayer for Relief

WHEREFORE, Google prays for judgment as follows:

a.     A judgment dismissing Netlist's Complaint against Google with prejudice;

b.     A judgment in favor of Google on all of its Counterclaims;

c.     A declaration that Google has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid and enforceable claims of the '912 patent;

d.     A declaration that the '912 patent is invalid;

e.     A judgment that Google is entitled to a RAND license to the '912 patent;

f.     A judgment that Netlist has breached its contractual obligations to license the '912 patent on RAND terms, and award damages such as Google will prove at trial, and enter an order setting a RAND rate for the '912 patent if the '912 patent is deemed essential to a JEDEC standard, and compelling specific performance of Netlist's obligations; and

g.     A judgment to Google of all reasonable attorneys' fees, experts' fees, and costs.

Dated: May 9, 2022

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:___*/s/ David Perlson*_____
        David Perlson

David Perlson (CA Bar No. 209502)
davidperlson@quinnemanuel.com
Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jared Newton (admitted *pro hac vice*)
jarednewton@quinnemanuel.com
Deepa Acharya (CA Bar No. 267654)
deepaacharya@quinnemanuel.com
Sandy Shen (admitted *pro hac vice*)
sandyshen@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Catlin Williams (CA Bar No. 336464)
catwilliams@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000 Tel.
(650) 801-5100 Fax

*Attorneys for Defendant Google LLC*

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Google Inc.

respectfully demands a jury trial of all issues triable to a jury in this action.

Dated: May 9, 2022

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: ___/s/ Deepa Acharya_____
       Deepa Acharya
David Perlson (CA Bar No. 209502)
davidperlson@quinnemanuel.com
Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jared Newton (admitted *pro hac vice*)
jarednewton@quinnemanuel.com
Deepa Acharya (CA Bar No. 267654)
deepaacharya@quinnemanuel.com
Sandy Shen (admitted *pro hac vice*)
sandyshen@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Catlin Williams (CA Bar No. 336464)
catwilliams@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000 Tel.
(650) 801-5100 Fax

*Attorneys for Defendant Google LLC*