# EXHIBIT 7

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

| | |
|---|---|
| **From:** | Sheasby, Jason |
| **Sent:** | Saturday, September 25, 2021 12:54 PM |
| **To:** | Deepa Acharya; Strabone, Andrew; Jonathan Tse; Tezyan, Michael |
| **Cc:** | Stach, Jason; #Netlist-Google [Int]; ~Hines, Dori; Puknys, Erik; Specht, Kara; Jared Newton; David Perlson; QE-NetlistvGoogle |
| **Subject:** | Re: Netlist v. Google - 09-cv-5718 - Joint Letter to Magistrate re Dorsey Subpoena |
| **Attachments:** | Netlist Discovery Disputes Letter re 8_16 Rank DIMMs.docx |

Dear Deepa. Thanks for your email.

(1) Your arbitrary distinction between 4 and 8 and 16 rank DIMMs is incorrect. Attached is our discovery letter to Magistrate Spero. Please fill in your section so we can get it on file.

(2) The ███████████████████████. Google has no rights to Netlist's patents ████████████. Moreover, even if the ████████████████████ we would need more detailed information regarding ██████████████████████████ to reach a determination.

(3) Please provide a complete list of ████████████████████████████████████████████████████████████████████.

1

**VIA ELECTRONIC CASE FILING AND EMAIL**

The Honorable Joseph C. Spero
Chief U.S. Magistrate Judge
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *Netlist, Inc. v. Google LLC*, No. 4:09-CV-5718-SBA-JCS (N.D. Cal.)

Dear Judge Spero:

      Plaintiff Netlist, Inc. ("Netlist") and Defendant Google LLC ("Google"), submit this joint statement regarding Google's discovery responses to Netlist's ROGs #1-3 and RFPs #1-3.

**Netlist's Statement**

      After significant attempts at obfuscation, Google has no conceded that it is withholding all information on at least three categories of products relevant to this lawsuit: (a) DIMMs that use physically stacked DRAM chips as opposed to monolithic DRAM chips; (b) DIMMs that it arbitrarily decides are not compliant with the DDR4 specifications referenced in Nelist's infringement contentions; (c) products made by subsidiaries or affiliates of Google, Inc. Information on the categories of products that could has made or used, particularly after the issuance of the reexamination certificate in the patent in suit, is directly relevant to intervening rights. Google's behavior violates this Court's instructions at the last discovery hearing, as well as the representation it made in a binding stipulation filed with the Court.

      Because of the absence of public information, Netlist's infringement contentions are framed in terms of standardized designs published by JEDEC "The memory modules incorporated in Google's servers include, without limitation, memory modules compliant with certain portions of the JEDEC Solid State Technology Association ("JEDEC") standards and specifications for Double Data Rate 4 ("DDR4") . . RDIMMs . . . LRDIMMs .. . NVDIMMs *and products that operate in substantially similar manner*." [cite.].

      Netlist also served discovery requests regarding Google's memory modules purchased or used from November 17, 2008 through the present. Ex. 2 at 6-7 (ROGs #1-2); Ex. 3 at 6-7 (RFPs #1-2). Specifically, Netlist sought, *inter alia*, the category of each DIMM (e.g. FBDIMM), the category of DRAM on each DIMM (e.g. DDR2), and further detail regarding the design and operation of each DIMM. Ex. 2 at 6-7 (ROGs #1-2); Ex. 3 at 6-7 (RFPs #1-2). Because Google does not publicly disclose the design and type of DIMMs it uses, and because Google manufacturers its own DIMMs through subsidiaries and contractors, the discovery requests were framed in terms of technical characteristics relevant to the patent in suit. [insert definition.]

      The parties subsequently submitted a joint letter based on Google's deficient responses. Dkt. 153. Netlist explained that the "design history of these memory modules" and "the operation . . . of historical and current devices" was relevant to the "substantial preparation" factor for equitable intervening rights. Dkt. 153 at 2. The Court ordered Google to respond to Netlist's

contention interrogatory regarding intervening rights (ROG #3) "in full." Dkt. 145. As part of that response, Google included the products for which it was moving for intervening rights—which it claims are all accused products. The Court further recognized that Netlist was entitled to "***very broad***" discovery regarding Google's use of DIMMs as of February 8, 2021 to probe Google's equitable intervening rights defense: "[W]illfulness is a question under *Visto*, and so it seems to me that that sweeps in a lot of the information that is here and requested. So I think you get much broader discovery as to the modules that are used from February 8, 2021 -- their structure, their changes, things about infringement . . . ." Ex. 4 at 5:19-6:6. In a stipulation subsequently filed with the Court to obviate a subsequent hearing with the Court, Google agreed to provide "a complete response to Netlist's contention interrogatory on intervening rights . . . on July 16 (as to equitable intervening rights")" and "a complete document production based on an reasonable investigation relating to equitable intervening rights by July 30." Dkt. 149.

Google's responses to this interrogatory and its associated production disclosed that it used only what it describes as "4-rank DIMMs." *See, e..g.*, Ex. 1 at 2-3 (Google's July 16, 2021 Supp. Response to Interrog. No. 3). Because of the volumes of DIMM products Google was reporting as using bore no connection to public information about the scope of Google's business, Netlist asked Google to explain what products was providing information regarding. This correspondence strongly suggested that games were afoot: "We have responded as to what we understand has been accused*.*" Ex. 11 (July 22, 2021 Email from Jonathan Tse). Providing information only as to "what we [Google] understand has been accused" turns the discovery process on its head, because Google does not publicly disclose its designs.

On August 20, 2021, Netlist inquired as to whether Google was specifically excluding what it was defined as "8- and 16-rank devices" from its discovery responses. Ex. 6 at 3 (Aug. 20, 2021 Email from Andrew Strabone). Google responded that Netlist's Amended Infringement Contentions do not apply to what it is defining as "8- and 16-rank DIMMs." Ex. 6 at 1 (Sept. 3, 2021 Email from Deepa Acharya).

Google is plainly wrong. The Amended Infringement Contentions accuse DDR4 RDIMMs, DDR4 LRDIMMs, DDR4 NVDIMMs, DDR3 LRDIMMs, DDR2 FBDIMMs that meet certain portions of JEDEC standards, and "***products that operate in substantially similar manner***" Ex. 7 at 2-3 (emphasis added) (the "Accused Instrumentalities"). The contentions do not limit themselves to what Google is defining arbitrarily as "4-Rank" as distinct from 8-rank or 16-rank. What Google appears to be doing is seizing upon introductory language in the contentions that all of the above products "constitute '4-Rank Fully-Buffered Dual In-Line Memory Modules' as that term is used in the Complaint." The original complaint was filed over a decade ago, at a time in which the only rank-multiplied DIMM used was DDR2 "4-Rank FBDIMM." The purpose of this language was to make clear that Netlist maintains that the Accused Intrumentalities are not different products but the natural evolution of this original rank-multiplied product.

The difference between "4-rank" DIMMs and "8- and 16-rank" DIMMs is not material as it relates to the patent in suit. Specifically, 8- and 16-rank DIMMs use die stacking, referred to as dual-die package ("DDP") or stacked ("3DS") DRAM, in order to provide multiple DRAM dies in a single package. Even then, each of the stacked DRAM dies is structurally similar to the monolithic DRAM dies found in the historical 4-rank modules, for example, as evidenced in Figure 10 from JEDEC Standard No. 21C—reproduced in Netlist's infringement contentions—which

3

illustrates the common layout for a "DDR4 2R/4R/8R/16R (planar/3DS)" DIMM, where R indicates "rank." Ex. 7 at 27. From an operational perspective, these devices are substantially the same. See Declaration of Prof. Murali Anavaram.

Google argues that Netlist's infringement contentions do not apply to 8- and 16-rank devices because Netlist relies on the Encoded QuadCS Mode specified in the JESD 82-31A standard and "[t]hat functionality applies only to 4-Rank devices." *Id.* This is demonstrably incorrect. JESD 82-31A expressly provides that DIMMs featuring DDP DRAM select ranks on a memory module in a manner similar to Encoded QuadCS Mode. Ex. 8, at 3 (JESD 82-31A) (explaining that DIMMs using DDP DRAM require four chip select signals and one means to accomplish this is "by using two CS inputs and one of the chip ID inputs from the host (DCS[1:0]_n and DC0). See Chapter 2.2.3, '**Encoded QuadCS Mode**'") (emphasis added). The JESD 79-4-1B standard similarly provides that DIMMs featuring 3DS DRAM operate the same way by using a combination of chip-select (CS) and chip ID signals. Ex. 9 at Table 1 (Addendum to DDR4 DRAM Specification for 3DS DRAM); *see also id.* at 4 ("For DDR4 3DS devices, the logical ranks are selected by the Chip ID bus C[2:0]. ***The functional behavior of logical rank(s) should not deviate from monolithic DDR4 SDRAMs*** (specified in JESD79-4A), except when noted in this document.") (emphasis added).[1]

In any event, even if 8- and 16-rank DIMMs somehow did not fall within the scope of Netlist's Amended Infringement Contentions, limiting the scope of Netlist's discovery requests based on Netlist's infringement contentions is improper. The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Case law from various circuits clearly states that there is no bright-line rule limiting discovery to only those products specifically accused in a party's infringement contentions." *EPOS Techs. v. Pegasus Techs.*, 842 F. Supp. 2d 31, 33 (D.D.C. 2012) (collecting cases). Indeed, such a rule would be inconsistent with the broad discovery regime under the Federal Rules. *See O2 Micro Int'l. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) ("The Federal Rules replaced a system in which the issues had to be conclusively defined at the outset of litigation through the pleadings, with a system that relied on discovery and pretrial hearings to gradually identify the precise issues in dispute as more information became available."); *Advanced Micro Devices, Inc. v. Samsung Elec. Co., Ltd.*, 2009 WL 134147, at * 3 (N.D. Cal. June 24, 2009) (noting that district courts "have found that in patent cases, the scope of discovery may include products and services reasonably similar to those accused in the preliminary infringement contentions"); *L.G. Elc., Inc. v. Q-lity Comput., Inc.*, 211 F.R.D. 360, 368 (N.D. Cal. 2002) (noting that the court is not "restricting discovery to only the accused products or the products that have been identified," instead, "the plaintiffs are entitled to [] information about other products that may infringe").

In addition, limiting Netlist's discovery requests based on its infringement contentions is especially improper where, as here, Google keeps all information regarding its use of memory modules confidential, and thus Netlist has no way to discover this information. *See Honeywell Int'l, Inc. v. Acer Am. Corp.*, 2009 WL 274829, at *5-*6 (E.D. Tex. 2009) (granting motion to

---

[1] The principle differences noted in JESD79-4-1B relate to the degree of latency across the DRAM (i.e., CAS latency), not its functionality. *E.g.*, Ex. 9 at 11.

4

compel discovery for products not identified in infringement contentions that were "reasonably similar" to those identified when requested information was not publicly available).

Netlist respectfully requests that the Court order Google to provide discovery into all memory modules Google has purchased, made, used, installed, operated, sold, or offered to sell in the United States as of February 8, 2021. With respect to memory modules purchased, made, used, installed, operated, sold, or offered for sale in the United States prior to February 8, 2021, Netlist respectfully requests that this Court require Google to identify basic information regarding those modules, including (i) Part Number, (ii) Memory Type (DDR4 RDIMM, DDR4 LRDIMM, etc.), (iii) Design (4/8/16-rank), (iv) Manufacturer or Assembler, and (v) Quantity.

**Google's Statement**

Sincerely,

Jason G. Sheasby            David A. Perlson
Irell & Manella LLP         Quinn Emanuel Urquhart & Sullivan, LLP