Exhibit 3

# (CORRECTED) PLAINTIFF NETLIST'S OPPOSITION TO GOOGLE'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ABSOLUTE INTERVENING RIGHTS

1  IRELL & MANELLA LLP
   Jason G. Sheasby (CA SBN 205455)
2  jsheasby@irell.com
   Andrew J. Strabone (CA SBN 301659)
3  astrabone@irell.com
4  1800 Avenue of the Stars, Suite 900
   Los Angeles, California 90067
5  Telephone: (310) 277-1010
   Facsimile: (310) 203-7199
6
7  *Attorneys for Plaintiff Netlist, Inc.*

8

9              **UNITED STATES DISTRICT COURT**
10             **NORTHERN DISTRICT OF CALIFORNIA**
               **OAKLAND DIVISION**
11

12 NETLIST, INC.,                    )   Case No. 4:09-cv-05718-SBA
                                      )
13              Plaintiff,            )
                                      )   **PLAINTIFF NETLIST'S OPPOSITION**
14      v.                            )   **TO GOOGLE'S MOTION FOR**
                                      )   **SUMMARY JUDGMENT ON THE ISSUE**
15 GOOGLE LLC,                        )   **OF ABSOLUTE INTERVENING RIGHTS**
                                      )   **(Dkt. 155)**
16              Defendant.            )
                                      )   Date: October 13, 2021
17
18                                        Time: 2:00 PM

19                                        Location: Oakland Courthouse

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

## <u>STATEMENT OF THE ISSUES TO BE DECIDED</u>

(1) With respect to claim 16: First, whether Google's intervening rights defense fails as a matter of law because reexamined claim 16 is not "amended" or "new" under pre-AIA 35 U.S.C. § 316(b).  Second, whether Google's intervening rights defense fails as a matter of law because reexamined claim 16 is "substantially identical" to original claim 16 under 35 U.S.C. §§ 252, pre-AIA 316(b).

(2) With respect to the asserted Amended Claims (1, 3, 4, 6, 8, 10, 11, 15, 18, 20, 22, 24, 27-29, 31, 32, 34, 36-39, 41, 43, 45, and 50): Whether Google's intervening rights defense fails as a matter of law because Google has failed to demonstrate that the claims have substantively changed in scope as determined by the *Phillips* standard.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     TECHNOLOGY BACKGROUND ..................................................................... 3

III.    LEGAL STANDARD .......................................................................................... 4

     A.   Absolute Intervening Rights Under Current Federal Circuit Precedent ................................................................................................ 4

     B.   Absolute Intervening Rights Should Not Apply to Narrowing Amendments ........................................................................................... 4

     C.   The USPTO's BRI Claim Construction Standard Differs from the *Phillips* Standard Used in District Courts ............................................. 4

IV.    GOOGLE IS NOT ENTITLED TO INTERVENING RIGHTS IN CLAIM 16 ............. 5

     A.   Google Fails to Demonstrate That Reexamined Claim 16 Is "Amended" or "New" for Purposes of Section 316(b) ........................... 5

     B.   Google Fails to Show that Reexamined Claim 16 Is Not "Substantially Identical" to Original Claim 16 ...................................... 5

V.     Netlist's Discussion of "Operatively Coupled" in Reexamination Cannot Form a Basis for Intervening Rights .......................................................................... 7

     A.   Arguments in Reexamination Cannot Give Rise to Intervening Rights ....................................................................................................... 7

     B.   Prosecution Disclaimer Does Not Apply on This Record ...................... 9

     C.   Netlist's Statements Regarding "Operatively Coupled" Are Consistent with the *Phillips* standard ................................................ 11

VI.    GOOGLE IS NOT ENTITLED TO INTERVENING RIGHTS IN THE AMENDED CLAIMS ............................................................................................ 12

     A.   The Claims Were Amended to Define the Claim Limitations Related to the PLL, Register, and Logic Element ............................................... 12

     B.   Summary Judgment of Intervening Rights Should Be Denied Because Google Did Not Present Any Constructions of the Original Claim Limitations ................................................................................. 13

     C.   Amendments in Response to Prior Art Rejections Do Not Automatically Trigger Intervening Rights ............................................ 14

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

**Page**

D.   The Amended Claims are "Substantially Identical" to the Original
Claims under the *Phillips* Standard ........................................................ 16

1.   The Phase-Lock Loop Amendment Was Not a Substantive
Change ....................................................................................... 17

2.   The Register Amendments Were Not a Substantive Change ................... 19

(a)   The First Register Amendment Did Not
Substantively Change the Scope of the Claims ............................. 19

(b)   The Second Register Amendment Did Not
Substantively Change the Scope of the Claims ............................. 21

3.   The Logic Element Amendment Was Not a Substantive
Change ....................................................................................... 22

4.   Narrowing of a Claim under *BRI* Is Irrelevant Because
Intervening Rights Is Judged Based on the *Phillips* Standard ................. 24

VII.   PRODUCTS GOOGLE CONTENDS ARE SUBJECT TO INTERVENING
RIGHTS .................................................................................................... 24

VIII.   CONCLUSION .......................................................................................... 25

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1

## TABLE OF AUTHORITIES

2

Page(s)

3

## Cases

4

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,

5

    610 F. Supp. 2d 370 (M.D. Pa. 2009), aff'd, 477 F. App'x 740 (Fed. Cir. 2012) .......................7

6

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*,

    129 F.3d 1247 (Fed. Cir. 1997) ..........................................................................................1, 4, 6

7

*Convolve, Inc. v. Compaq Comput. Corp.*,

8

    812 F.3d 1313 (Fed. Cir. 2016) ...................................................................................... *passim*

9

*Dexcowin Glob., Inc. v. Aribex, Inc.*,

10

    No. 16-cv-143, 2017 WL 3477748 (C.D. Cal. June 7, 2017) .................................................6

11

*Droplets, Inc. v. Yahoo! Inc.*,

    No. 12-cv-3733, Dkt. 792 (N.D. Cal. July 2, 2021) ............................................................10

12

*Engineered Data Prods. v. GBS Corp.*,

13

    506 F. Supp. 2d 461 (D. Colo. 2007) ..................................................................................16

14

*Etagz, Inc. v. Quiksilver, Inc.*,

    No. 10-300, 2012 WL 2135497 (C.D. Cal. June 11, 2012) .................................................13

15

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,

16

    535 U.S. 722 (2002) .............................................................................................................7

17

*Fitbit, Inc. v. Aliphcom, Inc.*,

18

    IPR2016-00607, 2017 WL 3525349 (P.T.A.B. Aug. 15, 2017) ........................................2, 4

19

*Galderma Lab'ys, L.P. v. Amneal Pharms. LLC*,

20

    806 F. App'x 1010 (Fed. Cir. 2020)..................................................................................9, 10

21

*Golden Bridge Tech., Inc. v. Apple Inc.*,

    758 F.3d 1362 (Fed. Cir. 2014) ............................................................................................9

22

*Google LLC v. Netlist, Inc.*,

23

    810 F. App'x 902 (Fed. Cir. 2020)...................................................................................1, 24

24

*Google v. Netlist*,

25

    No. 08-cv-4144, Dkt. 79 (N.D. Cal. Nov. 16, 2009)..........................................................14

26

*Henrob Ltd. v. Böllhoff Systemtechnick GmbH & Co.*,

    No. 05-cv-73214, 2009 WL 3188572 (E.D. Mich. Sept. 29, 2009).....................................16

27

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,

28

    370 F.3d 1131 (Fed. Cir. 2004) ............................................................................................7

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- iii -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

**Page(s)**

*Innova/Pure Water, Inc. v. Safari Water Filtration, Sys., Inc.*,
381 F.3d 1111 (Fed. Cir. 2004) .................................................................................. 18

*Innovative Env't Techs., Inc. v. Total Petrochemicals & Refining USA, Inc.*,
No. 18-cv-3211, 2019 WL 1651666, (E.D. Pa. Apr. 17, 2019) ................................. 16

*Kaufman Co., Inc. v. Lantech, Inc.*,
807 F.2d 970 (Fed. Cir. 1986) .................................................................... 14, 16, 17

*Laitram Corp. v. NEC Corp.*,
952 F.2d 1357 (Fed. Cir. 1991) ........................................................................ *passim*

*Linear Tech. Corp. v. Micrel, Inc.*,
No. 94-cv-1633, 2006 WL 8425047 (N.D. Cal. June 9, 2006) ..................................... 4

*Marine Polymer Techs., Inc. v. HemCon, Inc.*,
659 F.3d 1084 (Fed. Cir. 2011) ........................................................................... 1, 8

*Marine Polymer Techs., Inc. v. HemCon, Inc.*,
672 F.3d 1350 (Fed. Cir. 2012) (en banc) .......................................................... *passim*

*Mass. Inst. of Tech. v. Shire Pharms.*,
839 F.3d 1111 (Fed. Cir. 2016) ................................................................................... 9

*NexMed Holdings, Inc. v. Beta Techs., Inc.*,
718 F. Supp. 2d 1299 (D. Utah 2010) ......................................................................... 6

*Omega Eng'g, Inc, v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ................................................................................... 9

*Ortho-Mcneil Pharm., Inc. v. Kali Labs., Inc.*,
482 F. Supp. 2d 478 (D.N.J. 2007) ............................................................................. 6

*Paradox Sec. Sys. Ltd. v. ADT Sec. Servs., Inc.*,
710 F. Supp. 2d 590 (E.D. Tex. 2008) ........................................................................ 7

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ......................................................... *passim*

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
396 F. Supp. 3d 851 (N.D. Cal. 2019) ...................................................................... 10

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004) ................................................................................ 11

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*,
815 F.3d 734 (Fed. Cir. 2016) ............................................................................... 2, 4

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
2010 WL 1485326 (D. Del. Apr. 12, 2010) ................................................................ 7

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

**Page(s)**

*Safoco, Inc. v. Cameron Int'l Corp.*,
  No. 05-cv-739, 2009 WL 10742813 (S.D. Tex. Apr. 9, 2009) .................................6, 7

*SignalQuest, Inc. v. Tien-Ming Chou*,
  No. 11-cv-392, 2016 WL 738209 (D.N.H. Feb. 23, 2016) .................................6

*StemCells Inc. v. Neuralstem Inc.*,
  No. 06-cv-1877, 2009 WL 3681653 (D. Md. Oct. 30, 2009) .................................13

*Tech. Props. Ltd. LLC v. Huawei Techs Co.*, Ltd.
  849 F.3d 1349 (Fed. Cir. 2017) .................................10, 11

*Thermalloy, Inc. v. Aavid Eng'g, Inc.*,
  121 F.3d. 691 (Fed. Cir. 1997).................................7

*Visual Interactive Phone Concepts, Inc. v. U.S. Cellular Corp.*,
  No. 11-cv-5289, 2014 WL 561731 (N.D. Ill. Feb. 13, 2014) .................................13

**Statutes**

35 U.S.C. § 112(d) .................................12

35 U.S.C. § 154(d) .................................24

35 U.S.C. § 252 .................................4, 6

35 U.S.C. § 316(b) .................................1, 4, 5

**Other Authorities**

MPEP § 2660.03 .................................1, 5

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR
PARTIAL SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

- v -

## I.      **INTRODUCTION**

Over the course of a decade-long reexamination, the '912 patent survived multiple validity attacks by Google, SMART Modular, and Inphi, and was ultimately affirmed valid by the Federal Circuit. *Google LLC v. Netlist, Inc.*, 810 F. App'x 902 (Fed. Cir. 2020).

Following the lifting of the stay in this case, Google originally represented to the Court that it would bring a motion for summary judgment on intervening rights generally that would be dispositive of the case and on this basis sought an early briefing schedule. Dkt. 115 at 4. Google now recognizes that at least its equitable intervening rights defenses require a trial. Instead, Google has filed this Motion for Summary Judgment (Dkt. 155) ("MSJ") solely on the issue of absolute intervening rights. MSJ at 1 n.1.

At the conclusion of the reexamination, the USPTO determined 78 claims of the '912 patent to be patentable. Dkt. 155-5 at 1:15-24. Within this set of valid claims there are two important categories of claims for which there are no intervening rights.

*First Category*: The first category is claims that were not modified at any point in time during reexamination, namely claim 16. Claim 16 was confirmed as valid during reexamination. Dkt. 156-5 at 9-10, 12. As required under the rules governing reexamination, it was rewritten in independent form to make express limitations recited in its original base claim 15. MPEP § 2660.03.

Absolute intervening rights do not apply to claim 16 for two independent reasons. First, claim 16 is not "amended" or "new" under pre-AIA 35 U.S.C. § 316(b), based on the Federal Circuit's interpretation of that statute in *Marine Polymer*, because the validity of claim 16 was confirmed before it was rewritten in independent form. *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1363-64 (Fed. Cir. 2012) (en banc) (holding that intervening rights under the reexamination statutes do not extend to "claims that existed in the original patent and have been confirmed as patentable"). Second, even if reexamined claim 16 is "amended" for purposes of pre-AIA § 316(b), reexamined claim 16 is "substantially identical" to original claim 16 because rewriting a dependent claim in independent form cannot give rise to intervening rights. *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997); Dkt. 156 at 3 (collecting district

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 1 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1  court cases finding no intervening rights from rewriting a dependent claim into independent form).

2  Thus, Google's motion should be denied with respect to claim 16.

3      ***Second Category***: The second category of claims consists of original claims that were

4  amended during reexamination to precisely define the scope of these claims.  This category includes

5  claims 1, 3, 4, 6, 8, 10, 11, 15, 18, 19, 20, 22, 24, 27-29, 31, 32, 34, 36-39, 41, 43, 45, and 50 (the

6  "Amended Claims").  Google is not entitled to intervening rights with respect to these claims

7  because the Amended Claims are "substantially identical" in scope to the original claims as they

8  would have been construed under the *Phillips* standard for claim construction.

9      During reexamination, Netlist amended the original claims to precisely define the meaning

10  of claim limitations related to three components of the claimed invention: the phase-lock loop

11  ("PLL") device, the register, and the logic element.  These amendments were made to obviate what

12  Netlist believed were incorrect constructions of claim meaning by the USPTO, but which the

13  USPTO believed were properly encompassed by the expansive claim construction standard used in

14  reexamination—broadest reasonable interpretation ("BRI").  Under BRI, "when faced with a claim

15  term which has multiple reasonable interpretations in light of the specification, [the USPTO] must

16  choose the broadest that is still reasonable." *Fitbit, Inc. v. Aliphcom, Inc.*, IPR2016-00607, 2017

17  WL 3525349, at *9 (P.T.A.B. Aug. 15, 2017).  By contrast, district courts employ the *Phillips*

18  standard of claim construction to "seek out the correct construction." *PPC Broadband, Inc. v.*

19  *Corning Optical Commc'ns RF, LLC*, 815 F.3d 734, 740 (Fed. Cir. 2016).  In the intervening rights

20  analysis, courts must "interpret the scope of the claims per the *Phillips* standard." *Convolve, Inc. v.*

21  *Compaq Comput. Corp.*, 812 F.3d 1313, 1325 (Fed. Cir. 2016).  Thus, to establish intervening rights

22  Google must establish that the definitional language added to the claims narrowed the claims to

23  something narrower than the construction of the original claims as construed under the *Phillips*

24  standard.

25      Here, Google has made no attempt to assess the construction of the original claims under the

26  *Phillips* standard.  Instead, Google relies almost exclusively on the fact that the original claims were

27  amended in response to prior art rejections, contradicting Federal Circuit case law rejecting such a

28  *per se* rule. *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1362 (Fed. Cir. 1991) ("*Laitram I*"); MSJ

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 2 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

at 7-12.  Google fails to make the requisite showing that the Amended Claims are narrower in scope than the original limitations under the *Phillips* standard.  This is not an accident.  The amendments do not make the claims narrower than the meaning of the original claim limitations under the *Phillips* standard.  Compounding Google's failings is that it has presented no analysis of the meaning of the original claims in its contention interrogatory response on intervening rights.  Dkt. 156-2 at 16-28. Because of Google's refusal to voluntarily participate in the discovery process, Magistrate Judge Spero ordered that Google "must" answer this interrogatory "in full."  Dkt. 145 ("Court ruled that ROG #3 must be answered in full.").  Having failed to present a *Phillips* analysis of the original claims, Google is bound by its silence.  Thus, Google's motion should be denied with respect to the Amended Claims.

## II.  **TECHNOLOGY BACKGROUND**

The '912 patent generally relates to computer memory, and more particularly to memory module technology.  Ex. 1.  A memory module is a device that contains individual memory devices (e.g. DRAM chips) arranged on a printed circuit board.  *Id.* at 1:26-31.  The individual memory devices are typically combined into discrete sets or "ranks" to increase the capacity of the memory module.  *Id.* at 2:23-30.  Memory modules communicate with a computer system (e.g. a computer server) via the computer system's memory controller.  *Id.* at 11:43-48.

Most computer systems support accessing a limited set of ranks, such as only one-rank and two-rank modules, which limits the system's overall memory capacity.  *Id.* at 1:20-2:42.  To increase the number of memory devices that can be accessed by such a computer—and hence increase the system's overall memory capacity—the '912 patent inventively uses a first number of ranks of memory devices ("actual physical memory devices") to simulate a second number of ranks of memory devices ("logical memory devices"), wherein the first number of ranks is larger (e.g., 2X larger) than the second number of ranks, and each actual physical memory device has a capacity that is smaller (e.g., 2X smaller) than the capacity of one logical memory device.  *Id.* at 2:61-66.

This inventive technique, known as "rank multiplication," is implemented by circuitry in the memory module that translates between the system memory controller and the individual memory devices.  *Id.* at 12:12-23:25.  Figure 1A from the '912 patent illustrates an exemplary embodiment

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 3 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

of the claimed memory module featuring such circuitry in the form of a PLL device, a register, and a logic element. *Id.* at 12:25-43; *see* Annavaram Decl. ¶ 17 (reproducing annotated Figure 1A).

## III.   LEGAL STANDARD

### A.   Absolute Intervening Rights Under Current Federal Circuit Precedent

Absolute intervening rights preclude liability for accused products that were purchased or used prior to the conclusion of reexamination. 35 U.S.C. §§ 252; pre-AIA § 316(b). "[T]he first question when assessing whether intervening rights arose from a reexamination is whether the asserted claim is 'amended or new'" within the meaning of the statute. *Marine Polymer*, 672 F.3d at 1363. "Only if the claim at issue is new or has been amended may the court proceed to the second step in the analysis and assess the substantive effect of any such change pursuant to § 252." *Id.* At the second step of the analysis, the accused infringer need show that the original and amended claims are not "substantially identical." 35 U.S.C. § 252. Under § 252, "identical" means "at most without substantive change." *Bloom*, 129 F.3d at 1250. "The infringer bears the burden of proof to establish its affirmative defense for intervening rights and the resultant reduction in damages." *Linear Tech. Corp. v. Micrel, Inc.*, No. 94-cv-1633, 2006 WL 8425047, at *78 (N.D. Cal. June 9, 2006).

### B.   Absolute Intervening Rights Should Not Apply to Narrowing Amendments

The Federal Circuit holds that intervening rights apply to substantial amendments during reexamination even if the scope of the claims are narrowed. *E.g.*, *Laitram II*, 163 F.3d at 1349. Netlist believes that this decision is inconsistent with the statutory language, but recognizes that this is an issue for the Federal Circuit. For the purposes of this motion, Netlist will apply *Laitram II*.

### C.   The USPTO's BRI Claim Construction Standard Differs from the *Phillips* Standard Used in District Courts

There are two distinct standards of claim construction: the *Phillips* standard applied by district courts, and the BRI standard applied by the USPTO during reexamination. *PPC,* 815 F.3d at 740-41. The Federal Circuit recognizes that these standards can produce different constructions. *Id.* at 741 ("[I]n this case, the claim construction standard is outcome determinative."). The BRI standard requires the USPTO to select the broadest of "multiple reasonable interpretations in light of the specification." *Fitbit*, 2017 WL 3525349, at *9. The *Phillips* standard by contrast requires district courts to determine "the correct construction." *PPC,* 815 F.3d at 741. Under *Phillips*, claims

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 4 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

are generally given their plain and ordinary meaning as understood to a person of ordinary skill in the art ("POSITA") in the context of the specification, which is usually "dispositive." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

## IV.   GOOGLE IS NOT ENTITLED TO INTERVENING RIGHTS IN CLAIM 16

### A.   Google Fails to Demonstrate That Reexamined Claim 16 Is "Amended" or "New" for Purposes of Section 316(b)

Google relies solely on the Certificate of Reexamination to prove that claim 16 was "amended" during reexamination.  MSJ at 7 ("[A]s reflected in the re-examination certificate, asserted claims 1, 15, 16, 28, 39, and 43 were 'determined to be patentable as amended.'").

Google ignores the reality that at no point during the reexamination process was the language of claim 16 modified.  Instead, claim 16 was confirmed as valid by the examiner on April 4, 2011. Dkt. 156-5 at 9-10 ("Proposed rejection of claims 16, 17, and 21 is not adopted."); *id.* at 12 (same). The examiner formally noted claim 16's status as a "confirmed" claim on October 14, 2011.  Ex. 2 at 1 ("Claims confirmed. [Unamended patent claims] are . . . 16 . . . .").  Because claim 16 was originally a dependent claim, and the claim from which it depended (claim 15) was amended and rejected, claim 16 was required to be rewritten into independent form per the reexamination rules. MPEP § 2660.03 ("If an amended base patent claim or a new base patent claim is rejected, a claim dependent thereon should be objected to if it is otherwise patentable, ***and a requirement should be made for rewriting the dependent claim in independent form***.") (emphasis added).   Thus, reexamined claim 16 is not "amended" or "new" for purposes of pre-AIA 35 U.S.C. § 316(b). *Marine Polymer*, 672 F.3d at 1363-64 (holding that intervening rights under the reexamination statutes do not extend to "claims that existed in the original patent and have been confirmed as patentable").  As such, Google's intervening rights arguments for claim 16 fail at the threshold step.

### B.   Google Fails to Show that Reexamined Claim 16 Is Not "Substantially Identical" to Original Claim 16

Google's sole basis for contending that reexamined claim 16 is not "substantially identical" to original claim 16 is that Netlist allegedly narrowed claim 16 by "incorporat[ing] the limitations of original claim 15." MSJ at 14-18.  Here too, Google ignores the reexamination history.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 5 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

Claim 16 was rewritten in independent form after being confirmed as patentable.  Dkt. 156-8 at 10-11.  Doing so had no effect on claim 16's scope, as the Examiner acknowledged.  Dkt. 156-9 at 13 ("Claims 2, 5, 7, 9, **16**, 21, 23, 26, 30, 33, 44, and 51 have been rewritten in independent form ***maintaining their original scope***.") (emphasis added).  Google has not pointed to a *single* case where a court has found that rewriting a claim from dependent to independent form triggered intervening rights.  MSJ at 14-18.  Nor can it.  Google's position directly contradicts Federal Circuit case law.  *See Bloom*, 129 F.3d at 1250 (finding no substantive change from amendment that "did no more than restate original [dependent] claims 7 and 18 in independent form"); *see also, e.g.*, *Dexcowin Glob., Inc. v. Aribex, Inc.*, No. 16-cv-143, 2017 WL 3477748, at *14 (C.D. Cal. June 7, 2017) ("There is also no dispute that claims 6 and 10 would not trigger intervening rights, because they were merely amended from dependent to independent form."); *SignalQuest, Inc. v. Tien-Ming Chou*, No. 11-cv-392, 2016 WL 738209, at *4 (D.N.H. Feb. 23, 2016) (finding no intervening rights where certain independent claims in each reissued patent were "identical in scope to original dependent claims in the respective original patents"); *NexMed Holdings, Inc. v. Beta Techs., Inc.*, 718 F. Supp. 2d 1299, 1314 (D. Utah 2010) (finding no intervening rights where applicant amended an independent claim by adding limitations from a canceled dependent claim because "[t]he amended claims clarify the original patent by inserting limitations that were previously listed in the cancelled claims"); *Safoco, Inc. v. Cameron Int'l Corp.*, No. 05-cv-739, 2009 WL 10742813, at *9 (S.D. Tex. Apr. 9, 2009) (finding no intervening rights for original dependent claims rewritten in independent form during reexamination), *report and recommendation adopted*, 2009 WL 10695587 (S.D. Tex. May 8, 2009); *Ortho-Mcneil Pharm., Inc. v. Kali Labs., Inc.*, 482 F. Supp. 2d 478, 488 (D.N.J. 2007) (finding original and reissue claim "substantially identical" under § 252 where dependent claim 6 was rewritten as an independent claim).  Thus, Google has failed to carry its burden of proof to demonstrate claim 16 was substantively amended.

Google also argues that Netlist substantively changed the scope of claim 16 through (1) argument-based disclaimer of claim scope and (2) amendment-based disclaimer of equivalents via prosecution history estoppel.  MSJ at 14-17.  Both arguments are without merit, as set forth below and detailed in Part V.B.2 of Netlist's Motion for Partial Summary Judgment (Dkt. 156).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 6 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1     Google cites no authority for the proposition that the surrender of equivalents can give rise

2 to intervening rights. MSJ at 16. Instead, Google relies *on Honeywell Int'l Inc. v. Hamilton*

3 *Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004),[1] a case concerning the application of prosecution

4 history estoppel to limit claim scope under the doctrine of equivalents, not intervening rights. The

5 doctrine of equivalents allows a patentee to reach "insubstantial" or "trivial" alterations to the scope

6 of the claims. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002).

7 Thus, by definition, changes in claim scope under the doctrine of equivalents cannot be

8 "substantive" for purposes of intervening rights. Consistent with this logic, courts have declined to

9 extend the doctrine of prosecution history estoppel to intervening rights. *E.g.*, *Safoco*, 2009 WL

10 10742813, at *9; *Paradox Sec. Sys. Ltd. v. ADT Sec. Servs., Inc.*, 710 F. Supp. 2d 590, 603-04 (E.D.

11 Tex. 2008). More generally, the doctrine of equivalents is irrelevant to determining whether the

12 scope of a claim has changed through reexamination. *Thermalloy, Inc. v. Aavid Eng'g, Inc.*, 121

13 F.3d. 691, 694 (Fed. Cir. 1997) (rejecting the argument that following reexamination "the court in

14 construing the original claims must take into consideration protected equivalents."). Thus, Google's

15 prosecution history estoppel argument is irrelevant to the determination of intervening rights here.

16 **V.    Netlist's Discussion of "Operatively Coupled" in Reexamination Cannot Form a Basis
       for Intervening Rights**

17     Google argues that during reexamination "Netlist disclaimed any type of 'operative

18 coupling' that does not involve the output of a phase-lock loop device directly or indirectly clocking

19 the operations of the logic element," and as a result, Netlist narrowed the scope of the term

20 "operatively coupled," thereby triggering absolute intervening rights. MSJ at 13-14. This argument

21 misapprehends both the law of intervening rights and the law of prosecution disclaimer.

22     **A.    Arguments in Reexamination Cannot Give Rise to Intervening Rights**

23     Google does not cite a single case finding absolute intervening rights based on arguments

24

25 _____

26 [1] The *Honeywell* Court held that prosecution history estoppel is raised by "the rewriting of
   dependent claims into independent form coupled with the cancellation of the original independent

27 claims." *Honeywell*, 370 F.3d at 1134. Courts have declined to extend *Honeywell* where, as here,
   the original base claim was amended rather than cancelled. *Robert Bosch, LLC v. Pylon Mfg. Corp.*,

28 2010 WL 1485326, at *3 (D. Del. Apr. 12, 2010); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
   610 F. Supp. 2d 370, 385 (M.D. Pa. 2009), aff'd, 477 F. App'x 740 (Fed. Cir. 2012).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 7 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

made during prosecution.  *See* MSJ at 12-15.  Rather, Google's entire argument that Netlist's statements regarding the "operatively coupled" term give rise to intervening rights is premised on creative editing of dicta from the Federal Circuit's *en banc* decision in *Marine Polymer*.  MSJ at 14 (citing *Marine Polymer*, 672 F.3d at 1365 for the proposition that "patent applicants' actions and arguments during prosecution, including prosecution in a reexamination proceeding, can affect the proper interpretation and effective scope of their claims").  Google's interpretation divorces this isolated statement from the context of the *en banc* Federal Circuit's opinion.

In the first *Marine Polymer* decision, the Federal Circuit concluded that arguments during reexamination could give rise to intervening rights.  *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 659 F.3d 1084, 1091-92 (Fed. Cir. 2011) ("[I]f the scope of the claims actually and substantively changed because of Marine Polymer's arguments to the USPTO, the claims have been amended by disavowal or estoppel, and intervening rights apply.").  A majority of the Federal Circuit sitting *en banc* subsequently reversed the panel.  672 F.3d at 1354.  The accused infringer HemCon argued, as does Google, that the patentee's statements during reexamination triggered intervening rights. *Id.* at 1361 ("HemCon argues that . . . [by] persuading the examiner to adopt the district court's construction of 'biocompatible' during reexamination, Marine Polymer effected a substantive change in the scope of each remaining claim. . . . [thus] trigger[ing] intervening rights. . . ."). HemCon emphasized, as does Google, "that arguments made during prosecution can affect the ultimate meaning of a claim term—and thus the 'scope' of a claim."  *Id* at 1363; MSJ at 12-15 (relying on cases finding the scope of a claim term was narrowed by arguments made during reexamination).  The Federal Circuit majority expressly rejected these arguments: "While it is true that claims are properly interpreted to account for arguments and concessions made during prosecution, HemCon's conclusion that the claims asserted here were 'amended' for purposes of § 307(b) goes too far."  *Marine Polymer*, 672 F.3d at 1363.  As such, Google's arguments that Netlist's statements during reexamination, standing alone, can give rise to intervening rights fail as a matter of law.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

### B.   Prosecution Disclaimer Does Not Apply on This Record

Even if arguments about claim scope alone could give rise to intervening rights—and they cannot—Netlist's statements during reexamination did not narrow the scope of the term "operatively coupled" through prosecution disclaimer.

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). Google, as the party asserting disclaimer, "bears the burden of proving the existence of a 'clear and unmistakable' disclaimer that would have been evident to one skilled in the art." *Mass. Inst. of Tech. v. Shire Pharms.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016). Google has not met that burden here.

"[P]rosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003). However, a patentee's statements during prosecution or reexamination do not give rise to disclaimer where "those statements were clearly and expressly rejected by the Patent Office." *Galderma Lab'ys, L.P. v. Amneal Pharms. LLC*, 806 F. App'x 1010-11 (Fed. Cir. 2020). Under such circumstances, "the record before the Patent Office clearly put[s] the public on notice" as to the meaning of a disputed claim term, rendering prosecution disclaimer inapplicable. *Id.* at 1010.

At the outset of the reexamination, Netlist put forth its interpretation of a POSITA's understanding of the term "operatively coupled" under the BRI standard:

> As disclosed by the '912 patent, "the phase-lock loop device 50 transmits clock signals to the logic element 40." Therefore, persons skilled in the art understand that, consistent with the specification, the phrase "operatively coupled to" in the context of the '912 patent means that the operations of the logic element 40 are clocked either directly or indirectly (e.g., through a clock buffer) by the output of the PLL 50. In other words, the output of the PLL 50 controls the operation of the logic element 40.

Ex. 3 at 41 (internal citations omitted).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

- 9 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1    Under this construction of the term "operatively coupled," Netlist asserted that "Amidi does

2  not have the generation of the chip-select signals by the logic element timed or otherwise responsive

3  to the PLL clock signals, *so Amidi does not disclose that the PLL device is operatively coupled to*

4  *the logic element*." *Id.* at 42 (emphasis added).  The examiner expressly rejected this argument.

5  Ex. 2 at 18-20.  Specifically in the October 14, 2011 Non-Final Office Action, the examiner found

6  that Amidi *did disclose* a PLL device "operatively coupled" to the logic element:

7           With respect to claim 1, Amidi discloses . . . a phase-lock loop device (412) mounted
            to the printed circuit board, the phase-lock loop device operatively coupled to the
8           plurality of memory devices, the logic element, and the register.

9  *Id.* at 18-20.  Because Netlist's argument about the BRI of "operatively coupled" was rejected by

10  the examiner, prosecution disclaimer does not apply.  *Galderma*, 806 F. App'x at 1010-11; *Power*

11  *Integrations, Inc. v. ON Semiconductor Corp.*, 396 F. Supp. 3d 851, 866 (N.D. Cal. 2019) ("[T]he

12  public notice function served by prosecution disclaimer functions much differently where the claim

13  scope is rejected. . . . Because PI's argued claim scope was expressly rejected by the PTAB, this

14  Court holds that prosecution disclaimer does not apply here."); *see also Droplets, Inc. v. Yahoo!*

15  *Inc.*, No. 12-cv-3733, Dkt. 792 at *13 (N.D. Cal. July 2, 2021) (finding no disclaimer arose from

16  arguments rejected by the USPTO, and declining to further consider potential disclaimer because

17  "[i]f there was any doubt against applying prosecution disclaimer, the parties here also dispute the

18  characterization of the prosecution history").

19    Google cites *Tech. Props. Ltd. LLC v. Huawei Techs Co.*, Ltd., 849 F.3d 1349, 1357 (Fed.

20  Cir. 2017) in support of its argument that Netlist's statements regarding the "operatively coupled"

21  term give rise to intervening rights.  MSJ at 13-14.  In *Huawei*, the Federal Circuit affirmed the

22  district court's finding of prosecution disclaimer based on arguments during reexamination to

23  distinguish prior art.  *Huawei*, 849 F.3d at 1359.  *Huawei* is not on point for multiple reasons.  First,

24  *Huawei* says nothing about the application of prosecution disclaimer to intervening rights.  *See id.*

25  at 1357-59.  As noted above, the *Marine Polymer en banc* majority rejected the assertion that

26  "arguments made during prosecution can affect the ultimate meaning of a claim term—and thus the

27  'scope' of a claim," for purposes of intervening rights.  672 F.3d at 1363.  Second, in *Huawei*, the

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 10 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1  patentee's arguments were *successful* in overcoming the examiner's initial rejection.  *Huawei*, 849

2  F.3d at 1358-59.  However, as described above, prosecution disclaimer does not apply where the

3  patentee's arguments are expressly rejected, as is the case here.  Thus, Google's disclaimer argument

4  fails as a matter of law.

5      **C.**      **Netlist's Statements Regarding "Operatively Coupled" Are Consistent with**
                **the *Phillips* Standard**

6          In any event, Netlist's explanation of what the BRI of "operatively coupled" meant in the

7  context of the '912 patent is consistent with the interpretation of the term under the *Phillips* standard.

8          Under *Phillips*, a POSITA would understand the phrase "operatively coupled" or

9  "operationally coupled" to mean "functionally cooperating with."  Annavaram Decl. ¶ 23.  The word

10 "coupled" connotes *physical* coupling, *e.g.* indirect or direct electrical connection.  *Id.*  Thus, the

11 word "operatively" implies a functional relationship with the devices that are electrically coupled.

12 *Id.*  This avoids reading the word "operatively" out of the claims altogether.  *Power Mosfet Techs.,*

13 *L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("[I]nterpretations that render some

14 portion of the claim language superfluous are disfavored.").  The original claims provide that the

15 PLL is "operatively coupled" or "operationally coupled" to the logic element.  Ex. 1 at claims 1, 15,

16 28, and 39; Annavaram Decl. ¶ 19.  In the context of the '912 patent, a POSITA would understand

17 that the logic element required a clock signal from the PLL to operate.  Annavaram Decl. ¶ 23.  In

18 other words, the only way the PLL could "functionally cooperate with" the logic element would be

19 by providing a clock signal.  This interpretation is entirely consistent with Netlist's arguments during

20 reexamination that the BRI of the term "operatively coupled" in the context of the '912 patent meant

21 that "the operations of the logic element 40 are clocked either directly or indirectly (e.g., through a

22 clock buffer) by the output of the PLL 50."  Ex. 3 at 41.  Thus, Google has failed as a matter of law

23 to carry its burden of proving a "clear and unmistakable" disclaimer.

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 11 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

VI.   **GOOGLE IS NOT ENTITLED TO INTERVENING RIGHTS IN THE AMENDED CLAIMS**

A.   **The Claims Were Amended to Define the Claim Limitations Related to the PLL, Register, and Logic Element**

During reexamination, Netlist amended claims 1, 15, 28, and 39 of the '912 patent.[2] Each of the independent claims originally recited a memory module comprising a PLL device, a register, and a logic element.  Original independent claim 1 is representative of the original independent claims, and is reproduced below in relevant part:

> 1. A memory module connectable to a computer system, the memory module comprising:
>
> a printed circuit board;
>
> a plurality of double-data-rate (DDR) memory devices mounted to the printed circuit board, the plurality of DDR memory devices having a first number of DDR memory devices arranged in a first number of ranks;
>
> a circuit mounted to the printed circuit board, the circuit comprising a logic element and a register, . . . [and]
>
> a phase-lock loop device mounted to the printed circuit board, the phase-lock loop device operatively coupled to the plurality of DDR memory devices, the logic element, and the register.

Ex. 1 at claim 1.  In reexamination, claim 1 was amended to include the following limitations:

> wherein, in response to signals received from the computer system, the phase-lock loop (PLL) device transmits a PLL clock signal to the plurality of DDR memory devices, the logic element, and the register,
>
> wherein, the register (i) receives, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the bank address signals, and (iii) transmits the buffered plurality of row/column address signals and the buffered bank address signals to the plurality of DDR memory devices,
>
> wherein the at least one row/column address signal received by the logic element comprises at least one row address signal received by the logic element, and wherein the plurality of row/column address signals received by the register are separate from the at least one row address signal received by the logic element,
>
> wherein the logic element generates gated column access strobe (CAS) signals or chip-select signals of the output control signals in response at least in part to (i) the at least one row address signal, (ii) the bank address signals, and  (iii) the at least one chip-select signal of the set of input control signals and (iv) the PLL clock signal.

---

[2] Claims that depend from claims 1, 15, 28, or 39 are included in the foregoing analysis unless stated otherwise. 35 U.S.C. § 112(d).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 12 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1    Dkt. 155-9 at 7.[3]  Each of the original independent claims were similarly amended.  *Id.* at 3-6.

2        Throughout the reexamination, the USPTO repeatedly relied on the BRI standard to give the

3    claims what Netlist believed to be an overly broad interpretation.  For example, the examiner

4    construed the term "logic element" to mean "an element that performs some kind of logic function

5    or an element that comprises a logic circuit."  *E.g.*, Ex. 2 at 88; Ex. 4 at 60.

6    **B.    Summary Judgment of Intervening Rights Should Be Denied Because Google
              Did Not Present Any Constructions of the Original Claim Limitations**

7        The Court should deny Google's motion for summary judgment based on Google's failure

8    to perform the required claim construction process.  In the context of intervening rights, "[n]umerous

9    courts have held that the inquiry of whether two claims are identical should not occur until after

10   formal claim construction."  *Etagz, Inc. v. Quiksilver, Inc.*, No. 10-300, 2012 WL 2135497, at *2

11   (C.D. Cal. June 11, 2012) (collecting cases).  Numerous courts have also held that this inquiry is

12   premature at the summary judgment stage where the court has not had the benefit of a full claim

13   construction hearing.  *See, e.g.*, *Visual Interactive Phone Concepts, Inc. v. U.S. Cellular Corp.*, No.

14   11-cv-5289, 2014 WL 561731, at *5 (N.D. Ill. Feb. 13, 2014) (denying defendant's motion for

15   summary judgment as premature because "[t]he appropriate time to resolve this dispute over the

16   scope of VIPC's original claims—and, by extension, whether VIPC substantively changed its claim

17   during reexamination—is during claim construction proceedings in this case"); *StemCells Inc. v.*

18   *Neuralstem Inc.*, No. 06-cv-1877, 2009 WL 3681653, at *3 (D. Md. Oct. 30, 2009) (same).

19       Here, Google contends that the scope of the Amended Claims was substantively changed

20   during reexamination.  MSJ at 7.  The intervening rights analysis requires courts to "interpret the

21   scope of the claims per the *Phillips* standard."  *Convolve*, 812 F.3d at 1325.  In order to consider

22

23

24

25

---

26   [3] Netlist amended the fourth "wherein" clause twice: on January 13, 2012, Ex. 6 at 2 (adding the
     limitation now labelled (ii)), and on July 31, 2016, Dkt. 155-9 at 7 (adding the other signals (i), (iii),
27   and (iv)).  The following emphasized language was added to claim 39 to clarify that "the logic
     element receives <u>at least one row address signal</u>, the bank address signals, <u>at least one chip-select</u>
28   <u>signal</u>, and at least one command signal of the plurality of input signals."  Dkt-155-5 at claim 39.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations                                            - 13 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1    Google's motion, the Court must construe the original and Amended Claims in light of the *Phillips*

2    standard.[4]  *Convolve*, 812 F.3d at 1325.  Google does not even attempt to provide this foundation.

3        Moreover, Google failed to comply with this Court's discovery order by choosing not to

4    provide any detailed claim construction analysis at this stage of the ligation.  Specifically, Google

5    was obligated to provide a complete position for its intervening rights defense as a result of its failure

6    to participate voluntarily in discovery.  Dkt. 145 ("Court ruled that ROG #3 must be answered in

7    full.").  In this Court, a party cannot present contentions that are not properly disclosed in an

8    interrogatory response.

9        **C.    Amendments in Response to Prior Art Rejections Do Not Automatically**
         **Trigger Intervening Rights**

10       Google's intervening rights arguments also fail on the merits.  Google is correct that the

11   amendments to the Amended Claims during reexamination were made in response to prior art

12   rejections.  MSJ at 7-12.  But Google relies almost exclusively on this fact in arguing that the

13   amendments were substantive in nature, in plain contradiction to Federal Circuit case law.

14       The Federal Circuit has emphasized that there is no *per se* rule that amendments made to

15   distinguish the prior art are substantive for purposes of intervening rights: "When claims are

16   amended during reexamination following a rejection based on prior art, the claims are not deemed

17   substantively changed as a matter of law. ***There is no per se rule.***"  *Laitram I*, 952 F.2d at 1362-63

18   (emphasis added); *see also Kaufman Co., Inc. v. Lantech, Inc.*, 807 F.2d 970, 978 (Fed. Cir. 1986)

19   (rejecting accused infringer's argument that "*any* amendment made during the reexamination

20   proceeding is substantive and therefore automatically entitles the infringer to an intervening right").

21   "The inquiry must focus on a ***case-by-case analysis*** of the scope of the claims before and after claim

22

23   _____

24   [4] Twelve years ago, this Court conducted a *Markman* hearing in *Google v. Netlist*, No. 08-cv-4144,
     Dkt. 79 (N.D. Cal. Nov. 16, 2009) concerning U.S. Patent No. 7,289,386, related to the patent-in-

25   suit.  Prior to the stay in the present case, the parties stipulated to construction for some claim terms,
     including those previously construed by this Court.  Dkt. 45-1 at 1.  The parties disputed the

26   construction of several other claim terms, and the Court had not held a *Markman* hearing prior to
     the stay to resolve this dispute.  *See* Dkt. 45-2; Dkt. 64 (continuing pre-stay *Markman* hearing).  This

27   includes the term "operatively coupled"/"operationally coupled," which as discussed below, is
     central to the construction of the original terms, and thus, Google's intervening rights defense.  Dkt.

28   45-2 at 16-17.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 14 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1   amendment, which gives rise to the intervening rights challenge."  *Convolve*, 812 F.3d at 1325

2   (emphasis added).

3       To be sure, the Federal Circuit in *Laitram II* acknowledged the significance of the fact that

4   an amendment was made during reexamination to the intervening rights inquiry:

5       Although it is difficult to conceive of many situations in which the scope of a rejected
        claim that became allowable when amended is not substantively changed by the
6       amendment, we arrive at our conclusion, not through any "per se rule," ***but in light
        of an overall examination of the written description, the prosecution history and
7       the language of the respective claims***.

8   *Laitram II*, 163 F.3d at 1348 (emphasis added).  As *Laitram II* and the Federal Circuit's subsequent

9   jurisprudence makes clear, a finding of intervening rights requires more than merely pointing out

10  that the claims were amended to overcome the prior art.  *E.g. Convolve*, 812 F.3d at 1322

11  ("[A]mendments made during reexamination do not necessarily compel a conclusion that the scope

12  of the claims has been substantively changed. This is true even where the claims at issue were

13  amended during reexamination after a rejection based on prior art.") (internal citation omitted).

14      In *Convolve*, the Federal Circuit considered whether the patentee's addition of the modifier

15  "seek" to the term "acoustic noise" during reexamination in response to a prior art rejection gave

16  rise to intervening rights.  *Id.* at 1323-25.  The Federal Circuit held that it did not.  *Id.* at 1325-26.

17  The Court reasoned that, applying *Phillips*, a POSITA would have understood the original claims

18  to be limited to "seek acoustic noise" in part because "the focus of the specification is on the seek

19  process and the noise it generates."  *Id.* at 1323.  In contrast, the Court noted that the examiner,

20  applying the BRI standard, "focused exclusively on the language of the claims at the expense of the

21  clear language in the specification."  *Id.* at 1325.  Because the intervening rights analysis required

22  application of the *Phillips* standard, the Court observed that "the examiner's finding under the [BRI]

23  that the claims are not limited to 'seek acoustic noise' cannot be dispositive."  *Id.* at 1325.  Thus,

24  the Court determined that the claim amendments were not substantive.  *Id.* at 1325-26.

25      Here, Google's motion reduces the test for absolute intervening rights to the very *per se* rule

26  the Federal Circuit has rejected multiple times:

27      The defense of absolute intervening rights in this case is straightforward and turns
        on three principal questions: first, whether the asserted claims were amended or

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 15 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

newly added during re-examination; second, whether the claims had their scope substantively changed due to amendments or arguments that Netlist made ***to avoid the prior art***. . . .

MSJ at 1 (emphasis added). Because Google's motion is based on a *per se* application of intervening rights to the Amended Claims, Google's motion fails as a matter of law. *Convolve*, 812 F.3d at 1322; *see also Henrob Ltd. v. Böllhoff Systemtechnik GmbH & Co.*, No. 05-cv-73214, 2009 WL 3188572, at *13-14 n.6 (E.D. Mich. Sept. 29, 2009) (finding no substantive change where amendments following prior art rejection "clarif[ied] [the claims] in order to make clear that their scope did not encompass the prior art"); *Engineered Data Prods. v. GBS Corp.*, 506 F. Supp. 2d 461, 472 (D. Colo. 2007) (finding no substantive change where the accused infringer's "chief evidence" that the claims were substantively changed was the fact that during reexamination the claims were amended to overcome a prior art rejection).

### D. The Amended Claims are "Substantially Identical" to the Original Claims under the *Phillips* Standard

Google's intervening rights defense fails for the Amended Claims because the amendments are consistent with the scope of the original claim language as construed under *Phillips*.

An amendment that clarifies the text of a claim "to make specific what was always implicit or inherent" is not a substantive change. *Laitram I*, 952 F.2d at 1361. The focus of the inquiry is on the change in *scope* of the claims, not on the number of words that were added. *Innovative Env't Techs., Inc. v. Total Petrochemicals & Refining USA*, Inc., No. 18-cv-3211, 2019 WL 1651666, at *3 (E.D. Pa. Apr. 17, 2019) ("Defendants highlight the fact that ninety-three words were added to and eight were deleted from Original Claim 1. But courts consider 'whether the *scope* of the claims are identical, not merely whether different words are used.'") (internal citations omitted) (quoting *Laitram II*, 163 F.3d at 1348).

For example, in *Kaufman*, the Federal Circuit determined that amendments to claims covering a method for stretch wrapping a load using interconnected rollers were not substantive because these amendments clarified the operation of the rollers. *Kaufman*, 807 F.2d at 977. During reexamination, the patentee added the emphasized language to modify the claimed rollers: "said upstream and downstream roller means being *rotationally* interconnected *so that the downstream*

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

*roller means rotates faster than the upstream roller means. . . said roller means being driven solely by engagement of said moving material with* the downstream roller means." *Id.* at 972-73. The Federal Circuit determined that these amendments clarified the "that the web drives the rollers and that the downstream roller rotates faster than the upstream one" because "[t]he language to both these effects was already present in the specification and in the original claims themselves," and thus the amendments were not substantive. *Id.* at 977.

Here too, as detailed below, the language added during reexamination clarified what was inherent in the original claims.

### 1.    The Phase-Lock Loop Amendment Was Not a Substantive Change

On July 31, 2016, Netlist amended claim 1 to overcome certain new grounds of rejections that were issued by the Patent Trial & Appeal Board ("Board") during an appeal of the examiner's rejections. Dkt. 155-9 at 3-9. In response to the Board's rejections, Netlist added the following language explaining the operation of the PLL device in the context of the claimed circuit (the "PLL Amendment"): "wherein, in response to signals received from the computer system, the phase-lock loop (PLL) device transmits a PLL clock signal to the plurality of DDR memory devices, the logic element, and the register." *Id.* at 4. Claims 15, 28, and 39 were similarly amended. *Id.*

The PLL Amendment did not substantively change the scope of the original claims because the interpretation of the original claim language prior to the amendment—*i.e.*, "the phase-lock loop device operatively coupled to the plurality of DDR memory devices, the logic element, and the register"—under the *Phillips* standard is consistent with the PLL Amendment. Ex. 1 at claims 1, 15, and 28. Original claim 39 similarly provided that the "PLL device" is "operationally coupled to the plurality of DDR memory devices, the logic element, and the register." *Id.* at claim 39. Prior to the reexamination, the parties agreed that the term "PLL device" should be construed to mean "a device for generating a clock signal that is related to the phase of an input reference signal." Dkt. 45-1 at 1. This construction is consistent with the meaning of the term "PLL device" in the context of DDR memory devices. Annavaram Decl. ¶¶ 20-21; *id.* ¶ 23 ("[A] PLL when used in the context of memory devices and other computing elements, by definition, performs the specific function of generating a clock signal.").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 17 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1   Further, the plain and ordinary meaning of "operatively coupled" or "operationally coupled"

2   requires a functional relationship between components.   Annavaram Decl. ¶ 22; *see also*

3   *Innova/Pure Water, Inc. v. Safari Water Filtration, Sys., Inc.*, 381 F.3d 1111, 1118 (Fed. Cir. 2004)

4   ("'[O]peratively connected' . . . [is] frequently used in patent drafting to reflect a functional

5   relationship between claimed components.").   A POSITA would thus have understood that the

6   originally recited "PLL device" was to transmit a PLL clock signal to the plurality of DDR memory

7   devices, the logic element, and the register.  Annavaram Decl. ¶¶ 19-23.  Thus, the original claims

8   as construed under *Phillips* required that the "PLL device" supplies the clock signals necessary for

9   the functioning of the plurality of DDR memory devices, the logic element, and the register.

10   The specification further confirms that the recitation of a "PLL device" requires transmitting

11   a clock signal to all three of the plurality of DDR memory devices, the logic element, and the

12   register.  Figures 1A and 1B of the '912 patent illustrate that the output of the PLL (50) is *directly*

13   coupled to the logic element (40), the register (60), and the plurality of DDR memory devices (30).

14   Ex. 1 at Figures 1A, 1B; Annavaram Decl. ¶ 17 (reproducing annotated Figure 1A).  In other words,

15   these figures demonstrate that the "PLL device" provides a clock signal to each of the plurality of

16   DDR memory devices, the logic element, and the register.  Indeed, throughout the specification, a

17   "PLL device" is described as a device that transmits a clock signal to DDR memory devices, logic

18   elements and the register.   Ex. 1 at 5:25-31 ("In certain embodiments, the phase-lock loop device

19   50 and the register 60 are each mounted on the printed circuit board 20. In response to signals

20   received from the computer system, the phase-lock loop device 50 transmits clock signals to the

21   plurality of memory devices 30, the logic element 40, and the register 60."); Annavaram Decl. ¶¶

22   19-23.  The written description makes no mention of any other source of clock signals other than

23   the PLL.  Annavaram Decl. ¶ 23.

24   In sum, the original claims, interpreted in light of the specification under the *Phillips*

25   standard, required the PLL to transmit clock signals to the plurality of DDR memory devices, the

26   logic element, and the register.  As such, the PLL Amendment did not substantively change the

27   scope of the claims. *Convolve*, 812 F.3d at 1323-25.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 18 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

## 2.      The Register Amendments Were Not a Substantive Change

On July 31, 2016, Netlist amended claim 1 to overcome the Board's rejections.  Dkt. 155-9 at 3-9.  Netlist added the following language clarifying the operation of the register in the context of the claimed circuit (the "First Register Amendment"):

> wherein, the register (i) receives, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the bank address signals, and (iii) transmits the buffered plurality of row/column address signals and the buffered bank address signals to the plurality of DDR memory devices, . . . .

*Id.* at 4.

Netlist also added the following language clarifying the operation of the register in the context of the claimed circuit (the "Second Register Amendment"):

> wherein the at least one row/column address signal received by the logic element comprises at least one row address signal received by the logic element, and wherein the plurality of row/column address signals received by the register are separate from the at least one row address signal received by the logic element, . . . .

*Id.*  Similar or identical language was added to claims 15, 28, and 39.

### (a)      The First Register Amendment Did Not Substantively Change the Scope of the Claims

The First Register Amendment did not substantively change the scope of the original claims because it is consistent with the original claim language interpreted under *Phillips*.  Original claim 1 recited in relevant part:

> the circuit comprising a logic element and a register, . . . wherein the circuit further responds to a first command signal and the set of input control signals from the computer system by **generating and transmitting a second command signal and the set of output control signals to the plurality of memory devices**, . . . .

Ex. 1 at claim 1 (emphasis added).  Claims 15 and 28 feature similar language with some variation.  *Id.* at claims 15 and 28.

Original claim 1 expressly requires the circuit to receive "a first command signal" from the computer system and "transmit[] a second command signal . . . to the plurality of memory devices."  *Id.* at claim 1.  A POSITA would understand that in the context of DDR memory devices, a "command signal" comprises bank address and row/column address signals.  Annavaram Decl. ¶ 25.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 19 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1   A POSITA would further understand that the "register" is inherently receiving the "first command

2   signal" because the signals from the computer system must be buffered, and that the "register" is

3   the only component claimed or disclosed that does so.  *See* Annavaram Decl. ¶ 25-26.  Indeed, prior

4   to the reexamination, the parties agreed that the term "register" should be construed to mean "a

5   circuit component or components that ***receive, buffer, and transmit signals***."   Dkt. 45-1 at 1

6   (emphasis added).  This construction is consistent with the meaning of the term "register" in the

7   context of DDR memory devices.  Annavaram Decl. ¶¶ 25-26.  Moreover, original claim 1 further

8   required that the "PLL device" is "operatively coupled" to the register, and thus, the operation of

9   the register would inherently be "in response to the PLL clock signal."  Thus, original claim 1

10  necessarily required that the register (i) receives, from the computer system, and (ii) buffers, in

11  response to the PLL clock signal, a plurality of row/column address signals and the bank address

12  signals, and (iii) transmits the buffered plurality of row/column address signals and the buffered

13  bank address signals to the plurality of DDR memory devices, consistent with the First Register

14  Amendment.

15        The specification further confirms this interpretation.  Figures 1A and 1B of the '912 patent

16  illustrate that the register (60) receives row/column address signals ($A_0$-$A_n$) and bank address signals

17  ($BA_0 – BA_m$) from the computer system and transmits the buffered signals to the plurality of DDR

18  memory devices (30), and that the register receives a clock signal from the PLL (50).  Ex. 1 at

19  Figures 1A, 1B; Annavaram Decl. ¶ 29 (reproducing annotated Figure 1A).  In other words, these

20  figures demonstrate that the signals recited in the First Register Amendment are received, buffered,

21  and transmitted to the plurality of DDR memory devices by the register (60).  *See also* Ex. 1 at 5:31-

22  36 ("The register 60 receives and buffers a plurality of control signals, including address signals

23  e.g., ***bank address signals, row address signals, column address signals***, gated column address

24  strobe signals, chip-select signals, and transmits corresponding signals to the appropriate memory

25  35 devices 30.") (emphasis added).

26        In sum, the original claims interpreted in light of the specification required that the register

27  receives, from the computer system, and buffers, in response to the PLL clock signal, a plurality of

28  row/column address signals and the bank address signals, and transmits the buffered plurality of

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 20 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

row/column address signals and the buffered bank address signals to the plurality of DDR memory devices.  As such, the First Register Amendment did not substantively change the scope of the claims.  *Convolve*, 812 F.3d at 1323-25.

### (b)    The Second Register Amendment Did Not Substantively Change the Scope of the Claims

The Second Register Amendment did not substantively change the scope of the original claims because it is no broader than the original claim language as construed under *Phillips*. Specifically, original claim 15 recited, in relevant part:

> the circuit comprising a logic element and a register, the logic element receiving a set of input signals from the computer system, ***the set of input signals comprising at least one row/column address signal***, bank address signals, and at least one chip-select signal . . . .

Ex. 1 at claim 15 (emphasis added).  As expressly recited in claim 15, the "logic element" receives "at least one row/column address signal," consistent with the first wherein clause of the Second Register Amendment ("wherein the at least one row/column address signal received by the logic element comprises at least one row address signal received by the logic element").

Additionally, the interpretation of original claim 15 in light of original claim 25 is consistent with the second wherein clause of the Second Register Amendment.  Original claim 25 recited:

> The memory module of claim 15, wherein the set of input signals comprises ***a plurality of row/column address signals*** received and buffered by the register and sent from the register to the plurality of DDR memory devices.

Ex. 1 at claim 25 (emphasis added).  In claim 25, a subset of the "set of input signals"—a "plurality of row/column address signals"—are received by the "register," and "at least one row/column address signal" is received by the "logic element."  Because the "plurality of row/column address signals" and the "at least one row/column address signal" are recited as different claim elements in claim 25, a POSITA would understand that these signals are necessarily "separate from" each other. Annavaram Decl. ¶¶ 27-29.  Thus, the interpretation of claim 25 under *Phillips* is consistent with the second wherein clause of the Second Register Amendment.

The specification further confirms this interpretation.  Annavaram Decl. ¶¶ 28-29.  Figures 1A and 1B of the '912 patent demonstrate that the register 60 receives a plurality of row/column

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 21 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

address signals ($A_0$-$A_n$) that are *separate* from the at least one row address signal received by the logic element ($A_{n+1}$).  Ex. 1 Figures 1A and 1B; Annavaram Decl. ¶ 29 (reproducing annotated Figure 1A).  In other words, these figures demonstrate that the logic element receives at least one row address signal ($A_{n+1}$) that is not received by the register.  *Id.* ¶¶ 28-29; Ex. 1 at 7:39-53 ("The **logic element** 40 receives . . . one row/column address signal ($A_{n+1}$) from the computer system.").

In sum, the original claims interpreted in light of the specification under the *Phillips* standard required that the logic element receive a row address signal that is separate from the plurality of row/column address signals received by the register.  As such, the Second Register Amendment did not substantively change the scope of the claims.  *Convolve*, 812 F.3d at 1323-25.

### 3.    The Logic Element Amendment Was Not a Substantive Change

During reexamination, Netlist amended claim 1 to overcome the Board's rejections.  Ex. 6 at 2; Dkt. 155-9 at 3-9.  Netlist added the following language clarifying the operation of the logic element in the context of the claimed circuit (the "Logic Element Amendment"):

> wherein the logic element generates gated column access strobe (CAS) signals or chip-select signals of the output control signals in response to at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at least one chip-select signal of the set of input control signals and (iv) the PLL clock signal."

*Id.* at 5.  Similar or identical language was added to claims 15, 28, and 39.

The Logic Element Amendment did not substantively change the scope of the original claims because it is consistent with the original claim language interpreted under *Phillips*.  Specifically, the language of each original independent claims expressly required the logic element to receive signals (i), (ii), and (iii) above.  *See, e.g.*, Ex. 1 at claim 1 (reciting that the "logic element receiv[es] a set of input control signals from the computer system, the set of input control signals comprising at least ***one row/column address signal, bank address signals, and at least one chip-select signal***.").  As discussed above, each original independent claim featured a PLL device "operatively coupled" or "operationally coupled" to the logic element, and that the PLL device supplies the clock signals (iv) necessary for the functioning of the logic element.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 22 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1    The written description makes clear that the logic element receives signals (i)-(iv).  Figures

2 1A and 1B of the '912 patent illustrate that logic element 40 receives (i) the at least one row address

3 signal ($A_{n+1}$), (ii) bank address signals ($BA_0$-$BA_m$), (iii) at least one chip-select signal ($CS_0$, $CS_1$),

4 and (iv) the clock signal from the PLL (50).  The written description further makes clear that the

5 logic element generates gated column access strobe (CAS) signals or chip-select signals "in response

6 to at least in part" signals (i)-(iv):

> As schematically illustrated by FIGS. 1A and 1B, in certain embodiments, the logic
> element 40 receives a set of input control signals, which includes address signals
> (e.g., bank address signals, row address signals, column address signals, gated
> column address strobe signals, chip-select signals) and command signals (e.g.,
> refresh, precharge) from the computer system. In response to the set of input control
> signals, the logic element 40 *generates a set of output control signals which
> includes address signals and command signals*.

11   Ex. 1 at 6:55-63 (emphasis added); Annavaram Decl. ¶ 31.

12   Construed in light of the specification under the *Phillips* standard, the original claim

13 language required the logic element to generate chip-select signals in response to (i)-(iv).

14 Annavaram Decl. ¶¶ 30-35.  Original independent claim 1 recited that the "circuit comprising a logic

15 element and a register . . . generat[es] a set of output control signals in response to the set of input

16 control signals." Ex. 1 at claim 1.  A POSITA would understand that the "logic element" would be

17 the only component of the claimed circuit capable of generating those expressly recited output

18 control signals.  Annavaram Decl. ¶¶ 33-34.  Indeed, prior to the reexamination, the parties agreed

19 that the term "logic element" should be construed to mean "a hardware circuit that performs a

20 predefined function on input signals from the computer system and presents the resulting signals as

21 its output."  Dkt. 45-1 at 1; Annavaram Decl. ¶¶ 32-33.  In the context of DDR memory devices, a

22 POSITA would also understand that these output control signals include CAS or chip-select signals.

23 Annavaram Decl. ¶¶ 32-35.   And a POSITA would understand that the "logic element" required a

24 clock signal from the "PLL device" to operate.  *Id.* ¶¶ 21-23.   Hence, the original claims required

25 that the operations of the logic element—i.e. the generation of output control signals including CAS

26 or chip-select signals—were responsive "at least in part" to the PLL clock signal. *Id.* ¶¶ 23, 33-35.

27 The other original independent claims feature the same or similar limitations.  Ex. 1 at claims 15,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 23 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1  28, and 39.  Thus, the original claims inherently contemplate that the logic element generates CAS

2  or chip-select signals in response to signals (i)-(iv) above.  Annavaram Decl. ¶¶ 19-23, 30-35.

3              **4.    Narrowing of a Claim under *BRI* Is Irrelevant Because Intervening
             Rights Is Judged Based on the *Phillips* Standard**

4          In its Federal Circuit brief, Netlist explained that "Netlist did what patent owners are

5  expected to do during a reexamination—it narrowed its claims to define its precise inventive

6  contributions over the prior art."  Ex. 5 at 1.  This appeal was under the ***BRI*** standard.  The question

7  before this Court is different.  *Convolve*, 812 F.3d at 1325 ("In the intervening rights analysis, our

8  task is to interpret the scope of the claims per the *Phillips* standard.").

9  **VII.   PRODUCTS GOOGLE CONTENDS ARE SUBJECT TO INTERVENING RIGHTS**

10         Google's identification of products that are covered by absolute intervening rights is

11  defective.

12         First, Google proposes February 8, 2021 as the date on which absolute intervening rights

13  ceases to apply.  MSJ at 18.  This is inconsistent with the statutory language of pre-AIA § 316(a):

14  "In inter partes reexamination proceeding under this chapter, when the time for appeal has expired

15  or any appeal proceeding has terminated, the Director shall issue and publish a certificate [of

16  reexamination]."  Here, the Federal Circuit affirmance occurred on June 15, 2020.  *Netlist*, 810 F.

17  App'x at 902.  Thus, to the extent this Court finds absolute intervening rights applicable to one or

18  more of claims of the '912 patent, only products used or purchased prior to June 15, 2020 are subject

19  to such defense.[5]

20         Second, Google has not properly disclosed all the Accused Products.  In particular, it has

21  withheld information on its 8-rank and 16-rank DIMM products despite having been ordered to

22  disclose these products.  Dkt. 145 ("Court ruled that ROG #3 must be answered in full.").  Having

23  flouted the Court's instructions, these products are not properly part of this motion.

24         Third, Google identifies the accused DDR4 RDIMMs and LRDIMMs it contends are subject

25  to intervening rights using certain transaction data.  MSJ at 21-24.  This evidence is insufficient to

26

27  [5] Netlist believes that it is entitled to damages suffered from Google's infringement during the
pendency of the reexamination under the provisional rights provided in 35 U.S.C. § 154(d),
28  commencing from the date the USPTO confirmed the validity of certain claims of the '912 patent.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 24 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

show that the DDR4 DIMMs listed on the purchase orders were used or purchased in the United States, or imported into the United States prior to February 8, 2021.  Certain purchase orders for Google's DDR4 DIMMs provide no information as to where or when the ordered DIMMs were actually received.[6]  Certain others indicate that these DIMMs and the servers incorporating these DIMMs list countries other than the United States under "Ship To."[7]  Exhibit F to Google's Motion, purporting to show the "specific memory modules used in its server fleet as of a specific date" similarly does not indicate that these DIMMs were used in the United States.  *See* Dkt. 154-26.  Nor do Google's interrogatory responses cure this oversight.  In its interrogatory responses, Google provides an Inventory Date defined as "the date Google took title to those modules and added them to its inventory."  Dkt. 154-10 at 28.  Google has not provided any evidence that these memory modules were added to its inventory in the United States prior to February 8, 2021.  Without that specific evidence—which Google cannot remedy in its Reply briefing—Google cannot be granted summary judgment as to those specific products.

## VIII.  CONCLUSION

Netlist respectfully requests that the Court deny Google's Motion for Summary Judgment for absolute intervening rights in claim 16 and the Amended Claims of the '912 patent.

Dated: September 3, 2021                IRELL & MANELLA LLP


                                        By: */s/    Jason G. Sheasby*
                                            Jason G. Sheasby
                                            jsheasby@irell.com
                                            Andrew J. Strabone
                                            astrabone@irell.com
                                            IRELL & MANELLA LLP
                                            1800 Avenue of the Stars, Suite 900
                                            Los Angeles, California 90067
                                            Telephone: (310) 277-1010
                                            Facsimile: (310) 203-7199

                                            *Attorneys for Plaintiff Netlist, Inc.*

---

[6] *See, e.g.*, Dkt. 154-14 (Ex. A)  at 6, 7, 10-11, 16, 19-20, 22, 23, 27-28, 31, 34, 37, 39.

[7] *See, e.g.*, Dkt. 154-14 (Ex. A) at 8-9, 12-15, 17-18, 21, 24-26, 29-30, 32-33, 35, 41-42, 55-58, 60-63, 68, 94-95; Dkt. 154-16 (Ex. B) at 4-6, 8, 15, 17-18, 23-24, 28-29, 33, 51-52, 55-56.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 25 -

NETLIST'S OPPOSITION TO GOOGLE'S
MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:09-CV-05718-SBA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 3, 2021, I caused the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will automatically email notification of such filing to all counsel of record who have made a formal appearance. I further certify that on September 3, 2021, the unredacted version of the foregoing were served on counsel of record who have made a formal appearance.

By: */s/    Michael Tezyan*
Michael Tezyan

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations