Exhibit 6

# (CORRECTED) EX. 3 ATTACHED TO NETLIST'S OPPOSITION TO DEFENDANT'S MOTION TO AMEND ANSWER AND COUNTERCLAIMS

DORIS JOHNSON HINES (*pro hac vice*)
dori.hines@finnegan.com
CHEN ZANG (SBN 302265)
chen.zang@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:     (202) 408-4000
Facsimile:     (202) 408-4400

ERIK R. PUKNYS (SBN 190926)
erik.puknys@finnegan.com
JINWOO KIM (SBN 317364)
jinwoo.kim@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

JASON STACH (*pro hac vice*)
jason.stach@finnegan.com
KARA A. SPECHT (*pro hac vice*)
kara.specht@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP**
271 17th Street, NW, Suite 1400
Atlanta, GA 30363-6209
Telephone: (404) 653-6400
Facsimile: (404) 653-6444

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>      Plaintiff,<br><br>   v.<br><br>GOOGLE LLC,<br><br>      Defendant. | Civil Action No. 4:09-CV-05718 SBA<br><br>**DEFENDANT GOOGLE LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES 1-4 SERVED APRIL 19, 2021** |

Pursuant to Federal Rule of Civil Procedure 26 and the Civil Local Rules, Defendant Google LLC provides its Objections and Responses to Plaintiff Netlist's First Set of Interrogatories to Defendant Google LLC (Nos. 1-4), served April 19, 2021[1].

These responses are made solely for the purposes of the above-captioned case (referred to as the "Litigation"). The following responses are based on Google's present recollection, knowledge, and belief, informed by a reasonable investigation. They may change as additional or different information is learned or recalled during discovery, and Google reserves the right to supplement these responses.

Google's objections and responses preserve:

1. All questions as to the competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose of the response or its subject matter, in this Litigation or any subsequent proceeding associated with this Litigation or any other matter;

2. The right to object on any ground to the use of these responses, or their subject matter, in any subsequent proceeding or any other action; and

3. The right to object on any ground at any time to other requests or other discovery procedures involving or relating to the subject matter of these interrogatories.

## GENERAL OBJECTIONS

The following general objections apply to each and every interrogatory addressed below, including Netlist's definitions and instructions. Each of the general objections is incorporated by reference into the specific objections to each interrogatory, regardless of whether the specific objections overlap or repeat the general objection.

1. Google's agreement to respond to these interrogatories shall not be deemed as an admission regarding the relevance of the information sought nor is it intended to waive any right to object to the admissibility of such at trial.

2. Google has not yet completed its investigation, collection of information, discovery, and analysis relating to this Litigation. The following responses are based on information known

---

[1] Netlist previously served First Interrogatories (Nos. 1-20) on March 26, 2010.

and available to Google at this time. Although discovery is limited at the time Google is responding to these interrogatories, if discovery later broadens, Google reserves the right to amend, supplement, or otherwise change its responses to these interrogatories should any additional information become available to it. Google also reserves the right to produce additional evidence at trial.

3.  Google objects to the Definitions of "You," "Your," and "Google" because they encompass individuals and entities that are neither parties nor subject to the obligations imposed by the Federal Rules of Civil Procedure, the Civil Local Rules, the Patent Local Rules, and the Orders governing this Litigation. In answering these requests, Google will interpret these terms to mean Defendant Google LLC.

4.  Google objects to the definition of "Patent." Patents are not "utility models, . . . applications (including provisional applications), certificates of invention, reissues, divisionals, continuations, continuations-in-part, extensions, renewals, reexaminations and foreign counterparts thereof." Nor does "patent" mean "all stated categories of intellectual property regardless of whether those rights are presently expired or were ever adjudged invalid." Google will interpret "patent" as that term is defined and used in Title 35 of the United States Code.

5.  Google objects to the definition of "Asserted Patent" and "'912 Patent" as overly broad by referring to the original, invalid claims or claims not asserted by Netlist against Google. The Patent Office found every claim Netlist asserted against Google invalid, and Netlist amended each of those claims. To date, Netlist has not identified any asserted claims or accused products related to those claims. The "Asserted Patent" and the "'912 Patent" mean U.S. Patent No. 7,619,912, as it existed on April 19, 2021, the day Netlist served its interrogatories, which is how Google will interpret and use those terms.

6.  Google objects to the definition of "Memory Module." Google will interpret that term to mean the class of products that Netlist has accused of infringing the '912 Patent.

7.  Google objects to the definition of "Standard." The only "Standard" referenced in the interrogatories is a "JEDEC Standard," so Google will interpret that term to mean the body of standards developed and published by the JEDEC Solid State Technology Association.

8. Google will interpret "Document" to mean "documents or electronically stored information" as those terms are used in the Federal Rules of Civil Procedure, subject to any ESI Order entered in this case.

9. Google objects to Netlist's interrogatories to the extent that they require premature disclosure of expert testimony, evidence, argument, contentions, claim construction information, or any other disclosure inconsistent with the Federal Rules of Civil Procedure, the Civil Local Rules, the Patent Local Rules, and the Orders governing this Litigation, including the Court's Case Management Order (D.I. 117).

10. Google objects to these interrogatories to the extent they seek material protected by attorney-client privilege or work product immunity, or which may only be answered by reliance upon any privileged or work-product information, including mental impressions, conclusions, opinions, or legal theories of Google's counsel, experts, or consultants developed with or in anticipation of litigation. To the extent reasonably possible, Google will attempt to interpret the interrogatories as not seeking privileged information. Inadvertent reference to privileged information by Google shall not constitute a waiver of any applicable privilege.

11. Google objects to Netlist's interrogatories to the extent they comprise multiple discrete subparts, but Netlist apparently proposes that each interrogatory be counted as one request, contravening the Federal Rules of Civil Procedure.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

For every type of Memory Module that Google has purchased, made, used, installed, operated, sold, or offered to sell in the United States for the period of November 17, 2008 through February 7, 2021, provide information sufficient to fully describe:

- The category of the Memory Module (e.g., FB DIMM) and the category of the DRAM on the module (e.g., DDR2, DDR 3, DDR 4, DDR 5);
- The design and operation of all memory and/or storage devices and circuit and/or logic elements on the Memory Module;
- The begin and end design dates for the Memory Module;

The extent the design has changed, how it has changed, and when such change was made;

The date of first commercial use of the Memory Module;

To the extent any portion of the Memory Module complies with a JEDEC Standard, identify the relevant portion of the Standard;

The date(s) of purchase, manufacture, installment, and/or sale of the Memory Module; and

The suppliers of each of the components in the Memory Module, and the assembler of the Memory Module.

**RESPONSE TO INTERROGATORY NO. 1:**

In addition to the General Objections stated above, Google objects to this interrogatory because it requests information that is inconsistent with the Court's Case Management Order (D.I. 117). While this case was stayed, the patent-in-suit underwent *inter partes* reexamination, resulting in a reexamination certificate issued on February 8, 2021, which narrowed or canceled all asserted claims. When this case resumed, the Court requested a Joint Case Management Statement (D.I. 115). In that Statement, the parties agreed "it would be an efficient first step to resolve the question of what intervening rights exist with respect to the claims of the '912 patent, if any." D.I. 115 at 3. Accordingly, the parties requested, and the Court granted, a staged resumption of this case where Netlist would first serve amended infringement contentions and then the parties would brief intervening rights. D.I. 115 at 5-6; D.I. 117. Other deadlines, if needed, would follow the Court's intervening rights determination. *See id.*

Although plaintiffs in this jurisdiction are generally required to present infringement contentions before receiving detailed technical product discovery from the defendant (*see* Patent Local Rule 3-1, 3-4), Netlist requested early "targeted discovery" on "the nature of the memory modules currently used by Google." D.I. 115 at 3. Google stated that it was "open to limited discovery in the form of a targeted interrogatory directed to the identification of memory module classes (e.g., FBDIMMs, etc.) and generations (e.g., DDR, DDR2, etc.) Google currently uses." *Id.* at 4. Consistent with traditional practice in this jurisdiction, Google then objected—and maintains its objection—to "any broader scope of technical discovery before Google has notice of [Netlist's] infringement allegations." *Id.*

1    The parties conferred on the scope of Netlist's targeted discovery. Netlist requested the
2    following (quoting from an e-mail from Netlist's counsel):
3        What types of memory modules is Google currently making, having made, and/or
4        purchasing?
5        Are FBDIMMs among the current modules Google is making, having made, and/or
6        purchasing?
7            If yes, building, buying, or both? By/from whom?
8                What is the rough volume of FBDIMMs currently in use?
9            If no active make/buy, is Google is still using FBDIMMs?
10               If yes, what is the rough volume of FBDIMMs currently in use?
11               If no, when did such use cease?
12   Google agreed to respond to these questions. Google gathered responsive information, but
13   before it had an opportunity to provide that information, new counsel for Netlist entered an
14   appearance in this case. D.I. 131. The next business day, Netlist's new counsel served these
15   interrogatories, which go well beyond the scope of the discovery the parties discussed and agreed
16   to before the Case Management Conference, and also go beyond the agreement the parties reached
17   regarding the appropriate scope of Netlist's limited early discovery. Google offered to provide
18   expedited responses to the questions Netlist previously said it needed answered if it would withdraw
19   the current interrogatories and serve new interrogatories of the scope the parties previously agreed
20   were appropriate. Netlist declined to do so.
21   Google, therefore, objects to this interrogatory to the extent it (1) exceeds the scope of the
22   limited, early discovery Netlist represented to the Court it would seek in the Joint Case Management
23   Statement, (2) exceeds the scope of discovery Google agreed it was open to providing in the Joint
24   Case Management Statement, (3) exceeds the scope of discovery the parties agreed to after
25   conferring over the appropriate scope, and (4) prematurely seeks technical discovery that Google
26   is required to produce in its Patent Local Rule 3-4 Document Production *after* Netlist has identified
27   accused instrumentalities in its Patent Local Rule 3-1 Disclosure of Asserted Claims and
28   Infringement Contentions.

1    Google also objects to this interrogatory as seeking information not within its possession,
2    custody, or control. The manufacturers and/or assemblers of memory modules that Google
3    purchases are the appropriate sources of information regarding "[t]he design and operation of all
4    memory and/or storage devices and circuit and/or logic elements on the Memory Module," "[t]he
5    begin and end design dates for the Memory Module," "[t]he extent the design has changed, how it
6    has changed, and when such change was made," "[t]o the extent any portion of the Memory Module
7    complies with a JEDEC Standard, . . . the relevant portion of the Standard," and "[t]he date(s) of .
8    . . manufacture . . . of the Memory Module."

9    Google further objects to this interrogatory as seeking irrelevant information because
10   absolute intervening rights preclude a finding of infringement and any related award of damages
11   for any asserted claim and for any memory modules purchased, made, used, installed, operated,
12   sold, or offered for sale from November 17, 2008 through February 7, 2021.

13   Google further objects to this interrogatory because it includes multiple distinct subparts as
14   a single interrogatory.

15   Google also objects to this interrogatory as vague, ambiguous, overly broad, and unduly
16   burdensome because the terms "Memory Module, "Standard," "design and operation," "memory
17   and/or storage devices," "circuit and/or logic elements," and "components" as used in this
18   interrogatory, are vague, ambiguous, overly broad, and undefined, not clear, and could be read to
19   encompass an impermissibly broad range of information.

20   In response to the non-objectionable portions of this interrogatory, Google responds as
21   follows:

22   Based on a reasonable investigation, Google no longer makes, has made, and/or purchases
23   FBDIMMs, the only memory module type Netlist has accused in this case to date, and Google's
24   last known use of FBDIMMs was in 2017.

**INTERROGATORY NO. 2:**

For every type of Memory Module that Google has purchased, made, used, installed, operated, sold, or offered to sell in the United States as of February 8, 2021 and through the present, provide information sufficient to fully describe:

- The category of the Memory Module (e.g., FB DIMM) and the category of the DRAM on the module (e.g., DDR2, DDR 3, DDR 4, DDR 5);
- The design and operation of all memory and/or storage devices and circuit and/or logic elements on the Memory Module;
- The begin and end design dates for the Memory Module;
- The extent the design has changed, how it has changed, and when such change was made;
- The date of first commercial use of the Memory Module;
- To the extent any portion of the Memory Module complies with a JEDEC Standard, identify the relevant portion of the Standard;
- The date(s) of purchase, manufacture, installment, and/or sale of the Memory Module; and
- The suppliers of each of the components in the Memory Module, and the assembler of the Memory Module.

**RESPONSE TO INTERROGATORY NO. 2:**

In addition to the General Objections stated above, Google objects to this interrogatory because it requests information that is inconsistent with the Court's Case Management Order (D.I. 117). While this case was stayed, the patent-in-suit underwent *inter partes* reexamination, resulting in a reexamination certificate issued on February 8, 2021 that narrowed or canceled all asserted claims. When this case resumed, the Court requested a Joint Case Management Statement (D.I. 115). In that Statement, the parties agreed "it would be an efficient first step to resolve the question of what intervening rights exist with respect to the claims of the '912 patent, if any." D.I. 115 at 3. Accordingly, the parties requested, and the Court granted, a staged resumption of this case where Netlist would first serve amended infringement contentions and then the parties would brief

intervening rights. D.I. 115 at 5-6; D.I. 117. Other deadlines, if needed, would follow the Court's intervening rights determination. *See id.*

Although plaintiffs in this jurisdiction are generally required to present infringement contentions before receiving detailed technical product discovery from the defendant (*see* Patent Local Rule 3-1, 3-4), Netlist requested early "targeted discovery" on "the nature of the memory modules currently used by Google." D.I. 115 at 3. Google stated that it was "open to limited discovery in the form of a targeted interrogatory directed to the identification of memory module classes (e.g., FBDIMMs, etc.) and generations (e.g., DDR, DDR2, etc.) Google currently uses." *Id.* at 4. Consistent with traditional practice in this jurisdiction, Google then objected—and maintains its objection—to "any broader scope of technical discovery before Google has notice of [Netlist's] infringement allegations." *Id.*

The parties conferred on the scope of Netlist's targeted discovery. Netlist requested the following (quoting from an e-mail from Netlist's counsel):

> What types of memory modules is Google currently making, having made, and/or purchasing?
> Are FBDIMMs among the current modules Google is making, having made, and/or purchasing?
>> If yes, building, buying, or both? By/from whom?
>> What is the rough volume of FBDIMMs currently in use?
>> If no active make/buy, is Google is still using FBDIMMs?
>> If yes, what is the rough volume of FBDIMMs currently in use?
>> If no, when did such use cease?

Google agreed to respond to these questions. Google gathered responsive information, but before it had an opportunity to provide that information, new counsel for Netlist entered an appearance in this case. D.I. 131. The next business day, Netlist's new counsel served these interrogatories, which go well beyond the scope of the discovery the parties discussed and agreed to before the Case Management Conference, and also go beyond the agreement the parties reached regarding the appropriate scope of Netlist's limited early discovery. Google offered to provide

-9-
DEFENDANT'S RESPONSES TO PLAINTIFF'S INTERROGATORIES 1-4 SERVED APRIL 19, 2021
4:09-CV-05718 SBA

expedited responses to the questions Netlist previously said it needed answered if it would withdraw the current interrogatories and serve new interrogatories of the scope the parties previously agreed were appropriate. Netlist declined to do so.

Google, therefore, objects to this interrogatory to the extent it (1) exceeds the scope of the limited, early discovery Netlist represented to the Court it would seek in the Joint Case Management Statement, (2) exceeds the scope of discovery Google agreed it was open to providing in the Joint Case Management Statement, (3) exceeds the scope of discovery the parties agreed to after conferring over the appropriate scope, and (4) prematurely seeks technical discovery that Google is required to produce in its Patent Local Rule 3-4 Document Production *after* Netlist has identified accused instrumentalities in its Patent Local Rule 3-1 Disclosure of Asserted Claims and Infringement Contentions.

Google also objects to this interrogatory as seeking information not within its possession, custody, or control. The manufacturers and/or assemblers of memory modules that Google purchases are the appropriate sources of information regarding "[t]he design and operation of all memory and/or storage devices and circuit and/or logic elements on the Memory Module," "[t]he begin and end design dates for the Memory Module," "[t]he extent the design has changed, how it has changed, and when such change was made," "[t]o the extent any portion of the Memory Module complies with a JEDEC Standard, . . . the relevant portion of the Standard," and "[t]he date(s) of . . . manufacture . . . of the Memory Module."

Google further objects to this interrogatory as seeking irrelevant information because absolute and/or equitable intervening rights preclude a finding of infringement and any related award of damages for any asserted claim and for any memory modules purchased, made, used, installed, operated, sold, or offered for sale as of February 8, 2021 and through the present.

Google further objects to this interrogatory because it includes multiple distinct subparts as a single interrogatory.

Google also objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome because the terms "Memory Module, "Standard," "design and operation," "memory and/or storage devices," "circuit and/or logic elements," and "components" as used in this

1  interrogatory, are vague, ambiguous, overly broad, and undefined, not clear, and could be read to
2  encompass an impermissibly broad range of information.
3      In response to the non-objectionable portions of this interrogatory, Google responds as
4  follows:
5      Based on a reasonable investigation, Google no longer makes, has made, and/or purchases
6  FBDIMMs, the only memory module type Netlist has accused in this case to date, and Google's
7  last known use of FBDIMMs was in 2017.

15 **INTERROGATORY NO. 3:**

16      If You contend that You are entitled to intervening rights with respect to any of the claims
17  of the '912 Patent, including separately claim 16, state the full factual and legal basis for Your
18  contention, including any Documents, materials, evidence, and witnesses.

19 **RESPONSE TO INTERROGATORY NO. 3:**

20      In addition to the General Objections stated above, Google objects to this interrogatory
21  because it requests information that is inconsistent with the Court's Case Management Order (D.I.
22  117). While this case was stayed, the patent-in-suit underwent *inter partes* reexamination, resulting
23  in a reexamination certificate issued on February 8, 2021 that narrowed or canceled all asserted
24  claims. When this case resumed, the Court requested a Joint Case Management Statement (D.I.
25  115). In that Statement, the parties agreed "it would be an efficient first step to resolve the question
26  of what intervening rights exist with respect to the claims of the '912 patent, if any." D.I. 115 at 3.
27  Accordingly, the parties requested, and the Court granted, a staged resumption of this case where
28  Netlist would first serve amended infringement contentions and then the parties would brief

intervening rights. D.I. 115 at 5-6; D.I. 117. Other deadlines, if needed, would follow the Court's intervening rights determination. *See id.* Although plaintiffs in this jurisdiction are generally required to present infringement contentions before receiving detailed technical product discovery from the defendant (*see* Patent Local Rule 3-1, 3-4), Netlist requested early "targeted discovery" on "the nature of the memory modules currently used by Google." D.I. 115 at 3. Google stated that it was "open to limited discovery in the form of a targeted interrogatory directed to the identification of memory module classes (e.g., FBDIMMs, etc.) and generations (e.g., DDR, DDR2, etc.) Google currently uses." *Id.* at 4. Consistent with traditional practice in this jurisdiction, Google then objected—and maintains its objection—to "any broader scope of technical discovery before Google has notice of [Netlist's] infringement allegations." *Id.*

The parties conferred on the scope of Netlist's targeted discovery. Netlist requested the following (quoting from an e-mail from Netlist's counsel):

> What types of memory modules is Google currently making, having made, and/or purchasing?
>
> Are FBDIMMs among the current modules Google is making, having made, and/or purchasing?
>
> If yes, building, buying, or both? By/from whom?
>
> What is the rough volume of FBDIMMs currently in use?
>
> If no active make/buy, is Google is still using FBDIMMs?
>
> If yes, what is the rough volume of FBDIMMs currently in use?
>
> If no, when did such use cease?

Google agreed to respond to these questions. Google gathered responsive information, but before it had an opportunity to provide that information, new counsel for Netlist entered an appearance in this case. D.I. 131. The next business day, Netlist's new counsel served these interrogatories, which go well beyond the scope of the discovery the parties discussed and agreed to before the Case Management Conference, and also go beyond the agreement the parties reached regarding the appropriate scope of Netlist's limited early discovery. Google offered to provide expedited responses to the questions Netlist previously said it needed answered if it would withdraw

the current interrogatories and serve new interrogatories of the scope the parties previously agreed were appropriate. Netlist declined to do so.

Google, therefore, objects to this interrogatory to the extent it (1) exceeds the scope of the limited, early discovery Netlist represented to the Court it would seek in the Joint Case Management Statement, (2) exceeds the scope of discovery Google agreed it was open to providing in the Joint Case Management Statement, and (3) exceeds the scope of discovery the parties agreed to after conferring over the appropriate scope. Google's specific positions on intervening rights cannot be determined until Netlist has provided infringement contentions defining the full scope of products at issue in this case.

Google also objects to this interrogatory as premature under the Procedural Schedule (D.I. 117). Netlist has not yet identified which of its originally-asserted claims remain asserted, nor has it identified the accused products. Because the scope of intervening rights depends at least in part on the nature of the asserted claims and accused products, it is both premature and inefficient to ask Google to broadly identify intervening rights for all of Google's products and all potentially asserted claims. The Procedural Schedule the Court adopted here provides that Netlist will first identify the asserted claims and accused products. The parties will then brief intervening rights with respect to those claims and products. Google objects to Netlist's attempt to disregard the staged schedule that the parties jointly requested and the Court adopted in this case.

Google objects to this interrogatory as seeking irrelevant information to the extent it is seeking information related to invalidated versions of the '912 patent's claims and non-asserted claim 16.

Google further objects to this interrogatory as seeking material protected by attorney-client privilege or work product immunity, or which may only be answered by reliance upon any privileged or work-product information, including mental impressions, conclusions, opinions, or legal theories of Google's counsel, experts, or consultants developed with or in anticipation of litigation. For purposes of this response, to the extent reasonably possible, Google has attempted to interpret this interrogatory as not seeking privileged information. Inadvertent

reference to privileged information by Google shall not constitute a waiver of any applicable privilege.

In response to the non-objectionable portions of this interrogatory, Google responds as follows:

Google is entitled to absolute intervening rights for, at least, all asserted claims of the '912 patent (1, 3, 4, 6-11, 15, 18-22, 24, 25, 27-29, 31-34, 36-39, 41-45, and 50) for its purchase, use, and continued use of allegedly infringing products deployed into servers or ordered before the reexamination certificate issued (before February 8, 2021) because at least all asserted claims were substantively amended during *inter partes* reexamination.

To the extent Netlist accuses memory modules that Google has used or will use after the date of the reexamination certificate, Google is entitled to equitable intervening rights for, at least, all asserted claims of the '912 patent because it made substantial preparations to use these modules before the date of the reexamination certificate. Google will address the specific accused memory modules and its specific substantial preparations in the upcoming briefing on intervening rights, after Netlist identifies the asserted claims and accused products.

Google will provide additional information at the appropriate time under the Court's Procedural Schedule.

**INTERROGATORY NO. 4:**

Fully describe all legal advice you have received regarding the infringement and patentability of the claims of the '912 patent (including previous versions of the claims, and proposed amendments of the claims) from the time of the initiation of any reexamination proceeding on the patent through the issuance of the reexamination certificate.

**RESPONSE TO INTERROGATORY NO. 4:**

In addition to the General Objections stated above, Google objects to this interrogatory because it requests information that is inconsistent with the Court's Case Management Order (D.I. 117). While this case was stayed, the patent-in-suit underwent *inter partes* reexamination, resulting in a reexamination certificate issued on February 8, 2021 that narrowed or canceled all asserted claims. When this case resumed, the Court requested a Joint Case Management Statement (D.I.

115). In that Statement, the parties agreed "it would be an efficient first step to resolve the question of what intervening rights exist with respect to the claims of the '912 patent, if any." D.I. 115 at 3. Accordingly, the parties requested, and the Court granted, a staged resumption of this case where Netlist would first serve amended infringement contentions and then the parties would brief intervening rights. D.I. 115 at 5-6; D.I. 117. Other deadlines, if needed, would follow the Court's intervening rights determination. *See id.*

Although plaintiffs in this jurisdiction are generally required to present infringement contentions before receiving detailed technical product discovery from the defendant (*see* Patent Local Rule 3-1, 3-4), Netlist requested early "targeted discovery" on "the nature of the memory modules currently used by Google." D.I. 115 at 3. Google stated that it was "open to limited discovery in the form of a targeted interrogatory directed to the identification of memory module classes (e.g., FBDIMMs, etc.) and generations (e.g., DDR, DDR2, etc.) Google currently uses." *Id.* at 4. Consistent with traditional practice in this jurisdiction, Google then objected—and maintains its objection—to "any broader scope of technical discovery before Google has notice of [Netlist's] infringement allegations." *Id.*

The parties conferred on the scope of Netlist's targeted discovery. Netlist requested the following (quoting from an e-mail from Netlist's counsel):

> What types of memory modules is Google currently making, having made, and/or purchasing?
>
> Are FBDIMMs among the current modules Google is making, having made, and/or purchasing?
>
> If yes, building, buying, or both? By/from whom?
>
> What is the rough volume of FBDIMMs currently in use?
>
> If no active make/buy, is Google is still using FBDIMMs?
>
> If yes, what is the rough volume of FBDIMMs currently in use?
>
> If no, when did such use cease?

Google agreed to respond to these questions. Google gathered responsive information, but before it had an opportunity to provide that information, new counsel for Netlist entered an

1  appearance in this case. D.I. 131. The next business day, Netlist's new counsel served these
2  interrogatories, which go well beyond the scope of the discovery the parties discussed and agreed
3  to before the Case Management Conference, and also go beyond the agreement the parties reached
4  regarding the appropriate scope of Netlist's limited early discovery. Google offered to provide
5  expedited responses to the questions Netlist previously said it needed answered if it would withdraw
6  the current interrogatories and serve new interrogatories of the scope the parties previously agreed
7  were appropriate. Netlist declined to do so.

8  Google, therefore, objects to this interrogatory to the extent it (1) exceeds the scope of the
9  limited, early discovery Netlist represented to the Court it would seek in the Joint Case Management
10 Statement, (2) exceeds the scope of discovery Google agreed it was open to providing in the Joint
11 Case Management Statement, and (3) exceeds the scope of discovery the parties agreed to after
12 conferring over the appropriate scope.

13 Google further objects to this interrogatory as seeking material protected by attorney-client
14 privilege or work product immunity, or which may only be answered by reliance upon any
15 privileged or work-product information, including mental impressions, conclusions, opinions,
16 or legal theories of Google's counsel, experts, or consultants developed with or in anticipation
17 of litigation. For purposes of this response, to the extent reasonably possible, Google has
18 attempted to interpret this interrogatory as not seeking privileged information. Inadvertent
19 reference to privileged information by Google shall not constitute a waiver of any applicable
20 privilege.

21 In response to the non-objectionable portions of this interrogatory, to the extent Netlist
22 accuses any memory that Google is continuing to use after February 8, 2021, Google reserves its
23 right to explain its positions in its upcoming briefing, which it incorporates into its response, that
24 the specific arguments presented in the *inter partes* reexamination proceedings involving the '912
25 patent (including Reexamination Control Nos. 95/001,339; 95/000,578; and 95/000,579) and
26 subsequent appeals demonstrate that Google in good faith continued its use of memory modules.
27 *See, e.g., Seattle Box Co. v. Indus. Crating Packing*, 756 F.2d 1574 (Fed. Cir. 1985). Any additional
28 responsive information is subject to the attorney-client privilege.

Respectfully Submitted,

Dated: May 19, 2021

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP

BY: */s/ Erik R. Puknys*
ERIK R. PUKNYS
*Attorney for Defendant*
GOOGLE LLC

# CERTIFICATE OF SERVICE

I, Randal J. Holderfield, hereby certify that on May 19, 2021, a true and correct copy of the following document:

- **DEFENDANT GOOGLE LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES 1-4 SERVED APRIL 19, 2021**

was served by the indicated means to the person(s) at the address listed below:

| | |
|---|---|
| Evan Nadel<br>ENadel@mintz.com<br>**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.**<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Tel: (415) 432-6000 / Fax: (415) 432-6001 | ☒ Via Email<br>☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Via Overnight Courier<br>☐ Via Facsimile |
| Andrew H. DeVoogd (*pro hac vice*)<br>AHDeVoogd@mintz.com<br>James M Wodarski (*pro hac vice*)<br>jmwodarski@mintz.com<br>Kara Grogan (*pro hac vice*)<br>KEGrogan@mintz.com<br>Matthew Galica (*pro hac vice*)<br>MSGalica@mintz.com<br>**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.**<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 542-6000 / Fax: (617) 542-2241 | ☒ Via Email<br>☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Via Overnight Courier<br>☐ Via Facsimile |
| Jason G. Sheasby<br>JSheasby@Irell.com<br>Andrew Straborne<br>AStrabone@irell.com<br>Netlist-Google@irell.com<br>**IRELL & MANELLA LLP**<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067-4276<br>Tel: (310) 277-1010 / Fax: (310) 203-7199 | ☒ Via Email<br>☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Via Overnight Courier<br>☐ Via Facsimile |

*Attorneys for Plaintiff*
*NETLIST, INC.*

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed May 19, 2021, at Palo Alto, California.

*/s/ Randal J. Holderfield*
Randal J. Holderfield
Litigation Legal Assistant