# Exhibit 4

# (CORRECTED) EXHIBIT 5 TO DEFENDANT GOOGLE'S MOTION TO AMEND ANSWER AND COUNTERCLAIMS

1   Jason G. Sheasby (CA SBN 205455)
    jsheasby@irell.com
2   Andrew J. Strabone (CA SBN 301659)
    astrabone@irell.com
3   IRELL & MANELLA LLP
    1800 Avenue of the Stars, Suite 900
4   Los Angeles, California 90067
    Telephone: (310) 277-1010
5   Facsimile: (310) 203-7199

6

7   *Attorneys for Plaintiff Netlist, Inc.*

8

9          **UNITED STATES DISTRICT COURT**

10        **NORTHERN DISTRICT OF CALIFORNIA**

                **OAKLAND DIVISION**

11

| | |
|---|---|
| NETLIST, INC., | Case No. 4:09-cv-05718-SBA (JCS) |
| Plaintiff, | **NETLIST, INC.'S RESPONSES AND OBJECTIONS TO GOOGLE LLC'S SECOND SET OF INTERROGATORIES TO PLAINTIFF NETLIST, INC. (NOS. 18-20)** |
| v. | |
| GOOGLE LLC, | |
| Defendant. | |

17

18

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

███████████████████████

1   Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Netlist, Inc.

2   ("Netlist") hereby objects and responds to Defendant Google LLC's ("Google") Second Set of

3   Interrogatories ("Interrogatories").

4                                    **INTRODUCTION**

5   Netlist's objections are made without waiving, in any way: (1) the right to object on any

6   basis permitted by law to the use of any such information, for any purpose, in whole or in part, in

7   any subsequent proceeding in this action or any other action; and (2) the right to object on any basis

8   permitted by law to any other discovery request or proceeding involving or relating to the subject

9   matter of this response.

10   Any response by Netlist shall not be construed as providing or agreeing to any legal

11   conclusion regarding the meaning or application of any terms or phrases used in any of Google's

12   requests, definitions, or instructions.  Nothing shall be construed herein as an admission regarding

13   the admissibility or relevance of any information or document.

14                                **GENERAL OBJECTIONS**

15   The following General Objections apply to, and are incorporated by reference in, each and

16   every response to each specific Interrogatory.  Netlist's identification of one or more specific

17   objections in any given response does not preclude the applicability of any of the General

18   Objections.  From time to time, these responses may repeat a General Objection for emphasis or

19   other bases.  The omission of any General Objection in any response is not intended to be and should

20   not be construed as a waiver or limitation of any General Objection.  Likewise, the inclusion of any

21   additional specific objection in any response is not intended to be and should not be construed as a

22   waiver or limitation of any General Objection.

23   1.   Netlist objects to each Interrogatory to the extent it seeks documents or information

24   protected by: (a) the attorney-client privilege; (b) the work-product doctrine; (c) the common-

25   interest privilege; (d) a constitutional right to privacy; (e) a statutory privacy obligation; or (f) any

26   other privilege or protection afforded by law.  Such protected material may include the impressions,

27   conclusions, opinions, legal research or theories of attorneys, whether or not communicated to their

28   client, and/or any other applicable privilege or protection.  Any inadvertent production of

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 2 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

1   information or documents subject to any such privilege or protection shall not be deemed a waiver

2   of any privilege or protection with respect to such documents or information.

3       2.      Netlist objects to each Interrogatory to the extent that it seeks information protected

4   by a nondisclosure agreement with a third party, or is subject to similar confidentiality requirements.

5   Netlist will provide such information only subject to the Protective Order governing this Action.

6   (Dkt. 47).  To the extent that the consent of any third party is necessary to produce any such

7   information, Netlist will not provide such information until it has received consent from the third

8   party.

9       3.      Netlist objects to each Interrogatory as overly broad and unduly burdensome to the

10  extent it seeks information beyond what is available from a reasonable search of files under the

11  possession, custody, or control of Netlist likely to contain relevant or responsive information and a

12  reasonable inquiry of personnel that Netlist reasonably believes may have relevant knowledge of

13  relevant or responsive information.

14      4.      Netlist objects to each Interrogatory to the extent that it seeks information beyond

15  the scope of, or in any manner that is inconsistent with, the agreements set forth in the Joint Case

16  Management Conference Statement (Dkt. 115), the Order Setting Deadlines (Dkt. 117), the

17  Protective Order (Dkt. 47), the Federal Rules of Civil Procedure, the Local Rules, or any other orders

18  or authorities governing discovery or other relevant conduct in this Action.

19      5.      Netlist objects to each Interrogatory to the extent that it is compound.

20      6.      Netlist objects to Google's definitions and instructions to the extent that they purport

21  to impose requirements that are different from, or in addition to, those imposed by the Federal Rules

22  of Civil Procedure, the Local Rules of this Court, agreements set forth in Joint Case Management

23  Conference Statement, or any other applicable rules or statute, and will construe the Interrogatories

24  in a manner consistent with the Federal Rules of Civil Procedure, the Local Rules of this Court, and

25  the Parties' prior and subsequent agreement(s).

26      7.      Netlist objects to the Interrogatories, including Google's definitions and instructions

27  therein, to the extent that Google purports to alter the plain meaning and/or scope of any specific

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 3 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

Interrogatory or otherwise render the Interrogatory vague, ambiguous, overly broad, unduly burdensome, and/or uncertain.

8.      Netlist objects to each Interrogatory to the extent that it seeks information that is not relevant to any claim or defense in this action or is not reasonably calculated to lead to the discovery of admissible evidence.

9.      Netlist objects to the extent that any Interrogatory seeks information beyond the geographic or temporal scope of this matter.

10.     Netlist objects to Google's Interrogatories on the grounds that they seek expert analyses and opinions prior to the time for such disclosure, or seek to require Netlist to produce any draft reports or similar materials barred from discovery under Federal Rule of Civil Procedure 26(b)(4).

11.     Netlist objects to each Interrogatory to the extent that it seeks the disclosure of "all" information, documents, or communications on the basis that such Interrogatory is overly broad, unduly burdensome, oppressive, and not relevant to any claim or defense of any party to this action.

12.     Netlist objects to Google's Interrogatories to the extent that they are vague, ambiguous, overly broad, fail to reasonably identify the information sought, unduly burdensome, and posed for improper purposes, including, without limitation, embarrassment, undue annoyance, harassment, delay, or to increase the expense of litigation or to the extent they call for legal conclusion or opinion.

13.     Netlist objects to Google's Interrogatories on the grounds that they are overly broad, unduly burdensome, and oppressive to the extent that they seek information that is a matter of public record or is equally available to or readily ascertainable by Google from some other source that is more convenient, less burdensome, or less expensive.  To the extent that an Interrogatory seeks publicly available information, Netlist will produce publicly available information within its possession, custody, or control, but will not conduct public records searches for documents or information.

14.     Netlist objects to each Interrogatory to the extent that it seeks information or the identification of documents that are not within the possession, custody, or control of Netlist, or refers

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 4 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

1  to persons, entities, or events not known to Netlist, subjecting Netlist to unreasonable and undue

2  annoyance, oppression, burden, and expense, and imposing upon it an obligation to discover

3  information or materials from third parties or services that are equally accessible to Google.

4       15.    Netlist objects to each Interrogatory to the extent that it seeks information that is

5  cumulative or duplicative of information, disclosures, discovery, or briefings Netlist already

6  provided in this case.

7       16.    Netlist objects to each Interrogatory to the extent the requested information may be

8  derived or ascertained from documents or responses that have been or are being produced.

9       17.    Netlist objects to each Interrogatory to the extent that it requires Netlist to prepare

10  any document or other information that does not already exist.

11       18.    Netlist objects to Google's Interrogatories to the extent they are not proportional to

12  the needs of this case.

13       19.    Netlist objects to Google's definitions of "Netlist," "You, "or Your" as overly broad

14  and unduly burdensome and to the extent that they purport to require a response on behalf of any

15  corporate entity other than Netlist, Inc., the party to this proceeding.  Netlist further objects on the

16  ground that Google purports to extend Interrogatories containing these terms to cover information

17  outside the possession, custody, or control of Netlist, or to the extent that this definition includes

18  entities or persons who are not a party to this lawsuit.  Netlist will interpret "Netlist," "You," or

19  Your" as referring to Netlist, Inc., the party to this proceeding, as opposed to any additional entities.

20       20.    Netlists objects to Google's definition of "Documents" as overly broad, vague, and

21  unduly burdensome.  Netlist will interpret the term "documents" as it is used in the Federal Rules

22  of Civil Procedure, the Local Rules, the N.D. Cal. Model Patent ESI Order, and any ESI Order that

23  will be entered in this case.

24       21.    Certain terms defined in Google's definitions are not used in the Interrogatories.  As

25  such, Netlist does not list its objections to those definitions here.  However, Netlist reserves the right

26  to raise objections to these definitions in the future, and nothing herein shall constitute acquiescence

27  to Google's definitions, nor shall it constitute a waiver of Netlist's rights or otherwise prevent Netlist

28  from raising additional objections to Google's definitions or discovery requests in the future.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 5 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

22.     Netlist objects to Google's instructions regarding the privilege log to the extent they differ from any agreement or order regarding limits on the documents and things that the parties will need to include on privilege logs or seeks to impose obligations that differ from or exceed those under the Federal Rules of Civil Procedure or any other applicable Federal or Local Rules.

23.     Netlist objects to each Interrogatory to the extent that it purports to require the preparation of a privilege log for privileged documents generated after the filing of this lawsuit. Inclusion of such material in any privilege log would be unduly burdensome and likely to reveal privileged or other protected information in violation of the Protective Order.  (Dkt. 47, ¶ 45).

24.     Netlist objects to Google's instructions that require Netlist to produce documents in any manner to the extent they impose obligations that differ from or exceed those under the Federal Rules of Civil Procedure, any other applicable Federal or Local Rules, or any Order of this Court.

25.     Netlist objects to Google's instructions that require Netlist "Identify" any individual, document, or communication, or source of information, to the extent they impose obligations that differ from or exceed those under the Federal Rules of Civil Procedure, any other applicable Federal or Local Rules, or any Order of this Court.

26.     Netlist objects to Google's instruction that requires Netlist to include in its response any information that Netlist could not identify with reasonable diligence or beyond what is available from a reasonable inquiry of Netlist's employees and a reasonable search of Netlist's documents in those locations and files that are readily identifiable as those that would have responsive information, to the extent it imposes obligations that differ from or exceed those under the Federal Rules of Civil Procedure, any other applicable Federal or Local Rules, or any Order of this Court.

27.     Netlist objects to Google's instructions that require Netlist to identify information or documents that no longer exist, cannot be located, or otherwise are no longer within Netlist's possession, to the extent they impose obligations that differ from or exceed those under the Federal Rules of Civil Procedure, any other applicable Federal or Local Rules, or any Order of this Court.

28.     Netlist objects to Google's instruction that requires Netlist to supplement its responses to the Interrogatories, to the extent it imposes obligations that differ from or exceed those

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

- 6 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

1   under the Federal Rules of Civil Procedure, any other applicable Federal or Local Rules, or any

2   Order of this Court.

3       29.    Netlist objects to Google's instruction that requires Netlist to state reasons for the

4   inability to answer any Interrogatory in whole or in part, to the extent it imposes obligations that

5   differ from or exceed those under the Federal Rules of Civil Procedure, any other applicable Federal

6   or Local Rules, or any Order of this Court.

7       30.    Subject to and without waiving any General or Specific Objections, and to the

8   extent Netlist agrees to produce documents in response to a particular Interrogatory, Netlist will

9   produce discoverable, responsive, non-privileged, non-work product documents after reasonable

10  collection efforts, on a rolling basis, and consistent with any agreement between and among the

11  parties, the Local Rules, or an order of the Court limiting the scope and obligations of the parties

12  to search for and produce electronically stored information in this action, including entry of an

13  order for Discovery of ESI and the parties' agreement to modify the same.

14      31.    Netlist reserves the right to supplement or amend its responses, objections, and

15  productions in light of further Orders of the Court, arguments of any party, or in light of the receipt

16  of discovery or evidence that is not yet in its possession.

17      32.    Subject to and without waiving these General Objections, Netlist responds and

18  specifically objects to Google's Interrogatories as set forth below.

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 7 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

██████████████████

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 18**:

If you contend that Google is not entitled to intervening rights with respect to any of the claims of the '912 Patent, state the full factual and legal basis for your contention, including any Documents, materials, evidence, and witnesses.

**NETLIST'S RESPONSE TO INTERROGATORY NO. 18**:

Netlist incorporates by reference its General Objections.

Netlist objects to this Interrogatory to the extent that it seeks information that is exempt from discovery under the attorney-client communication privilege, the attorney-work-product doctrine, or any other applicable privilege, immunity, or protection as provided by any applicable law.

Netlist objects to this Interrogatory based on the ground that it attempts to improperly shift Google's burden of proof to Netlist as to whether Google is entitled to the affirmative defense of intervening rights. Netlist objects to this Interrogatory as premature, as it calls for information that will be the subject of Netlist's response brief on Google's intervening rights defense, which is due on September 3, 2021. Netlist further objects to this Interrogatory because it purports to seek information not within Netlist's possession, custody, or control; information that is already in Google's possession, custody, or control; or information that is available to Google from other sources, including publicly available sources, with equal or less burden than from Netlist, as being overbroad, unduly burdensome, expensive, and not consistent with the Federal Rules of Civil Procedure and the Local Rules of this Court. Consistent with the parties' agreed-upon briefing schedule for intervening rights (Dkt. 149), Netlist reserves the right to respond to arguments raised in Google's Motion for Summary Judgment on the Issue of Absolute Intervening Rights (Dkt. 154). Discovery and Netlist's investigation are ongoing. Netlist is continuing its investigation of Google's use of the claimed technology. Netlist reserves the right to supplement its response to this Interrogatory as appropriate.

Subject to and without waiving the foregoing objections, and to the extent Netlist understands this Interrogatory, Netlist responds as follows:

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 8 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

████████████████████

Pursuant to the Court's order, the parties are currently briefing the issue of Google's absolute intervening rights defense.  Netlist has moved for partial summary judgment on Google's intervening rights defense for claim 16 of the '912 patent. Dkt. 156.  For reasons articulated therein, Google is not entitled to intervening rights in claim 16 as a matter of law.  *Id.*  Google moved for summary judgment, contending that claims 1, 3, 4, 6, 8, 10, 11, 15, 16, 18, 19, 20, 22, 24, 27-29, 31, 32, 34, 36-41, 43, 45-47, 50, 52-60, 62-65, 69, 70-75, 77, and 80-91of the '912 Patent are subject to absolute intervening rights.  Dkt. 154 at 7-12.  Netlist incorporates by reference its Motion for Partial Summary Judgment on Google's Intervening Rights Defense for Claim 16 (Dkt. 156), and its forthcoming responses, replies, or other briefing related to Google's intervening rights defense.

For the reasons separately stated below, even if the Court were to find claim 16 subject to absolute intervening rights, Google is not entitled to equitable intervening rights in claim 16 for the accused DDR4 LRDIMMs and DDR4 RDIMMs.

## I.   **Absolute Intervening Rights**

### A.   **Google Is Not Entitled to Absolute Intervening Rights in Amended Claims 1, 15, 28, 39, and Those that Depend Therefrom**

To prove entitlement to absolute intervening rights, the accused infringer need show that the original and amended claims are not "substantially identical." 35 U.S.C. § 252; pre-AIA § 316(b). Under § 252, "identical" means "at most without substantive change." *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997).  An amendment that clarifies the text of a claim "to make specific what was always implicit or inherent" is not a substantive change.  *See Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1361 (Fed. Cir. 1991).  "When claims are amended during reexamination following a rejection based on prior art, the claims are not deemed substantively changed as a matter of law. There is no per se rule." *Id.* at 1362.

#### 1.   **History of Amendments to the Claims During Reexamination**

During reexamination, Netlist made the following amendments to the original independent claims of the '912 patent:[1]

---

[1] Amended claim language is indicated in underline.  *See* February 8, 2021 *Inter Partes* Reexamination Certificate.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 9 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

**Claim 1**: [1pre] A memory module connectable to a computer system, the memory module comprising:

[1.1] a printed circuit board;

[1.2] a plurality of double-data-rate (DDR) memory devices mounted to the printed circuit board, the plurality of DDR memory devices having a first number of DDR memory devices arranged in a first number of ranks;

[1.3] a circuit mounted to the printed circuit board, the circuit comprising a logic element and a register,

[1.4] the logic element receiving a set of input control signals from the computer system, the set of input control signals comprising at least one row/column address signal, bank address signals, and at least one chip-select signal,

[1.5] the set of input control signals corresponding to a second number of DDR memory devices arranged in a second number of ranks, the second number of DDR memory devices smaller than the first number of DDR memory devices and the second number of ranks less than the first number of ranks,

[1.6] the circuit generating a set of output control signals in response to the set of input control signals,

[1.7] the set of output control signals corresponding to the first number of DDR memory devices arranged in the first number of ranks,

[1.8] wherein the circuit further responds to a first command signal and the set of input control signals from the computer system by generating and transmitting a second command signal and the set of output control signals to the plurality of memory devices, the first command signal and the set of input control signals corresponding to the second number of ranks and the second command signal and the set of output control signals corresponding to the first number of ranks; and

[1.9] a phase-lock loop device mounted to the printed circuit board, the phase-lock loop device operatively coupled to the plurality of DDR memory devices, the logic element, and the register,

[1.10] wherein, in response to signals received from the computer system, the phase-lock loop (PLL) device transmits a PLL clock signal to the plurality of DDR memory devices, the logic element, and the register,

[1.11] wherein, the register (i) receives, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the bank address signals, and (iii) transmits the buffered plurality of row/column address signals and the buffered bank address signals to the plurality of DDR memory devices,

[1.12] wherein the at least one row/column address signal received by the logic element comprises at least one row address signal received by the logic element, and wherein the plurality of row/column address signals received by

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

the register are separate from the at least one row address signal received by the logic element, and

[1.13] wherein the logic element generates gated column access strobe (CAS) signals or chip-select signals of the output control signals in response to at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at least one chip-select signal of the set of input control signals and (iv) the PLL clock signal.

**Claim 15**: [15pre] A memory module connectable to a computer system, the memory module comprising:

[15.1] a printed circuit board;

[15.2] a plurality of double-data-rate (DDR) memory devices mounted to the printed circuit board, the plurality of DDR memory devices having a first number of DDR memory devices arranged in a first number of ranks;

[15.3] a circuit coupled to the printed circuit board, the circuit comprising a logic element and a register,

[15.4] the logic element receiving a set of input signals from the computer system, the set of input signals comprising at least one row/column address signal, bank address signals, and at least one chip-select signal,

[15.5] the set of input signals configured to control a second number of DDR memory devices arranged in a second number of ranks, the second number of DDR memory devices smaller than the first number of DDR memory devices and the second number of ranks less than the first number of ranks,

[15.6] the circuit generating a set of output signals in response to the set of input signals,

[15.7] the set of output signals configured to control the first number of DDR memory devices arranged in the first number of ranks,

[15.8] wherein the circuit further responds to a command signal and the set of input signals from the computer system by selecting one or two ranks of the first number of ranks and transmitting the command signal to at least one DDR memory device of the selected one or two ranks of the first number of ranks; and

[15.9] a phase-lock loop device coupled to the printed circuit board, the phase-lock loop device operatively coupled to the plurality of DDR memory devices, the logic element, and the register,

[15.10] wherein, in response to signals received from the computer system, the phase-lock loop (PLL) device transmits a PLL clock signal to the plurality of DDR memory devices, the logic element, and the register,

[15.11] wherein, the register (i) receives, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the bank address signals, and (iii) transmits the buffered plurality of row/column address signals and the buffered bank address signals to the at least one DDR memory device of the selected one or two ranks of the first number of ranks,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

[15.12] wherein the at least one row/column address signal received by the logic element comprises at least one row address signal received by the logic element, and wherein the plurality of row/column address signals received by the register are separate from the at least one row address signal received by the logic element, and

[15.13] wherein the logic element generates gated column access strobe (CAS) signals or chip-select signals of the output signals in response at least in part to (i) the at least one row address signal, (ii) the bank address signals and (iii) the at least one chip-select signal of the set of input signals and (iv) the PLL clock signal.

**Claim 28**: [28.pre] A memory module connectable to a computer system, the memory module comprising:

[28.1] a printed circuit board;

[28.2] a plurality of double-data-rate (DDR) dynamic random access memory (DRAM) devices coupled to the printed circuit board, the plurality of DDR DRAM devices having a first number of DDR DRAM devices arranged in a first number of ranks;

[28.3] a circuit coupled to the printed circuit board, the circuit comprising a logic element and a register,

[28.4] the logic element receiving a set of input control signals from the computer system, the set of input control signals comprising a row/column address signal, bank address signals, a chip-select signal, and an input command signal,

[28.5] the set of input control signals configured to control a second number of DDR DRAM devices arranged in a second number of ranks, the second number of DDR DRAM devices smaller than the first number of DDR DRAM devices, the second number of ranks smaller than the first number of ranks,

[28.6] the circuit generating a set of output control signals in response to the set of input control signals, the set of output control signals comprising an output command signal,

[28.7] the set of output control signals configured to control the first number of DDR DRAM devices arranged in the first number of ranks,

[28.8] wherein the circuit further responds to the set of input control signals from the computer system by selecting at least one rank of the first number of ranks and transmitting the set of output control signals to at least one DDR DRAM device of the selected at least one rank; and

[28.9] a phase-lock loop device coupled to the printed circuit board, the phase-lock loop device operatively coupled to the plurality of DDR DRAM devices, the logic element, and the register;

[28.10] wherein, in response to signals received from the computer system, the phase-lock loop (PLL) device transmits a PLL clock signal to the plurality of DDR DRAM memory devices, the logic element, and the register,

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 12 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

[28.11] wherein, the register (i) receives, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the bank address signals, and (iii) transmits the buffered plurality of row/column address signals and the buffered bank address signals to the at least one DDR DRAM device of the selected at least one rank,

[28.12] wherein the row/column address signal received by the logic element comprises a row address signal received by the logic element, and wherein the plurality of row/column address signals received by the register are separate from the row address signal received by the logic element, and

[28.13] wherein the logic element generates gated column access strobe (CAS) signals or chip-select signals of the output control signals in response at least in part to (i) the row address signal, (ii) the bank address signals, and (iii) the chip-select signal of the set of input control signals and (iv) the PLL clock signal.

**Claim 39**: [39pre] A memory module connectable to a computer system, the memory module comprising:

[39.1] a printed circuit board having a first side and second side;

[39.2] a plurality of double-data-rate (DDR) memory devices mounted to the printed circuit board, each DDR memory device comprising one or more banks, the plurality of DDR memory devices arranged in two or more ranks which are selectable by a first number of chip-select signals;

[39.3] at least one integrated circuit element mounted to the printed circuit board, the at least one integrated circuit element comprising a logic element, a register, and a phase-lock loop device operationally coupled to the plurality of DDR memory devices, the logic element, and the register,

[39.4] the at least one integrated circuit element receiving a plurality of input signals from the computer system, the plurality of input signals comprising row address signals, column address signals, bank address signals, command signals, and a second number of chip-select signals less than the first number of chip-select signals,

[39.5] wherein the logic element receives at least one row address signal, the bank address signals, at least one chip-select signal, and at least one command signal of the plurality of input signals,

[39.6] the at least one integrated circuit element generating a plurality of output signals in response to the plurality of input signals, the plurality of output signals comprising row address signals, column address signals, bank address signals, command signals, and the first number of chip-select signals,

[39.7] the at least one integrated circuit element further responsive to the plurality of input signals by selecting at least one rank of the two or more ranks and transmitting the plurality of output signals to at least one DDR memory device of the selected at least one rank,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

- 13 -

[39.8] wherein, in response to signals received from the computer system, the phase-lock loop (PLL) device transmits a PLL clock signal to the plurality of DDR memory devices, the logic element, and the register,

[39.9] wherein, the register (i) receives, from among the plurality of input signals, and (ii) buffers, in response to the PLL clock signal, the bank address signals and a plurality of the row address signals, and (iii) transmits the buffered bank address signals and the buffered row address signals to the at least one DDR memory device of the selected at least one rank, and

[39.10] wherein the plurality of the row address signals received by the register are separate from the at least one row address signal received by the logic element, and

[39.11] wherein the logic element generates gated column access strobe (CAS) signals or chip-select signals of the output signals in response at least in part to (i) the at least one row address signal, (ii) the bank address signals, and (iii) the at least one chip-select signal of the plurality of input signals and (iv) the PLL clock signal.

### 2. The Amendments Did Not Substantively Change the Scope of the Original Claims

#### a. The PLL Device

Original independent claims 1 and 15 recite "a phase-lock loop device . . . the phase-lock loop device operatively coupled to the plurality of DDR memory devices, the logic element, and the register." Elements 1.9, 15.9. Original independent claim 28 features nearly identical language. Element 28.9. Original independent claim 39 similarly recites a "phase-lock loop device operationally coupled to the plurality of DDR memory devices, the logic element, and the register." Element 39.3.

During reexamination, Netlist amended claim 1 to include the following limitation related to the PLL device:

[1.10] wherein, in response to signals received from the computer system, the phase-lock loop (PLL) device transmits a PLL clock signal to the plurality of DDR memory devices, the logic element, and the register,

July 31, 2016 Response Requesting to Reopen Prosecution at 48. Similar or identical language was added to claims 15, 28, and 39. *Id.* By this change, Netlist merely made express the inherent function of the PLL device as claimed, and thus did not substantively change the scope of the claims.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

- 14 -

█████████████████████████

b.    **The Register**

(1)    Elements 1.11, 15.11, 28.11, and 39.9

Original independent claims 1 and 15 recite "a circuit . . . comprising a logic element and a register . . . [and] a phase-lock loop device . . . operatively coupled to the plurality of DDR memory devices, the logic element, and the register." Elements 1.3, 1.9, 15.3, 15.9. Original independent claim 28 features nearly identical language. Elements 28.3, 28.9. Original independent claim 39 similarly recites an "at least one integrated circuit element . . . comprising a logic element, a register, and a phase-lock loop device operationally coupled to the plurality of DDR memory devices, the logic element, and the register." Element 39.3.

During reexamination, Netlist amended claim 1 to include the following limitations relating to the register:

> [1.11] wherein, the register (i) receives, from the computer system, and (ii) buffers, in response to the PLL clock signal, a plurality of row/column address signals and the bank address signals, and (iii) transmits the buffered plurality of row/column address signals and the buffered bank address signals to the plurality of DDR memory devices,

July 31, 2016 Response Requesting to Reopen Prosecution at 48. Similar or identical language was added to claims 15, 28, and 39. *Id.* By this change, Netlist merely made express the inherent function of the register as claimed, and thus did not substantively change the scope of the claims.[2]

(2)    Elements 1.12, 15.12, 28.12, 39.5, and 39.10

Original claim 1 recites "the logic element receiving a set of input control signals from the computer system, the set of input control signals comprising at least one row/column address signal, bank address signals, and at least one chip-select signal." Element 1.4. Original claims 15, 28, and 39 recite similar limitations. *See* Elements 15.4, 28.4, 39.4.

During reexamination, Netlist amended claim 1 to include the following limitations relating to the register and the logic element:

> [1.12] wherein the at least one row/column address signal received by the logic element comprises at least one row address signal received by the logic element, and wherein the plurality of row/column address signals received by

---

[2] Original dependent claims 7, 26, 33 and 44 further support this interpretation.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 15 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

the register are separate from the at least one row address signal received by
the logic element,

July 31, 2016 Response Requesting to Reopen Prosecution at 48.  Similar or identical
language was added to claims 15, 28, and 39.  *Id.*  By this change, Netlist merely made express the
inherent function of the register and logic element as claimed, and thus did not substantively change
the scope of the claims.[3]

### c.    The Logic Element

Original claim 1 recites "the logic element receiving a set of input control signals from the
computer system, the set of input control signals comprising at least one row/column address signal,
bank address signals, and at least one chip-select signal."  Element 1.4.  Additionally, claim 1 recites
"the circuit generating a set of output control signals in response to the set of input control signals."
Element 1.6.  Original claims 15, 28, and 39 recite similar limitations.  Elements 15.4, 15.6, 28.4,
28.6, 39.4, 39.6.

During reexamination, Netlist amended claim 1 to include the following limitations relating
to the logic element:

> [1.13] wherein the logic element generates gated column access strobe (CAS)
> signals or chip-select signals of the output control signals in response to at
> least in part to (i) the at least one row address signal, (ii) the bank address
> signals, and (iii) the at least one chip-select signal of the set of input control
> signals and (iv) the PLL clock signal.

July 31, 2016 Response Requesting to Reopen Prosecution at 49.  Similar or identical
language was added to claims 15, 28, and 39.  *Id.*  By this change, Netlist merely made express the
inherent function of the logic element as claimed, and thus did not substantively change the scope
of the claims.

### B.    Google Is Not Entitled to Absolute Intervening Rights in Several New Claims

Claims 1, 15, 28, and 39 and their associated dependent claims are not subject to absolute
intervening rights for reasons articulated in Part I.A, which Netlist incorporates herein by reference.
Additionally, claims 77, 80, 82, 86, and 88 are not subject to absolute intervening rights because

---

[3] Original dependent claims 3, 4, 22, 25, and 42 further support this interpretation.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 16 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

1    they are substantially identical to original dependent claims 3 and/or 4.  *See Bloom*, 129 F.3d at

2    1250.

3    **II.**    **Equitable Intervening Rights**

4          As an initial matter, Google has represented that the only type of memory module accused

5    of infringement that Google is currently using are four-rank DDR4 LRDIMMs and DDR4

6    RDIMMs.  Google's July 16, 2021 Supplement Objections and Responses to Interrogatory No. 3

7    ("Google's July 16, 2021 Supp. R&Os") at 61-64.

8          Section 252, second paragraph, provides for the defense of equitable intervening rights for

9    claims that are not "substantially identical" to an original claim:

10         The court . . . may provide for the continued manufacture, use, offer for sale,
           or sale of the thing made, purchased, offered for sale, used, or imported as
11         specified, or for the manufacture, use, offer for sale, or sale in the United
           States of which substantial preparation was made before the grant of the
12         reissue, and the court may also provide for the continued practice of any
           process patented by the reissue that is practiced, or for the practice of which
13         substantial preparation was made, before the grant of the reissue, to the extent
           and under such terms as the court deems equitable for the protection of
14         investments made or business commenced before the grant of the reissue.

15         In *Visto Corp. v. Sprogit Tech., Inc.*, 413 F. Supp. 2d 1073 (N.D. Cal. 2006), the court

16   summarized six factors that courts may consider in the equitable intervening rights analysis: (1)

17   "whether 'substantial preparation' was made by the infringer before the reissue; (2) whether the

18   infringer continued manufacturing before reissue on advice of its patent counsel; (3) whether there

19   were existing orders or contracts; (4) whether non-infringing goods can be manufactured from the

20   inventory used to manufacture the infringing product and the cost of conversion;  (5) whether there

21   is a long period of sales and operations before the patent reissued from which no damages can be

22   assessed; and (6) whether the infringer has made profits sufficient to recoup its investment.  *Id.* at

23   1090.  Courts also generally deny equitable intervening rights where the accused infringer's conduct

24   was willful.  *See, e.g.*, *Shockley v. Arcan*, 248 F.3d 1349, 1361 (Fed. Cir. 2001).

25         **A.**    **The *Visto* Factors Weigh Against a Finding of Equitable Intervening Rights**

26         Google's evidence of "substantial preparation" from its investment activities in the accused

27   DDR4 LRDIMMs and DDR4 RDIMMs and associated servers is insufficient to support a finding

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 17 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

of equitable intervening rights.[4]  *See 2-Way Computing, Inc. v. Sprint Nextel Corp.*, No. 2:11-CV-12, 2014 WL 2960455, at *5 (D. Nev. June 27, 2014).

Google has not presented any evidence as to any advice of counsel that it relied on prior to the issuance of the reexamination certificate, or any design-around efforts.  *See* Google's July 16, 2021 Supp. R&Os at 64–81.  As such, the second *Visto* factor weighs against a finding of equitable intervening rights and Google's evidence of "substantial preparation" is entitled to little weight.  *See Visto*, 413 F. Supp. at 1091; *see also 2-Way*, 2014 WL 2960455, at *5.

Similarly, Google has not presented any evidence of profits derived from its operations of servers incorporating the accused DDR4 LRDIMMs and DDR4 RDIMMs.  During the 10-year reexamination Google purchased and made investments in the accused DDR4 LRDIMMs and DDR4 RDIMMs and the associated servers.  Google has presented no evidence regarding the profits generated by its use of the infringing products and operation of these servers.  Thus, the fifth and sixth *Visto* factors weigh against a finding of equitable intervening rights.  *See 2-Way*, 2014 WL 2960455, at *6.

### B.   Google's Willful Infringement and Unclean Hands Foreclose a Finding of Equitable Intervening Rights

Netlist incorporates by reference its allegations of willful infringement in its June 18, 2021 and April 8, 2010 infringement contentions.

Google is not entitled to equitable intervening rights also because it willfully infringed the '912 patent and acted with unclean hands.  *Shockley*, 248 F.3d at 1360-61.

Google's pre-suit knowledge of the '912 patent is sufficient to support a finding of willful infringement.  The '912 patent is a continuation of U.S. Patent No. 7,289,386 (the "'386 patent").  Google representatives and employees attended several meetings with Netlist as early as 2006, where Netlist shared the rank multiplication technology covered by the '386 and '912 patents.

---

[4] Notably, all of Google's relied-upon investments in the accused DDR4 LRDIMMs and DDR4 RDIMMs and associated servers were made after Google became aware of the '912 patent and after claim 16 was confirmed as valid by the PTO during the reexamination of the '912 patent. *See* Google's July 16, 2021 Supp. R&Os at 64–81; April 4, 2011 Non-Final Office Action, at 21-22, 24.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 18 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

Netlist and Google subsequently engaged in licensing discussions, and on May 5, 2008 and June 4, 2008, Netlist sent two letters to Eric Schmidt, then CEO of Google, regarding Google's use of memory modules that potentially infringed the technology claimed in the '386 patent.  In July 2008, Netlist met with Google and made a presentation to Google's counsel describing the '386 Patent and its relationship to the JEDEC AMB Quad Rank Support Standard.  On August 29, 2008, Google filed a declaratory judgment action against Netlist regarding the '386 patent.  *Google v. Netlist*, 08-cv-4144 (N.D. Cal.) (the "Declaratory Judgment Action").  In both this case and in the Declaratory Judgment Action, Google conducted discovery relating to Netlist's technologies embodying the '386 and '912 patents.  Google's pre-suit conduct is sufficient to support a finding of willful infringement.

After Netlist filed this lawsuit on December 4, 2009, Google continued to, among other things, purchase, make, use, and/or have made for it the memory modules that were accused of infringement and operate servers incorporating these memory modules.  Google's infringing activities also continued throughout the duration of the reexamination.  Notwithstanding the fact that claim 16's validity was confirmed as early as April 4, 2011, Google continued its infringing conduct by among other things, purchasing, making, using, and/or having made for it memory modules and servers incorporating the accused memory modules.  Furthermore, on information and belief, Google has made efforts to keep information of its use of these infringing instrumentalities and the related investments confidential and away from public access.

As such, Google's egregious conduct constitutes willful infringement and unclean hands that foreclose its assertion of an equitable intervening rights defense.  *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 756 F.2d 1574, 1579 (Fed. Cir. 1985); *Visto Corp.*, 413 F. Supp. 2d at 1090.

**<u>INTERROGATORY NO. 19</u>**:

If you contend that Netlist could not have asserted claim 16 of the '912 Patent in its original form prior to January 25, 2011, state the full factual and legal basis for your contention, including an identification of any limitation of claim 16 that you contend is missing from products that Netlist had accused of infringement prior to that date.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 19 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

**NETLIST'S RESPONSE TO INTERROGATORY NO. 19**:

Netlist incorporates by reference its General Objections.

Netlist objects to this Interrogatory to the extent that it seeks information that is exempt from discovery under the attorney-client communication privilege, the attorney-work-product doctrine, or any other applicable privilege, immunity, or protection as provided by any applicable law.

Netlist objects to this Interrogatory on the ground that it is overly broad, unduly burdensome, vague, and ambiguous.  In particular, Netlist objects to the terms "missing," and "original form" as vague, ambiguous, and subject to multiple meanings.  Netlist objects to the extent that the Interrogatory seeks information not calculated to lead to the discovery of admissible evidence.  Netlist further objects to this Interrogatory to the extent it calls for irrelevant information containing proprietary, highly confidential, competitively sensitive, trade secret, and/or private information. Specifically, documents or communications regarding Netlist's patent infringement allegations against a third party are irrelevant to either party's claim or defense in this case.  Netlist objects to the extent that this Interrogatory seeks the information that is in the public domain or are publicly available.  Netlist further objects to this Interrogatory to the extent it seeks documents that are subject to and protected by the attorney-client privilege, attorney work-product doctrine, common interest, and/or any other applicable privilege or protection.  Discovery and Netlist's investigation are ongoing.   Netlist is continuing its investigation of Google's use of the claimed technology. Netlist reserves the right to supplement its response to this Interrogatory as appropriate.

Subject to and without waiving the foregoing objections, and to the extent Netlist understands this Interrogatory, Netlist responds as follows:

The '912 patent was issued on November 17, 2009.  Original claim 15 of the '912 patent recited:

> A memory module connectable to a computer system, the memory module comprising:
>
> a printed circuit board;
>
> a plurality of double-data-rate (DDR) memory devices coupled to the printed circuit board, the plurality of DDR memory devices having a first number of DDR memory devices arranged in a first number of ranks;

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 20 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

a circuit coupled to the printed circuit board, the circuit comprising a logic element and a register, the logic element receiving a set of input signals from the computer system, the set of input signals comprising at least one row/column address signal, bank address signals, and at least one chip-select signal, the set of input signals configured to control a second number of DDR memory devices arranged in a second number of ranks, the second number of DDR memory devices smaller than the first number of DDR memory devices and the second number of ranks less than the first number of ranks, the circuit generating a set of output signals in response to the set of input signals, the set of output signals configured to control the first number of DDR memory devices arranged in the first number of ranks, wherein the circuit further responds to a command signal and the set of input signals from the computer system by selecting one or two ranks of the first number of ranks and transmitting the command signal to at least one DDR memory device of the selected one or two ranks of the first number of ranks; and

a phase-lock loop device coupled to the printed circuit board, the phase-lock loop device operatively coupled to the plurality of DDR memory devices, the logic element, and the register.

'912 patent at 34:25-57.

Claim 16 of the '912 patent was originally a dependent claim associated with independent claim 15, and recited: "The memory module of claim 15, wherein the command signal is transmitted to only one DDR memory device at a time." *Id.* at 34:58-60. Claim 16 of the '912 patent is the only original claim reciting the limitation "wherein the command signal is transmitted to only one DDR memory device at a time."

The present suit commenced on Dec. 4, 2009. Dkt. 1. Netlist served its Disclosure of Asserted Claims and Infringement Contentions on April 8, 2010 accusing certain DDR2 FBDIMM products of infringement of claims 1, 3, 4, 6-11, 15, 18-22, 24-25, 27-29, 31-34, 36-39, 41-45, and 50 of the '912 patent. *See* Netlist's April 8, 2010 Disclosure of Asserted Claims and Infringement Contentions at 1. These products were understood to be compliant with certain portions of the JEDEC standards and specification for DDR2 FBDIMMs. *See id.* at 4-7.

Google, along with Smart Modular Technologies Inc. ("SMART"), and Inphi Corporation ("Inphi"), sought reexamination of the '912 Patent. Dkt. 66 at 1. The USPTO ordered *inter partes* reexamination, and merged the proceedings brought by Google, SMART, and Inphi (the "Joint Defense Group"). April 4, 2011 Non-Final Office Action at 2. The parties raised grounds for

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 21 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

1  rejection and arguments against claim 16.[5]  The present litigation was stayed in January 2011

2  pending the result of the *inter partes* reexamination.  Dkt. 68.

3      Following conclusion of the reexamination, the Court ordered that Netlist amend its

4  infringement contentions by June 18, 2021. Dkt. 117.  Netlist amended its infringement contentions

5  to assert claim 16 only against memory modules compliant with portions of the JEDEC standards

6  for DDR4 RDIMMs, LRDIMMs, and NVDIMMs.  *See* Netlist's June 18, 2021 Amended Disclosure

7  of Asserted Claims and Infringement Contentions at 2.  *Id.*[6]  Netlist asserted that standard-compliant

8  DDR4 DIMMs infringe claim 16 when operating in the per-DRAM addressability mode ("PDA").

9  *See id.* at 26-31; 33-38.

10     The PDA feature is defined in the JEDEC DDR4 SDRAM specification 79-4C ("JESD 79-

11  4C").  As explained in JESD 79-4C: "DDR4 allows programmability of a given device on a rank.

12  As an example, this feature can be used to program different ODT or $V_{ref}$ values on DRAM devices

13  on a given rank."  JESD 79-4C (Jan. 2020) at 63.[7]  JESD 79-4C provides a detailed overview of the

14  PDA feature, including descriptions and timing diagrams.  *See id.* at Section 4.14.  This feature was

15  first introduced in the standards and specifications for DDR4.

16     The standards for DDR4 were published in September 2012,[8] after the stay in this case was

17  put in place on January 25, 2011.  As such, there was no reason for Netlist to allege that Google was

18  using DDR4 RDIMMs, LRDIMMs, or NVDIMMs prior to the stay in this case.  Moreover, Netlist

19  had limited knowledge about the type of DIMMs Google was incorporating into its servers prior to

20  January 25, 2011.  *See, e.g.*, March 11, 2010 Deposition of Andrew Dorsey in Case No. 08-cv-4144,

21  16:4-19:2, 97:22-25.

22  _____

23  [5] In an email exchange between counsel on July 22, 2021, counsel for Google asserted that

24  "█████████████████████████████████."  July 22, 2021 Email from Tse to Sheasby.

25  [6] On May 19, 2021, Netlist provided Google with Netlist's first amended claim chart asserting claim 16 against memory modules compliant with portions of the JEDEC standards for

26  DDR4 RDIMMs and LRDIMMs.

27  [7] References to JESD 79-4C include all present and past versions unless noted otherwise.

28  [8] Main Memory: DDR4 & DDR5 SDRAM, JEDEC, *available at* https://www.jedec.org/category/technology-focus-area/main-memory-ddr3-ddr4-sdram.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 22 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

1       Google's recent productions further corroborate that DDR4 DIMMs could not have been

2 accused pre-stay because Google did not start ████████████████████████████████████████

3 ████████████████  *See, e.g.*, Google's July 16, 2021 Supp. R&Os at 35-38, 61-75.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

**INTERROGATORY NO. 20**

If you contend that claim 16 of the '912 Patent in its original form reads on any section of the JEDEC standards for DDR2, DDR3, or DDR4, identify all such sections, along with the date and circumstances surrounding your determination that claim 16 reads on each section.

**NETLIST'S RESPONSE TO INTERROGATORY NO. 20**:

Netlist incorporates by reference its General Objections.

Netlist objects to this Interrogatory to the extent that it seeks information that is exempt from discovery under the attorney-client communication privilege, the attorney-work-product doctrine, or any other applicable privilege, immunity, or protection as provided by any applicable law.

Netlist objects to this Interrogatory on the ground that it is overly broad, unduly burdensome, vague, and ambiguous. In particular, Netlist objects to the terms "circumstances," "determination," "reads on," "original form," and "JEDEC standards" as vague, ambiguous, and subject to multiple meanings. Netlist objects to this Interrogatory to the extent that it is not proportional to the needs of the case and that it seeks information irrelevant to the subject matter involved in the pending action. Netlist objects to the extent that the Interrogatory seeks information not calculated to lead to the discovery of admissible evidence. Netlist objects to this Interrogatory because it does not provide any temporal limitation. Netlist objects to this Interrogatory to the extent it calls for irrelevant information containing proprietary, highly confidential, competitively sensitive, trade secret, and/or private information. Specifically, information relating to DDR2 or DDR3 is irrelevant because Netlist does not contend that claim 16 of the '912 patent reads on the JEDEC standards for DDR2 or DDR3 in the Amended Disclosure of Asserted Claims and Infringement Contentions dated June 18, 2021. Netlist objects to this Interrogatory as compound and consisting of multiple discrete subparts constituting separate Interrogatories. Netlist objects to this Interrogatory as premature, including to the extent it seeks expert analyses and opinions prior to the time for such disclosure completed by Federal Rule of Civil Procedure 26 and the Court's orders in this case, or relates to theories that have not yet been developed or could not yet have been developed. Specifically, the identification of whether claim 16 reads on memory modules that were in existence prior to January

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 24 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

25, 2011 requires expert analysis. Discovery and Netlist's investigation are ongoing. Netlist reserves the right to supplement its response to this Interrogatory as appropriate.

Subject to and without waiving the foregoing objections, and to the extent Netlist understands this Interrogatory, Netlist responds as follows: Netlist incorporates by reference its infringement contentions.

Dated: August 11, 2021                     Respectfully submitted,

IRELL & MANELLA LLP

By: */s/  Jason G. Sheasby*

Jason G. Sheasby
jsheasby@irell.com
Andrew J. Strabone
astrabone@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

*Attorneys for Plaintiff Netlist, Inc.*

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

- 25 -

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of Netlist, Inc.'s Responses and Objections to Google LLC's Second Set of Interrogatories to Plaintiff Netlist, Inc. (Nos. 18-20) was served on counsel of record for Google LLC via electronic mail on August 11, 2021.

*/s/ Michael Tezyan*
Michael Tezyan

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

NETLIST'S RESPONSES AND OBJECTIONS TO GOOGLE'S
SECOND SET OF INTERROGATORIES
4:09-CV-05718-SBA

- 26 -