QUINN EMANUEL URQUHART & SULLIVAN, LLP

David Perlson (CA Bar No. 209502)
davidperlson@quinnemanuel.com
Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jared Newton (admitted *pro hac vice*)
jarednewton@quinnemanuel.com
Deepa Acharya (CA Bar No. 267654)
deepaacharya@quinnemanuel.com
Sandy Shen (admitted *pro hac vice*)
sandyshen@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Catlin Williams (CA Bar No. 336464)
catwilliams@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:09-CV-05718-RS<br><br>**DEFENDANT GOOGLE LLC'S OPPOSITION TO NETLIST, INC'S MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS**<br><br>**JUDGE**: Hon. Richard Seeborg<br>**HEARING DATE**: June 23, 2022<br>**TIME**: 1:00 PM PT |

# **TABLE OF CONTENTS**

**Page**

I.    FACTUAL BACKGROUND ............................................................2

    A.    Netlist's Existing Contentions Were Limited To 4-Rank Devices ...........................2

    B.    The New Products And New Infringement Theories Could Have Been Disclosed in Netlist's June 2021 Infringement Contentions ......................................3

II.   LEGAL STANDARD ...............................................................4

III.  ARGUMENT .......................................................................4

    A.    Netlist Fails To Show Diligence In Amending Its Infringement Contentions ..........4

        1.    Netlist Did Not Include—But Could Have Included—Its New Products And New Theories In Its June 2021 Contentions ..........................5

        2.    Even Assuming Netlist Needed Confidential Information to Accuse Claim 16, It Failed to Diligently Pursue That Discovery ............................7

        3.    Even When Netlist Received Confidential Information, Netlist Did Not Diligently Move to Amend Its Contentions .........................................11

        4.    Netlist's Diligence Arguments Are Undermined By Its Wait-and-See Approach ...............................................................................13

    B.    The Addition Of Two New Categories Of Accused Products And New Infringement Theories Is Unduly Prejudicial To Google.......................................15

        1.    Google Will Be Unduly Prejudiced By the Addition Of New Products and Infringement Theories ...........................................................15

        2.    Netlist's Cited Cases Are Inapposite..........................................................18

IV.   CONCLUSION ...................................................................19

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

<u>Cases</u>

3

4
*Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*,
No. C05-03117 MJJ, 2007 WL 2221029 (N.D. Cal. July 30, 2007) ............................... 11

5
*Advanced Micro Devices, Inc. v. LG Elecs., Inc.*,
No. 14-cv-01012, 2017 WL 732896 (N.D. Cal. Feb. 24, 2017) ........................................ 4

6

7
*Apple Inc. v. Samsung Elecs. Co.*
8-rank and 16-rank DIMMs here. No. 12-cv-630,
2012 WL 5632618 (N.D. Cal. Nov. 15, 2012) .................................................................. 13

8

9
*ASUS Computer Int'l v. Round Rock Rsch., LLC*,
No. 12-CV-02099-JST, 2014 WL 12642006 (N.D. Cal. Mar. 2, 2014) ........................... 11

10
*Cisco Sys., Inc. v. Teleconference Sys., LLC.*,
No. 09-CV-01550 JSW (NC), 2012 WL 9337627 (N.D. Cal. June 11, 2012) ........... 14, 15

11

12
*Dynetix Design Sols. Inc. v. Synopsys Inc.*,
No. CV 11-05973 PSG, 2012 WL 6019898 (N.D. Cal. Dec. 3, 2012) ............................. 15

13
*EON Corp IP Holdings LLC v. Aruba Networks Inc*,
No. 12-CV-01011-JST, 2013 WL 12174305 (N.D. Cal. July 30, 2013) .................. 5, 6, 10

14

15
*Facebook, Inc. v. BlackBerry Ltd.*,
No. 18CV05434JSWJSC, 2019 WL 8013872 (N.D. Cal. Sept. 17, 2019) .................... 4, 18

16
*Finjan, Inc. v. SonicWall, Inc.*,
No. 17CV04467BLFVKD, 2020 WL 1139641 (N.D. Cal. Mar. 9, 2020)................. 4, 6, 14

17

18
*FullView, Inc. v. Polycom, Inc.*,
No. 18-cv-00510-EMC, 2021 WL 1668017 (N.D. Cal. April 28, 2021) ............................ 4

19
*Google, Inc. v. Netlist, Inc.*,
Nos. C 08-4144 SBA, 2010 WL 1838693 (N.D. Cal. May 5, 2010) ........................ 7, 9, 10

20

21
*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
No. 14-CV-00876-RS(JSC), 2016 WL 7386136 (N.D. Cal. Dec. 21, 2016).............. 10, 18

22
*KlausTech, Inc. v. Google, Inc.*,
No. 10CV05899JSWDMR, 2017 WL 4808558 (N.D. Cal. Oct. 25, 2017)................... 4, 10

23

24
*Mediatek, Inc. v. Freescale Semiconductor, Inc.*,
No. 11-5341 YGR JSC, 2013 WL 588760 (N.D. Cal. Feb. 13, 2013)............................... 15

25
*O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*,
467 F.3d 1355 (Fed. Cir. 2006) ......................................................................................... 4

26

27
*Oyster Optics, LLC v. Ciena Corp.*,
No. 20-CV-02354-JSW(LB), 2022 WL 561931 (N.D. Cal. Feb. 24, 2022) ...................... 9

28

*PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*,
  2016 WL 7888034 (N.D. Cal. July 25, 2016) ..................................................................... 5

*Samsung Electronics Co., Ltd. et al. v. Netlist, Inc.*,
  No. 1:21-cv-01453-RGA (D. Del.) ................................................................................. 2

*Seiko Epson Corp. v. Coretronic Corp.*,
  No. 06-cv-6946, 2008 WL 2563383 (N.D. Cal. June 23, 2008) ...................................... 18

*Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*,
  No. 3:18-CV-01188-WHO, 2019 WL 8403819 (N.D. Cal. Apr. 1, 2019) ................... 4, 18

*Speedtrack, Inc. v. Endeca Techs., Inc.*,
  524 F. App'x 651 (Fed. Cir. 2013) ................................................................................. 9

*Sunpower Corp. Sys. v. Sunlink Corp.*,
  No. C-08-2807 SBA(EMC), 2009 WL 1657987 (N.D. Cal. June 12, 2009) ..................... 4

*Symantec Corp. v. Acronis Corp.*,
  No. 11-5310 EMC(JSC), 2013 WL 5368053 (N.D. Cal. Sept. 25, 2013).......................... 10

*Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*,
  No. 13-cv-05184, 2014 WL 5499511 (N.D. Cal. Oct. 30, 2014)....................................... 18

*Trusted Knight Corp. v. Int'l Bus. Machines Corp.*
  (IBM), No. 19,-CV-01206................................................................................................ 1

*Vasudevan Software, Inc. v. Microstrategy, Inc.*,
  No. C 11-06637 RS, 2012 WL 12920633 (N.D. Cal. Nov. 21, 2012) ............................... 9

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
  236 F. Supp. 3d 1110 (N.D. Cal. 2017) .......................................................................... 4

*Word to Info Inc. v. Facebook Inc.*,
  No. 15-cv-03485-WHO, 2016 WL 6276956 (N.D. Cal. Oct. 27, 2016)........................... 11

*X.Commerce, Inc. v. Express Mobile, Inc.*,
  No. 17-CV-02605-RS, 2020 WL 2110799 (N.D. Cal. Mar. 10, 2020)............................. 15

*XpertUniverse, Inc. v. Cisco Sys., Inc.*
  No. 17-cv-3848-RS, 2019 WL 3413287 (N.D. Cal. July 29, 2019) .......................... 13, 18

*Yodlee, Inc. v. CashEdge, Inc.*,
  2007 WL 1454259 (N.D.Cal. May 17, 2007) .................................................................. 4

## Rules and Regulations

Local Rule 3-1(c) .................................................................................................. 5, 6

1    After the Court granted summary judgment on all its claims except one, and after the Court

2    ruled that only 4-rank DIMMs are accused in the case, Netlist now moves for leave to amend its

3    infringement contentions to add 8-rank and 16-rank DIMMs as accused products, asserting new

4    theories.  Netlist's wait-and-see approach undermines the policies in the Patent Local Rules to

5    "ensure early crystallization of the parties' theories and specifically, to place the burden on the

6    plaintiff to quickly decide on and disclose the contours of its case." *Trusted Knight Corp. v. Int'l*

7    *Bus. Machines Corp. (IBM)*, No. 19-CV-01206-EMC, 2021 WL 5205522, at *2 (N.D. Cal. Nov. 9,

8    2021).

9    There is no justification for Netlist's delay.  Netlist's primary argument is that it needed the

10   October 2021 confidential discovery from Google to accuse 8-rank and 16-rank DIMMs. Dkt. 268-

11   3 ("Mot.") at 1, 3, 4-6. But that argument fails for multiple reasons.  For example, all of Netlist's

12   proposed amendments to its contentions are based on public JEDEC specifications.  Ex. 10.[1]  If

13   Netlist believed claim 16 read on the portions of those public specifications describing 8-rank and

14   16-rank DIMMs, then Netlist should have included those devices in its June 2021 contentions, *i.e.,*

15   operative contentions.  Indeed, in its Motion, Netlist continues to assert that it at least intended to

16   accuse 8-rank and 16-rank DIMMs in its June 2021 contentions (Mot. 3, 10, 13), even though the

17   Court found that the contentions did not do so. Dkt. 258 ("Order") at 36.  And Netlist is attempting

18   to accuse 16-rank DIMMs, even though Google has already stated that it did not purchase or use

19   16-rank DIMMs.   In any event, by July 2021, Netlist admits Google produced confidential

20   documents related to Google's use of 8-rank DIMMs.  Mot. 6.  But Netlist did not seek to add 8-

21   rank DIMMs at that time either.  There were other instances of lack of diligence as well, as detailed

22   further below.

23   Further, as shown below, Google would also be prejudiced by Netlist's proposed

24   amendments.  Google produced significant discovery based on Netlist's operative contentions, the

25   parties both moved for summary judgment on absolute intervening rights based on Netlist's

26   operative contentions, and the Court made its rulings based on these contentions.  Order at 44.   If

27

28

---

[1] The numbered exhibits herein refer to the exhibits filed in support of Netlist's Motion.

Netlist's Motion is granted, Google would now need to investigate the new accused products and new infringement theories, supplement discovery, identify and prepare potential deposition witnesses, and revisit its defenses. All of this is on top of the extensive work that would already remain to be done if the case is not stayed.[2]

The Court should deny Netlist's Motion.

# I.    FACTUAL BACKGROUND

## A.    Netlist's Existing Contentions Were Limited To 4-Rank Devices

Netlist's December 2009 Complaint asserted U.S. Pat. No. 7,619,912 ("the '912 Patent") and identified one category of accused products: 4-rank FBDIMMs. Dkt. 1. In April 2010, Netlist served its original infringement contentions and again identified 4-rank FBDIMMs as the only category of accused products. Dkt. 153-3 (Netlist's 2010 infringement contentions cover pleading). Following the reexamination proceedings against the '912 Patent, the stay in this case was lifted and Netlist served amended contentions on June 18, 2021. Ex. A[3] (Netlist's June 18, 2021 infringement contentions). The cover pleading to the contentions identified four additional categories of accused products, all of which were also 4-rank DIMMs. *Id.* at 1-3. Netlist asserted claim 16 of the '912 Patent against three of those categories—DDR4 RDIMMs, DDR4 NVDIMMs, and DDR4 LRDIMMs—and specifically relied on 4-rank functionality (*i.e.*, Encoded QuadCS mode) to support those allegations:

> In ***Encoded QuadCS mode***, the DDR4 RCD specification provides for the generation of four chip select signals, one for each rank of a ***quad rank*** DDR4 RDIMM or LRDIMM by decoding the two input chip select signals using another input signal, namely DC0, as the encoding input.

*Id.*, at Ex. B at 21. Netlist's June 2021 contentions further state:

> JESD 82-31A thus demonstrates that in ***Encoded Quad CS Mode***, the set of input signals is configured to control a second number of DDR memory devices (198) smaller than the first number of DDR memory devices (36), and the second number of ranks (2) less than ***the first number of ranks (4)***.

---

[2]    Google will file this week a motion to stay the litigation pending resolution of *Samsung Electronics Co., Ltd. et al. v. Netlist, Inc.*, No. 1:21-cv-01453-RGA (D. Del.).

[3]    The lettered exhibits herein refer to the exhibits attached to the Declaration of Jonathan Tse ("Tse Decl.").

*Id.*, at Ex. B at 22.  Notably, Netlist's June 2021 contentions did not identify 8-rank and 16-rank devices as accused products.  *See* Ex. A; *id.*, Ex. B.  Nor did the contentions include any theory of infringement based on so-called die-stacking technology.  *See* Ex. A; *id.*, Ex. B.  The Court recognized the limited scope of Netlist's June 2021 contentions in its recent order on summary judgment.  Dkt. 258 at 36 ("At present . . . Netlist has only accused the five categories of 4-Rank DIMMs addressed in Google's motion.  Google need not address products not presently at issue.").

**B.     The New Products And New Infringement Theories Could Have Been Disclosed in Netlist's June 2021 Infringement Contentions**

Netlist now seeks leave to add two new categories of accused products: 8-rank and 16-rank DIMMs based on new infringement theories related to die-stacking technology.  This is a significant change.  Indeed, these new products are both different physically and in some cases logically–their inclusion would necessarily expand the scope of claim 16 based on the new theories in Netlist's proposed contentions.  This can be readily seen in the fact that Netlist seeks to add approximately six pages to its 38-page operative contentions, including explanatory paragraphs and new excerpts and figures from existing and new JEDEC standards not previously included in its June 2021 contentions to describe dual-die package ("DDP") DRAM or stacked 3DS package ("3DS") DRAMs.  *See* Ex. 10 at 15-16, 23-26, 30.  The sheer amount of proposed amendments evident from the redlines Netlist attaches to its Motion itself demonstrates that Netlist is adding new products *and* theories to its proposed contentions.  *See id.*

Netlist relies on a new infringement theory of die-*stacking* technology for *dual*-die package DRAM or *stacked* 3DS package DRAM, to support its addition of the 8-rank and 16-rank DIMMs.  Mot. 10-12; Ex. 10 at 15-16, 23-26, 30.  Netlist did not rely on its new infringement theory of die-stacking technology, including DDP or 3DS DRAMs, in its operative contentions against 4-rank DIMMs.  In its Motion, Netlist further relies on a Synopsys White Paper (Ex. 8), which was not included in its June 2021 contentions but was published in February 2019, to provide additional details for the first time related to DDP and 3DS DRAM and to assert, among other things, that 3DS DRAM may support up to 16 ranks.  Mot. 11.  That Netlist's proposed contentions add this new, purported evidentiary support makes the change in theory clear.

## II.    LEGAL STANDARD

The Patent Local Rules "require parties to state early in the litigation and with specificity their contentions with respect to infringement and invalidity." *O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006). The Patent Local Rules are "designed to prevent the parties from shifting their theories in reaction to adverse substantive rulings." *Yodlee, Inc. v. CashEdge, Inc.*, 2007 WL 1454259, at *2 (N.D.Cal. May 17, 2007). Because of the need for certainty, the "philosophy behind amending claim charts is decidedly conservative" compared to the more generous standard for amending pleadings." *Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*, No. 3:18-CV-01188-WHO, 2019 WL 8403819, at *2 (N.D. Cal. Apr. 1, 2019) (citation omitted). Netlist bears "the burden of demonstrating good cause," which "exists where the moving party has acted diligently and the opposing party will not be prejudiced." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1112 (N.D. Cal. 2017). Lack of prejudice and diligence are independent requirements; if one or the other is missing, then leave to amend should be denied. *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, No. 14-cv-01012, 2017 WL 732896, at *2 (N.D. Cal. Feb. 24, 2017); *see also FullView, Inc. v. Polycom, Inc.*, No. 18-cv-00510-EMC, 2021 WL 1668017, at *3-*5 (N.D. Cal. April 28, 2021) ("[U]nder Patent Local Rule 3–6, if there is no diligence, the amendment may be denied without a showing of prejudice."); *Finjan, Inc. v. SonicWall, Inc.*, No. 17CV04467BLFVKD, 2020 WL 1139641, at *5 (N.D. Cal. Mar. 9, 2020) ("[T]he Court need not reach the question of prejudice unless it is satisfied that Finjan has been diligent in seeking amendment"); *KlausTech, Inc. v. Google, Inc.*, No. 10CV05899JSWDMR, 2017 WL 4808558, at *6 (N.D. Cal. Oct. 25, 2017) ("Because [the patentee] has not met its burden of establishing diligence, the court does not reach the issue of prejudice . . . .").

## III.    ARGUMENT

### A.    Netlist Fails To Show Diligence In Amending Its Infringement Contentions

Diligence is "the critical issue" for good cause. *Facebook, Inc. v. BlackBerry Ltd.*, No. 18CV05434JSWJSC, 2019 WL 8013872, at *4 (N.D. Cal. Sept. 17, 2019) (quoting *Sunpower Corp. Sys. v. Sunlink Corp.*, No. C-08-2807 SBA (EMC), 2009 WL 1657987, at *1 (N.D. Cal. June 12, 2009)). The moving party bears the burden of showing it acted diligently. *O2 Micro*, 467 F.3d at

1366.  Netlist has not shown that it was diligent at any stage in seeking to amend its infringement

contentions.  Rather, the record shows just the opposite.

### 1. Netlist Did Not Include—But Could Have Included—Its New Products And New Theories In Its June 2021 Contentions

As detailed above, Netlist's operative contentions are limited to 4-rank DIMMs.  *See supra*,

§ I.A.  Yet, Netlist repeatedly asserted that these June 2021 contentions *did* include 8-rank and 16-

rank DIMMs.  For example, in September 2021, Netlist contended that 8-rank and 16-rank DIMMs

were accused in its June 2021 contentions based on its allegation in its cover pleading that it also

accused "products that operate in substantially similar manner" to the accused 4-rank DIMMs.  Ex.

7 at 3; *see also* Dkt. 197 at 24 (claiming that "Google has not properly disclosed all the Accused

Products" and accusing Google of "withh[o]lding information on its 8-rank and 16-rank DIMM

products").  Netlist made the same argument in October in its Opposition to Google's Motion to

Amend its Answer and Counterclaims.  Dkt. 211-4 at 14-15 & n.3.  Netlist continues to press the

same argument that the Court already rejected (Order at 36, 39) in its Motion.  Mot. 1, 8-9.

Netlist's argument is self-defeating.  In support of its alleged diligence, Netlist argues it

needed the confidential information to allege Google infringes claim 16 based on 8-rank and 16-

rank DIMMs.  Mot. 7.  While the Court correctly rejected in its Order that 8-rank and 16-rank

DIMMs were actually accused products in Netlist's operative contentions (Order at 36), Netlist

maintains in its Motion that it intended to accuse 8 and 16 Rank DIMMs in its operative contentions.

Mot. 3, 10, 13.  Thus, by Netlist's own admission, it should have accused the 8 and 16 Rank DIMMs

when it served its contentions in June 2021.  Patent Local Rule 3-1(c) requires patentees to identify

accused products "as specific as possible" and provide infringement contentions ***before*** receiving

any confidential information from the accused infringer.  Patent Local Rule 3-1(c); *see also*

*PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*, 2016 WL 7888034, at *1-2 (N.D. Cal. July

25, 2016) (denying leave to amend to accuse a separate product that was released prior to the lawsuit

that it should have been aware of when it served its preliminary infringement contentions); *EON*

*Corp IP Holdings LLC v. Aruba Networks Inc*, No. 12-CV-01011-JST, 2013 WL 12174305, at *3

(N.D. Cal. July 30, 2013) (finding a lack of diligence where it "should have been clear" to the

1  patentee to include the proposed accused products earlier based on publicly available materials and

2  the patentee "provide[d] no information about the efforts it took to diligently investigate").

3       Netlist cannot argue that it did not have the evidence it needed to map 8-rank and 16-rank

4  DIMMs to claim 16 in June 2021.  Netlist's proposed amendments (*see supra*, § I.B) ***exclusively***

5  cite public materials that were available as of June 18, 2021, not any confidential information.  For

6  example, Netlist's proposed contentions rely on JESD 82-31A (Ex. 5) and JESD 79-4-1B (Ex. 4)

7  and its Motion additionally relies on the Synopsys White Paper (Ex. 8).  These documents were

8  published in August 2019, February 2021, and February 2019, respectively.  Indeed, 8-rank DIMMs

9  were in use by at least 2014, if not earlier.  Ex. B.  16-rank DIMMs were being developed by at least

10  2014.  Ex. C.  Moreover, DDP and 3DS die-stacking technology were in use at least by 2011, if not

11  earlier.  Ex. K.  Netlist's proposed contentions do not rely on ***any*** Google confidential information

12  produced in discovery.  *Finjan*, 2020 WL 1139641, at *4 ("Critical to [the diligence] inquiry is the

13  connection between the proposed amendments and the newly discovered evidence.") (citation

14  omitted).  While good cause may be found based on "[r]ecent discovery of ***nonpublic*** information,"

15  (Patent Local Rule 3-1(c)), that is clearly not the case here.

16       Netlist's operative contentions also contradict Netlist's position that it needed confidential

17  information before it could accuse these new products.  In its June 2021 contentions, Netlist accused

18  DDR3 LRDIMMs without any confidential information from Google demonstrating its use or

19  purchase of these products.  Ex. A at 2; *id.*, at Ex. C.  Rather, Netlist relied entirely on public JEDEC

20  standards to support its infringement theory as to DDR3 LRDIMM in an 183-page claim chart.  *See*

21  *id.*, at Ex. C.  DDR3 LRDIMM was not even one of the categories that Google represented it had

22  purchased in Q1 2021.  Dkt. 211-6 (May 19, 2021 Interrogatory Response by Google) at 7-8.  Just

23  like it identified DDR3 LRDIMMs as accused products back in June 2021, Netlist should have also

24  identified 8-rank and 16-rank DIMMs in those contentions if it believed, as it ***still*** continues to assert,

25  it had a basis to do so.

26       Netlist's request to add 16-rank DIMMs to its proposed contentions further undermines its

27  position.  In October 2021, Google informed Netlist it did not purchase ***any*** 16-rank DIMMs.  Ex.

28  3 at 82, 83 ("Based on a reasonable investigation, including an analysis of Google's purchasing

1    information, Google has determined that it neither purchased nor used 16-rank DIMMs before

2    February 8, 2021" or "on or after February 8, 2021.").  Yet, Netlist still seeks to add 16-rank DIMMs

3    to its infringement contentions.  In other words, even when Google confirms it does **not** use

4    something, Netlist still seeks to accuse them.  This demonstrates that even now, Netlist's position

5    that it needed confidential information regarding what Google used or did not use to allege products

6    infringe is simply a cover for its failure to timely add these products in this case.[4]

7              **2.       Even Assuming Netlist Needed Confidential Information to Accuse**
                          **Claim 16, It Failed to Diligently Pursue That Discovery**

8

9              Taking at face value Netlist's argument that it needed confidential information in discovery

10   before it could accuse 8-rank and 16-rank DIMMs, Netlist still fails to show it was diligent in

11   pursuing the discovery.  Google has long made clear it would only provide discovery regarding what

12   was actually accused in Netlist's June 2021 infringement contentions.  The primary issue for

13   diligence "is not *when* [the moving party] discovered this information, but rather, whether they *could*

14   *have* discovered it earlier had it acted with the requisite diligence."  *Google, Inc. v. Netlist, Inc.*, No.

15   C 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010) (emphases in original) (stating

16   that the burden is on the party seeking to amend its contentions "to establish diligence rather than

17   on the opposing party to establish a lack of diligence") (citation omitted).

18             Since as early as May 2021, Google provided information related to the accused 4-rank

19   DIMMs and stated that it would not provide discovery on unaccused products.  Dkt. 211-6 at 3, 7-

20   8.  Netlist's April 2021 Interrogatories broadly defined "Memory Module" to mean "a printed circuit

21   _____

22   [4]   Netlist's Motion only explicitly seeks leave to amend its infringement allegations against claim
     16 to add 8-rank and 16-rank DIMMs as accused products.  Mot. 3 (asserting that its "proposed

23   amendment does not assert new claims of the '912 patent."); Ex. 10 at 1 (only additionally
     identifying 8-rank and 16-rank DIMMs).  Accordingly, Google addresses this scope of requested

24   relief herein as to claim 16 and 8-rank and 16-rank DIMMs.  Netlist appears to insinuate elsewhere
     in its Motion and proposed order that it is purportedly entitled to broader relief on additional,

25   unidentified claims and DIMMs.  Mot. at 13 (requesting to assert multiple "claim*s* explicitly against
     8-rank and 16-rank DDR DIMMs" (emphasis added); Dkt. 269-2 (same); Mot. 3 (arguing that its

26   proposed contentions encompass not just 4-rank, 8-rank, or 16-rank DIMMS but "*all* DDR
     DIMMs, regardless of rank") (emphasis in original).  But it does not even address these unidentified

27   claims and products, much less show there was diligence or lack of prejudice.  Nor could they for
     all the reasons stated herein as to its addition of 8-rank and 16-rank DIMMs to the claim 16

28   allegations.

1    board which is connectable to a computer system, with a plurality of double-data-rate ('DDR')

2    memory devices, and at least one circuit that sends a clock signal." Ex. 1 at 2.  In May 2021, Google

3    objected to this definition stating it would "interpret that term to mean the class of products that

4    Netlist has accused of infringing the '912 Patent." Dkt. 211-6 at 3.  Google repeatedly made clear

5    in July, August, and September 2021 that the operative contentions only accused 4-rank DIMMs:

6    ● **July 2, 2021**: "Netlist's infringement contentions assert claim 16 against certain memory
     modules compliant with portions of the JEDEC Solid State Technology Association
7    ('JEDEC') standards and specifications for *4-Rank* Double Data Rate 4 ('DDR4')
     Synchronous DRAM ('SDRAM') Load Reduction Dual In-Line Memory Modules
8    ('LRDIMMs')." Dkt. 211-5 at 34; *see also id.* at 33-34 (same for DDR2 FBDIMMs, DDR3
     LRDIMMs, DDR4 NVDIMMs); *id.* at 36 (same for DDR4 RDIMMs);
9

10   ● **July 19, 2021**: In discussing Google's July 2021 interrogatory responses related to
     intervening rights with Netlist, Google stated:  "We addressed the accused products based
11   on your June 18, 2021 Amended Infringement Contentions, which recite portions of the
     JEDEC standards and identified products that implement those portions of the standard.";
12   and "[W]e have provided our complete response to this [intervening rights] interrogatory
     based on the products you accused in your June 18, 2021 Amended Infringement
13   Contentions.  We are not aware of any authority that requires us to provide our contentions
     on products not accused in the case."  Ex. D at 1;
14

15   ● **August 30, 2021**: Google stated that 8-rank and 16-rank DIMMs "are not accused products
     in the case," and that it would not be providing discovery on those products because (1)
16   "Google has consistently objected to Netlist's definition of 'memory modules' in its
     Interrogatory Requests as being limited to the accused products"; (2) "Netlist has never
17   previously sought to enforce a broader definition"; and (3) "Netlist's infringement
     contentions are limited to 4-Rank devices only, as Netlist only charts the JEDEC
18   specifications relevant to 4-Rank devices in its contentions."  Ex. E at 2; and

19
20   ● **September 3, 2021**: ("[A]ll of Netlist's claim charts are limited to 4-Rank devices. With
     respect to claim 16, for example, Netlist relies on the Encoded QuadCS mode in JESD 82-
21   31A. That functionality applies only to 4-Rank devices . . . There is no basis for Netlist to
     suggest its contentions apply to 8-Rank and 16-Rank devices, and you have yet to provide
22   any."  *Id.* at 1.

23   Yet, even after Google made clear it disagreed that 8-rank and 16-rank DIMMs were accused

24   products, Netlist did not move to compel discovery from Google on these products.

25       Netlist does not address, much less dispute, any of this history.  Nor does it explain why it

26   did not move to compel this information or seek to amend its contentions to make clear it was

27   accusing 8-rank and 16-rank DIMMs once it became aware of the dispute almost a year ago.  Instead,

28   Netlist seeks to point the finger at Google.   Netlist claims that "Google omitted important

1    information" and "continued to contend that Netlist's Amended Infringement Contentions do not

2    accuse 8- and 16-rank DIMMS." Mot. 3.  While Google's conduct was appropriate, Netlist failed

3    to move to compel this discovery or seek leave to add these products if it disagreed at the time.

4          Under similar circumstances, this Court and other courts have found that such notice of a

5    dispute triggers the diligence requirement.  *See, e.g.*, *Vasudevan Software, Inc. v. Microstrategy,*

6    *Inc.*, No. C 11-06637 RS, 2012 WL 12920633, at *4 (N.D. Cal. Nov. 21, 2012) (finding a lack of

7    diligence where the patentee sought to amend more than six months after it was put on notice by the

8    accused infringer that certain products were not accused); *see also Speedtrack, Inc. v. Endeca*

9    *Techs., Inc.*, 524 F. App'x 651, 659 (Fed. Cir. 2013) (finding the fact that the patentee waited six

10   months to formally move to amend its infringement contentions after the accused infringer put the

11   patentee on notice weighed against the patentee); *Oyster Optics, LLC v. Ciena Corp.*, No. 20-CV-

12   02354-JSW(LB), 2022 WL 561931, at *4 (N.D. Cal. Feb. 24, 2022) (determining a patentee was

13   not diligent when it waited "months" after receiving notice that the accused infringer "disputed the

14   sufficient of the infringement contentions for any non-[accused] products" and that "[a]ll

15   information needed to chart the [unaccused products] existed at the time").  In fact, in another case

16   against Google, Netlist's motion for leave to amend its infringement contentions was previously

17   denied for similar reasons.  *Google*, 2010 WL 1838693, at *3 (ruling that "Netlist cannot blame

18   Google" and should have "promptly sought relief from the Court" if it "believed that Google was

19   impeding its ability to obtain critical information by failing to comply with their discovery

20   obligations").  Any delay is of Netlist's own making.

21         Netlist also had multiple opportunities to ask certain Google witnesses questions related to

22   Google' use and purchase of DIMMs, but it declined to do so.  Dkt. 236-3 at 12.  On May 24, 2021,

23   Netlist served a Rule 30(b)(6) deposition notice on Google, propounding topics covering the full

24   gamut of issues in a typical patent litigation case and not limited to intervening rights.[5]  Dkt. 135-4;

25

26   _____

     [5]   Some Rule 30(b)(6) topics concerned Google's purchase or use of DIMMs:  Topic No. 5
27   ("Information relating to Google's . . . purchase . . . of any Memory Module . . . in the United States
     from November 17, 2009 through the present."); Topic No. 6 ("The . . . type of Memory Modules
28   Google has incorporated or is incorporating into its computer servers from November 17, 2009
     through the present."); and Topic No. 7 ("For each Memory Module identified above, the JEDEC

*see also* Dkt. 135 at 3 n.2.  On June 3 and June 15, 2021, Netlist further served Rule 30(b)(1) subpoenas on three current or former Google employees.  Tse Decl., ¶ 2.  Google offered several dates for these noticed depositions in August and September.  Ex. G at 2, 3, 5-6.  Netlist declined to take *any* of these noticed depositions without explanation.  "Courts consistently have refused to find diligence where a party delayed in taking key depositions," such as here.  *KlausTech*, No. 2017 WL 4808558 (citing *Google*, 2010 WL 1838693, at *2).  In *KlausTech*, the court found that the patentee had "ample opportunity to take depositions to test its assumptions" and "bore the risk of building its infringement case on **mistaken** assumptions by waiting to go forward with depositions."  *Id.* at *5 (emphasis added).  But "as a general rule, mistakes or omissions are not by themselves good cause." *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2013 WL 5368053, at *4 (N.D. Cal. Sept. 25, 2013).   If Netlist had diligently pursued these depositions, it would have had the opportunity to ask questions related to Google's use and purchase of certain DIMMs about eight months earlier.  Netlist's decision to not take key depositions further shows a lack of diligence and shows that Netlist's allegations that Google has been improperly withholding discovery completely are baseless, as the Court already found in the MSJ Order.  Order at 39 (finding "no evidence that Google has withheld pertinent discovery").

Accordingly, Netlist does not come close to establishing the necessary efforts to diligently investigate the new products, *i.e.*, the 8-rank and 16-rank DIMMs, and its new infringement theories, *i.e.*, die-stacking technology.  *See, e.g.*, *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS (JSC), 2016 WL 7386136, at *3 (N.D. Cal. Dec. 21, 2016) (holding that a patentee was not diligent where it "does not explain in any detail what work it undertook . . . nor does it discuss when any such work occurred" for a period of six months); *EON Corp*, 2013 WL 12174305, at *3 (finding a lack of diligence where the patentee "provide[d] no information about the efforts it

specification(s) to which such Memory Module conforms.").  Ex. F at 12-13, 24, 26.  To be sure, Google also objected to the overbroad definition of "Memory Module" here but agreed to produce witnesses for these topics who would be "reasonably prepared to testify generally regarding the various categories, numbers, types, purchase, use, and testing related to the accused products based on Netlist's June 18, 2021 Amended Infringement Contention and given what is accused" or a subset of that information.  *Id.* at 24, 26, 28.

took to diligently investigate" the newly accused products); *Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, No. C05-03117 MJJ, 2007 WL 2221029, at *1 (N.D. Cal. July 30, 2007) (denying leave to amend where the patentee offered no explanation for its five-month delay other than conclusory allegations of diligence).

### 3. Even When Netlist Received Confidential Information, Netlist Did Not Diligently Move to Amend Its Contentions

Even accepting that Netlist needed confidential information before it could accuse 8-rank and 16-rank DIMMs and even if Netlist was somehow diligent in pursuing that information despite the clear record showing otherwise, Netlist was still not diligent in moving to amend its contentions once it had the supposedly necessary confidential information. Netlist admits it "identified several documents that indicated Google's use of 8-rank DDR4 DIMMs, previously unknown to Netlist or the public" from Google's July 2021 production–*over nine months ago*. Mot. 6. Netlist also admits that Google provided information concerning its purchase (or lack thereof) of 8-rank and 16-rank in an October 2021 interrogatory response (Mot. at 3)—about *seven months ago*.[6] Despite admitting it was on notice that Google purchased 8-rank DIMMs by July 2021 and October 2021, Netlist offers no explanation for why it did not move to amend its contentions then.[7] Waiting over nine or even seven months to file this motion is not diligence. Indeed, "[c]ourts have routinely found that [even] a *four-five month delay* in amending infringement contentions is not diligent." *Word to Info Inc. v. Facebook Inc.*, No. 15-cv-03485-WHO, 2016 WL 6276956, at *6 (N.D. Cal. Oct. 27, 2016) (emphasis added); *cf. ASUS Computer Int'l v. Round Rock Rsch., LLC*, No. 12-CV-02099-JST, 2014 WL 12642006, at *3 (N.D. Cal. Mar. 2, 2014) (finding a lack of diligence where a "small number" of documents relied upon in plaintiff's proposed amendments were documents in its possession for "many months, or even a year").

---

[6]  Google made clear it was providing this information only to move the case forward and avoid court intervention, maintaining its objection that 8-rank and 16-rank DIMMs were not accused products. Ex. 3 at 81

[7]  Notably, Netlist does not allege that it identified any documents relating to 16-rank DIMMs in Google's productions, nor can it, because Google confirmed it does not purchase these products. Ex. 3 at 82, 83.

Netlist provides no excuse for its nine-month delay stemming from the July 2021 production. As for its seven-month delay stemming from the October 2021 interrogatory response, Netlist blames the discovery stay the Court entered on September 3, 2021.  Mot. 7.  But again, prior to the stay, Netlist itself states that Google produced documents in July 2021 showing that it did purchase 8-rank DIMMs (Mot. 6), and Google made its witnesses available for deposition in August and September 2021, yet Netlist did not pursue the supposedly needed discovery or move to amend its contentions then.  *See supra*, §§ III.A.2, 3.  And while the discovery stay allowed only intervening rights discovery to proceed, which actually relates to the scope of accused products subject to intervening rights (Dkt. 192 at 2-3), that did not stop Netlist from seeking discovery and briefing issues unrelated to intervening rights:

- Netlist refused to defer Google's motion to amend its answer and counterclaims in light of the stay on September 10, 2021 (Ex. I (refusing to "agree that Google's decision not to file this motion until after the stay is not evidence of prejudice or delay"));

- Netlist moved to transfer the case on January 18, 2022 (Dkt. 223-4); and

- Netlist requested that Google update ***all*** of its discovery responses—including for discovery requests unrelated to intervening rights—for the unaccused 8-rank and 16-rank DIMMS on the October 4, 2021 meet and confer.  Ex. H at 1 (demanding that Google "supplement its responses to ***every*** RFP and interrogatory on ***any*** issue regarding ***any*** memory module that Google ***ever*** purchased or used prior to February 8, 2021, using the definition of Memory Module in [Netlist's] RFP and interrogatories") (emphases added).

Netlist is using the September 2021 discovery stay as a pretext to excuse its delay in moving for leave to amend its infringement contentions; it does not justify Netlist's seven-month delay in pursuing its Motion.  Netlist provides no adequate explanation otherwise.

Netlist further contends it did not need to seek leave to amend its contentions because it "reasonably believed that 4-rank, 8-rank, and 16-rank DIMMS fell within the scope of its definition of the accused instrumentalities, until this Court's May 5, 2022 Order stated otherwise."  Mot. 8-9.  But as explained above, this does not excuse Netlist's failure to move to compel discovery on these products when Google repeatedly made clear that it disputed that these products were in the case and is instead evidence that Netlist did not need confidential information in order to accuse these products.  *See supra*, § III.A.2.  Netlist wrongly contends that the issue of whether 8-rank and 16-rank DIMMs were accused products was "not fully briefed."  Mot. 1.  However, in its Order relating

to the issue of absolute intervening rights, the Court directly rejected Netlist's argument in its opposition to Google's summary judgment motion that "Google has not properly disclosed all the Accused Products," ruling that "Netlist has only accused the five categories of 4-Rank DIMMs addressed in Google's motion."  Order at 36; Dkt. 197 at 24.  Indeed, to the extent Netlist is arguing that 8-rank and 16-rank DIMMs were already accused products in the case (Mot. 1, 3), Netlist is essentially requesting the Court to reconsider its prior ruling in its Order that they were not.  But Netlist has failed to comply with the many requirements needed to prevail on a motion for reconsideration in accordance with Local Rule 7-9(a), (b), and (c).

Netlist's cases are easily distinguishable and do not support its position.  The court in *XpertUniverse, Inc. v. Cisco Sys.*, *Inc.* determined that the patentee was diligent in moving for leave to assert *new versions* of proposed products that were released during the stay but not for the older versions of the same proposed products that could have been identified in its initial contentions.  No. 17-cv-3848-RS, 2019 WL 3413287, at *4 (N.D. Cal. July 29, 2019).  Here, Netlist is not proposing to add other 4-rank DIMMs that fall within the categories of DIMMs specifically identified in its contentions as was done in *XpertUniverse*.  Rather, Netlist is seeking to add new infringement theories in support of new products that do ***not*** fall within the categories of 4-rank DIMMs it previously identified.  Further, as explained above (*see supra*, § III.A.1), these new products are ***not*** simply DIMMs that were released during the stay but rather DIMMs that existed prior to the stay of non-intervening rights discovery and could have been identified in Netlist's June 2021 contentions.  Similarly, the court in *Apple Inc. v. Samsung Elecs. Co.* only allowed the patentee to add new products because they were not released until after the original contentions were served, unlike the 8-rank and 16-rank DIMMs here. No. 12-cv-630, 2012 WL 5632618, at *3 (N.D. Cal. Nov. 15, 2012).

### 4.    Netlist's Diligence Arguments Are Undermined By Its Wait-and-See Approach

As explained above, Netlist could have and should have identified the 8-rank and 16-rank DIMMs in its June 2021 contentions.  *See supra*, § III.A.1.  At the very least, it should have moved for leave to amend in July 2021 when it received discovery showing Google's actual purchase of 8-

1   rank DIMMs.  *See supra*, § III.A.3.  Further compounding its lack of diligence, it could have moved

2   to **compel discovery** on these products when Google put Netlist on notice of the disputed issue on

3   July 2021 and again on August 30, 2021.  Ex. E at 2.  Netlist also could have moved to amend its

4   contentions after it received additional non-public information about Google's purchase of 8-rank

5   DIMMs if not in July 2021, then at least by October 2021.  *See supra*, § III.A.3.  But Netlist never

6   attempted to move for leave to amend its infringement contentions or seek the discovery it contended

7   it needed at any of those times.  Rather, as discussed above, Netlist waited until after the Court

8   issued its May 5, 2022 Order, finding that absolute intervening rights applied to all asserted claims

9   other than claim 16 and that Netlist's operative contentions were limited to 4-rank DIMMs.  Order

10  at 36, 44; *see supra*, § III.A.3.  Only after the Court issued its Order did Netlist inform Google of

11  its intent to file this Motion.  Ex. J.  While Netlist claims that the Court's May 5, 2022 Order

12  effectively lifted the discovery stay (Mot. 8), it appears Netlist is taking action now to formally

13  move for leave to amend its contentions because it received an adverse ruling related to 8-rank and

14  16-rank DIMMS.  This is not diligence.

15          *Finjan* is particularly instructive.  There, the court rejected the patentee's argument that "it

16  could not have known its unauthorized addition of the sandbox contentions was a problem until the

17  Court said so" as "not credible."  *Finjan*, 2020 WL 1139641, at *3.  The patentee there failed to

18  move for leave to amend for eight months and importantly, failed to tie the new evidence it

19  discovered to its proposed contentions.  *Id.*  As a result, the court found that "in failing to seek leave

20  as the Patent Local Rules require, [the patentee] took a risk that [the accused infringer] would object

21  to the new infringement contentions. [The accused infringer] did object, and the Court finds the

22  objections are well taken."  *Id.* at *5.  And in *Cisco Sys., Inc. v. Teleconference Sys., LLC.*, the court

23  found that the patentee's "wait-and-see" approach to be "motivated at least in part by

24  gamesmanship," where it sought "expand its theory of infringement" "to avoid an adverse

25  substantive ruling."  No. 09-CV-01550 JSW (NC), 2012 WL 9337627, at *4 (N.D. Cal. June 11,

26  2012).

27          Like the patentee in *Finjan*, Netlist commits the critical error of failing to tie the non-public

28  information in Google's July 2021 production and October 12, 2021 interrogatory response to its

proposed amendments for 8-rank DIMMs, much less for 16-rank DIMMs that Google did not

purchase at all. And similar to the patentees in *Finjan* and *Cisco*, Netlist also waited until the Court

agreed with Google's position that 8-rank and 16-rank DIMMs were not accused products, among

other things, before finally moving to amend its infringement contentions to introduce new products

and new infringement theories a year later. Order at 36; Mot. Such unjustified delay, if allowed,

would "eviscerate[] the goal of the Patent Local Rules to streamline discovery by requiring the party

claiming infringement to identify with particularity how each accused product infringes the patents-

in-suit" and "render meaningless the requirement of Patent Local Rule 3-6 that a party show 'good

cause' before being allowed to amend its PICs to include additional accused products." *Mediatek,*

*Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341 YGR JSC, 2013 WL 588760, at *2 (N.D. Cal.

Feb. 13, 2013); *Cisco*, 2012 WL 9337627, at *4 ("This 'wait-and-see' approach defies the spirit of

the patent local rules.").

> ### B. The Addition Of Two New Categories Of Accused Products And New Infringement Theories Is Unduly Prejudicial To Google

Typically, "infringement contentions should become more specific and fine-tuned as the

case progresses, not more sprawling and encompassing." *X.Commerce, Inc. v. Express Mobile, Inc.*,

No. 17-CV-02605-RS, 2020 WL 2110799, at *1 (N.D. Cal. Mar. 10, 2020) (citation omitted);

*Dynetix Design Sols. Inc. v. Synopsys Inc.*, No. CV 11-05973 PSG, 2012 WL 6019898, at *3 (N.D.

Cal. Dec. 3, 2012) ("Like all patent cases, this case must *narrow* as it moves forward, not expand.")

(emphasis in original). Netlist's belated addition of two new categories of accused products and

new infringement theories supporting these new products over a year after it served its June 2021

contentions is prejudicial to Google, weighing in favor of denying Netlist's Motion.

> #### 1. Google Will Be Unduly Prejudiced By the Addition Of New Products and Infringement Theories

The parties' efforts throughout this litigation have been to streamline the case in accordance

with the Patent Local Rules. Indeed, the asserted patent has undergone re-examination proceedings,

which narrowed the scope of the patent. Dkt. 155-5 (re-examination certificate of the '912 Patent).

After the stay lifted, the parties prioritized the issue of intervening rights and Netlist served amended

infringement contentions on June 18, 2021, accusing only 4-rank DIMMs of infringing claim 16.

Ex. A at 1-3; *id.*, at Ex. B.  Netlist's June 2021 contentions rely on an Encoded QuadCS Mode, which is a feature specific to 4-rank DIMMs (*i.e.*, quad).  *Id.*, at Ex. B at 21-22.  And as discussed below, Google relied on Netlist's operative infringement contentions in producing significant discovery related to absolute and equitable intervening rights as it applied to those accused 4-rank DIMMs in July 2021 and extensively briefing that the Court has ruled on.  Netlist's tardy attempt to assert 8-rank and 16-rank DIMMs is contrary to that entire process.

Netlist's operative contentions accusing 4-rank DIMMs guided and informed all of Google's efforts thus far.  In complying with its discovery obligations, Google has already provided extensive, fulsome discovery on the 4-rank DIMMs that Netlist accused in its June 2021 contentions.  Google produced about 30,000 pages in discovery related to intervening rights on the accused 4-rank DIMMs, provided its responses and objections (and supplementations thereof) to Netlist's interrogatory responses five times, responded and objected to eight document requests propounded by Netlist, and provided its responses and objections (and supplementations thereof) to Netlist's Rule 30(b)(6) topics twice since Netlist served its June 2021 contentions.  Tse Decl., ¶ 3.  Google even began preparations for the depositions of the Google witnesses whom Netlist noticed but later decided to forego.  *Id.*, ¶ 4.  In addition, Google has been diligently preparing its defenses, including non-infringement and invalidity, as well as damages, based on Netlist's operative contentions.

Expanding the scope of accused products to include two additional categories of products under new theories would unduly prejudice Google by requiring it to undertake similar efforts again for these new products and theories, including investigating what documents need to be produced (*e.g.*, purchasing and fleet information), supplementing its responses and objections to interrogatories, document requests, and Rule 30(b)(6) topics, and identifying and preparing potential deposition witnesses.  The addition of two new categories of products under new theories would also require Google to re-evaluate and re-analyze all of its defenses and damages.  Indeed, Netlist now alleges new theories that 8-rank and 16-rank DIMMs utilizing die-stacking technology, *i.e.*, DDP and 3DS DRAMs, also infringe claim 16 (Mot. 10-12; Ex. 10), further compounding the undue prejudice to Google.  If allowed, Google will have to conduct new discovery and revisit its defenses based on 4-rank, 8-rank, or 16-rank DIMMs (physically or logically), including ones that (1) use

1   die-stacking technology, (2) deliver the signals in a substantially similar manner as the 3DS DRAMs

2   do, or (3) are physically similar to DDP and 3DS DRAMs.  Specifically, Google will be compelled

3   to re-analyze its current prior art and commission new prior art searches based on Netlist's new

4   theories related to die-stacking.   Google will also have to revisit current documents, non-

5   infringement arguments, and claim construction positions, among other things, in light of the new

6   theories in Netlist's proposed contentions and develop new arguments accordingly.   Such re-

7   expansion of the case undermines the parties' efforts to streamline the case since the stay was lifted

8   in February 2021.

9        Netlist's contention that it is asserting the ***same*** infringement theories is false and

10   unsubstantiated.  Mot. at 10, 12.  As detailed above, *supra*, § I.B, nowhere in Netlist's June 18, 2021

11   contentions does it rely on die-stacking, DDP, or 3DS specifically for its infringement theories that

12   the accused 4-rank DDR4 DIMMs allegedly infringes claim 16.[8]  And if Netlist was only seeking

13   to add new products and "not attempting to . . . revise its infringement theories" (Mot. 10), there is

14   no reason why Netlist needed to add new evidence and infringement theories into its proposed

15   contentions—it could have just added the new products.  While Netlist claims that "its infringement

16   theory as to claim 16 is ***identical*** as to all DDR4 DIMMs, whether 4-rank, 8-rank, or 16-rank DDR4

17   DIMMs" (*id.* at 12 (emphasis added)), Netlist simply argues in a conclusory manner that DDP

18   DRAM and 3DS DRAM "operate in ***substantially the same way*** in material aspects to DIMMS

19   featuring monolithic (*i.e.*, single-die) DRAM" and that "JESD 79-4-1B provides that the required

20   signals to select a rank on the module are generated in . . . a manner ***similar*** to the 'Encoded QuadCS

21   mode' by using a combination of chip-select (CS) and chip-ID signals."  Ex. 10 at 23-24 (emphases

22   added).   Netlist provides zero explanation and support for these conclusory, attorney generated

23

24

---

25   [8]  That the description of Figure 10 of JEDEC Standard No. 21C that Netlist included for limitation
    16.2 in its operative contentions mentions "8R," "16R," or "3DS" is of no moment.  Mot. at 10-11.
26   Netlist only relied on Figure 10 as "an example of a plurality of DDR4 memory devices coupled to
    the printed circuit board, with the DDR4 memory devices arranged in a first number of ranks,"
27   which Netlist unequivocally stated is equal to four ranks.  Ex. A, at Ex. B at 14-15, 22, 25.
    Moreover, Netlist does not rely on 3DS whatsoever to argue that the accused 4-rank DIMMs
28   allegedly infringed claim 16 in its operative contentions.

arguments that are belied by the significant, additional evidence included with its proposed contentions.

### 2.        Netlist's Cited Cases Are Inapposite

In none of Netlist's cited cases had the parties engaged in significant discovery and briefed early dispositive motions based on the operative contentions only to have the patentee seek leave to assert new products based on new theories a year later.   Rather, lack of prejudice was found in completely different situations.  *See Facebook*, 2019 WL 8013872, at *9 (declining to find undue prejudice after finding in part that any prejudice would be cured by granting leave for the accused infringer to amend its invalidity contentions based on its pending motion in light of the court's continuance of the technology trial and claim construction hearing); *Tech. Licensing Corp. v. Blackmagic Design Pty Ltd*., No. 13-cv-05184, 2014 WL 5499511, at *3 (N.D. Cal. Oct. 30, 2014) (granting leave to amend because no discovery had been conducted yet); *Simpson*, 2019 WL 8403819, at *3 (finding no prejudice since the proposed amendment of adding claims of indirect infringement, not accused products, "merely adds an issue of which the parties have been aware since before this case began"); *Karl Storz*, 2016 WL 7386136, at *6 (finding no prejudice in part where the proposed amendments narrowed the scope of accused products); *XpertUniverse*, 2019 WL 3413287, at *5 (granting leave to amend to accuse *new versions* of proposed products that were released during the stay for "essentially the same reasons" as existing accused products).

Netlist further relies on *Seiko Epson Corp. v. Coretronic Corp.*, No. 06-cv-6946, 2008 WL 2563383, at *4 (N.D. Cal. June 23, 2008), to support its position that any prejudice to Google is allegedly "self-inflicted."  Mot. 13.  Not so.  There, the court compelled the accused infringer to identify its products that had the *same* configurations as the accused products and the patentee subsequently moved for leave to amend its contentions to add the newly-identified, non-public products that the accused infringer had identified.  Unlike in *Seiko*, 8-rank and 16-rank DIMMs are publicly known, the JEDEC standards with which they are compliant are also publicly known, and Google made no representation that the 8-rank and 16-rank DIMMs "potentially have the same configuration as the other allegedly infringing products."  *Seiko*, 2008 WL 2563383, at *3-4.

-18-

1   Accordingly, the prejudice to Google here is undue, and thus Google respectively asks this Court to

2   deny Netlist's Motion.

3   **IV.    CONCLUSION**

4          Based on the foregoing, Google respectfully requests the Court to deny Netlist's motion for

5   leave to amend its infringement contentions to add 8-rank and 16-rank DIMMs as accused products

6   in the case.

7         DATED: May 31, 2022                QUINN EMANUEL URQUHART &

8                                       SULLIVAN, LLP

9

10                               By     */s/ David Perlson*
                                     David Perlson

11

12                                     David Perlson (CA Bar No. 209502)
                                  davidperlson@quinnemanuel.com

13                                     Jonathan Tse (CA Bar No. 305468)
                                  jonathantse@quinnemanuel.com

14                                     50 California Street, 22nd Floor
                                  San Francisco, CA 94111

15                                     Telephone: (415) 875-6600

16                                     Facsimile: (415) 875-6700

17                                     Jared Newton (admitted *pro hac vice*)
                                  jarednewton@quinnemanuel.com

18                                     Deepa Acharya (CA Bar No. 267654)
                                  deepaacharya@quinnemanuel.com

19                                     Sandy Shen (admitted *pro hac vice*)
                                  sandyshen@quinnemanuel.com

20                                     1300 I Street NW, Suite 900
                                  Washington, D.C. 20005

21                                     Telephone: (202) 538-8000

22                                     Facsimile: (202) 538-8100

23                                     Catlin Williams (CA Bar No. 336464)

24                                     catwilliams@quinnemanuel.com
                                  555 Twin Dolphin Drive, 5th Floor

25                                     Redwood Shores, CA 94065

26                                     Telephone: (650) 801-5000
                                  Facsimile: (650) 801-5100

27

28                                   *Attorneys for Defendant Google LLC*