IRELL & MANELLA LLP
Jason G. Sheasby (CA SBN 205455)
jsheasby@irell.com
Andrew J. Strabone (CA SBN 301659)
astrabone@irell.com
Yanan Zhao (CA SBN 337864)
yzhao@irell.com
Michael W. Tezyan (CA SBN 334915)
mtezyan@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

*Attorneys for Plaintiff Netlist, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 3:09-cv-05718-RS <br><br> **PLAINTIFF NETLIST, INC.'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS** <br><br> Hearing Date: June 23, 2022 <br> Time:  1:30 PM |

# TABLE OF CONTENTS

**Page**

I. FACTUAL BACKGROUND ..................................................................................................2

    A. Netlist's Contentions Were Not Limited to 4-Rank DIMMs ................................2

    B. A Combination of Chip-Select Signals and Other Input Signals Are Used to Select a Rank Regardless of the Number of Ranks ..................................4

    C. Netlist's Amendments Show That Its Infringement Theory Is Unchanged ...............................................................................................................5

II. ARGUMENT ..........................................................................................................................7

    A. Until the Court's Order, Netlist Had No Reason to Amend Its Contentions Because They Apply on Their Face to All Ranks ..............................7

    B. Netlist's Original Contentions Are Direct to All DDR4 DIMMs ..........................9

    C. Google Has Not Shown It Will Be Unduly Prejudiced .........................................11

    D. Netlist's Theory of Infringement Is Unchanged ....................................................12

    E. Google Has Already Agreed to Provide Discovery Regarding Its 8-Rank and 16-Rank DIMMs ....................................................................................13

    F. Even If the Court Finds that Netlist Should Have Moved Earlier, Amendment Should Be Allowed Because Google Has Not Shown Undue Prejudice .....................................................................................................14

III. CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
  No. 12-cv-630, 2012 WL 5632618 (N.D. Cal. Nov. 15, 2012) ..........................................12, 15

*Cisco Sys., Inc. v. Teleconference Sys., LLC.*,
  No. 09-cv-1550, 2012 WL 9337627 (N.D. Cal. June 11, 2012) ..................................................9

*Finjan, Inc. v. SonicWall, Inc.*,
  No. 17-cv-4467, 2020 WL 1139641 (N.D. Cal. Mar. 9, 2020)..................................................11

*Google, Inc. v. Netlist, Inc.*,
  No. 08-cv-4144 SBA, 2010 WL 1838693 (N.D. Cal. May 5, 2010) ........................................10

*Karl Storz Endoscopy-Am., Inc. v. Stryker*,
  No. 14-cv-876, 2016 WL 2855260 (N.D. Cal. May 13, 2016) .................................................12

*Nuance Commc'ns, Inc. v. ABBYY Software House*,
  No. 08-cv-2912, 2012 WL 2427160 (N.D. Cal. June 26, 2012) ...............................................12

*Oyster Optics, LLC v. Ciena Corp.*,
  No. 20-cv-2354, 2022 WL 561931 (N.D. Cal. Feb. 24, 2022) .................................................10

*Roche Palo Alto LLC v. Apotex, Inc.*,
  531 F.3d 1372 (Fed. Cir. 2008)..............................................................................................6, 7

*Seiko Epson Corp. v. Coretronic Corp.*,
  No. 06-cv-6946, 2008 WL 2563383 (N.D. Cal. June 23, 2008) .........................................13, 14

*Speedtrack, Inc. v. Endeca Techs., Inc.*,
  524 F. App'x 651 (Fed. Cir. 2013)...........................................................................................10

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
  No. 10-cv-3724, 2013 WL 5609325 (N.D. Cal. Oct. 11, 2013)................................................15

*Vasudevan Software, Inc. v. Microstrategy, Inc.*,
  No. 11-cv-6637-RS, 2012 WL 12920633 (N.D. Cal. Nov. 21, 2012) ......................................10

Netlist in good faith believed that all ranks of DDR4 DIMMs were part of its claim 16 Infringement Contentions until this Court's May 5, 2022 Order stated otherwise as part of its ruling on Google's motion to amend its counterclaims and affirmative defenses. Dkt. 258 at 36. This amendment is not in any way, shape or form, an attempt at a "do over" on the intervening rights or motion to strike briefing. The Court found no intervening rights as to claim 16. Claim 16 is the only claim for which an amendment is proposed to the infringement contentions to confirm all DDR4 DIMMs are encompassed *regardless of the number of ranks*. Google does not contend that it was using 8-rank or 16-rank DIMMs before this case was stayed for reexamination, and therefore it has no argument that 8-rank and 16-rank DDR4 DIMMs could have been accused at the time.

Nothing in claim 16 depends on the number of ranks employed in the design. 4-rank, 8-rank, and 16-rank DDR4 DIMMs (the ranks listed in the JEDEC standards) all operate the same with respect to claim 16, and Netlist's Infringement Contentions for claim 16 apply to all "DDR4 DIMMs," regardless of rank. Moreover, for the pertinent "rank" limitation of claim 16 (Element [16.2]), Netlist's Infringement Contentions present the portion of the JEDEC standard that expressly recites 4-rank, 8-rank, and 16-rank devices. As such, in bringing this motion 11 days after the Court's Order—which also lifted the stay of fact discovery put in place by Judge Armstrong until a substantive ruling on the intervening rights motion— Netlist acted diligently.

Google's argument that the amendments introduce a new infringement theory is puffery. The amendments are solely designed to explain to Google why the Infringement Contentions do not change regardless of the number of ranks. The standard is drafted to specify a way to assist a memory controller with programed logic which acts as if there are only two DRAM chips to work with a memory module that has many quads of DRAM chips, e.g., 1 quad (4-rank), 2 quads (8-rank), 4 quads (16 rank). The standard achieves this by using a functionality present in "Encoded QuadCS Mode" which can translate a logical signal for one of two DRAM "chips" into physical signals for 1, 2, or 4 quads of physical DRAM chips.

## I. FACTUAL BACKGROUND

### A. Netlist's Contentions Were Not Limited to 4-Rank DIMMs

The original contentions for claim 16 make no distinction whatsoever as to the number of ranks that are used in the accused products. The contentions apply to all DDR4 DIMMs:

> Claim 16 of the '912 Patent: The memory modules incorporated in Google's servers include, without limitation, memory modules compliant with certain portions of the JEDEC Solid State Technology Association ("JEDEC") standards and specifications for Double Data Rate 4 ("DDR4") Synchronous DRAM ("SDRAM") Registered Dual In-Line Memory Modules ("RDIMMs"), DDR4 SDRAM Load Reduced Dual In-Line Memory Modules ("LRDIMMs") and DDR4 SDRAM Non-Volatile Dual In-Line Memory Modules("NVDIMMs"), and products that operate in substantially similar manner

Dkt. 170-3 at 4. This is the definition of the accused products as to claim 16. It does not place any limit on ranks. There was a reason the contentions as to claim 16 apply to any number of ranks: Whether the product is 4-rank, 8-rank, or 16-rank (or any other quad rank Google begins to use, for example, 32-rank), it operates in an identical fashion under the portion of the JEDEC standard at issue in claim 16. Google claims it does not use 16-rank devices currently. Dkt. 288 at 5. This misses the point. The purpose of the contention as drafted was to make clear to Google that claim 16 covers **all** forms of DDR4 DIMMs, and that all forms to the extent Google uses them or starts to use them are part of this case.

The original Infringement Contentions as to element [16.2] expressly quote the portion of the JEDEC specification that explicitly identifies 4-rank, 8-rank, and 16-rank DIMMs as all operating in the same manner. This explicit citation was not just for any limitation. Element [16.2] recites "a plurality double-data-rate (DDR) memory devices . . . arranged in a first number of ranks." This is the limitation of the claim that recites the presence of DDR memory devices in ranks, without any limit on the number of ranks. For this element, Netlist cited to and reproduced verbatim Figure 10 from JEDEC Standard No. 21C. Netlist's contention was that Figure 10 "provides an example of a plurality of DDR4 memory devices coupled to the printed circuit board, with the DDR4 memory devices **arranged in a first number of ranks**." Dkt. 269-11 at 9 (emphasis added). The entire point of using this figure was to show that the "plurality of DDR4 memory devices" encompassed by the

- 2 -

1  claim included the various ranks defined by the standard, "2R/4R/8R/16R" and "planar/3DS"
2  designs.



Figure 10 — DDR4 2R/4R/8R/16R (planar/3DS) Control Wiring

Dkt. 269-11 at 10.

The significance of Figure 10 is that it expressly encompasses 4-rank, 8-rank, and 16-rank devices, as well as monolithic and multi-die devices, by virtue of being labeled as a "control wiring" diagram for "DDR4 2R/4R/8R/16R (planar/3DS)." *Id.* "2R/4R/8R/16R" specifies the ranks, "planar" specifies monolithic, and "3DS" specifies stacked.

Netlist's proposed amendments to Element [16.2] are only to prove that Figure 10 encompasses all 2-, 4-, 8- and 16-rank DIMMs, stacked and planar. For example, part of Netlist's amendments explain that the reference to "2R," "4R," "8R," and "16R" in Figure 10 is referring to the number of ranks. Dkt. 269-12 at 16. The remaining proposed amendments explain how Figure 10 covers both monolithic and multi-die packages as a result of the "planar/3DS" label. *See id*. Netlist's additional citations are to the portions of the JEDEC standard proving that the "3DS" and monolithic format that Figure 10 already identifies operates in the same manner as to the portions of the standard at issue, while the added figures provide individual illustrations of the same 2R, 4R, and 8R 3DS packages referenced in Figure 10 proving they operate in the same manner. None of these is necessary to the contentions—they simply rebut Google's technically incorrect argument that there is any difference in the operation of 4-rank, 8-rank, and 16-rank, or stacked or monolithic dies, as it applies to the portions of the JEDEC standards at issue as to claim 16. For claim 16, any

differences are irrelevant.

### B. A Combination of Chip-Select Signals and Other Input Signals Are Used to Select a Rank Regardless of the Number of Ranks

Google argues that "Encoded QuadCS Mode" is limited to 4-rank devices and that Netlist's Infringement Contentions relied only on this mode for how a rank is selected on a memory module. Opp. at 15-16. Not so. This *exact* same functionality is used for 8-rank and 16-rank devices. Netlist's Infringement Contentions explained the underlying rank-selecting functionality that is performed in the Encoded QuadCS Mode, specifically:

> In Encoded QuadCS mode, the DDR4 RCD specification provides for the generation of four chip select signals, one for each rank of a quad rank DDR4 RDIMM or LRDIMM by *decoding the two input chip select signals using another input signal*, namely DC0, as the encoding input. *See* JESD 82-31A (Aug. 2019), at Page 2.

Dkt. 269-11 at 16 (emphasis added).

A 4-rank DDR4 DIMM has one "quad- rank," an 8-rank is made up of two, and a 16-rank is made up of four. Regardless, the same Encoded QuadCS mode functionality is used. In particular, by "decoding the two input chip select signals using another input signal," a memory controller accesses a given rank of a plurality of ranks of memory devices. This functionality is used regardless of the number of quad ranks in the device because, unless there is a specific exception noted in the specification, "quad" encompasses one or more quads. Dkt. 269-6 at 3 (JESD 79-4-1B) ("functional behavior of logical rank(s) should not deviate from monolithic SDRAMs"). In particular, in Encoded QuadCS mode, the chip select signals are combined with other input signals to generate a larger number of unique chip selects than would be possible using the chip select signals alone. This was explained in Netlist's Infringement Contentions. *See* Dkt. 269-11 at 16 (citing JESD 82-31A (Aug. 2019), at Page 2 ("In Encoded QuadCS mode (DA[1:0] = 11), two copies of four output chip selects, i.e. QACS[3:0]_n and QBCS[3:0]_n, are decoded out of two DCS[1:0]_n inputs and the DC[0] input.")). The reason the Encoded QuadCS mode functionality is used regardless of the number of ranks above 2 is because all ranks of a DIMM share the same data bus, and each rank must be accessible using a rank-specific chip-select signal sent by the memory controller of the host system. However, a memory controller of a host system has a limited number of chip-select signals,

normally providing only two chip-select signals per DIMM.  As such, it is critical for DIMMs with more than 2-ranks to be able to generate additional rank-specific chip selects, beyond just the controller's two chip-select signals, in order to access more than two ranks.  The '912 patent provides for uniquely accessing each rank of a larger number of ranks than the number of chip-select signals available to each DIMM by generating unique chip-select signals for each rank in the DIMMs.  As explained in Netlist's Infringement Contentions, this is precisely what the Encoded QuadCS mode functionality does.  Whether the device has 1, 2, or 4 quad ranks, the same Encoded QuadCS mode functionality is used.  *See infra* at 5 for Element [16.5] discussion.  Thus, 8- and 16-rank devices use the same Encoded QuadCS mode functionality in the same way as 4-rank devices to address a given rank, because all must address the exact same issue—the memory buss will only have two chip-select signals and something must be done when the module has more than 2-ranks.  That "something" is identical for 4-rank, 8-rank, and 16-rank.

### C. Netlist's Amendments Show That Its Infringement Theory Is Unchanged

Netlist's proposed Infringement Contentions do not change any aspect of its infringement positions. However, because Google had argued that the contentions were only limited to 4-rank, Netlist included specific explanations to show that its infringement positions are identical regardless of the number of quad ranks in the device—1, 2, or 4 (i.e., 4-rank, 8-rank, 16-rank).  The only changes to Netlist's Infringement Contentions are as follows:

**1.** **Element [16pre]**: Netlist added a sentence explicitly identifying the Accused Instrumentalities as including 8-rank and 16-rank modules.  The original preamble placed no limits on the number of ranks.

**2.** **Element [16.2]**: Netlist added explanations for previously cited Figure 10, including citations to the standard providing the definition of Figure 10's "3DS" format.  3DS (which is die stacking) is possible for 4-rank, 8-rank, or 16-rank arrangements using die stacking technology.  While "planar" or monolithic packages include a single layer (i.e., single die), memory devices may be "stacked" within a given single package in order to accommodate larger density DIMM (e.g., having 4-rank, 8-rank, or 16-rank).  Such package types include stacked ("3DS") package designs,

as referenced by Figure 10, which utilize through silicon vias—the equivalent of very thin wires—that connect each die of the stack of dies to pins of the 3DS package. There are no substantive differences in the signaling technique that is used to access the individual ranks of 4-, 8- or 16-rank DIMMs, as described below in connection with Element [16.5].

Google's discussion of 3DS versus monolithic is misdirection. 4-rank, 8-rank and 16-rank can all use 3DS dies. In correspondence before this motion, Google conceded that it believed 4-rank DIMMs were accused, without drawing the artificial distinction it is now drawing between monolithic and 3DS. Dkt. 284-4 at 2 (August 30, 2021 Email from Acharya to Strabone) ("There should be no dispute as to what the accused products are in this case—these are the DDR4 memory modules that Netlist identified in its June 18, 2021 Amended Infringement Contentions). And in its motion for summary judgment on intervening rights Google asserted that "4-Rank DDR4" LRDIMMs and RDIMMs were accused, without drawing the artificial distinction between monolithic and 3DS. Dkt. 154-4 at 19–23. Figure 10 alone establishes that 4-rank modules can be arranged in a single die (planar) or in multiple dies (3DS).

**3.  Element [16.5]**: None of the edits to this element change in any manner either the products accused of infringement or the theory of infringement. The contentions continue to cover all DDR4 devices regardless of rank. Instead, the edits present additional evidence showing that the signals used to select a rank are generated the same regardless if there are 4, 8 or 16 ranks. Indeed, if the Court were not to allow these amendments to Element [16.5] it would not alter in any way the infringement contentions. Google is attacking Netlist for showing the actual proof that what Netlist said in its original contentions is technically correct, that the QuadCS mode functionality applies to "DDR4 2R/4R/8R/16R (planar/3DS)."

It is certainly the case that the number of select signals sent to 4 ranks (1 quad), 8 ranks (2 quads), and 16 ranks (4 quads) is numerically different but the claims require sending select signals to the actual physical ranks and place no ceiling on the number. Whether one quad, two quad, or four quads are used, the claim limitation is met in the identical manner. The Federal Circuit recognizes that two products are the same accused products when the differences are "unrelated to the limitations in the claim of the patent." *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372,

1379 (Fed. Cir. 2008).

Netlist's amendments citing to an addendum of the JEDEC standard (JESD 79-4-1B) prove that the same combination of chip select (CS) and other input signals (chip IDs) for all ranks apply the functionality provided by in the Encoded QuadCS mode. Dkt. 269-12 at 25 (*see e.g.*, Table 1 showing "# of CS_n" (chip select) and "Chip ID" used for 2, 4 and 8 logical ranks).  Address Tables 2-4, which correspond to 2-, 4-, and 8-rank arrangements, respectively, illustrate how the same "CS_n" and other input signals (chip IDs C0, C1, C2) are used to address the individual logical ranks regardless of the number of ranks. Dkt. 269-12 at 26-27.  Moreover, the cited JEDEC standard dictates that, in the context of stacked arrangement (3DS), the "functional behavior of logical rank(s) should not deviate from monolithic SDRAMs (specified in JESD 79-4A), except when noted in this document." Dkt. 269-12 at 25 (*citing* JESD 79-4-1B at 4). Importantly, no such exception is noted in the standard for the signals or signaling technique used to access logical ranks. This proves that Google's argument that 3DS is different from the monolithic format as to claim 16 has no basis in fact. Thus, Netlist's proposed amendments provide the evidence that rebuts Google's arguments that there is a material difference in operation of DDR4 DIMMs based on 4-, 8-, or 16-rank as it relates to the claims.

    **4.**    <u>Element [16.7]</u>: Added a cross reference to Element 16.5.

The "six pages" that Google contends are being added to Netlist's "38-page operative contentions" largely consist of the reproduced figures and passages from the JEDEC standard, which could have been cited rather than reproduced. *See* Dkt. 269-12 at 17, 24–27. The purpose of this is to show visually that in the JEDEC standards as it relates to the claims all quad rank devices (4-rank, 8-Rrnk, 16-rank) operate the same. These figures could all be removed and it would not in any way alter the infringement theory.

**II.   ARGUMENT**

    **A.   Until the Court's Order, Netlist Had No Reason to Amend Its Contentions Because They Apply on Their Face to All Ranks**

Google repeatedly contends that Netlist should have amended its contentions to explicitly reference 8-rank and 16-rank DIMMs in June 2021. Opp. at 1, 3, 5. The Infringement Contentions

however, are not limited to any particular rank—they apply to all ranks.  The below defined the accused products for claim 16 in the original contentions—it makes no reference to any rank.  This is because claim 16 was from the beginning asserted against **all** "DDR4" "DRAM" modules.

> Claim 16 of the '912 Patent: The memory modules incorporated in Google's servers include, without limitation, memory modules compliant with certain portions of the JEDEC Solid State Technology Association ("JEDEC") standards and specifications for Double Data Rate 4 ("DDR4") Synchronous DRAM ("SDRAM") Registered Dual In-Line Memory Modules ("RDIMMs"), DDR4 SDRAM Load Reduced Dual In-Line Memory Modules ("LRDIMMs") and DDR4 SDRAM Non-Volatile Dual In-Line Memory Modules("NVDIMMs"), and products that operate in substantially similar manner

Dkt. 170-3 at 6.  Netlist made this explicit in its correspondence with Google after it was discovered that Google was arbitrarily refusing to provide discovery on anything other than 4-Rank: "The contentions do not limit themselves to what Google is defining arbitrarily as '4-Rank' as distinct from 8-rank or 16-rank."  Dkt. 269-9 (September 25, 2021 Letter).

Netlist believed that Google was satisfying its discovery obligations with respect to DIMMs of all ranks as Netlist's discovery requests were not limited to 4-rank DIMMs.  It was not until August 30, 2021 that Google first took the position that 8-rank and 16-rank DIMMs were allegedly not accused.  Dkt. 269-8 at 1.  And even then, it was only in response to Netlist's threat of motion practice that Google admitted it was excluding those DDR4 DIMMs from its production.  In particular, counsel for Netlist asked Google to confirm whether Google was "excluding 8-Rank and 16-Rank DIMMs from its responses."  *Id*. at 2 (August 20, 2021 Email from Strabone to Tse).  This inquiry resulted from the fact that Google produced for the first time in July 2021 several documents hinting that Google was using 8-rank DDR4 DIMMs, despite the fact that all prior discovery responses and document productions were devoid of any such information.  *Id*.

Netlist engaged Google through the meet and confer process with Google finally agreeing on October 12, 2021 to supplement its responses to provide additional information regarding purchases of 8-rank and 16-rank DIMMs.  *See* Dkt. 284-3 at 81-83.  In the meantime, however, the Court stayed discovery on issues other than intervening rights.  Dkt. 192.  While Google maintained its objection that 8-rank and 16-rank DIMMs were not accused, it failed to provide any basis for its

1    objections. And, in response, Netlist repeatedly informed Google that its contentions encompassed
2    8-rank and 16-rank DIMMs. *See, e.g.*, Dkt. 269-8 at 2 (August 20, 2021 Strabone Email to Tse)
3    ("However, our discovery requests seek information into all memory modules that Google uses,
4    makes, has made, etc. or has used, made, had made, etc. It is improper for Google to limit its
5    responses how it sees fit. This is especially true given that Netlist has accused products that operate
6    in a substantially similar manner. For example, is Google excluding 8-Rank and 16-Rank DIMMs
7    from its responses?"); Dkt. 269-9 at 5 (September 25, 2021 Letter attached to Sheasby email to
8    Acharya) ("[Netlist's] Amended Infringement Contentions accuse DDR4 RDIMMs, DDR4
9    LRDIMMs, DDR4 NVDIMMs, DDR3 LRDIMMs, DDR2 FBDIMMs that meet certain portions of
10   JEDEC standards, and "products that operate in substantially similar manner" . . . . The contentions
11   do not limit themselves to what Google is defining arbitrarily as '4-Rank' as distinct from 8-rank or
12   16-rank.").

13          The arguments Google presented in it briefing as to why the infringement theory for claim
14   16 is different for 4-rank, 8-rank and 16-rank DIMMs were never presented during previous meet
15   and confer. Google did not claim during meet and confer that Encoded QuadCS mode functionality
16   is limited only to 4-rank. If Google had made this argument during meet and confer, Netlist would
17   have provided the exact same explanation presented in the amended infringement contentions which
18   make clear that the signals in the Encoded QuadCS mode functionality are identical regardless of 4,
19   8, or 12 number of ranks (i.e., regardless of the number of quads), and that the relevant portions of
20   the JEDEC standard cited in the original contentions operated in the identical fashion regardless of
21   whether planar or stacked dies are used.

22          Given the above facts, *Cisco Sys., Inc. v. Teleconference Sys., LLC.*, No. 09-cv-1550, 2012
23   WL 9337627, at *4 (N.D. Cal. June 11, 2012) is not on point. In that case, the patent owner sought
24   to amend its contentions to present what was undisputedly a new theory of infringement to avoid an
25   adverse claim construction.

26          **B.     Netlist's Original Contentions Are Direct to All DDR4 DIMMs**

27          Google misapprehends Netlist's position about the need for Google's confidential
28

information. Opp. at 5.  Contrary to Google's contention, Netlist does not argue that it needed confidential information to allege that claim 16 covers all ranks of DIMMs.  Opp. at 5.  The contentions as to claim 16 infringement are not limited to any particular rank.  If Google launches a 32-rank DDR4 DIMM next month, that will be covered as well.  Netlist's position is that it could not have explicitly named the complete universe of Google's memory modules without discovery because Google does not publicly disclose its use of specific memory modules.  Indeed, that Netlist believed that *all* ranks of DDR4 DIMMs were accused, and that Google should therefore have been providing discovery for such products, is made clear by the fact that counsel for Netlist sought to confirm whether Google was "excluding 8-Rank and 16-Rank DIMMs from its responses" after seeing some hints of their use.  Dkt. 269-8 at 2 (August 20, 2021 Email from Strabone to Tse).

Google's cases regarding an accused's notice of deficient contentions are not on point.  In *Vasudevan*, the claim charts at issue were expressly limited to 6 products, and the plaintiff attempted to add 14 more.  There was no argument the products operated in the identical manner.  *See Vasudevan Software, Inc. v. Microstrategy, Inc.*, No. 11-cv-6637-RS, 2012 WL 12920633, at *3 (N.D. Cal. Nov. 21, 2012).  As described above in Section I.A, Netlist's claim chart already identified how and where each limitation is met, regardless of the rank of the devices.  *See* Dkt. 269-11 at 9 (citing to Figure 10 from JEDEC Standard No. 21C, which expressly references 4-rank, 8-rank, and 16-rank devices, which can be either planar or stacked, as "an example of a plurality of DDR4 memory devices coupled to the printed circuit board, with the DDR4 memory devices ***arranged in a first number of ranks***.").  In *Speedtrack*, the patent owner waited until after the close of discovery to add an entirely new theory of infringement (doctrine of equivalents).  *See Speedtrack, Inc. v. Endeca Techs., Inc.*, 524 F. App'x 651, 659 (Fed. Cir. 2013).  In *Oyster*, the motion to amend the contentions occurred after invalidity contentions and after claim construction, and there was undisputed evidence that the new products operated in a materially different manner.  *Oyster Optics, LLC v. Ciena Corp.*, No. 20-cv-2354, 2022 WL 561931, at *3 (N.D. Cal. Feb. 24, 2022).  As for the prior case between Google and Netlist, that involved a request to add six additional patent claims to the case after claim construction and one day before the close of fact discovery.  *See Google, Inc. v. Netlist, Inc.*, No. 08-cv-4144, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010).

Google's reliance on *Finjan, Inc. v. SonicWall, Inc.*, No. 17-cv-4467, 2020 WL 1139641 (N.D. Cal. Mar. 9, 2020) is not on point either. In that case, in earlier briefing before the court, Finjan represented that its infringement theories did not include the "sandbox" theory that it attempted to add after its contentions were struck: "The problem with this argument is that it contradicts Finjan's own representations to the Court about its infringement theories." *Id*. at *3. In contrast, Netlist's original contentions as to claim 16 made explicit that they applied to all DDR4 DIMMs, without any limitation to rank, and Netlist made this repeatedly clear to Google as soon as Google admitted it was withholding discovery on anything other than 4-Rank.

### C. Google Has Not Shown It Will Be Unduly Prejudiced

Netlist's Infringement Contentions for claim 16 place no limits on the number of ranks. On August 30, 2021, Google claimed for the first time that Netlist's Infringement Contentions did not apply to 8-rank and 16-rank. Dkt. 284-4 at 2. On September 25, 2021, Netlist explicitly stated that its infringement contentions for claim 16 apply regardless of rank and including 8-rank and 16-rank:

> Google is plainly wrong. The Amended Infringement Contentions accuse DDR4 RDIMMs, DDR4 LRDIMMs, DDR4 NVDIMMs, DDR3 LRDIMMs, DDR2 FBDIMMs that meet certain portions of JEDEC standards . . . The contentions do not limit themselves to what Google is defining arbitrarily as "4-Rank" as distinct from 8-rank or 16-rank.

Dkt. 269-9. Moreover, in its Opposition to Google's Motion for Summary Judgment on the Issue of Absolute Intervening Rights filed on September 3, 2021, Netlist also made it clear to Google that its contentions for claim 16 included 8-rank and 16-rank. Dkt. 200-1 ("Google has not properly disclosed all the Accused Products. In particular, it has withheld information on its 8-rank and 16-rank DIMM products despite having been ordered to disclose those products."). On September 3, 2021, at Google's request, Judge Armstrong stayed all discovery in the case except for intervening rights issues. Dkt. 192.

Moreover, whether a device is 4-rank, 8-rank or 16-rank, it can use monolithic or 3DS dies. In other words, there are 4-Rank 3DS DIMMs. As a result, any suggestion that Google is surprised that 3DS dies are at issue does not hold water. Google's motion for summary judgment claimed the accused products "4-Rank DDR4 RDIMMs", "4-Rank DDR4 LRDIMMs," without drawing the

1  artificial distinction it is now attempting between monolithic and 3DS.  *See* Dkt. 154-4 at 19–24.

2  Netlist's amendments will not prejudice Google because there is no change to the
3  infringement issues that would be in the case, because the litigation is still in the very early stage,
4  and because Google has already agreed to provide discovery on 8-rank and 16-rank devices.  *See*
5  Mot. at 10; *Karl Storz Endoscopy-Am., Inc. v. Stryker*, No. 14-cv-876, 2016 WL 2855260, at *9
6  (N.D. Cal. May 13, 2016) ("At bottom, [nonmovant's] prejudice arguments boil down to a complaint
7  that the amendment will cause [nonmovant] to perform more work than it would have to perform
8  otherwise . . . .  But that is not prejudice."); *Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-630, 2012
9  WL 5632618, at *5 (N.D. Cal. Nov. 15, 2012) (granting leave to amend infringement contentions
10 even though the court found movant failed to establish diligence because of lack of prejudice to
11 defendant); *Nuance Commc'ns, Inc. v. ABBYY Software House*, No. 08-cv-2912, 2012 WL 2427160,
12 at *2 (N.D. Cal. June 26, 2012) (finding the nonmovant fails to show that it would suffer actual
13 prejudice because it "does not specifically explain why the case management schedule would have
14 to be changed or why additional claim construction would be needed [due to the amendment to the
15 infringement contentions]").

16 **D.  Netlist's Theory of Infringement Is Unchanged**

17 Pervasive throughout Google's Opposition is the notion that Netlist's amendments somehow
18 introduce a new theory of infringement based on so-called multi-die (e.g., 3DS) technology. Opp.
19 at 3, 6, 16-17.  However, as detailed above in Section I.B, Netlist's Infringement Contentions
20 expressly recited 4-rank, 8-rank, and 16-rank formats, 3DS and planar as within the scope of its
21 contentions.  Moreover, Google did not dispute that *all* 4-rank modules are accused, and originally
22 cited Figure 10 alone establishes that 4-rank modules can be arranged in a single die (planar) or
23 multiple dies (3DS).  *See* Dkt. 284-4 at 2 (August 30, 2021 Email from Acharya to Strabone) ("There
24 should be no dispute as to what the accused products are in this case—these are the DDR4 memory
25 modules that Netlist identified in its June 18, 2021 Amended Infringement Contentions.").
26 Therefore, there can be no dispute that Netlist's June 2021 contentions covered multi-die
27 arrangements.  All of Netlist's additions were made to explain why its infringement theory does *not*
28

1  *change* when applied to 8-rank and 16-rank devices.

2  Google contends that Netlist's June 2021 contentions did not "include any theory of infringement based on so-called die-stacking technology," Opp. at 3, and that "Netlist does not rely on 3DS whatsoever to argue that the accused 4-rank DIMMs allegedly infringed claim 16 in its operative contentions." Opp. 17 fn 8.  Die-stacking and 3DS technology are irrelevant as to whether or not claim 16 is infringed.  Instead, Netlist's added explanations of Figure 10 and JEDEC citations are to show that the signals used to select a rank are generated the same regardless whether there are 4, 8, or 16 ranks and regardless of whether the dies are monolithic or 3DS.  Just as Google failed to include any explanation as to the basis of its contention that 8-rank and 16-rank devices are not accused products, it fails to explain why or how Netlist has changed its infringement theory, other than invoking the name of the same 3DS feature (a type of die-stacking) that was explicitly referenced in Netlist's Infringement Contentions, and for which Netlist adds additional explanation to show why the infringement issues remain the same regardless of if there are 4, 8 or 16 ranks. Dkt. 269-12 at 25.[1]

### E. Google Has Already Agreed to Provide Discovery Regarding Its 8-Rank and 16-Rank DIMMs

Google has repeatedly represented to the Court that this case is at an early stage when it has sought to add entirely new claims and defenses as part of its motion to amend. *See, e.g.*, Dkt. 206 ("This case was stayed for over ten years between January 26, 2011 and February 17, 2021, and therefore this case is still in its early stages." (referencing Dkt. No. 117 at 1; Dkt. 170)).  Google has already agreed to provide information for 8-Rank and 16-Rank DIMMs, which belies its argument that it would be prejudiced.  *See* Dkt. 284-3 at 81-83.  Importantly, while Google contends that it "has been diligently preparing its defenses, including non-infringement and invalidity, as well as damages, based on Netlist's operative contentions," it has not explained how any of the infringement or invalidity issues in the case would change.  That is because they would not.  *See Seiko Epson*

---

[1] Google argues that the "Synopsys White Paper (Ex. 8) … was not included in [Netlist's] June 2021 contentions," but neither is it part of Netlist's proposed amendments.  The article was cited in the motion as background knowledge showing known configurations of DDR DIMMs. Mot. at 11.

1  *Corp. v. Coretronic Corp.*, No. 06-cv-6946, 2008 WL 2563383, at *4 (N.D. Cal. June 23, 2008)
2  ("Coretronic has not demonstrated how their case strategy would have been different had the
3  projector models in question here been listed in the preliminary infringement contentions.").

4        Google's attempt to distinguish *Seiko* actually reinforces Netlist's point. Google correctly
5  argues, in *Seiko*, "the court compelled the accused infringer to identify its products that had the *same*
6  *configurations* as the accused products and the patentee subsequently moved for leave to amend its
7  contentions to add the newly-identified, non-public products that the accused infringer had
8  identified." Opp. at 18 (original emphasis included). Google suggests those facts are distinguishing
9  because here 8- and 16-rank DIMMs and the JEDEC standard are publicly known, and because
10 Google has made no representation that the 8-rank and 16-rank DIMMs have the same configuration
11 as the other accused products. *See id*. The facts of *Seiko* directly align. First, that 4, 8- and 16-rank
12 DIMMs and the JEDEC standard are generally known is irrelevant. The relevant fact is that, in
13 *Seiko*, the patent owner "could not have known of these products until Coretronic's disclosure," just
14 like Netlist could not have known of Google's use of 8-rank and 16-rank DIMMs until its tardy
15 disclosure. *Seiko*, 2008 WL 2563383, at *4. Second, the added products in *Seiko* were not identical
16 product, but had the "same configuration" with respect to the features relevant to the case. *Id*. at *2
17 (court ordering that Coretronic identify "any model designations or other names under which
18 projectors have been sold having the *same configurations, with respect to ventilation or mounting*
19 *of the lamp reflector to the lamp housing*, as the defined Coretronic Projectors") (quotation omitted
20 and emphasis added). Here too, the added 8-rank and 16-rank products, while not physically
21 identical, have the exact same configuration (i.e., DDR4 DIMMs) with respect to the features
22 relevant to the case. That a DIMM may have 8- or 16-ranks instead of 4-ranks is not different than
23 one of the projectors in *Seiko* having a 4-foot extension cord instead of a 2-foot extension cord.
24 There is a structural difference. But the difference is irrelevant to any of the issues in the case.
25 Thus, like in *Seiko*, to the extent Google claims prejudice, it is most certainly "self-inflicted."

26       **F.**    **Even If the Court Finds that Netlist Should Have Moved Earlier, Amendment Should Be Allowed Because Google Has Not Shown Undue Prejudice**
27
28       While Netlist maintains it acted diligently by bringing this motion 11 days after the Court

entered a decision on the parties' pending motions and lifted the Discovery Stay, if the Court finds that Netlist did not act diligently, it should still grant this motion because Google has not shown that it will be unduly prejudiced by Netlist's proposed amendment to its Infringement Contentions. *See supra*, Section C.  Under such circumstances, courts have allowed patent owners to amend their infringement contentions even where diligence has not been established.  *See Apple*, 2012 WL 5632618, at *5.

Here, the case is still in the early stages of discovery, Google has already agreed to provide discovery for 8-rank and 16-rank devices, and none of the issues in the case will be impacted.  As such, this case is similar to *U.S. Ethernet*, where, even though the patent owner "could have proposed changes earlier," the Court granted patent owner's motion for leave to amend its infringement contentions where "there is still sufficient time left on the pretrial clock" and "it seems unlikely that the proposed amendment will cause prejudice to Defendant."  *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 10-cv-3724, 2013 WL 5609325, at *3 (N.D. Cal. Oct. 11, 2013).  Moreover, until this Court's May 5, 2022 Order, Netlist reasonably believed that no amendments to its Infringement Contentions were needed, and therefore any such need would not be the product of gamesmanship.

### III. CONCLUSION

For the reasons in the motion and above, Netlist requests leave to amend its Infringement Contentions to make clear that claim 16 is asserted against all DDR4 DIMMs.

| | | |
|---|---|---|
| 1 | Dated: June 7, 2022 | Respectfully submitted, |
| 2 | | IRELL & MANELLA LLP |
| 3 | | By: /s/ Jason G. Sheasby |

                                              Jason G. Sheasby
                                              jsheasby@irell.com
                                              Andrew J. Strabone
                                              astrabone@irell.com
                                              Yanan Zhao
                                              yzhao@irell.com
                                              Michael W. Tezyan
                                              mtezyan@irell.com

                                              IRELL & MANELLA LLP
                                              1800 Avenue of the Stars, Suite 900
                                              Los Angeles, California 90067

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2022, I caused the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically email notification of such filing to all counsel of record who have made a formal appearance.

By: /s/   Yanan Zhao
Yanan Zhao