IRELL & MANELLA LLP
Jason G. Sheasby (CA SBN 205455)
jsheasby@irell.com
Andrew J. Strabone (CA SBN 301659)
astrabone@irell.com
Yanan Zhao (CA SBN 337864)
yzhao@irell.com
Michael W. Tezyan (CA SBN 334915)
mtezyan@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile:  (310) 203-7199

*Attorneys for Plaintiff Netlist, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| NETLIST, INC., | ) Case No. 3:09-cv-05718-RS |
| | ) |
| Plaintiff, | ) **PLAINTIFF NETLIST, INC.'S** |
| | ) **OPPOSITION TO DEFENDANT** |
| v. | ) **GOOGLE LLC'S MOTION TO STAY** |
| | ) |
| GOOGLE LLC, | ) |
| | ) Hearing Date:  July 14, 2022 |
| Defendant. | ) Time:  1:30 PM |
| | ) |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

    A.     Google Is a Past Customer of Netlist That Attempted to Destroy
        Netlist's Business by Using Contractors to Make Knock-Off
        Products ............................................................................................... 3

    B.     The Accused Products Can Be Manufactured By a Large Number of
        Different Entities ................................................................................. 4

    C.     No Infringement Discovery Has Occurred on the Full Scope of
        Google's Potential infringement. ....................................................... 8

    D.     The Samsung Delaware DJ Action Is an Improper Case Designed to
        Interfere with This Court's Jurisdiction ............................................. 8

    E.     The Samsung/Netlist JDLA Has Been Terminated For Material
        Breach .................................................................................................. 9

    F.     Google Has Refused to Disclose the Full Scope of What It Receives
        Directly or Indirectly From ▮▮▮▮▮ ................................................. 10

    G.     Google Has Refused to Answer Basic Questions Regarding the
        Basis for Its Motion to Stay .............................................................. 11

III.    ARGUMENT ..................................................................................................... 12

    A.     The Federal Circuit Makes Clear That Google's Suppliers Should
        Appear Before This Court if There Are Common Issues ................... 12

    B.     Even if *DataTern* Is Not Controlling, and the Court Decides to
        Assess the Standard Stay Factors, A Stay Is Improper. ..................... 15

    C.     The Prejudice to Netlist Requires Denial of the Stay ........................ 15

    D.     This Court Has Invested Substantial Judicial Resources in This Case
        That Would Be Wasted if a Stay Is Granted ...................................... 19

    E.     The Stay Will Not Meaningfully Simplify the Issues in Question and
        the Trial of This Case ......................................................................... 20

IV.     CONCLUSION .................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Adams v. Nationstar Mortg.LLC*,
No. 15-cv-9912, 2018 WL 702848 (C.D. Cal. Feb. 2, 2018)....................................................18

*Applications in Internet Time, LLC v. RPX Corp.*,
897 F.3d 1336 (Fed. Cir. 2018)................................................................................................23

*Blankenship v. Hearst Corp.*,
519 F.2d 418 (9th Cir.1975)......................................................................................................15

*Blue Cross and Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*,
490 F.3d 718 (9th Cir. 2007)......................................................................................................16

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
498 F.3d 1059 (9th Cir. 2007)....................................................................................................19

*Gen. Sci. Corp. v. Den-Mat Holdings, LLC*,
No. 21-cv-882, 2021 WL 4622548 (D. Del. Oct. 7, 2021) ........................................................14

*Glenayre Elecs., Inc. v. Jackson*,
443 F.3d 851 (Fed. Cir. 2006)....................................................................................................17

*InfoGation Corp. v. ZTE Corp.*,
No. 16-cv-1901, 2016 WL 9525235 (S.D. Cal. Dec. 21, 2016).................................................19

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
No. 18-cv-452, 2020 WL 6270776 (D. Del. Oct. 26, 2020) .................................................16, 17

*Kahn v. Gen. Motors Corp.*,
889 F.2d 1078 (Fed. Cir. 1989).......................................................................................15, 18, 21

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed. Cir. 1990)..................................................................................................12

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ..................................................................................................................15

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005)...............................................................................................15, 19

*Lofton v. Bank of Am. Corp.*,
No. 07-cv-5892, 2008 WL 2037606 (N.D. Cal. May 12, 2008)..................................................15

*Medien Pat. Verwaltung AG v. Warner Bros. Ent. Inc.*,
No. 10-cv-4119, 2014 WL 1169575 (S.D.N.Y. Mar. 21, 2014 ............................................17, 19

**Page(s)**

*Microsoft Corp. v. DataTern, Inc.*,
  755 F.3d 899 (Fed. Cir. 2014) ........................................................................................ *passim*

*Netlist, Inc. v. Samsung Elec. Co., Ltd.*,
  No. 20-cv-993, Dkt. 186 (C.D. Cal. Oct. 14, 2021) ..................................................9, 10

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014) .................................................................................12

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) ....................................................................................8

*Parella Mike Bloomberg 2020, Inc. v. Mike Bloomberg 2020, Inc.*,
  No. 20-cv-2231, 2020 WL 7315015 (C.D. Cal. Sept. 24, 2020) ...............................16

*RPX Corp. v. Applications in Internet Time, LLC*,
  IPR2015-01750, Paper 128 (P.T.A.B. Oct. 2, 2020)...................................................23

*Samsung Elecs. Co. v. Blaze Mobile, Inc.*,
  No. 21-cv-2989-EJD, 2022 WL 103552 (N.D. Cal. Jan. 11, 2022)...........................16

*Stickle v. Heublein, Inc.*,
  716 F.2d 1550 (Fed. Cir. 1983) ..................................................................................18

*Tegic Commc'ns Corp. v. Bd. of Regents of the Univ. of Tex. Sys.*,
  458 F.3d 1335 (Fed. Cir. 2006) ...........................................................................12, 13

**Statutes**

35 U.S.C. § 315(e)..............................................................................................................23

Cal. Bus. & Prof. Code § 17200........................................................................................22

**Rules**

Rule 36 .................................................................................................................................1

**Other Authorities**

Warren E. Burger, *The State of the Judiciary—1970*, 56 ABA J. (Oct. 1970) 929,
  934.............................................................................................................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    **I.      INTRODUCTION**

2           This case has been pending for 13 years.  It exists because Google made the decision to stop

3    purchasing Netlist memory modules, and instead use contract manufacturers to create infringing

4    knock-offs.  Google holds a monopoly in search, and in combination with Microsoft and Amazon

5    holds oligopoly power in cloud computing.  As a result, Google is one of the largest consumers of

6    memory modules in the world.  Its behavior has profoundly damaged Netlist's business.

7           After the Federal Circuit affirmed the validity of 73 claims in the '912 patent, Judge

8    Armstrong re-opened the case on February 17, 2021, but at Google's request, stayed all discovery

9    except for that relating to intervening rights, based on a representation that Google's motion on

10   intervening rights would be case dispositive.  Dkts. 111, 192.  Google made this representation to

11   Judge Armstrong in the face of Netlist's infringement contentions that asserted claim 16, a claim

12   affirmed as valid without amendment by a panel of PTO examiners (twice), the PTAB (twice) and

13   the Federal Circuit, on a Rule 36 summary affirmance (evidencing the weakness of Google's

14   arguments).  The representation to Judge Armstrong was not credible; but it had its intended effect,

15   further delay in the progress of this case.   On May 5, 2022, this Court granted summary judgment

16   of no intervening rights as to claim 16 as part of an extraordinarily detailed 44-page order that took

17   months to draft.  Dkt. 258.

18          Now that the case is set to proceed through discovery and trial, Google has decided it wants

19   out of this Court as fast as possible.  The stay should be denied.  ***First,*** it violates black letter Federal

20   Circuit precedent.  Samsung's DJ claim on the '912 patent is based solely on indemnification

21   requests to Samsung from Google and Google's subcontractor Lenovo.  *Microsoft Corp. v.*

22   *DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) makes clear that on these facts Samsung should

23   have presented itself to this Court if it has a cognizable interest to defend.  Indeed, Google is seeking

24   a stay based on a case in District of Delaware that should not even exist.  Judge Andrews has not

25   ruled on the pending motion to dismiss the DJ claims on the '912 patent.  *See* Ex. 1 (docket sheet);

26   *Samsung Elec. Co., Ltd. v. Netlist, Inc.*, No. 21-cv-1453 (D. Del. Oct. 15, 2021) ("Delaware

27   Action").  ***Second***, the prejudice of a stay to Netlist is extraordinary.  Google is one of the largest

28

consumers of memory modules in the world. Given its vast resources and power, dozens of contractors spread throughout the world can and will supply Google with infringing DDR4 DIMMs—the products accused of infringing claim 16. The limited records that have been produced evidence that ████████████████████████████████████████████. The only way to stop this behavior is for Google to be adjudged an infringer and for this Court to enter an order at least requiring an ongoing royalty. ***Third***, Netlist and this Court have invested substantial resources in this case since Judge Armstrong restarted it in February 2021. This is in addition to the decade of resources Netlist expended battling Google in the PTO, the PTAB, and the Federal Circuit. In response to an explicit request, Google failed to identify any additional terms that require claim construction after this Court's summary judgment order. As a result, this case is ready to promptly proceed through fact discovery, expert discovery, and trial. All of the resources devoted to date would be wasted were the case to be stayed. ***Fourth***, a stay will only further Samsung's and Google's goal to paralyze Netlist's efforts to seek justice.

- Google has refused to be bound by the Delaware court's rulings on infringement and validity. As a result, after Netlist prevails against Samsung, Google will require this Court to try the same issues of infringement and validity again.

- Samsung claims it does not manufacturer or designs memory modules in the United States, nor does it concede that its sells or offers to sell Google's modules in the United States. As a result, the only place where damages can likely be awarded for Google's infringing activity is this case.

- Google has an incredibly complex supply chain for the products at issue in this case, including significant past liability. Importation and use of Samsung-branded DIMMs are only a portion of the total liability that Google faces under the '912 patent.

- Samsung raced away from Judge Scarsi's court and filed a suit in Delaware to ensure nothing but delay and chaos. Samsung's operative pleading there involves DJ claims on six more patents beyond the '912 patent at issue here, as well as six additional claims. Ex. 2 at 1. Judge Andrews has not entered a scheduling order or set a date for a case management

conference.   And his docket is heavily impacted, averaging 24.2 months to a claim construction hearing, with trial on average following many years away.

- Samsung (which initiated the DJ claim at Google's request) has not agreed to be bound by this Court's intervening rights ruling, meaning that Judge Andrews would need to go through months of briefing and deliberation for an issue this Court already decided.

Granting Google's motion would be tantamount to an indefinite stay that will likely push out the resolution of Netlist's claims against Google into a third decade.  Justice delayed is justice denied. This is not an empty platitude.  As Chief Justice Burger told the ABA in 1970:

> A sense of confidence in the courts is essential to maintain the fabric of ordered liberty for a free people and three things could destroy that confidence and do incalculable damage to society:
>
> That people come to believe that inefficiency and delay will drain even a just judgment of its value;
>
> That people who have long been exploited in the smaller transactions of daily life come to believe that courts cannot vindicate their legal rights from fraud and over-reaching;
>
> That people come to believe the law—in the larger sense—cannot fulfill its primary function to protect them and their families in their homes, at their work, and on the public streets.

Warren E. Burger, *The State of the Judiciary—1970*, 56 ABA J. (Oct. 1970) 929, 934 (address to American Bar Association meeting, Aug. 10, 1970).

## II.    BACKGROUND

### A.    Google Is a Past Customer of Netlist That Attempted to Destroy Netlist's Business by Using Contractors to Make Knock-Off Products

Between 2003 and 2008, Google was an important Netlist customer.  Google purchased advanced Netlist memory module designs.  Between 2006 and 2007, Netlist shared its designs for rank multiplication with Google.  *E.g.* Ex. 3 (NETLG00000104).  Rank multiplication allows for a memory controller, which logically sees only two DRAM ranks to work with memory modules that have multiple quads of DRAM chips, 1-quad (4-rank), 2-quads (8-rank), 4-quads (16-rank).  In

1   2008, Google made the decision to take the designs Netlist presented and ███████████

2   ███████████████████.

3       Google holds immense market power.  Google holds the world-wide monopoly in search.

4   Google, Amazon, and Microsoft, control the cloud computing market.  As a result, it is one of the

5   largest consumers of memory modules in the world.  To put the damage to Netlist of Google's

6   decision to cease purchasing product from Netlist in concrete business terms, when the intervening

7   rights summary judgments were taken off calendar on January 11, 2022, Netlist lost hundreds

8   million dollars in market capitalization in a single day.  Dkt. 243-1 at 3; Dkt. 243-2 at 3.

9       **B.**    **The Accused Products Can Be Manufactured By a Large Number of Different**

10          **Entities**

11      Netlist original infringement contentions for claim 16 are not limited by any particular rank

12  configuration, nor by any particular manufacturer:

13      Claim 16 of the '912 Patent: The memory modules incorporated in Google's servers
    include, without limitation, memory modules compliant with certain portions of the

14  JEDEC Solid State Technology Association ("JEDEC") standards and
    specifications for Double Data Rate 4 ("DDR4") Synchronous DRAM

15  ("SDRAM") Registered Dual In-Line Memory Modules ("RDIMMs"), DDR4
    SDRAM Load Reduced Dual In-Line Memory Modules ("LRDIMMs") and DDR4

16  SDRAM Non-Volatile Dual In-Line Memory Modules ("NVDIMMs"), and
    products that operate in substantially similar manner.

17

18  Dkt. 170-3 at 4.

19      As discussed below there is a substantial dispute of fact as to the sources of DDR4 DIMMs

20  that Google uses.  But the Court need not resolve this issue to deny the stay.  Google's own admitted

21  past behavior is all that is necessary to deny the stay.   DDR4 DIMMs have a standardized interface

22  provided by JEDEC.  Within this standardized footprint Google has a vast number of options for

23  obtaining infringing products. ███████████████████████

24  ███████████████████████████████████

25  ███████████████████████████████████

26  ██████████████████████████████. Ex. 10 at 11

27  (Google's Aug. 11, 2021 Supp. R&Os to ROG No. 1).  Raw DRAM components is produced by at

28

1   least Samsung, SK Hynix,[1] Micron, and CMXT.  *See* Ex. 4. 

11   ).  There are a large number of entities that can supply DDR4 DIMMs

12   to Google or its contractors who assemble servers.  *See* Ex. 7 (listing DDR4 DIMM manufactures

13   including Samsung, Micron, Kingston, Crucial, SK hynix, Supermicro, NEMIX RAM, Brute

14   Networks, HP, Arch Memory, Axiom, Ballistix, Lenovo).

15        The only way Netlist can hope to convince Google to stop using infringing DDR4 DIMMs—

16   whether purchased as finished modules or built by its contractors or built into custom servers—is to

17   obtain a judgment against Google because of the vast options it has for sourcing infringing products.

18   A judgment against Samsung will resolve nothing, because Google will simply source its modules

19   from another manufacturer if it desires to continue using unlicensed products for the purpose of cost

20   savings.

21        After this case reopened, Netlist served discovery on Google in order to definitively

22   understand what designs of DDR4 DIMMs it has used.  In order to preclude Google from arbitrarily

23   defining what it believed was within or outside the scope of the infringement contentions, the

24   discovery requests were framed in terms of technical characteristics relevant to the patent in suit,

25

26        _____

27        [1] As discussed below, Netlist has a

28   Section II. F.

not in terms of "accused products."  *See, e.g.* Ex. 8 at 2 ("The term 'Memory Module' refers to a printed circuit board which is connectable to a computer system, with a plurality of double-data-rate ('DDR') memory devices, and at least one circuit that sends a clock signal.").  This would ensure that the full scope of everything Google does with rank-multiplied DIMMs is resolved in this litigation.  Google was never required to provide this information because Judge Armstrong ordered a stay of all discovery other than intervening rights discovery pending the resolution of the intervening rights motions for summary judgment. Dkt. 192.  Because fact infringement discovery has not occurred, the factual representations in Google's motion to stay regarding sources and designs of products are untested.

The next business day after the motion to stay was filed Netlist asked Google to provide information required by Netlist's discovery requests that is relevant to the stay.  For example, Netlist asked:



Ex. 9 at 4 (June 6, 2022 Email from Sheasby to Tse).[2]  Google's responded with misdirection.  It repeatedly caveated its response with "***accused*** DDR4 products":



Ex. 9 at 2 (June 10, 2022 Email from Tse to Sheasby) (emphasis added).  Netlist responded by pointing out the word games that Google was playing by consistently modifying its answers with the term "accused" without defining how it was interpreting Netlist's contentions:

---

[2] Magistrate Judge Spero's discovery dispute resolution procedures require multiple weeks of meet and confer before a letter brief can be filed, and as a result these procedures could not be used to provide the information in advance of this opposition to the motion to stay.

The accused products as to claim 16 are DDR4 DIMMs.  Google is obviously taking a narrow and [self-]serving view of Netlist's infringement contentions in order to exclude the products that it builds either directly or through vendors.  This is the purpose of Google's repeated use of the term "accused." Once again, please answer the question, which did not use the term "accused" in order to prevent Google from continuing to play word games.

*Id.* at 1 (June 11, 2022 Email from Sheasby to Tse).  Google refused to respond.  As a result, this Court should discount any representation made by Google about the sources or design of DDR4 DIMMs.

Damages in this case as to claim 16 go back to when Google first started using DDR4 DIMMs, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, after the initiation of this lawsuit. Ex. 5 at 62 (Google's Second Supplemental Responses to Netlist's Rog No. 3).  Google does not even attempt to provide complete documentation in its motion evidencing all sources and designs of DDR4 DIMMs it has used since this date through the present.  Instead, it provides self-serving snapshots of information from single years.  For example, for Q1 2021, it wrote that "▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮".  Ex. 10 at 15 (2021-08-11 Google's Supplemental Responses and Objections to Rog Nos. 1, 2).  Google's motion represents that all that is at issue are ▮▮▮▮▮▮▮▮▮▮▮.  Mtn. at 3 ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But this does not even track the interrogatory response, which ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ The fact that a memory module is not made ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Further, for Q1 2021, Google only wrote "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮supplied *the vast*

*majority* of Google's DIMMs in Q1 2021[.]" *Id.* "*Vast majority*" is not 100%. If this case is stayed, Google receives a free pass on the rest of the infringing DIMMs that are supplied by others. Indeed, given that Google is one of the most valuable companies in the world whose business depends on memory modules, what Google considers a *small minority* of memory modules from other entities besides ████████████████ (such as Micron) can expose it to what normal businesses would consider vast damages.

### C.     No Infringement Discovery Has Occurred on the Full Scope of Google's Potential infringement.

Netlist has asserted 64 claims in this case. Dkt. 170-3. It is black-letter Federal Circuit law that a party is entitled to reasonable discovery to identify infringement that may not be available through public information. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) ("If a local patent rule required the final identification of infringement and invalidity contentions to occur . . . well before the end of discovery, it might well conflict with the spirit [of the Federal Rules of Civil Procedure].") Because Judge Armstrong stayed infringement discovery pending resolution of the intervening rights claims, Dkt. 192, no discovery has occurred as to Google's use of memory modules that may not fit within the public JEDEC standards but which nonetheless infringe Netlist's asserted claims of the '912 patent. The claims are not limited to standardized products. But the limited discovery to date has been entirely about whatever Google has unilaterally decided to provide regarding standardized products that were used before the re-examination certificate issued.

### D.     The Samsung Delaware DJ Action Is an Improper Case Designed to Interfere with This Court's Jurisdiction

Samsung's Delaware action does not allege that Netlist ever communicated with Samsung regarding the '912 patent, much less accused Samsung of infringing the '912 patent. Instead, it relies on Netlist's suit against Google before this court. Specifically, Samsung pleads that declaratory judgment jurisdiction exists because "on July 6, 2021, Google made an indemnification request to SSI," and "on July 19, 2021, Lenovo made an indemnification request to SSI." FAC

1   ¶¶ 43–44 (Lenovo is Google's subcontractor).  The Federal Circuit is clear that on this fact pattern,

2   Samsung needed to appear before this Court, not run off to a different jurisdiction:

3
> Importantly, even if there were such an obligation—to indemnify a customer already
> sued by the patentee in Texas—it would not justify what Appellees seek here. A case
4   > has already been filed against these customers in the Eastern District of Texas.
> Appellees cannot seek a declaration from a New York court on behalf of customers
5   > they must indemnify where a suit against these very same customers on all the same
> issues was *already* underway in a Texas court.
6

7   *Datatern*, 755 F.3d at 904 (emphasis in original) (citation omitted).

8        Moreover, Samsung claims that it neither designs nor manufacturers DDR4 DIMMs in the

9   United States.  Ex. 11 (Dkt. 23) ¶ 9 ("The Accused Memory Modules [including LRDIMM and

10  RDIMM memory modules that comply with the JEDEC DDR4 standards] were designed outside

11  the United States. The Accused Memory Modules are, and always have been, manufactured outside

12  the United States.").  Samsung also does not admit that it offers to sell or sells what it supplies

13  directly or indirectly to Google in the United States.  As a result, the damages associated with any

14  Samsung-sourced DDR4 DIMMs or components that Google uses can likely only be resolved via a

15  suit against Google.

16        Finally, the Samsung case is extraordinarily complicated.  It currently involves seven patent

17  declaratory judgment claims as well as six other claims for relief.  Case dispositive motions to

18  dismiss have been pending in the matter since December 2021.  This includes a motion to dismiss

19  all claims as to the '912 patent.  Ex. 1 (Dkt. 24).   A stay pending this complex proceeding is

20  tantamount to an indefinite stay.

21        **E.      The Samsung/Netlist JDLA Has Been Terminated For Material Breach**

22        Samsung and Netlist entered into a Joint Development and License Agreement ("JDLA"), a

23  part of which involved a limited cross-license of patents.  Judge Scarsi ruled on October 14, 2021

24  that Samsung materially breached the JDLA and that Netlist had properly terminated the JDLA at

25  least as of July 15, 2020. *Netlist, Inc. v. Samsung Elec. Co., Ltd.*, No. 20-cv-993, Dkt. 186 (C.D.

26  Cal. Oct. 14, 2021) ("Contract Action").  Judge Scarsi has entered final judgment affirming the

1  termination.  *Id*. Dkt. 306 at 2 ("Netlist terminated the JDLA pursuant to JDLA § 13.2, and

2  Samsung's licenses and rights under the JDLA have ceased.").  Moreover, in the Contract Action,

3  the evidence established that Samsung was in material breach of the JDLA no later than when

4  Samsung announced that it was ceasing performing under the contract.  As a result, any protection

5  afforded by the JDLA ceased long before the July 2020 termination date.



F.      **Google Has Refused To Disclose the Full Scope of What It Receives Directly or Indirectly From**

1
2
3
4
5  •
6  Ex. 5 at 82

7       fn.25 (Google's October 2021 Third Supplemental Response to Rog No. 3).

8       When Google wrote its letter ████████████████████████, Netlist responded

9 by asking for a "a complete list of all DRAM purchases from ██████ from 2008 through the

10 present, as well as all agreements relating to these purchases."  Dkt. 268-08 at 1 (September 25,

11 2021 Email from Sheasby to Acharya).  This is necessary so that an analysis of the scope of any

12 rights Google may have can be determined.  Google declined to provide the information.

13      **G.      Google Has Refused to Answer Basic Questions Regarding the Basis for Its
                  Motion to Stay**
14

15      The next business day after Google's motion to stay was filed, Netlist asked a series of

16 simple question that any good faith actor should be prepared to answer when seeking a stay of a

17 case that has been pending for over 12 years:

18      Has Samsung, ████████████████ agreed to indemnify Google as to
        liability associated with claim 16[?]
19
        Can you send us copies of the agreements that have indemnification language
20      relevant to claim 16 and any agreements to indemnification with these entities[?]

21      Have you requested that Samsung, ██████████████ agree to appear in
        the case before Judge Seeborg?  Have they declined?
22

23      Is Google agreeing to be bound by the infringement and validity determinations
        made as to Samsung regarding the '912 patent?
24

25 Ex. 9 at 4 (June 6, 2022 Email from Sheasby to Tse).  Google has refused to answer every single

26 one of these questions.  *See id.*  The refusal to answer these questions makes clear that this stay

27 motion is a litigation tactic intended to allow Google to delay as long as possible the adjudication

28 of its liability.

**III.     ARGUMENT**

**A.     The Federal Circuit Makes Clear That Google's Suppliers Should Appear Before This Court if There Are Common Issues**

None of the "customer suit" cases Google cites are on point.  *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014) involved retailers who were all reselling a single product, a Nintendo game console.  In contrast, Google is not a reseller.  Google has a complex multi-source supply chain for DDR4 DIMMs used throughout its business. Google admits ███████████ █████████████████████████████████████████████████████████████  Google's interrogatory response hedges, however, noting that ██████████████ ███████████████.  It does not account for all of it.  Because infringement discovery has been stayed, Google has yet to reveal its other sources.  *See* Exs. 5, 6; *supra* 4 (explaining the involvement of Samsung, ██████████████████████████████████████████████).

*Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) shows why a stay in this case is improper.  The Federal Circuit reversed an injunction preventing a patentee from proceeding in a parallel lawsuit (the "New York ASP Action") when the other lawsuit (the "Massachusetts Action") will not resolve all disputes: "There is no good reason to unduly delay the resolution of major issues that will not be resolved in the Massachusetts action."  *Id.* at 1464.  Here, Samsung is only one of the sources of DDR4 DIMMs that Google has available.  *See* Exs. 5, 6; *supra* 4.  And even as to the Samsung case, Google has not agreed to be bound by the infringement and validity determinations of the Delaware Court, consistent with the fact that it sources DDR4 DIMMs from many sources.

Finally, Google's citation to *Tegic Commc'ns Corp. v. Bd. of Regents of the Univ. of Tex. Sys.*, 458 F.3d 1335, 1337 (Fed. Cir. 2006) appears to be a mistake on Google's part.  In that case, the University sued a group of cellular phone companies, all except one of which used software provided by Tegic which substantially embodied the asserted claim. Tegic filed a declaratory judgment in a different jurisdiction.  The Federal Circuit stated that the customer-suit exception did not apply on three basis:

> (1) the cellular-phone companies in the Texas action are not 'mere resellers' of products manufactured by Tegic; (2) the cellular-phone companies have not agreed

1
2

to be bound by any decision in favor of Tegic; and (3) Tegic is not the only source
of the software used in the phones alleged to infringe[.]

3

*Id.* at 1343 (finding "it would not be demonstratively more efficient to stay the Texas suits in favor

4

of Tegic's manufacturer's suit").  The exact same fact pattern exists here.  Google is not a reseller.

5

It uses DDR4 DIMMs in its business, obtains a unique benefit from this infringing use, and sources

6

DDR4 DIMMs from a complex global network.  Moreover, Google has not agreed to be bound by

7

the Samsung case.  Finally, Google's motion to stay entirely ignores the need for discovery on the

8

use of the 64 asserted claims in the '912 patent for non-standardized product designs that may have

9

been used by Google since the grant of the reexamination certificate.

10

The controlling Federal Circuit precedent on how to approach the Samsung declaratory

11

judgment request regarding the '912 patent is *Microsoft Corp. v. DataTern, Inc*., 755 F.3d 899, 904

12

(Fed. Cir. 2014).  *DataTern* requires that Samsung appear in this Court to defend any legitimate

13

interest it may have.  Netlist has never communicated with Samsung regarding the '912 patent.

14

Samsung's allegations in Delaware that serve as the basis for jurisdiction are indemnification

15

requests it received from Google and one of Google's contractors Lenovo.  Ex. 2 ¶¶ 43, 44.[3]

16

Samsung does not claim it has any contractual indemnification obligation whatsoever to

17

either Google or Lenovo.[4]  This was not an accident.  As noted above Google has refused to even

18

acknowledge the existence of an indemnification contract, much less disclose its terms.  Moreover,

19

Samsung does not claim that its DDR4 DIMMs practice the specific PDA functionality as set out in

20

the JEDEC specifications presented in Netlist's infringement contentions for claim 16.  And

21

Netlist's infringement contentions make no reference whatsoever to Samsung.

22

23
24
25

[3] ¶ 43"On July 19, 2021, Lenovo made an indemnification request to SSI in connection with Netlist's assertion in the Google Infringement Action of claim 16 of the '912 patent against Google's use of Lenovo's 'Octopod' servers, which contain Samsung's DDR4 LRDIMM and RDIMM memory modules."

26
27

¶ 44 "On July 6, 2021, Google made an indemnification request to SSI in connection with Netlist's assertion in the Google Infringement Action of the '912 patent against Google's use of Samsung's DDR4 LRDIMM and RDIMM memory modules."

28

[4] To be clear, the issue is not Samsung conceding an indemnification obligation, it does not even plead the existence of a relevant contract.  *See* Ex. 2.

On these specific facts, the Federal Circuit's instructions are clear.  Samsung's DJ claim is improper.  Samsung needs to show up and answer before this Court if it has a proper interest that needs to be vindicated:

> Importantly, even if there were such an obligation—to indemnify a customer already sued by the patentee in Texas—it would not justify what Appellees seek here. A case has already been filed against these customers in the Eastern District of Texas. Appellees cannot seek a declaration from a New York court on behalf of customers they must indemnify where a suit against these very same customers on all the same issues was *already* underway in a Texas court.

*DataTern*, 755 F.3d at 904 (emphasis in original) (citation omitted).

Why would Samsung persist with a facially deficient pleading in Delaware on the '912 patent?  To assist one of the largest consumers of memory modules in the world—Google—in avoiding this instant action.  Why did Samsung decline to bring its claims before Judge Scarsi in the Central District of California, who had already found that Samsung lost all of its rights to Netlist patents by a material breach of the JDLA?  Because Judge Scarsi's time to trial can be as little as a year, and Judge Andrews in Delaware is struggling under a massive docket compounded by Judge Stark's elevation to the Federal Circuit.  *See Gen. Sci. Corp. v. Den-Mat Holdings, LLC*, No. 21-cv-882, 2021 WL 4622548, at *3 (D. Del. Oct. 7, 2021) (noting that "there were 996 open patent cases in the District of Delaware as compared to 233 open patent cases in the Central District of California.").  The average time to a claim construction for patent cases before Judge Andrews is 24.2 months.  Ex. 12 (Docket Navigator data from 2008 through the present).  And the average time for jury trial in patent cases before Judge Andrews is 38.3 months.  *Id.*  A stay of the Google case will push its ultimate resolution into a third decade.

Before this Court agreed to hear the matter and while the parties cross-summary judgment motions were pending, why did Google violently resist a transfer to the Central District of California, where the case would have invariably been assigned to Judge Scarsi, given that Google is relying on the Samsung JDLA as a partial defense?  Because it wanted to perpetuate as long as

possible an indefinite stay of the proceedings.

**B.      Even if *DataTern* Is Not Controlling, and the Court Decides to Assess the Standard Stay Factors, A Stay Is Improper.**

As the moving party, Google "has a 'heavy burden' to make a 'strong showing' to justify the stay." *Lofton v. Bank of Am. Corp.*, No. 07-cv-5892, 2008 WL 2037606, at *1 (N.D. Cal. May 12, 2008) (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975)).  Google has not met its "heavy burden" of demonstrating that a stay is warranted under the customer suit exception here.  A stay is not warranted because (1) it would significantly prejudice Netlist; (2) this Court has invested substantial judicial resources in this case which would be wasted; and (3) the stay will not simplify the issues in question and the trial of this case.  As explained by the Federal Circuit: "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989).

**C.      The Prejudice to Netlist Requires Denial of the Stay**

The substantial prejudice that Netlist would suffer from another stay alone warrants denial. "'[I]f there is even a fair possibility that the stay . . . will work damage to someone else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 268 (1936)). Here, the prejudice to Netlist from granting a stay would be substantial whereas the prejudice to denying the stay to Google would be non-existent.

Netlist designs and sells memory modules, including DDR4 DIMMs.  Ex. 13.  Google is one of the largest purchasers of memory modules in the world and one of Samsung's largest customers. Prior to this suit, Google and Netlist had a long commercial relationship. But then Google broke off that relationship and began using products that infringed Netlist's patents without taking a license to Netlist's patents.  Google's use of competing knock-offs has cost Netlist market share for well over a decade.  Continuing the loss of market share would be highly prejudicial.  To put the importance of this case in perspective, Netlist lost several hundred million dollars in market capitalization when motions for summary judgment were taken off calendar indefinitely on January 11.  *See* Dkt. 243-1 at ¶ 1; Dkt. 243-2 at 2.

1    Netlist has an "interest in the timely enforcement of its patent rights." *Samsung Elecs. Co.*

2    *v. Blaze Mobile, Inc.*, No. 21-cv-2989-EJD, 2022 WL 103552, at *4 (N.D. Cal. Jan. 11, 2022).

3    Google's requested stay here would be particularly prejudicial because it would be of indefinite

4    duration (on top of the ten-year stay that concluded just over a year ago).  *Parella Mike Bloomberg*

5    *2020, Inc. v. Mike Bloomberg 2020, Inc*., No. 20-cv-2231, 2020 WL 7315015, at *2 (C.D. Cal. Sept.

6    24, 2020) ("[T]he Ninth Circuit has declined to stay cases where the delay could be indefinite or

7    lengthy.").  Samsung's declaratory judgment action is still at a dispositive threshold motion stage.

8    Judge Andrews has not even agreed to hear the claim.  There has been no scheduling conference,

9    no substantive progress in the case, and no discovery. Ex. 1 (D. Del. Docket Sheet).  Samsung's

10   declaratory judgment suit is expressly designed to ensure there is no meaningful progress of the

11   '912 patent.  Samsung's operative pleading seeks a declaration of non-infringement on seven Netlist

12   patents as well as six other claims for relief.  Moreover, Google will also no doubt argue that the

13   case should be stayed pending appeal of the Samsung action, which could take an additional year or

14   more.  In sum, by the time this process is complete, Netlist's suit against Google will be approaching

15   its twentieth year of existence.

16   Courts in this Circuit and elsewhere routinely deny stays that "could be indefinite or

17   lengthy." *See, e.g., Parella Mike Bloomberg*, 2020 WL 7315015, at *2; *see also Blue Cross and*

18   *Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc*., 490 F.3d 718, 724 (9th Cir. 2007)

19   (vacating stay that "could easily last as long as the five- or six-year" limitations period).  Netlist has

20   suffered substantial prejudice given the lengthy total and partial stays that have already occurred.

21   "A further delay of the district court litigation would exacerbate that prejudice." *IOENGINE, LLC*

22   *v. PayPal Holdings, Inc.*, No. 18-cv-452, 2020 WL 6270776, at *3 (D. Del. Oct. 26, 2020).

23   Google's motion fails to demonstrate otherwise.  Google first argues that Netlist will not

24   suffer prejudice because any injury it has suffered is "redressable by monetary damages."  Mot. at

25   12:13-15.  Not so.  *First*, Netlist is an operating company, and Google's use of competing knock-

26   offs harms Netlist's entire business.  In particular, Netlist markets a full range of DDR4 DIMMs.

27   Ex. 13 (including LRDIMM, VLP SORDIMM SOUDIMMM, VLP RDIMM UDIMM, VLP MINI

28

1    RDIMM UDIMM, SORDIMM SOUDIMM, RDIMM UDIMM, MINI RDIMM UDIMM).   If

2    Google were to cease infringing it would fundamentally transform Netlist's entire business.  **Second**,

3    even if Netlist's injuries were fully compensable by monetary damages (which they are not), this

4    would not mean that the extreme delay that Netlist has suffered here is somehow not prejudicial.  A

5    lengthy delay causes significant hardship to a patentee even when only monetary damages are at

6    stake. *See, e.g.*, *IOENGINE, LLC*, 2020 WL 6270776, at *3 (denying stay and rejecting the argument

7    there was no prejudice because non-practicing entity would only suffer monetary harm); *Medien*

8    *Pat. Verwaltung AG v. Warner Bros. Ent. Inc.*, No. 10-cv-4119, 2014 WL 1169575, at *2 (S.D.N.Y.

9    Mar. 21, 2014) (denying stay where it would "conceivably contribute to delaying [] payment until

10   well into 2016, more than three years after this Court ruled that Deluxe had infringed MPV's patent,

11   and nearly six years after MPV filed suit.").  Notably, **none** of the cases cited by Google involve a

12   delay as lengthy as the one that Netlist has already suffered here.

13        Google next argues that Netlist will not suffer prejudice because it can fully recover from

14   Samsung.  Mot. at 12-13.  This too is incorrect for several reasons.  **First**, Google's supply chain for

15   DDR4 DIMMs is complex and extends far beyond Samsung.  In particular, as noted above Google

16   has significant liability via its arrangements with ████████████████████████████████

17   ████████████████████.  *See supra* 4; Exs. 5, 6.

18        **Second,** based on Samsung's allegations, a substantial portion of liability based on Samsung

19   components can only be addressed through a claim for infringement via importation and use against

20   Google.  This is because Samsung contends that it does not manufacture or design DDR4 DIMMs

21   in the United States.   Ex. 11 ¶ 9 (Yoon Decl.) ("The Accused Memory Modules [including

22   LRDIMM and RDIMM memory modules that comply with the JEDEC DDR4 standards] were

23   designed outside the United States. The Accused Memory Modules are, and always have been,

24   manufactured outside the United States.").  And Samsung does not allege that it sells or offers to

25   sell in the United States the components used by Google.  Therefore, Google's reference to *Glenayre*

26   *Elecs., Inc. v. Jackson,* 443 F.3d 851, 864 (Fed. Cir. 2006) is not on point.  In that case, the first trial

27   resulted in a damages award for ***all*** sales of the product that were used by Glenayre customers.

28

Samsung is not pleading that it will take responsibility for products it makes outside of the United States and which Google or its subcontractors import into the United States.  The same analysis holds for *Stickle v. Heublein, Inc*., 716 F.2d 1550, 1562 (Fed. Cir. 1983).  Instead, *Kahn v. Gen. Motors Corp*., 889 F.2d at 1081, should guide the Court.  In that case, Motorola supplied the integrated circuits that were used in General Motors radios.  The Federal Circuit rejected a stay of the GM case in favor of the Motorola case because Motorola did not commit to resolving all damages claims against GM:

> However, in those cases in which a customer suit exception has been held to favor the forum of the second-filed action, the second action would resolve all charges against the customers in the stayed suit, including liability for damages. Such undertaking is absent in the case at bar.

*Id.* at 1081.  Samsung likewise makes no commitment to resolving all damages claims against Google, not even as to materials that Samsung manufactured.

**Third**, Netlist has a claim for willful infringement against Google that is unique and substantial.  Google has been on notice of the '912 patent for over a decade.  Google was presented with Netlist's rank multiplication designs and chose to instead manufacture them through alternative sources, willfully ignoring Netlist's patent rights.  Claim 16 was affirmed valid by the USPTO on April 4, 2011.  Dkt. 170-12 (Control Nos. 95/000,579).  Google introduced DDR4 DIMMs after this date.  Ex. 5 at 35–38 (Google's Third Supplemental Response to Rog No. 3) (listing inventory dates for Google's purchase of DDR4 RDIMMs and LRDIMMs).  As a result, Google acted with extraordinary disregard of Netlist's patent rights.  The request to stay in favor of Samsung case appears to be a strategy to avoid having to face the consequences of Google's reckless behavior.

Google's final argument is that "any delay inherent in a stay of the litigation—by itself—does not give rise to prejudice."  Mot. at 13:4-5.  But Netlist will suffer substantial prejudice from the stay beyond the mere delay alone, including ongoing and irreparable harm to its core business as explained above.  Regardless, Google's argument proves far too much.  If a "protracted delay" could never constitute prejudice, then "such stays could be extended indefinitely" without end.  *See Adams v. Nationstar Mortg.LLC*, No. 15-cv-9912, 2018 WL 702848, at *2 (C.D. Cal. Feb. 2, 2018).  Obtaining such an endless stay is precisely what Google is hoping to achieve here.  At some point,

however, "justice delayed is justice denied." *Medien Pat. Verwaltung AG*, 2014 WL 1169575, at *2 (denying stay).

Because of the harm Netlist would suffer from another stay, Google "must make out a clear case of hardship or inequity" if no stay issues. *Lockyer*, 398 F.3d at 1112. Google has not even attempted to make this showing, nor can it. While this case is vitally important to Netlist's business, Google, which is one of the most valuable companies in the world, will not suffer any prejudice if, after almost thirteen years, it is finally required to litigate an infringement suit involving a single patent. It is well established that merely "being required to defend a suit [ ] does not constitute a 'clear case of hardship or inequity.'" *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007); *see also InfoGation Corp. v. ZTE Corp.*, No. 16-cv-1901, 2016 WL 9525235, at *4 (S.D. Cal. Dec. 21, 2016) ("Defendants have not identified any meaningful hardship that would result from the denial of a stay beyond having to defend against InfoGation's claims in these actions, which is insufficient by itself to justify a stay.").

> **D.    This Court Has Invested Substantial Judicial Resources in This Case That Would Be Wasted if a Stay Is Granted**

Google first threatened to bring a motion to stay this case on August 10, 2021. Dkt. 223-07 (Aug. 10, 2021 Letter from Acharya to Sheasby). On February 21, 2022, this Court held a case management conference during which Google brought up its stay tactic again. This Court warned that if Google intended to bring a motion to stay it needed to do so promptly. No stay motion was filed. Instead, this Court held extensive oral argument and spent months preparing a detailed order on the outstanding motions. This order issued on May 5, 2022. Dkt. 258. Almost a month later, and a few weeks before the Court's case management conference, Google decided to roll the dice with a motion to stay. Google did not even have the basic courtesy to schedule the motion to stay on the same date as the case management conference, instead announcing that the case management conference should be moved again by weeks to accommodate its newest whim. It was not until Netlist agreed to expedite briefing on this motion to stay that Google agreed to a compromise.

There is a strong suggestion in this behavior of a lack of respect for the significant resources Netlist and the Court have invested in the case to date. For example, Netlist asked Google a very

basic question: whether Samsung, who is working to assist Google, would agree to respect this Court's intervening rights ruling: "Is Samsung willing to be bound by Judge Seeborg's ruling on intervening rights?" Ex. 9 at 4. Google dismissively responded: "That is a question for Samsung." Ex. 9 at 2. Samsung brought the Delaware DJ action on the '912 patent at the request of Google. It is Google that bears the burden of establishing the grounds for a stay. Having received the Court's ruling, and apparently dissatisfied with the result, it now wants an out so that Samsung can have a second bite at the apple with Judge Andrews. This is improper and strongly weighs against a stay.

There is a clear opportunity for a prompt resolution of the '912 patent claims before this Court. Google was asked whether there were any outstanding claim construction issues that needed to be resolved by this Court before trial. "Can you let us know what claim terms you believe need to be construed in the 912 patent." Ex. 9 at 3 (June 6, 2022 Email from Sheasby to Tse). Google declined to identify any terms. This is unsurprising because as part of this Court's order, it noted that the parties had previously stipulated as to construction of terms in the '912 patent, and it provided effective constructions of other terms. As a result, a prompt trial in this matter can occur that can globally resolve: (a) infringement as to all of the different forms of DDR4 DIMMs Google uses; (b) the scope and implications of ███████████████ and the now terminated Samsung JDLA as to Google's behavior.

### E.    The Stay Will Not Meaningfully Simplify the Issues in Question and the Trial of This Case

After Judge Armstrong became unavailable, and before this Court took up the case, Netlist proposed transfer to the Central District of California. Dkt. 224. Google opposed and this Court observed that it was not inclined to transfer a matter from one district with an impacted patent docket, the Northern District, to another district with an impacted docket, the Central District. This reasoning applies with even greater force to this motion to stay. Samsung raced out of the Central District as fast as it could and created a morass in the District of Delaware, the most impacted patent docket in the country. Samsung seeks a declaration of non-infringement on seven Netlist patents from six different patent families and six other claims for relief. Ex. 2. The inclusion of the '912 patent in the Delaware action is expressly designed to make sure it cannot progress. This stay does

not serve the wider interests of justice because it throws a unique and narrow dispute into the morass Samsung has created in Delaware. Moreover, the Delaware suit cannot meaningfully resolve the core issues between Google and Netlist:

*First*, Google has refused to agree to be bound by the outcome of infringement and validity determinations in the Delaware case. The Federal Circuit in *Kahn* emphasized that such a refusal weighs heavily against a stay based on an alleged customer-suit exception.

> [When the customer suit stay was granted,] [a]ll of the separated customer defendants agreed to be bound by any injunction issued in the case. [] These are controlling distinctions, for even if General Motors were a mere customer of Motorola, General Motors has not agreed to be bound by the Illinois decision or any injunction against Motorola.

*Kahn*, 889 F.2d at 1082 (internal citations omitted).

*Second*, Google has a vast supply chain through which it obtains DDR4 DIMMs. Samsung is only one part of this supply chain. Moreover, Google's claim that it has ███████████ ██████████████████ cannot be a basis for a stay. This is a heavily disputed issue. If Google believed ████████████████████████████████████████ ████████████ it can and should have brought a motion for summary judgment. It is in effect using a motion to stay as a tool to evade the burden of proof on summary judgment. Once again, the Federal Circuit's guidance in *Kahn* is on point. Kahn argued that a stay of the suit against GM in favor of GM's supplier Motorola was improper because GM could simply source the integrated circuits supplied by Motorola from another source, meaning there would be no repose. The Federal Circuit concluded this weighed against a stay:

> The. . . district court stated that the Illinois court could enjoin Motorola from manufacturing its integrated circuits and therefore that Motorola could not pass this technology to its customers. This presupposes that there is no other source of the circuits, a supposition disputed by Kahn . . . . It is clear that whatever the outcome involving Motorola, the New York litigation against General Motors would not be resolved. 889 F.3d at 1082.

*Kahn*, 889 F.2d at 1082.

*Third*, as noted above, because Samsung claims that it manufactures and designs its memory modules outside the United States, and does not concede that it sells or offers to sell to Google or

its suppliers domestically, the litigation before this Court in California is the **only** litigation that is likely to resolve the vast majority of liability for DDR4 DIMMs that use Samsung components.

**Fourth**, Google has raised state law claims that are unique to it, and therefore will not be resolved in Delaware.  Dkt. 264.  These include Google's claims of fraud/deceit/concealment, negligent misrepresentation, breach of contract, and unfair competition under the UCL (Cal. Bus. & Prof. Code § 17200).  *Id.* at 13–23.

There is objective evidence that Google is using the Samsung Delaware action as a ruse to avoid liability.  Netlist first moved to dismiss Samsung's declaratory judgment claim against the '912 patent on December 20, 2021, and filed its motion to dismiss Samsung's First Amended Complaint on February 16, 2022.  Ex. 1 (Dkt. 10, 24).  Judge Andrews has yet to act on the motion to dismiss.  *Id.*  Bizarrely, Google is asking this Court to stay a case that has been pending for almost 13 years in favor a case that may not even proceed beyond threshold motions.  Netlist asked Google a very simply question after it filed its motion to stay: "Netlist has moved to dismiss Samsung's DJ as to the '912 patent.  Is Google conceding there should be no stay if that DJ is dismissed?"  Ex. 9 at 4 (June 6, 2022 Sheasby Email to Tse).  Google's response was a definitive no, making clear that the stay motion is a litigation tactic:

> Your email asks whether Google concedes there should be no stay if Samsung's declaratory judgment action is dismissed.  The answer is no because Samsung is also seeking an appeal of the licensing dispute with Netlist and an IPR against claim 16 of the '912 Patent, either of which has the potential to simplify—if not dispose entirely of—this case.

Ex. 9 at 2 (June 10, 2022 Tse Email to Sheasby).  The IPR Google refers to has not been instituted, and its filing is another example of improper collusion between Samsung and Google.   Samsung's DDR4 DIMM's use Inphi control chips.  Ex. 14 (Samsung's DDR4 Product Guide) at 13 (noting label description for Samsung's DDR4 DIMMs featuring Inphi-supplied components).  Inphi was one of the petitioners that expressly challenged claim 16 during the reexamination.  *See* Dkt. 170-12 (April 4, 2011 USPTO decision) (concluding that Inphi's "[p]roposed rejection of claims 16 . . . is not adopted").  To the extent Google actually uses any Samsung DDR4 DIMM modules, these will

also include Inphi chips.  Estoppel preventing the filing of IPRs attaches as a result of the *inter partes reexamination* filed by Inphi, Google, and Smart Modular.  *See* 35 U.S.C. § 315(e) (post-AIA).  That estoppel extends to real parties in interest, which sweeps in Samsung given its relationship with Inphi and Google.[5]  Samsung filed the IPR, without disclosing that Inphi and Google are real parties in interest, in an attempt to allow Samsung to circumvent the estoppel, just as Samsung filed an improper DJ on the '912 patent in order to allow Google to avoid facing the consequences of its behavior before this Court.

As to the "licensing dispute," Google is referring to Judge Scarsi's summary judgment and final judgment making clear that Samsung was in material breach of the JDLA and has lost all rights under it.  If resolution of this decision did actually justify a stay, Google would have immediately agreed to transfer this case to Judge Scarsi.  He would have been in the best position to assess whether Samsung's position on why it was not in material breach, which was so weak that it was resolved on summary judgment, merited a stay of the Google case.

The simple fact is that the Samsung's declaratory judgment action regarding the '912 patent is an excuse for Google to delay the day it will be called to account for its behavior over many years that has profoundly harmed Netlist's business.

## IV.    CONCLUSION

For the reasons explained above, Google's Motion to Stay should be denied.

---

[5]  *See Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1358 (Fed. Cir. 2018) (vacating PTAB's decision allowing institution of the IPR petitioned by RPX over patent owner's real-party-in-interest challenges where the Board failed to consider the entire record including the facts indicating that RPX filed the petition in the interest of its customer being sued by the patent owner in a district court action); *RPX Corp. v. Applications in Internet Time, LLC*, IPR2015-01750, Paper 128 at 33 (P.T.A.B. Oct. 2, 2020) (on remand from the Federal Circuit, finding that "RPX filed these IPRs to benefit its member" even if RPX had its own separate interests of strengthening its business, and noting that the "RPI inquiry sweeps more broadly than requiring explicit evidence of request, funding, or control").

Dated: June 15, 2022                     Respectfully submitted,

                                        IRELL & MANELLA LLP

                                        By: */s/  Jason G. Sheasby*

                                            Jason G. Sheasby
                                            jsheasby@irell.com
                                            Andrew J. Strabone
                                            astrabone@irell.com
                                            Yanan Zhao
                                            yzhao@irell.com
                                            Michael W. Tezyan
                                            mtezyan@irell.com

                                            IRELL & MANELLA LLP
                                            1800 Avenue of the Stars, Suite 900
                                            Los Angeles, California 90067

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2022, I caused the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically email notification of such filing to all counsel of record who have made a formal appearance.  I further certify that on June 15, 2022, the unredacted version of the foregoing was served on counsel of record who have made a formal appearance.

By: */s/   Yanan Zhao*
Yanan Zhao

Netlist's Opposition to Google's Motion to Stay
Case No. 3:09-cv-05718-RS