QUINN EMANUEL URQUHART & SULLIVAN, LLP

David Perlson (CA Bar No. 209502)
davidperlson@quinnemanuel.com
Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jared Newton (admitted *pro hac vice*)
jarednewton@quinnemanuel.com
Deepa Acharya (CA Bar No. 267654)
deepaacharya@quinnemanuel.com
Sandy Shen (admitted *pro hac vice*)
sandyshen@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Catlin Williams (CA Bar No. 336464)
catwilliams@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:09-CV-05718-RS<br><br>**DEFENDANT GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO STAY**<br><br>**JUDGE:** Hon. Richard Seeborg<br>**HEARING DATE:** July 14, 2022<br>**TIME:** 1:30 PM |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 2

    A. Netlist Cannot Dispute that a Stay Would Simplify the Issues ................................. 2

        1. Samsung Memory Modules are the Only Products At Issue ......................... 2

        2. The Samsung Litigation Will Resolve the Issues Disputed In this Case ................................................................................................................. 6

    B. Despite the Passage of Time, the Case as It Currently Stands is in Its Early Stages .......................................................................................................................... 9

    C. Netlist's Claims of Prejudice are Meritless .............................................................. 10

III. CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

*Arris Grp, Inc. v. British Telecomm. PLC*,
    639 F.3d 1368 (Fed. Cir. 2011) ............................................................................... 8

*Blue Cross and Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*,
    490 F.3d 718, 724 (9th Cir. 2007) ......................................................................... 11

*Chia-Ling Huang v. Lowe's Home Centers*,
    No. 2-18-cv-10545-SJO-JEM, 2019 WL 9997346 (C.D. Cal. Aug. 8, 2019) ................. 12

*Halo Elecs., Inc. v. Pulse Elecs.*,
    136 S.Ct. 1923 (2016) .......................................................................................... 12

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
    No. 12-cv-03844-JST (MEJ) 2014 WL 4593338 (N.D. Cal. Sept. 15, 2014) ................. 4

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    No. 18-cv-452, 2020 WL 6270776 (D. Del. Oct. 26, 2020) ........................................ 11

*Jacobs v. Nintendo of Am., Inc.*,
    370 F.3d 1097 (Fed. Cir. 2004) .......................................................................... 6, 9

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) .......................................................................... 5, 7

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ................................................................ 5, 6, 7, 12

*Microsoft v. DataTern*
    755 F.3d 899 (Fed. Cir. 2014) .......................................................................... 7, 8, 9

*Netlist, Inc. v. Samsung Elecs. Co., Ltd. et al.*,
    No. 2:21-cv-00463-JRG (E.D. Tex. May 3, 2022) .............................................. 6, 11

*Parella Mike Bloomberg 2020, Inc. v. Mike Bloomberg 2020, Inc.*,
    No. 20-cv-2231, 2020 WL 7315015 (C.D. Cal. Sept. 24, 2020) .................................. 11

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011) .......................................................................... 7, 9

*Tegic Commc'ns Corp. v. Bd. Of Regents of the Univ. Of Tex. Sys.*,
    458 F.3d 1335 (Fed. Cir. 2006) ............................................................................ 9

**Statutes**

35 U.S.C. § 271(a) ............................................................................................................ 6

35 U.S.C. § 284 ................................................................................................................ 6

35 U.S.C. § 315(c) ............................................................................................................ 9

47 U.S.C. § 227 .............................................................................................................. 11

## I. INTRODUCTION

Netlist has received exactly what it requested when it filed this case: adjudication of whether Google is liable for infringement of the originally asserted claims based on its use of the originally accused DDR2 FBDIMM products. The Court's summary judgment order held that Google has zero liability for those claims and products, due to the fact that Netlist chose to cancel or amend every originally asserted claim during reexamination and thereby subject them to intervening rights. Thus, despite Netlist's rhetoric, the case as it stands today bears no resemblance to the case Netlist filed in 2009 with respect to the asserted claims and accused products—the heart of a patent infringement suit. The only claim that remains at issue—claim 16—was not asserted until May 2021 under a completely new infringement theory. And the only products that remain are ▇▇▇ ▇▇▇▇▇▇▇▇ subject to Samsung's declaratory judgment action. These circumstances—an effectively new case and a co-pending supplier suit addressing the exact same legal questions at issue here—strongly favor a stay. Netlist's opposition ignores this reality.

Instead, the opposition relies on unsupported allegations about non-standardized memory modules, hypothetical suppliers, and complex global supply chain issues that supposedly undermine the premise of Google's Motion to Stay. None of those arguments are based in fact. As Google has repeatedly explained to Netlist in its interrogatory responses, all of the accused products—and even those Netlist is trying to add through amendment—are ▇▇▇▇▇▇▇ supplied by ▇▇▇▇▇▇ Samsung. If Netlist genuinely questioned the evidence Google has produced on this point, then it could have probed the issue through follow-up discovery months ago, including depositions that Google offered and Netlist declined to take. Having failed to exercise even the most basic diligence, Netlist should not be permitted to continue taxing the resources of Google and this Court when the only real issues that remain will be resolved in its litigation with Samsung.

Netlist also cannot legitimately claim prejudice if the case is stayed. Netlist's argument that the delay will cause it to lose market share is belied by the fact that Netlist does not even make the type of memory modules it has accused in this case (or is attempting to accuse through its motion to amend): 4-Rank, 8-Rank, and 16-Rank DDR4 RDIMMs and LRDIMMS. Thus, even if Google

were to use another source for the accused products, Netlist would not be an option. Netlist's argument that it might not be able to collect damages from Samsung is belied by the fact that Netlist has filed an infringement suit against Samsung in Texas seeking damages for, *inter alia*, the alleged sale and importation of DDR4 memory modules. And Netlist's argument that continuation of this case is necessary to prop up its stock price cannot possibly be a basis to override the strong considerations of judicial economy and efficiency that would result from a stay.

## II. ARGUMENT

### A. Netlist Cannot Dispute that a Stay Would Simplify the Issues

#### 1. Samsung Memory Modules are the Only Products At Issue

Netlist complains that it has not had an opportunity to investigate the full scope of accused products remaining in this case, due to the fact that discovery to-date has been limited to the issue of intervening rights. Opp. at 5-6. But as Netlist has previously represented to the Court, intervening-rights discovery has been broad and covered everything from the nature of the accused products, to Google's investment in those products, to Google's orders and contracts with suppliers. Dkt. 134-4.[1] Indeed, under the umbrella of intervening-rights discovery, Netlist has requested—and Google has provided—detailed information regarding each and every 4-Rank DDR4 RDIMM or LRDIMM Google has purchased, along with information regarding the model number, quantity, cost, and supplier of those products. Dkt. 290-12 at 61-67. Google also provided the same information about 8-Rank devices that Netlist did not include in its operative contentions. *Id*. at 81-83. That information conclusively demonstrates that all of the accused products—and those Netlist is attempting to add to the case—are supplied by ▇▇▇ Samsung, and that none of those products are ▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id*.; Dkt. 290-8, Dkt. 290-10. Netlist has not—and cannot—show otherwise.

***First***, Netlist is wrong to assert that Google has provided only "snapshots of information from single years." Opp. at 7. Google's second supplemental response to Interrogatory No. 3

---

[1] Contrary to Netlist's assertion, Google produced ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, as part of the intervening-rights discovery that Netlist requested last year. Opp. at 13; Declaration of Jonathan Tse ("Tse Decl."), Ex. 7.

identifies, on a model-by-model basis, the accused products Google purchased and used both before and after issuance of the reexamination certificate for the '912 Patent. Dkt. 290-12 at 61-67, 81-83. The response shows that all of those products are supplied by ███ Samsung. *Id*. Google also supplemented its interrogatory responses on June 3, 2022 to confirm that any products purchased as of that time are from the same suppliers. Dkt. 290-10. Thus, Google has provided a complete accounting of the products at issue.[2]

**Second**, Netlist argues that Google's supply chain is "complex" and involves entities other than Samsung ███████████████████. Opp. at 17. But Google's interrogatory responses and document production identify the exact role for each of those entities vis-à-vis the accused products. Dkt. 290-8; Dkt. 290-12 at 61-67; Ex. 300-5 at 82. ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████ Dkt. 300-5 at 82. The purchase orders Google produced for these products detail the source of each part and a unique manufacturer part number that allows Netlist to confirm the memory modules are manufactured, supplied, and branded by Samsung. *See, e.g.*, Dkt. 154-14 at GNLP-00017587. Netlist has had Google's purchasing information for nearly a year and has never argued that it needed additional information in order to understand Google's supply chain for the accused products.

**Third**, perhaps realizing that the products it has actually accused are supplied by ███ Samsung, Netlist argues that a stay should be denied because Google has not provided discovery into ***non-accused*** products. Opp. at 6-7. But discovery into non-accused products is contrary to the

---

[2] Netlist points to Google's May 19, 2021 response to Interrogatory No. 1, which Google served before receiving Netlist's operative infringement contentions as part of an agreement with Netlist's prior counsel to provide general information about Google's memory use. Dkt. 300-8 at 10. The response explained that ████████████████████████████████████████, but those products included DIMMs that Netlist ultimately decided not to accuse, ██████████████████████████████████████. *Id*. Google's subsequent interrogatory responses that address the products Netlist *did* accuse confirm that those products are all supplied by Samsung ███. Dkt. 290-8, Dkt. 290-10, Dkt. 290-12.

purpose of the Patent Local Rules. *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-cv-03844-JST (MEJ) 2014 WL 4593338, at *3 (N.D. Cal. Sept. 15, 2014). Even so, Google has provided Netlist with information regarding its purchase of the only other products Netlist contends to infringe the '912 Patent: 8-Rank and 16-Rank DDR4 DIMMs. Dkt. 290-12 at 81-83. The information confirms that, like the accused products, ▮▮▮▮ Samsung supply Google's 8-Rank devices. *Id*. It also shows that Google has never purchased the 16-Rank devices Netlist is attempting to add. *Id*.

**Fourth**, Netlist argues that discovery is needed for "Google's use of memory modules that may not fit within the public JEDEC standards" or "non-standardized product designs." Opp. at 8, 13. Netlist does not explain how off-specification memory modules might practice claim 16 of the '912 Patent. *Id*. Indeed, the theory makes no sense because Netlist has identified the '912 Patent as standard-essential, and its infringement allegations are based on JEDEC specifications. Dkt. 269-11. But even putting that aside, if Netlist thought Google was using "non-standardized" products, it could have pursued that theory through discovery. When Netlist asked for information into "all memory modules," Google objected and told Netlist that, consistent with the Patent Local Rules, it would provide discovery only on the accused products. Dkt. 300-5 at 2-3. Netlist never sought to compel broader discovery, including into so-called "non-standardized products." And Netlist declined to take depositions that Google offered, which would have allowed Netlist to probe its theory.

This "non-standardized product" theory also appears to be part of a larger pattern of Netlist attempting to expand the scope of the litigation simply because it is dissatisfied with the volume and source of accused products that fall under its infringement allegations. After Netlist learned that the accused 4-Rank devices are supplied by ▮▮▮▮ Samsung, it pivoted to 8-Rank and 16-Rank products. And now that Netlist knows the 8-Rank products are ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ (and Google does not purchase any 16-Rank products), it is pivoting to a "non-standardized product" theory that it never bothered to pursue in discovery. This type of shifting sands approach is contrary to the Patent Local Rules, and Netlist should not be able to avoid a stay based on unsupported conjecture and rhetoric.

1   *Finally*, relying on *Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989), Netlist
2   argues that a stay should be denied because Google could shift its purchase of Samsung products to
3   ███. Opp. at 21. But unlike the "other source" discussed in *Kahn*, ███
4   ███████████████████████████████████. Mot. at 4, 8.
5   ███████████████████████████████████
6   ███████ Dkt. 205-20. Thus, unlike the patent owner in *Kahn*—and contrary to Netlist's
7   arguments—there would be "repose" in the hypothetical scenario that Google switched from
8   Samsung to ███. Opp. at 21. And Netlist's suggestion that Google might switch to some
9   other supplier is not only hypothetical, but also belied by the fact that all of the accused products—
10  for the five years Google has been purchasing them—are supplied by Samsung ███. Dkt.
11  290-12 at 61-67, 81-83.

    Netlist also argues it is "heavily disputed" whether the products Google purchases from ███
13  ███████████████. Opp. at 21. But the only basis of the purported dispute
14  is language in the ███████████████████████████
15  ███████████████████████████████████
16  ███. *Id.* at 10. The information Google has produced to Netlist identifies the
17  manufacturer part number for each ███████, which allows Netlist to confirm that
18  they are ███████████████████████████
19  ███████. Dkt. 290-12 at 61-67, 81,83. Thus, the ███████████
20  ███████ and Netlist has no good-faith basis to continue accusing them.[3]
21  Accordingly, the only products legitimately in dispute are those Google purchases from
22  Samsung.[4]

---

[3] Google is not trying to "evade … summary judgment" on the question of whether ███
███████. Opp. at 21. Google is simply taking a pragmatic view of this case and the
fact that ███████████████████████████████, leaving
the only products at issue those supplied by Samsung. Mot. at 8. To the extent Netlist refuses to
withdraw its allegations against ███████, the Court may take up that issue following a
stay. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (finding the customer-suit
doctrine applicable even though "additional issues" might remain in the customer cases).

[4] Netlist's argument that Google has refused to answer basic questions regarding the basis for its
motion to stay is simply incorrect. Opp. at 10. As shown in Exhibit 9 to Netlist's opposition, Google

## 2. The Samsung Litigation Will Resolve the Issues Disputed In this Case

Netlist does not dispute that the Samsung declaratory judgment action will resolve the question of whether 4-Rank DDR4 RDIMMs and LRDIMMs that Samsung supplies to Google infringe claim 16 of the '912 patent. Opp. at 20-21. Nor does Netlist dispute that Samsung is in the best position to litigate the issue of infringement because it controls the relevant documents and witnesses relevant to the design and operation of the accused products. *Id*. Instead, Netlist argues the stay should be denied because Google has not agreed "to be bound" by the Samsung infringement determination. *Id*. at 21. But that question is irrelevant. Mot. at 9-10. If Samsung wins declaratory judgment of non-infringement, then Google is clear from liability. Likewise, if Netlist settles with Samsung or receives a damages award against it, then the accused products Google purchases from Samsung will be subject to exhaustion and insulated from liability. *Jacobs v. Nintendo of Am., Inc.*, 370 F.3d 1097, 1101-02 (Fed. Cir. 2004) (license to supplier extended to customers); *Katz*, 909 F.2d at 1464 (allowing supplier suit to proceed even though the customers had not agreed to be bound by its result).

Netlist also does not dispute that the law prevents it from recovering double damages against Samsung and Google. Opp. at 21-22. Netlist's argument that it may not be able to collect from Samsung because the accused products are designed and manufactured overseas is both meritless and contradicted by Netlist's own litigation activity. Damages are available for infringing sales in the United States, regardless of where the underlying products are designed or manufactured. 35 U.S.C. §§ 271(a), 284. That is the exact theory Netlist has advanced against Samsung in the Eastern District of Texas, where it seeks damages for, *inter alia*, Samsung's sale of DDR4 DIMMs in the United States. *Netlist, Inc. v. Samsung Elecs. Co., Ltd. et al.*, No. 2:21-cv-00463-JRG (E.D. Tex. May 3, 2022), Dkt. 23 ¶ 54. Netlist provides no explanation for why, allegedly, Samsung's sale of the same products to Google—a U.S. company—would not be subject to the same damages theory it has advanced in Texas. Opp. at 21-22. Netlist does not argue that it will be prevented from advancing the same theory as a counterclaim in the Samsung declaratory judgment action, either.

---

did respond with information relevant to the motion, including an explanation of why the theories advanced in the opposition are meritless. Dkt. 300-7 at 2.

1    In this regard, Netlist's reliance on *Kahn* is misplaced. Opp. at 21. There, the patent owner
2    Kahn had filed an infringement suit against General Motors for its manufacture and sale of AM
3    stereo receivers. *Kahn*, 889 F.2d at 1078. Motorola, which supplied only one component of the
4    accused receivers, filed a declaratory-judgment action for non-infringement, invalidity, and
5    unenforceability of the asserted patent. *Id*. General Motors then filed a motion to stay Kahn's
6    infringement suit based on Motorola's declaratory-judgment action, which the district court granted.
7    *Id*. at 1078-79. Kahn appealed, and the Federal Circuit vacated the stay and remanded for further
8    proceedings. *Id*. Central to the Federal Circuit's decision, however, was the fact that Motorola
9    provided only one component of the infringing receivers and thus had no liability for infringement—
10   a point Kahn did not dispute. *Id*. at 1081 ("Whether Motorola's 'technology' is used in the AM
11   stereo receivers manufactured and sold by General Motors is pertinent only if Motorola would be
12   liable, under law, for infringement. Motorola's position, with which Kahn agrees, is that it would
13   not."). Thus, issues of infringement and damages still would have remained following Motorola's
14   declaratory judgment action, no matter the result. *Id*.; *see also Spread Spectrum Screening LLC v.*
15   *Eastman Kodak Co.*, 657 F.3d 1349, 1357-58 (Fed. Cir. 2011) (discussing *Kahn* and explaining that
16   the customer-suit exception did not apply there because issues of liability and damages would
17   remain). This case is different, of course, because Samsung supplies the entire product alleged to
18   infringe. Netlist can pursue its infringement and damages claims against Samsung and have them
19   fully litigated in the context of that case. *Katz*, 909 F.2d at 1464.

20   The Federal Circuit decision in *Microsoft v. DataTern* is also no help to Netlist. 755 F.3d
21   899 (Fed. Cir. 2014). As an initial matter, *DataTern* did not rule on the customer-suit doctrine or
22   its underlying factors; instead, it concerned the question of declaratory judgment standing. *Id*. at
23   905-06. But even putting that distinction aside, the case supports Google's position and confirms
24   that Samsung is best positioned to litigate infringement. The underlying facts involved DataTern
25   filing infringement suits against customers who purchased software from Microsoft and SAP. *Id*.
26   at 902. According to claim charts attached to DataTern's complaint, the customers used the software
27   in a manner that directly infringed method claims of two asserted patents. *Id*. After the customers
28   had been sued, Microsoft and SAP filed declaratory-judgment actions and ultimately won summary

1  judgment of non-infringement. *Id*. DataTern appealed and argued that Microsoft and SAP lacked
2  standing in the first place. *Id*.

3        It is unclear why Netlist chose to rely on *DataTern*, because the decision largely affirmed
4  Microsoft and SAP's standing to sue. *Id*. at 911. As the court explained, DataTern's claim charts
5  alleged that, for the majority of the claims at issue, Microsoft and SAP induced infringement by
6  providing their customers with the necessary components to infringe and providing instructions and
7  encouragement about how to infringe. *Id*. at 905. Those allegations of inducement were sufficient
8  to allow Microsoft and SAP to step into their customers' shoes and litigate the issue of infringement.
9  *Id*. For one patent asserted against Microsoft, however, DataTern did not allege inducement or any
10 other basis of infringement; all Microsoft did was sell "a product capable of being used in an
11 infringing manner." *Id*. That, according to the court, was not sufficient to create a case or
12 controversy to support declaratory judgment standing. *Id*. The court also explained that Microsoft
13 did not have an obligation to indemnify its customers, and that the customer's request for
14 indemnification—by itself—was not sufficient to create standing. *Id*. at 904.

15       Here, Netlist has alleged that products supplied by Samsung infringe claim 16 of the '912
16 Patent. Dkt. 170-3 at 4; Dkt. 290-12. Thus, the court's rationale in *DataTern*—that Microsoft
17 lacked standing because it had no infringement liability or indemnification obligation—is irrelevant.
18 Samsung has standing to sue and is in the best position to litigate the issue of infringement as the
19 supplier of the products at issue. *DataTern*, 755 F.3d at 903 ("where a patent holder accuses
20 customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has
21 standing to commence a declaratory judgment action if … there is a controversy between the
22 patentee and the supplier as to the supplier's liability") (quoting *Arris Grp, Inc. v. British Telecomm.*
23 *PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011)).

24       Netlist also argues that the cases discussed in Google's motion are inapplicable because the
25 parties seeking a stay were "mere resellers" of the accused products. Opp. at 12. This makes no
26 sense. Google *uses* the accused products it purchases from Samsung, making it a customer in the
27
28

purest sense of the word. *Id.* And, because the relevant sales are those made by Samsung, Samsung is clearly the "true defendant" with respect to Netlist's claims. *Nintendo*, 756 F.3d at 1365.[5]

Finally, Netlist complains that Google has not agreed to lift a stay if Netlist's motion to dismiss the Samsung declaratory judgment action is granted. Opp. at 22. It is unlikely Netlist's motion would be granted given that Netlist has directly accused Samsung devices of infringing the '912 Patent. *DataTern*, 755 F.3d at 905. But even if Samsung's declaratory judgment action is dismissed, there are strong considerations for this case to remain stayed, namely the *inter partes* review proceeding against claim 16 of the '912 Patent and Samsung's appeal of its licensing dispute with Netlist—both of which could potentially simplify the issues of this case. Mot. at 10-11. To the extent the Samsung declaratory judgment action is dismissed, the parties and Court may revisit those proceedings to determine whether their status warrants continuing a stay.[6]

**B. Despite the Passage of Time, the Case as It Currently Stands is in Its Early Stages**

The resources the parties and Court have invested to date would not be wasted if this case is stayed. Opp. at 19. That is because the resources went to resolving the question of whether Google is liable for infringement of the originally asserted claims based on its use of the originally accused products. Dkt 258 at 16-37. The Court's summary judgment order answered that question in the negative, finding that those claims and products are subject to intervening rights. *Id.* As a result of the order, this is now an essentially new case where a stay is suitable because the only products at

---

[5] Google's citation to *Tegic Commc'ns Corp. v. Bd. Of Regents of the Univ. Of Tex. Sys.*, 458 F.3d 1335 (Fed. Cir. 2006) is not a "mistake" as Netlist contends. Opp. at 12. *Tegic* is widely cited for the proposition that "the guiding principles in the customer suit exception cases are efficiency and judicial economy." 458 F.3d at 1343; *see also Spread Spectrum*, 657 F.3d at 1357. The *Tegic* court found those considerations lacking because, *inter alia*, the supplier did not bear infringement liability and the customers relied on other non-licensed suppliers. Here, by contrast, Netlist argues that Samsung-supplied products directly infringe claim 16, ███████████████████████████. Thus, the guiding principles of efficiency and judicial economy are present here. Mot. at 9.

[6] Netlist's argument concerning estoppel arising from Inphi's challenge of claim 16 is wrong on the facts and the law. As the Court explained in its order on Google's motion to strike, Netlist has come forward with "no evidence or authority to support the argument that [Google and Inphi] acted as, or can be treated, as one." Dkt. 258 at 14. And even if Google and Inphi did coordinate—they did not—estoppel based on *inter partes* reexamination applies only to the party challenging the claim at issue, not privies. 35 U.S.C. § 315(c) (pre-AIA).

issue ▇▇▇▇▇▇▇▇▇▇ or subject to the Samsung declaratory judgment action. Mot. at 8-9.

Netlist does not contend that the parties and Court have invested resources litigating the issues that remain. Opp. at 19. Nor could it. Netlist did not assert claim 16 against 4-Rank DDR4 devices until May 2021, and Netlist raised allegations against 8-Rank and 16-Rank devices even later. Dkt. 269. Given the timing of Netlist's allegations, the parties have not engaged in discovery regarding infringement and damages, the alleged invention of claim 16, inequitable conduct, and Netlist's conduct before JEDEC with respect to DDR4 technology. Mot. at 11. Again, Netlist does not dispute any of those points—or the fact that these issues will be adjudicated in the Samsung action. Opp. at 19-20. And contrary to Netlist's suggestion, the parties and Court may still need to conduct further claim construction for claim 16, which contains unique limitations that were not at issue when the parties previously addressed claim construction. Dkt. 302 at 12-13. Granting a stay would avoid wasteful and duplicative litigation on all of those issues, which is the very purpose of the customer suit doctrine. Mot. at 11.

### C. Netlist's Claims of Prejudice are Meritless

As set forth in Google's motion, a stay of this case would lead to efficient and economical resolution of the remaining issues without any undue prejudice to Netlist. Mot. at 12-13. Netlist fails to overcome that showing. Opp. at 15-19.

*First*, Netlist does not cite credible evidence to support its argument that a stay would cost it market share or "fundamentally transform Netlist's entire business." *Id.* at 15, 17. Nor could it. The accused products in this case are 4-Rank DDR4 RDIMMs and LRDIMMs, and Netlist is seeking to add 8-Rank and 16-Rank devices. Dkt. 290-12 at 61-67, 81-83. Netlist does not make or sell any of those product categories. Dkt. 301-15 (Netlist product list showing that it does not offer 4-Rank, 8-Rank, or 16-Rank devices). Thus, even if Google were to stop using the accused products, Netlist could not step in to replace them. *Id.*

*Second*, Netlist confuses market share with market capitalization—*i.e.*, its stock price. Opp. at 15 ("Netlist lost several hundred million dollars in market capitalization when motions for summary judgment were taken off calendar indefinitely on January 11."). Those statements—and

Netlist's various mischaracterizations about the scope of the case—suggest that its real interest in continuing this litigation is to prop up its stock price, not to vindicate claims against Google for its use of Samsung products. In any event, Netlist does not cite a single case that declined to grant a stay because it would impact the non-movant's stock price. Opp. at 15. The court system exists to resolve *legal* disputes—not to serve as a vehicle to influence market capitalization or share price. And here, the remaining legal disputes would be resolved more efficiently and economically in the Samsung declaratory judgment action.

*Third*, if Netlist was genuinely concerned about market share then it should prefer to pursue claims against Samsung—the company that makes and sells the accused memory modules—rather than Google, which is only one of Samsung's customers. The fact that Netlist has declined to assert the '912 Patent in its existing lawsuit against Samsung's DDR4 devices in the Eastern District of Texas suggests that its desire to maintain a suit against Google is motivated by tactical reasons rather than a genuine interest in resolving the legal disputes at issue.

*Fourth*, Netlist argues it would be prejudiced by a stay because it might not be able to collect damages from Samsung. Opp. at 17 ("This is because Samsung contends that it does not manufacture or design DDR4 DIMMs in the United States"). As discussed above, that argument is contradicted by the fact that Netlist is seeking damages from Samsung in the Eastern District of Texas, based on its sale in the United States of the same products at issue here. *Netlist*, No. 2:21-cv-00463-JRG, Dkt. 23 ¶ 54.

*Fifth*, the case law Netlist relies on to argue that a stay might be "indefinite or lengthy" is distinguishable. Opp. at 16; *see Parella Mike Bloomberg 2020, Inc. v. Mike Bloomberg 2020, Inc.*, No. 20-cv-2231, 2020 WL 7315015, at *2 (C.D. Cal. Sept. 24, 2020) (in a case involving the Telephone Consumer Protection Act, 47 U.S.C. § 227, the court denied a stay because it was "purely speculative" whether the Supreme Court would issue a decision interpreting a statutory phrase at issue in the "near future"); *Blue Cross and Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007) (vacating a stay in a fraud case because it could "last as long as the five- or six-year limitations period" and thus "place plaintiffs effectively out of court"); *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-cv-452, 2020 WL 6270776, at *3 (D. Del. Oct.

1  26, 2020) (granting motion to lift stay pending *inter partes* review after the PTO rendered final
2  written decisions).

3  None of those considerations are applicable here. Like other districts across the country—
4  including the Northern District of California—the District of Delaware has a large patent docket.
5  But that does not mean litigation of the Samsung declaratory judgment action will be delayed
6  indefinitely. Indeed, Netlist cites a time-to-trial in the District of Delaware of 38 months, which is
7  neither "indefinite" nor materially longer than the national average. Tse Decl., Ex. 8. And again,
8  if Netlist wanted speedy resolution on the question of whether Samsung DDR4 DIMMs infringe
9  claim 16 the '912 Patent, it presumably would have added those allegations to its Eastern District
10 of Texas action and attempted to litigate them there.

11 *Sixth*, Netlist's willful infringement allegations are not a reason to deny Google's motion to
12 stay. Opp. at 18. The allegations—which span a single paragraph of Netlist's opposition—are
13 baseless and fail to identify any evidence of wanton, willful, or malicious conduct on the part of
14 Google with respect to claim 16. *Id.*; *Halo Elecs., Inc. v. Pulse Elecs.*, 136 S.Ct. 1923, 1932 (2016).
15 That is not surprising, because Netlist did not assert claim 16 until May 2021. And even if Netlist's
16 willful infringement allegations had merit—they do not—the strong considerations of efficiency
17 and judicial economy would still favor staying the case and resolving that single issue after
18 conclusion of the Samsung litigation. *Katz*, 909 F.2d at 1464.

19 *Finally*, Netlist is wrong that Google would not suffer hardship if the case continues. Opp.
20 at 19. The hardship would result from the fact that Google—and the Court—would be forced to
21 litigate a case that would be more efficiently resolved against Samsung. *Chia-Ling Huang v. Lowe's*
22 *Home Centers*, No. 2-18-cv-10545-SJO-JEM, 2019 WL 9997346, at *4 (C.D. Cal. Aug. 8, 2019)
23 ("Defendants persuasively argue that … [i]f this case moves forward, Defendants will 'expend time
24 and resources when the underlying major issues will be resolved in a separate suit between Plaintiff
25 and Simple Products.' The court agrees. Plaintiff has no claim against Defendants unless the
26 infringement claim against Simple Products is resolved in favor of Plaintiff. … Moreover, it would
27 be inefficient to allow Plaintiff to conduct limited discovery in this litigation and force customer
28 Defendants to expend time and resources, while the Utah litigation is ongoing."). The purpose of

the customer-suit doctrine is to avoid that prejudice and allow the true defendant—here, Samsung—to litigate the issues in dispute. *Id.*

### III.     CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court enter a stay pending resolution of the Samsung declaratory judgment action.

DATED: June 21, 2022                                  QUINN EMANUEL URQUHART & SULLIVAN, LLP


By      /s/ *David Perlson*
             David Perlson

David Perlson (CA Bar No. 209502)
davidperlson@quinnemanuel.com
Jonathan Tse (CA Bar No. 305468)
jonathantse@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jared Newton (admitted *pro hac vice*)
jarednewton@quinnemanuel.com
Sandy Shen (admitted *pro hac vice*)
sandyshen@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Catlin Williams (CA Bar No. 336464)
catwilliams@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendant Google LLC*