# Joint Letter Brief

# Redacted Version of Document Sought to be Sealed

**VIA ELECTRONIC CASE FILING AND EMAIL**

Re: *Netlist, Inc. v. Google LLC*, No. 3:09-cv-5718-RS-JCS (N.D. Cal.)

Dear Judge Spero:

Netlist and Google submit this brief regarding Google's discovery responses to Netlist's ROGs #1-2 and RFPs #1-2.

**Netlist's Statement:** This case concerns Google's use of infringing memory modules that are employed in servers. Because Google does not publicly disclose the technical specifications of the memory modules it uses, Netlist took two steps: First, it served infringement contentions that identified the JEDEC standardized memory module designs Netlist believes are covered by its claims.[1] Second, Netlist served discovery requests, asking Google to identify Memory Modules Google has used that satisfy certain technical criteria based on the claim limitations of the asserted patent. Ex. 1 at 6-7 (ROGs #1-2); Ex. 2 at 6-7 (RFPs #1-2). The term "Memory Module" is defined as "a printed circuit board which is connectable to a computer system, with a plurality of double-data-rate ('DDR') memory devices, and at least one circuit that sends a clock signal." Ex. 1 at 2. This definition sets out the uncontroversial physical limitations reflected in the claims of the patent in suit. *E.g.* Ex. 3 ('912 patent) cl. 1. In particular, the reference to the Memory Module including a circuit that sends a clock signal ensures that the definition does not apply to any DRAM memory Google uses, but only modules that require the functionality recited in the patent. The discovery request is framed in this particular way for two reasons. First, to prevent Google from arbitrarily limiting its production to only the products Google decides are encompassed by the infringement contentions. Second, to recognize that the claims of the patent in suit are not limited to the JEDEC standards, and therefore Google's use of modules that it contends are not entirely standard-compliant can still infringe.

Google originally refused to provide proper responses to discovery. This resulted in motion practice. In the parties' joint letter brief submitted to this Court, Google accepted the definition of "Memory Module," stating "Interrogatory No. 2 and RFP No. 2 seek information concerning each memory module Google used between February 8, 2021, and the present. Again, Google agrees that information concerning the type and category of memory modules and their dates of commercial use is relevant." Ex. 4 at 6 (Dkt. 134-03). At the hearing, as to Rog. 2, the Court stated that Netlist "gets much broader discovery as to the modules that are used from February 8, 2021." Dkt. 148 at 5:19-6:6. Google did not raise any objection to the definition of Memory Module. After another round of briefing exchanges based on Google's non-compliance with the timing expectations set out by the Court at the hearing, Google entered into a binding stipulation "to provide a complete response to Netlist's contention interrogatory on intervening rights." Dkt. 149 at 2:9-11. Netlist did not limit its interrogatory on intervening rights (No. 3) to "accused products."

In its reply filed on June 21, 2022, Google admitted that it only provided discovery on the products

---

[1] For example, "Claim 16 of the '912 Patent: The memory modules incorporated in Google's servers include, without limitation, memory modules compliant with certain portions of the JEDEC Solid State Technology Association ('JEDEC') standards and specifications for Double Data Rate 4 ('DDR4') Synchronous DRAM ('SDRAM') . . . ***and products that operate in substantially similar manner.***" Ex. 7 at 4 (Dkt. 170-3).

1

it arbitrarily decided were "accused": "When Netlist asked for information into 'all memory modules,' Google objected and told Netlist that, consistent with the Patent Local Rules, it would provide discovery only on the ***accused products***." Dkt. 310 at 4:14-16 (emphasis added). This flatly contradicts what Google said in its last discovery letter to this Court regarding Netlist's interrogatories, the exchange at the last discovery hearing, and in the binding stipulation. In none of these contexts did Google state that it was only producing documents and information based on its arbitrary determination of what was accused.

Netlist requests that the Court order Google to provide full discovery consistent with the definition of Memory Module above. This request is ripe for two reasons. ***First***, Judge Seeborg confirmed that there was no intervening rights as to claim 16 of the '912 patent, confirmed that claim 16 was properly part of the case, and confirmed that absolute intervening rights existed as to the other asserted claims. Dkt. 258. Google did not move for summary judgment on equitable intervening rights. Thus, the question of Google's use of products covered by claim 16 since the issuance of the patent, and its use of products covered by other claims since the issuance of the reexamination certificate, is live. ***Second***, on June 3, 2022, Google filed yet another motion to stay—this time claiming that this case should be stayed pending resolution of Samsung's declaratory judgment action against Netlist in the District of Delaware. Dkt. 292. One of the issues in the motion to stay is ████████████████████████████████████████████████████████████████████████████████████████████████████████████

In addition to its candid admission in briefing before Judge Seeborg that it is withholding discovery, Gooǵe admitted the same during meet and confer. Netlist's infringement contentions specified that claim 16 applies to a feature known as "PDA" or "per-DRAM addressability," which is a feature expressly recited in the JEDEC standard. Dkt. 170-16 at 4 ("As illustrated above, JESD 79-4C provides the PDA feature for transmitting the command signal to only one DDR memory device at a time."). At the meet and confer—which was reported based on the agreement of parties—Google admitted that it has not searched for all memory modules that use PDA:

████████████████████████████████████████████████████████████████" Ex. 5 at 11:16–21.

This is not a situation in which Google maintains a website where it lists its memory module designs and Netlist can find the ones that use PDA. Google blocks from public view the technology it uses. Google has this right. But it does mean that discovery is necessary to define the scope of the dispute. Google cites *Icon-IP Pty Ltd. v. Specialized Bicycle Components* for the proposition that discovery into non-accused products is improper in this district. But *Icon* is inapposite because products at issue there were publicly available, unlike Google's memory modules here. Here, the standards are public, but what part of the standards Google implements, how it implements them, whether it even concedes it implements them, are all veiled in secrecy. Without applying the definition of Memory Module that Google agreed to in previous discovery letter briefing, the wolf

will be guarding the hen house. Google will arbitrarily decide what constitutes "PDA," or "Encoded Quad CS Mode" or any other term in the contentions and will decline to disclose everything it arbitrarily decides does not come within these terms.

Google's servers are a closed loop. It can define its technology any way it likes. For example, Netlist wrote to Google: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" Dkt. 300-7 at 4 (Dkt. 311-3). Google responded with word games, limiting its answer to what it defined as "accused products," without disclosing what its interpretation included and excluded. *Id*. at 3. In response, Netlist asked Google to stop playing word games: "Once again, please answer the question, which did not use the term 'accused' in order to prevent Google from continuing to play word games." *Id*. at 2. For example, Google may arbitrarily decide that what Netlist believes is "PDA" is not what Google understands to be "PDA" and therefore Google's product is not "accused" and it need not provide discovery. Judge Illston allowed discovery into a non-accused process because the patent owner was attempting to establish that it operated in the same manner as the accused process and noted that district courts have held that the "scope of discovery may include products and services reasonably similar to those accused in the preliminary infringement contentions." *Advanced Micro Devices, Inc. v. Samsung Elec. Co., Ltd.*, 2009 WL 1834147, at * 3 (N.D. Cal. June 24, 2009). It is for this reason that Rogs 1-2 and RFPs 1-2 define "Memory Module" in terms of the physical features that are substantially identical to the JEDEC standardized designs Netlist's ICs map to. These definitions are workable, because Google agreed to respond to Rog. 2 without reservation in the last discovery letter brief to the Court. Ex. 4 at 6.

Google's other excuses don't hold up. *First*, Judge Seeborg did not find that Google complied with its discovery obligations. Instead, he stated that Netlist's concern "amounts to a discovery dispute that ought to be brought before the assigned magistrate judge." Dkt. 258 at 39. *Second*, Google asserts this letter is a dispute about 4-rank v. 8-rank/16-rank designs. Not so. That is the subject of Netlist's pending motion to amend ICs. Dkt. 269. Even within the 4-rank universe, the problem of failing to provide discovery consistent with the definition of Memory Module exists. Moreover, Judge Seeborg only noted that 8/16-rank were not accused "at present." Dkt. 258 at 36. He did not preclude discovery. Even if the Court constrained an order to 4-rank "Memory Modules," the issue that is at the heart of this motion exists. *Third*, Google claims Netlist should have take a deposition. Netlist did not need to do so because Google committed in writing to the definition of Memory Module.

Netlist identified the dispute in this letter in an email dated June 6. On June 16 Netlist requested a lead to lead meet and confer. Google affirmatively refused to meet and confer. Ex. 6 at 6. On June 22, Netlist sent a draft of this letter. *Id*. at 4. Google then suddenly decided to meet and confer but delayed it until June 27. *Id*. at 2. Google's lead counsel nor its backup lead counsel showed up to the conference after ignoring the request. At the meet and confer Google made clear it will not compromise at all. Nonetheless it refused to agree to file a joint letter in a timely manner.

**Google Statement**: As detailed below, Netlist's request for discovery into *all* memory modules—including those that are not accused—contradicts the Court's Summary Judgment Order (Dkt. 258 or "Order"), which recognized that this case is limited to *4-rank* memory modules only. It also contradicts the Patent Local Rules, which are designed to prevent the type of fishing expedition Netlist seeks here. Before turning to those points, however, Google is compelled to respond to Netlist's statement regarding compliance with Your Honor's discovery procedures.

**Netlist has continued to abuse Your Honor's procedures, using them as a threat rather than a means to resolve disputes in good faith**. The arguments Netlist raises above regarding preparation of this letter are contradicted by the record of the parties' correspondence. Exs. A-D. As shown, Netlist's approach to discovery is to forego any good-faith effort to resolve disputes (Ex. A at 20-21), and instead serve a hastily prepared draft of a letter brief that exceeds the applicable page limits (*id*. at 19-20), typically followed by multiple revisions (*id*. at 2; Ex. D at 1-3), and demand that Google respond under a short fuse each time (Ex. A at 1-5; Exs. B-C; Ex. D at 3). This is the third time Netlist has followed that playbook, and, on each prior occasion, Netlist has withdrawn its letter brief after forcing Google to address multiple revisions. Dkt. 236-3 at 13. And as Google already explained, Google's lead counsel was traveling overseas, so Google's counsel met and conferred with Netlist, acting as lead counsel on his behalf because Netlist insisted on pushing the issue immediately. Ex. E at 3:7-10.

Google is committed to meeting its discovery obligations and working cooperatively with Netlist. Netlist, however, seems intent on racing to file a letter brief anytime it receives an adverse ruling or becomes dissatisfied with the scope of its case. To avoid this conduct in the future, and to avoid burdening the Court, Google respectfully asks Your Honor to deny Netlist's current request and require Netlist to provide written certification of compliance with Your Honor's discovery procedures for any future dispute.

**The Court Has Ruled that the Scope of this Case is Limited to 4-Rank Devices, and is Set to Rule On Netlist's Attempt to Add 8-Rank and 16-Rank.** Netlist's infringement allegations in this case are very specific. It accused five categories of memory modules that implement portions of the JEDEC standard directed to *4-Rank* functionality. Those allegations defined the scope of the case for more than a year—Google provided discovery on the accused products and the parties briefed the issue of intervening rights. That briefing culminated in the Court's May 5, 2022 Order, which granted summary judgment for Google and found that three of the five categories of accused products are subject to absolute intervening rights insulating them from liability. Dkt. 258 at 44. In reaching that conclusion, the Court rejected Netlist's argument that Google failed to address products Netlist had not accused. *Id*. at 36 ("Netlist has only accused the five categories of 4-Rank DIMMs addressed in Google's motion. Google need not address products not presently at issue."). The Court also held that Google had not "withheld pertinent discovery" beyond the accused products. *Id*. at 39. In response, Netlist is now seeking leave to amend its infringement contentions to add two additional categories of products to the case–8-Rank and 16-Rank modules—which is set for a hearing on July 14, 2022. Dkt. 268-3.

By filing this letter brief, Netlist is attempting to circumvent the ruling Chief Judge Seeborg made on summary judgment, and the ruling he will make on Netlist's motion to amend. Netlist is requesting nearly unlimited discovery into *all* memory modules that Google purchases or uses.

4

Indeed, the definition of "memory module" Netlist has advanced in its discovery requests would cover any device with multiple DDR chips, *regardless of how many ranks the device has*, which plainly go beyond the accused 4-Rank devices, as well as the 8-Rank and 16-Rank devices Netlist is attempting to add. Netlist should not be permitted to use the discovery letter process as an end run around the Court's rulings.

**Discovery In the Northern District Is Limited to the Accused Products.** Even putting aside the Court's Order, Netlist is not entitled to discovery into non-accused memory modules. The Patent Local Rules require the plaintiff to "first amend its infringement contentions to include such [non-accused] models before it is entitled to discovery on them." *Icon-IP Pty Ltd. v. Specialized Bicycle Components*, No. 12–cv–03844–JST (MEJ), 2014 WL 4593338, at *2-4 (N.D. Cal. Sept. 15, 2014). The *Icon* decision addressed this issue at length and explained that the plaintiff's request for broad discovery would improperly "transfer the burden of identifying accused products to the defendant" and require the defendant to "guess which of its products are similar enough that [plaintiff] intended to name them as well." *Id*. at *3. Here, Netlist's infringement contentions are limited to 4-Rank products, and Google should not be obligated to provide broader discovery into non-accused products. *Id*.

Netlist does not dispute the underlying rationale of *Icon*, but argues the case is inapplicable because the plaintiff there was able to prepare its infringement contentions based on public information. *Id.* at *1. But that is exactly what Netlist did here. *Netlist admits this point above*—that its infringement contentions "identified the [public] JEDEC standardized memory module designs [that it] believes are covered by its claims." *Supra* at 1; *see also* Dkt. 288-3 at Exhibit B. The only other category of products Netlist identifies are those that it characterizes as not "compliant with the JEDEC specifications," a theory Netlist first raised a few weeks ago in response to Google's pending motion to stay. Dkt. 299-3 at 13.[2] That argument is completely speculative, as Google is not aware of any such products and Netlist has never explained how a non-JEDEC product would implement the same or similar JEDEC functionality described in its infringement contentions. *Infineon*, 2012 WL 6184394 at *3. Furthermore, if Netlist believed that Google was purchasing or using non-standardized products, it should have pursued that theory more than a year ago, including through depositions that Google offered and Netlist declined to take.

Netlist also fails to identify case law to support its assertion that discovery into *all* memory modules that Google uses is permissible. The cases Netlist relies on allowed discovery into certain non-accused products that were shown to use the same process or were reasonably similar to those that had been accused. *E.g.*, *AMD*, 2009 WL 1834147, at *3 (allowing discovery into products that defendant's witness testified used the "same process" as those accused). The only products Netlist contends fit that description are the 8-Rank and 16-Rank devices subject to its pending motion to amend. Dkt. 268-3 at 7-9. Netlist has not identified other specific products it believes are reasonably similar to the accused products, let alone explain *how* any such products are

---

[2] Google has asked the Court to stay this case pending resolution of a declaratory judgment action that Samsung filed against Netlist, seeking non-infringement of the '912 Patent, as Samsung is the sole supplier of the remaining accused products in this case. Dkt. 290-4 at 1. The goals of the stay are to promote efficiency and judicial economy. *Id.* at 8-11. Netlist attempts to frustrate those goals by raising a discovery dispute while that motion is pending.

allegedly similar.

**Netlist's Remaining Arguments are Meritless.** Netlist is incorrect that Google should be required to provide discovery into all products that use the PDA feature. *Supra* at 2-3. Netlist relies on PDA for only *two limitations* of claim 16. Dkt. 287-4 at Exhibit B (limitations 16.8, 16.10). For other limitations, Netlist relies on features of the JEDEC standard that are *specific to 4-Rank functionality*, namely Encoded Quad CS Mode." *Id*. at 21-25. Whether a product falls within the scope of Netlist's infringement allegations does not simply hinge on whether it includes PDA, but rather if it includes PDA in combination with the other features Netlist relies on, including Encoded Quad CS Mode. The only products that meet those criteria are 4-Rank memory modules, which Google has already provided discovery on.

Netlist's argument that Google "has admitted to customizing at least some memory modules" is both incorrect and irrelevant. *Supra* at 2. The interrogatory response Netlist points to explains that Google ███████████████████████████████████ (Dkt. 300-5 at 82 n.25), which are ███████ implementing the public JEDEC specifications. Dkt. 211-9 at 19. Nothing about those products is "veiled in secrecy."

Finally, Netlist is incorrect that Google stipulated to provide discovery into non-accused products. The stipulation—and the June 2021 dispute that preceded it—concerned intervening rights discovery, which only covered the products Netlist had accused. Google had no obligation to prove its intervening rights defense, or provide related discovery, for non-accused products—a point Chief Judge Seeborg recognized in his Order. Dkt. 258 at 36.

**Conclusion.** The Court should not permit Netlist to use its discovery procedures as a weapon whenever it is dissatisfied with the scope of the case. This is improper and Netlist's request should be denied. As a compromise (Dkt. 118), Google is willing to supplement its interrogatory response to address Netlist's request regarding non-JEDEC compliant memory modules with the PDA and Encoded QuadCS functionality described in Netlist's infringement contentions.

Dated: July 1, 2022



Sincerely,

| | |
|---|---|
| Jason G. Sheasby | Jared Newton |
| Irell & Manella LLP | Quinn Emanuel Urquhart & Sullivan, LLP |

6

**DECLARATION OF CONSENT**

Pursuant to General Order No. 45, Section X(B) regarding signatures, I attest under penalty of perjury that concurrence in the filing of this document has been obtained from David A. Perlson.

Dated: July 1, 2022                                IRELL & MANELLA LLP


By: */s/   Jason G. Sheasby*
   Jason G. Sheasby
   jsheasby@irell.com
   IRELL & MANELLA LLP
   1800 Avenue of the Stars, Suite 900
   Los Angeles, California 90067
   Telephone: (310) 277-1010
   Facsimile: (310) 203-7199

*Attorney for Plaintiff Netlist, Inc.*