# Exhibit 5

## Redacted Version of Document Sought to be Sealed



# Transcript of Meet and Confer Between Counsel

**Date:** June 27, 2022
**Case:** Netlist, Inc. -v- Google LLC

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

Page 1:

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                  SAN FRANCISCO DIVISION
 4   NETLIST, INC.,            )
                               )
 5         Plaintiff,          )
                               )  Case No.:
 6   vs.                       )  3:09-CV-05718-RS
                               )
 7   GOOGLE LLC,               )
                               )
 8         Defendants.         )
     ------------------------- )
 9
10
11
12
13        CONFIDENTIAL:  ATTORNEYS' EYES ONLY
14              TRANSCRIPT OF PROCEEDINGS
15                 CONDUCTED VIRTUALLY
16                    June 27, 2022
17                     9:02 a.m.
18
19
20
21
22   REPORTED BY:
23   Tammy Moon, CSR No. 13184, RMR, CRR
24   Appearing remotely from Carmichael,
     California
25
```

Page 2:

```
 1   REMOTE APPEARANCES:
 2   FOR PLAINTIFF:
 3   IRELL & MANELLA LLP
     BY:  JASON G. SHEASBY, ESQ.
 4   BY:  YANAN ZHAO, ESQ.
     1800 Avenue of the Stars, Ste 900
 5   Los Angeles, California 90067
     310.277.1010
 6   Jsheasby@irell.com
     Yzhao@irell.com
 7
 8   FOR DEFENDANT:
 9   QUINN EMANUEL URQUHART & SULLIVAN
     BY:  JARED NEWTON, ESQ.
10   BY:  JONATHAN TSE, ESQ.
     1300 I St. NW Ste 900
11   Washington, D.C. 20005
     202.538.8000
12   Jarednewton@quinnemanuel.com
```

Page 3:

 1   Monday, June 27, 2022, 9:02 a.m.
 2       MR. SHEASBY: This is Jason Sheasby from Irell.
 3   We've -- you asked for a meet-and-confer. Lead counsel
 4   for Google is not on the call even though this was the
 5   time that Google proposed. And so I just want to know
 6   if there's any possibility for a compromise.
 7       MR. NEWTON: Jared Newton from Quinn Emanuel.
 8   Lead counsel from Google, David Pearlton, is traveling
 9   overseas and unable to make the call today or this week,
10   so I'm acting as lead counsel on his behalf.
11       In response to Mr. Sheasby's question, we're a
12   little bit confused about exactly what you are asking
13   for. Your letter --
14       MR. SHEASBY: Sure. We're asking for full,
15   complete responses to Interrogatories 1 and 2 and
16   Discovery Responses 1 and 2, not limited to what you
17   believe count as accused products but that match the
18   definition of memory module in the requests.
19       MR. NEWTON: We're not willing to agree to
20   provide full discovery under that definition of memory
21   module, which we believe is too broad and goes beyond
22   both the accused products and any products that Netlist
23   have ever argued are substantially similar to what you
24   have accused.
25       MR. SHEASBY: What is the scope of search that

Page 4:

 1   you have conducted?
 2       MR. NEWTON: We have conducted a search into
 3   products that you have accused and into products that
 4   you are attempting to accuse, that you have argued are
 5   substantially similar, so 8-rank and 16-rank devices,
 6   and then also into products that you have asked about
 7   last year under ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
 8   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
 9   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11       MR. SHEASBY: Okay. So I think we are at an
12   impasse, so I think we'll just proceed to the resolution
13   procedure that has been set out by the Court.
14       MR. NEWTON: Okay. I have a couple questions
15   about statements that were in your draft of the letter.
16       MR. SHEASBY: Sure.
17       MR. NEWTON: One thing -- you mention
18   second-degree nonstandardized products. We are not
19   aware of any such products, so I was wondering if you
20   have any examples of that -- what type of products do
21   you think would fit into that category of memory modules
22   that are not compliant with the JEDEC standard?
23       And I'm just asking for, like, any kind of
24   example from industry or from Netlist so that we can get
25   a better sense of what you mean when you use that term.

**Page 5**

1  MR. SHEASBY: Sure. An example of that would
2  be -- like, high-bandwidth memory is a type of memory
3  module that involves multiple dyes but is not
4  standardized. And, for example, Huler used PDA on
5  high-bandwidth memory that would be, obviously, within
6  the scope of our discovery requests. That would be an
7  example.
8  MR. NEWTON: PDA in combination with the other
9  functionality you have identified in your contentions,
10 like quad and coded quad CS?
11 MR. SHEASBY: So it would just be anything that
12 involves -- PDA would be an example of a signal that is
13 substantially the same as quad that would constitute --
14 let me give you an example.
15     Are you limiting your production to just
16 monolithic modules, or are you including 3DS modules in
17 your discovery responses?
18 MR. NEWTON: Well, I think that gives to the
19 issue of 8-rank and 16-rank, and we've given you some
20 discovery. The rest of it is, as you know, subject to
21 your pending motion to amend.
22 MR. SHEASBY: Yeah. So that's not exactly
23 correct. Let me explain what I mean. You can make
24 4-rank with monolithic, or you can make 4-rank with
25 stacked or 3DS. So, for example, are you excluding

**Page 6**

1  4-rank stacked or 3DS from your production?
2  MR. NEWTON: No. I mean, if it's 4-rank, we'd
3  give it a D.
4  MR. SHEASBY: So you've given us 4-rank 3DS,
5  4-rank staff?
6  MR. NEWTON: I believe so. That's not a
7  limitation we have imposed on providing for discovery
8  into 4-rank devices.
9  MR. SHEASBY: Okay. But you are not willing to
10 look for nonstandardized devices that you may be
11 producing?
12 MR. NEWTON: Well, now that you have given us
13 an explanation, that's the first time we've gotten one
14 from you about what nonstandardized might mean. I don't
15 think we have any, based on the investigation that we
16 have done, but we can take back the description and see
17 if that's something we're willing to look into.
18 MR. SHEASBY: Yeah. I think we're going to
19 file our letter. We've waited a long time, and the
20 reason why -- you refused to meet and confer with us,
21 and you have ignored our request repeatedly.
22     So we're going to be filing our letter brief
23 tomorrow, but I've given you as much as I can at this
24 point. I do believe that you are withholding
25 information that's responsive.

**Page 7**

1  MR. NEWTON: Okay. Well, I disagree that we
2  refused to meet and confer. I think we have a record on
3  that, so we'll let that speak for itself.
4      In terms of the timing, our understanding of
5  the timing -- our understanding is the letter deadline
6  is five days from the lead counsel meet-and-confer. And
7  filing it tomorrow would be improper, in our view.
8  MR. SHEASBY: Like I said, we're willing -- you
9  refused to meet and confer with us, so we're definitely
10 willing to sort of give you a couple of extra days. But
11 we're not going to wait five business days to file the
12 brief. So tell us when you are going to be ready, and
13 we're going to file it.
14     We don't think it's consistent with the
15 rules -- we think ignoring our meet-and-confer request
16 is not consistent with the spirit or intent of the
17 Court's dispute resolution procedures.
18 MR. NEWTON: Again, we didn't ignore your
19 meet-and-confer request. We wanted to identify specific
20 discovery issues before scheduling a meet-and-confer.
21 So we can discuss that. We didn't have that
22 information, so we served you a letter. So --
23 MR. SHEASBY: I don't agree with that.
24 MR. NEWTON: Okay. Well, we're in a
25 disagreement about that.

**Page 8**

1  MR. SHEASBY: So we'll wait for you to write --
2  to get us your draft, and then we'll send it on. So let
3  us know when you are going to get it.
4  MR. NEWTON: Okay. Let me raise one other --
5      (Simultaneous colloquy.)
6  MR. NEWTON: -- related issue, and that is the
7  timing, in terms of the time of day we're filing.
8      We think the parties should agree to a specific
9  time when the letter's going to go in regardless of
10 which day we ultimately settle on, but we're asking if
11 Netlist will agree to a specific time such that we can
12 provide you with a response before that time and then
13 the letter can be filed.
14 MR. SHEASBY: No. We don't agree to that
15 because there may be issues that you bring up that we
16 need respond to. So unfortunately, we can't agree to
17 that.
18     (Simultaneous colloquy.)
19 MR. NEWTON: We disagree as -- how the process
20 is meant to work. You are supposed to provide your
21 portion about what you think you're entitled to, and
22 we're entitled to respond to that issue. It's a
23 back-and-forth process, which is inconvenient to the
24 parties in previous occasions.
25 MR. SHEASBY: I'm sorry. We can't agree to

9

1  that, but we'll try our best to move it forward
2  promptly.
3      MR. NEWTON:  Ms. Court Reporter, would you
4  please mark the transcript as confidential, attorneys'
5  eyes only.
6      MR. SHEASBY:  I just have one other question.
7  I don't think you've ever given me a direct response to
8  this, which is to say that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
9  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
10 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
11 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
12     And I don't think you ever denied that.  Are
13 you now denying that?
14     MR. NEWTON:  I think we denied it on multiple
15 occasions, including the -- you can refer to the June 11
16 email from my colleague Mr. Tse and our discovery
17 responses and our reply.
18     MR. SHEASBY:  I want to have as clear a record
19 as I can. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
20 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
21 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
22     MR. NEWTON:  Well, that's a different question.
23 What those companies do for other customers of theirs, I
24 can't represent that.  I mean, that's a question for
25 those companies.

10

1      MR. SHEASBY:  No, no.  I'm talking about for
2  you.
3      MR. NEWTON:  All right.  Well, it's hard to
4  make a clear record when the question is not clear.
5  We've provided this --
6      (Simultaneous colloquy.)
7      MR. SHEASBY:  I'm sorry.
8      MR. NEWTON:  We've --
9      MR. SHEASBY:  I'm sorry.  The -- you go to --
10 the question wasn't clear.  Let me make it as clear as
11 possible.
12 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
13 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
14 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
15 ▇▇▇▇▇▇▇▇▇▇▇
16     MR. NEWTON:  Well, again, your question is not
17 clear because now are you talking about all products
18 ever or accused products?  DDR4?  I don't -- we've
19 answered this question in our discovery responses with
20 respect to the accused products.  That's what our
21 responses --
22     MR. SHEASBY:  But you have -- so now what's --
23 the response is the DDR4?
24     MR. NEWTON:  That's not relevant.  You haven't
25 accused all DDR4.  The --

11

1      (Simultaneous colloquy.)
2      MR. SHEASBY:  You are not --
3      MR. NEWTON:  8-ranked and 16-ranked DDR4 aren't
4  even in the case.
5      MR. SHEASBY:  So you are not answering as to
6  the DDR4.  I appreciate that, and I think that's really
7  the crux of the dispute, which is to say that you have
8  -- these patents are directed at DDR4, for example, and,
9  in other instances, directed at DDR3.
10     And so, unfortunately, the information you are
11 providing us is clearly incomplete.  And I think what
12 you just said there confirms that.  So because it's an
13 important issue, I'm going to give you one more time to
14 answer the question.
15     For DDR4 --
16     MR. NEWTON:  You don't have to repeat it.  You
17 have got our answer.
18     MR. SHEASBY:  For DDR4 --
19     MR. NEWTON:  All DDR4 products are not in this
20 case, and so the question --
21     MR. SHEASBY:  Well, what DDR4 products are not
22 in this case that you know of that you are excluding?
23     MR. NEWTON:  We've, like, told you about some
24 of them, like ▇▇▇▇▇▇.  We told you about ▇▇▇▇▇▇ more
25 than a year ago, and you have not accused those.  It

12

1  makes no sense that we would have to go out and do an
2  investigation and provide discovery on products that you
3  are aware of that you have not accused.
4      MR. SHEASBY:  Anything other than ▇▇▇▇▇▇
5      MR. NEWTON:  Again, this is irrelevant.  I'm
6  not getting into a long list of products so that we can,
7  you know, give you discovery you are not entitled to,
8  which seems --
9      MR. SHEASBY:  So you can give us a list of all
10 products that you make so that we can determine if
11 there's any burden associated with that.  Why can't we
12 at least try that?
13     MR. NEWTON:  We gave that to you last year in
14 May.  And you chose --
15     MR. SHEASBY:  You did not give us the list of
16 all DDR4 products you use.
17     MR. NEWTON:  I think there's disagreement
18 there.  But in any event, your contentions are -- you
19 know, you have said -- you have charted in your
20 contentions all of the portions of the JEDEC standard
21 you believe are relevant.
22     And we provided discovery to you on that with
23 the caveat that 8-rank and 16-rank is before the Court.
24 So I don't think there's anything else to discuss here.
25     MR. SHEASBY:  So you provided us discovery on

13

1  all your modules that use PDA?
2      MR. NEWTON:  Again, the question is irrelevant
3  because you are asking about products that have not been
4  accused, and so we have no obligation to actually look
5  into those and go one by one to whether they use PDA.
6      MR. SHEASBY:  Okay.  So you haven't
7  investigated -- you have provided information on all
8  products that use PDA.  Is that what you are saying?
9      MR. NEWTON:  We have provided discovery on the
10 products that you have accused.
11     MR. SHEASBY:  Okay.
12     (Simultaneous colloquy.)
13     MR. NEWTON:  And also 8-rank and 16-rank
14 products that you did not accuse but they're pending
15 before the Court.
16     (Simultaneous colloquy.)
17     MR. SHEASBY:  Get into your letter --
18     MR. NEWTON:  We've also given you additional
19 information about products that we used that you have
20 not accused, which was in May of last year.
21     MR. SHEASBY:  Yeah.  So you have not provided
22 us a list of all products that you employ that use PDA.
23 I can assure you of that.  But I think this is -- I
24 think there is a clear impact.  I don't think there's
25 room for compromise.  And so get us your draft of the

14

1  letter as soon as you possibly can.
2      All right.  We're done.
3      MR. NEWTON:  I disagree with your
4  representation, but you have our response on that.
5      So thank you, everyone.
6      (The matter concluded, 9:15 a.m.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

15

1      REPORTER'S CERTIFICATE
2
3
4      I, TAMMY MOON, CSR No. 13184, Certified
5  Shorthand Reporter, certify:
6      That the foregoing proceedings were
7  stenographically reported by me at the time and place
8  therein set forth and were thereafter transcribed;
9      That the foregoing is a true and correct
10 transcript of my shorthand notes so taken.
11     I further certify that I am not a relative or
12 employee of any attorney or any of the parties nor
13 financially interested in the action.
14     I declare under penalty of perjury under the
15 laws of California that the foregoing is true and
16 correct.
17     Dated this 29th of June, 2022.
18
19     *[signature: Tammy Moon]*
20     _____
21     Tammy Moon, CSR NO. 13184
22
23
24
25

Transcript of Meet and Confer Between Counsel
Conducted on June 27, 2022

5

[Page content redacted]

Transcript of Meet and Confer Between Counsel
Conducted on June 27, 2022                                                6



[Page content redacted]

Transcript of Meet and Confer Between Counsel
Conducted on June 27, 2022    8

[Page content redacted]

[Page content redacted]

CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Meet and Confer Between Counsel
Conducted on June 27, 2022                                                                 10

[Page content redacted]

Transcript of Meet and Confer Between Counsel
Conducted on June 27, 2022                                                                 11

